# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

| | | |
|---|---|---|
| THE COLEMAN COMPANY, INC., | § | |
| | § | |
| *Plaintiff/Counterclaim Defendant,* | § | Civil Action No. 2:20-cv-351-RGD |
| | § | |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| TEAM WORLDWIDE CORPORATION, | § | |
| | § | |
| *Defendant/Counterclaim Plaintiff.* | § | |

## DEFENDANT/COUNTERCLAIM PLAINTIFF TEAM WORLDWIDE CORPORATION'S RESPONSIVE BRIEF ON CLAIM CONSTRUCTION

Defendant/Counterclaim Plaintiff, Team Worldwide Corporation ("TWW") hereby responds to Plaintiff/Counterclaim Defendant, The Coleman Company, Inc.'s ("Coleman") Opening Claim Construction Brief (Dkt. 53) in regard to disputed claim terms of U.S. Patent No. 7,089,618 (the "'618 Patent") and U.S. Patent No. 6,754,926 (the "'926 Patent").

I.    **The '618 Patent Disputed Claim Terms**

A.    **The first and second side support beams extend in the lengthwise direction of a single side panel.**

As discussed in TWW's Opening Brief, the intrinsic record confirms TWW's proposed construction "A first (second) side support beam extends in the lengthwise direction of a single side panel." (*See* Dkt, 52 at 6-9). As an initial matter, Coleman repeatedly, incorrectly refers to the "first side support panel" or "second side support panel" in its briefing, rather than the first or second side support beams as per the claim language. This point shows the confusion the plain and ordinary meanings would cause for jurors without clarification and guidance from the Court.

Coleman's only disagreement with TWW's proposed construction is the inclusion of "single side panel." (*See* Dkt 53 at 6). However, Coleman disregards the claim language when their brief emphasizes "at least one side panel" but ignores the preceding term - "the."

Claim 1, for example, requires: "at least one side panel extending between the first [top] panel and the second [bottom] panel" highlighted in purple; and "a first side support beam extending in the lengthwise direction of the at least one side panel" highlighted in blue, referring to the side panel in the preceding limitation.

Contrary to Coleman's argument (*see* Dkt. 53 at 7), TWW's construction does not preclude that a claimed air mattress could include multiple side panels.  Figures 5 and 6 of the '618 Patent (below) show that an air mattress can have multiple side panels (Nos. 11, 12, 13 & 15) with multiple pairs of first and second side support beams (No. 25).  But this

side support beams only extend in the lengthwise direction of a single side panel.  As discussed in TWW's Opening Brief, the claims, specification and prosecution history are clear that "a first (or second) side support beam extends in the lengthwise direction of a single side panel."  TWW respectfully requests the Court adopt TWW's proposed construction.



**B.      The Claims are limited to a single air chamber.**

Coleman's only objection to TWW's proposed construction is the inclusion of "a single air chamber" because the claims do not expressly state "a single air chamber." (*See* Dkt. 53 at 8). TWW's Opening Brief sets out the extensive support in the specification and prosecution history that the claims are limited to a "single air chamber." (*See* Dkt. 52 at 9-10). In addition, the '618 Patent is clear that the claims require a single air chamber as the prior art had multiple air chambers and is:

> [F]ormed [so] the mattress coils or I-beams cannot extend continuously between the top and bottom exterior surface panels of the air mattress, which thus allows for some degree of mattress deformation in response to surface loading. ***In contrast, the inventive air mattress has only a single air chamber therein*** which thus permits the coils to extend continuously between the top and bottom surface panels of the mattress.

(Dkt. 52-1, hereinafter "Exh. 1" at col 5: 4-11 (emphasis added)). Thus, the specification clearly describes the invention as a whole having a single air chamber.  *See SciMed Life Sys., Inc. v.*

*Advanced Cardiovascular Sys., Inc.,* 242 F.3d 1337, 1341 (Fed. Cir. 2001) ("Where the specification makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patent, even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question."). This is consistent with the Applicant's statements during prosecution to distinguish the Boso reference because it had multiple air chambers separated by a central layer. (*See* Dkt. 52-3, hereinafter "Exh. 3" at TWW-COL-00000356)). Thus, during prosecution the Applicant disavowed claim scope other than a single air chamber. *See Purdue Pharma L.P. v. Endo Pharm. Inc.*, 438 F.3d 1123, 1136 (Fed. Cir. 2006) ("[A] patentee may limit the meaning of a claim term by making a 'clear and unmistakable' disavowal of scope during prosecution") (citations omitted).  Accordingly, TWW respectfully requests the Court adopt TWW's proposed construction: "the side support beam is arranged such that only a single air chamber exists that when filled with air the mattress is inflated and the section of the side support beam is in tension."

## C. Dependent claim 4 is indefinite because the claim limitations cannot be distinguished from those of independent claim 1.

There is no dispute that, as a matter of law, a dependent claim is indefinite if its scope is the same as the independent claim from which it depends because then it fails to "specify a further limitation of the subject matter claimed."  35 U.S.C. § 112(d).  In its Opening Brief, TWW explained how the scope of dependent claim 4 is identical to independent claim 1 (and therefore indefinite) because the '618 Patent only recites the approach used in claim 1 for limiting the outward expansion of the side panel.  (*See* Dkt. 52 at 10-13). Coleman argues that "while Claim 1 recites that each [side support beam] is constructed and arranged independently to limit outward expansion, Claim 4 makes their simultaneous use to limit outward deformation express." (Dkt. 53 at 8-9). This is wrong. (*See* Dkt. 52 at 10-13). There is no distinction between the structural

limitations of claim 1 and claim 4.[1]

First, claim 4 states that "wherein the first side support beam and the second side support beam are **each** constructed and arranged to limit the outward expansion of the at least one side panel of the air mattress." Exh 1 at cl. 4 (emphasis added).  The use of "each" in the claim language directly contradicts Coleman's argument that claim 4 somehow requires "simultaneous use" of the first and second side support beams limit outward deformation while claim 1 does not require both side support beams to acts to limit outward expansion.  Again, the scope of dependent claim 4 is no different than independent claim 1.

Second, during prosecution of the '618 Patent, the Applicant explained that both side support beams are both placed in tension and limit outward expansion of the side panels, when the chamber is filled with air, according to the *independent claims* of the '618 Patent.[2]  *See* Exh. 3 at 10. It would be impossible for only one of the two side support beams to be placed in tension when the chamber is filled with air. Both side support beams are used in tandem in the independent claims.

In the same way, two side support beams are used to limit outward expansion in claim 4. They are both used in tandem in both claims. Thus, claims 1 and 4 are directed at the same internal construction to limit outward expansion, and claim 4 is therefore indefinite.

**D.    Dependent claim 12 is indefinite because the claim limitations cannot be distinguished from those of independent claim 10.**

For the same reasons discussed above and in TWW's Opening Brief, claim 12 is indefinite because there is no distinction between the *structural* limitations of claim 10 and claim 12. (*See*

---

[1]     After TWW served its Opening Claim Construction Brief, Coleman informed TWW it was no longer asserting claim 4 of the '618 Patent.  As TWW has an invalidity counterclaim, TWW maintains claim 4 is invalid as indefinite and has included this argument.

[2]     This fact alone renders claim 4 indefinite.

Dkt. 52 at 13-15).

Additionally, claim 12 states "in response to the presence of a load external to the air mattress placed on at least one of the first [top] and the second [bottom] panel, respectively." Coleman argues that this additional "limitation" renders claim 12 definite. (*See* Dkt. 53 at 9). This is wrong. (*See* Dkt. 52 at 14-15). Coleman ignores that this additional "limitation" of claim 12 simply refers to the purpose of the purported invention which is to limit expansion of the sidewalls in response to the use of the mattress by a person or other external load.  As discussed in TWW's Opening Brief, this purpose is common to all claims, and Coleman fails to explain any possibility of a structure that meets claim 10 but not claim 12.  *Id*.  Thus, the scope of dependent claim 12 is no different than independent claim 10, making claim 12 indefinite.

### E.   Claims 1, 2, 4, and 17 are indefinite because the three-range limitation has no objective boundaries and creates confusion.

As discussed in TWW's Opening Brief, "the range of from about ten inches to about eighteen to about twenty-four inches" is indefinite because a person skilled in the art would not understand how to use such a three-number range.  (*See* Dkt. 52 at 16-17). The disputed range refers to the depth of the air chamber, measured between the first (top) panel and the second (bottom) panel. Coleman argues that this phrase is not indefinite because a person of ordinary skill would know it means "a depth between ten to twenty-four inches." (Dkt. 53 at 10). This is wrong for at least two reasons. (*See* Dkt. 52 at 16-17).

First, Coleman ignores the three terms "about" and the one term "eighteen" in the claim language. (*See* Dkt. 53 at 10). But Coleman cannot ignore these claim terms and effectively rewrite the claims as "all claim terms are presumed to have meaning in a claim." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys.*, 381 F.3d 1111, 1119 (Fed. Cir. 2004) (rejecting construction that "largely reads the term 'operatively' out of the phrase "operatively connected.").

Second, this claim term is indefinite because it does not provide the requisite certainty to enable a person of ordinary skill to practice the claimed invention and/or to design around the claimed invention. *See Morton Int'l, Inc. v. Cardinal Chem. Co.*, 5 F.3d 1464, 1470 (Fed. Cir. 1993). The term "'about' does not have a universal meaning … it depends upon the technological facts of the particular case" *Ortho-McNeil Pharm., Inc. v. Caraco Pharm. Labs., Ltd.*, 476 F.3d 1321,1326 (Fed. Cir. 2007). As an example, Coleman's "QuickBed Single High Airbed – Full" has a height of eight inches.[3] Does a two-inch difference mean that this particular airbed is or is not "about" ten inches as per the claims?

Because a person of ordinary skill in the art would not understand how to interpret the use of "about" in conjunction with a range consisting of three numbers, this claim term is indefinite. (*See* Dkt. 52 at 16-17; Dkt. 52-9, hereinafter "Stevick Decl." ¶¶ 28-32).

## II.   The '926 Patent Disputed Claim Terms

## A.   The term "assembly" need not be construed.

In addition to the reasons set forth in TWW's Opening Brief, Coleman's proposed construction is improper for at least three additional reasons. (*See* Dkt. 53 at 18-19). First, Coleman's proposed construction for "assembly" is without support in the intrinsic record – specifically that "assembly" somehow refers to a "connection point" between the bottom sheet and the plastic partition.  The claim language itself recites "an assembly of said bottom sheet and said partition" (claim 1) and "an assembly of said central top portion of said bottom sheet and said partition" (claim 2).  Nowhere is there any reference to a "connection point."

Second, Coleman uses its assumption that "assembly" is the "connection point" between

---

[3]     https://www.coleman.com/camp-furniture/airbeds/quickbed-single-high-airbed---full/SAP_2000030380.html

the bottom sheet and the plastic partition to argue its construction must be correct because the "connection point" is where the transverse pull bands 32 attach to the "assembly." (*See* Dkt. 52-2, hereinafter "Exh. 2" at Figure 5). The claims require a "plastic pull band unit" for connecting fixedly (a) bottom surface of the top sheet to (b) an assembly.  Coleman argues the transverse pull bands are the only possible pull bands of the claimed pull band unit. This is wrong. As shown in Fig. 5 and described in the specification, "the pull band unit 3 includes a plurality of parallel longitudinal pull bands 31 and two transverse pull bands 32." Exh. 2 at col. 3:26-28. Coleman entirely ignores the longitudinal pull bands 31 depicted in Fig. 5 of the '926 Patent which also connected – not at Coleman's purported "connection point" –  to an "assembly of said bottom sheet and said plastic partition" as required in claim 1 of the '926 Patent.  Exh. 2 at cl. 1.  Coleman's purported construction attempts to improperly import limitations from the specification, while simultaneously ignoring other described embodiments in the specification. *Pfizer, Inc. v. Ranbaxy Lab'ys Ltd.*, 457 F.3d 1284, 1290 (Fed. Cir. 2006) (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005)).

Third, Coleman argues that the "Examiner specifically highlighted the joining of the plastic partition and bottom sheet, and its connection with the pull band, as reasons informing allowance of the claims.  (*See* Dkt. 53 at 18).  But the passage cited from the Examiner's Notice of Allowance in Coleman's brief says nothing a "connection point" and merely notes the pull bands connect the top and bottom sheets and the plastic partition.  *See id*.  As with the specification and the claims, the prosecution history of the '926 Patent provides no support for Coleman's proposed construction.

As discussed in TWW's Opening Brief, because the plain and ordinary meaning of the term "assembly" in claims 1 and 2 is readily apparent to a person of ordinary skill in the art this

term should be given its plain and ordinary meaning.  (*See* Dkt. 52 at 18-19).

**B.      The term "concave air bag" need not be construed.**

As discussed in TWW's Opening Brief, the claim term "concave air bag" is clear on its face to a person of ordinary skill in the art, nothing in the intrinsic record indicates otherwise, and, thus, no construction is necessary. *See* Dkt. 52 at 19-20.  Coleman's proposed construction is also incorrect for at least two additional reasons.

First, Coleman errs in its proposed construction for "concave air bag" because specific dimensions are not required in order for the claimed invention to be operable, and there is no support for, nor has Coleman's expert opined on, Coleman's assumption regarding operability.  In fact, the specification teaches how to practice the invention and then provides an example using specific dimensions that are recited in dependent claim 4. However, there is nothing to suggest that those specific dimensions are required in order for the invention to be operable. Similarly, there is nothing to suggest that the "patentee acted as his own lexicographer for this particular claim term." (*See* Dkt. 53 at 22).  There is also nothing in the prosecution history to suggest the specific dimensions are required.

Coleman's cited cases on construing claims based on the "express teachings of the specification" are inapplicable at least because they either relate to situations where the claim language is unclear or where the limitation in question is central to the entire invention, such as in *Alloc, Inc.*, where the limitation was with respect to a defining feature of the claimed invention, namely, that the entire purpose of the invention and every described flooring system was to permit displacement *(i.e.* "play"). *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1369 (Fed. Cir. 2003). There were multiple indicia that the patentee intended to narrow the claims. *Id.* In *Watts*, for example, the requirement was dictated not just by the specification but also in the prosecution

8

history, where the primary reference was distinguished from prior art on the basis of the "misaligned taper angles" also identified in the specification. *Watts v. XL Sys., Inc.*, 232 F.3d 877, 883 (Fed. Cir. 2000). Neither is the case here.

Second, Coleman's proposed construction contradicts the narrower scope of dependent claim 4 and defies the principles of claim differentiation. As discussed above, claim 4 requires specific dimensions, but claim 1 does not. *See Level 3 Commc'ns, LLC v. Limelight Networks, Inc.*, 589 F. Supp. 2d 664, 682 (E.D. Va. 2008) ("[T]he principle of claim differentiation counsels that 'the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim.'"), aff'd, 374 F. App'x 955 (Fed. Cir. 2010). Additionally, Coleman misplaces reliance on *Regents of Univ. of Cal. v. Dakocytomation Cal., Inc.*, 517 F.3d 1364, 1375 (Fed. Cir. 2008). (*See* Dkt. 53 at 22-23). Regents involved issues of claim amendments in prosecution to overcome an enablement rejection which are not present in the '926 Patent (no claims were amended during prosecution).

As discussed in TWW's Opening Brief, because the plain and ordinary meaning of the term "concave air bag" requires no construction, it should be afforded its plain and ordinary meaning.

## C. The term "a plastic partition interposed between said top and bottom sheets" need not be construed.

In its Opening Brief, TWW explained that this term is clear on its face to a person of ordinary skill in the art and Coleman is attempting to limits the claim in a way that is contrary to the specification. (*See* Dkt. 52 at 20-22). In its Opening Brief, Coleman admits that some embodiments in the '926 Patent allow for air communication between the upper and lower air chambers, while other embodiments prevent such air communication. (*See* Dkt. 53 at 23-25). Coleman incorrectly argues that the communication of air between

chambers is controlled by the use of "interposed" versus "disposed" in claim 1 and 9. Coleman's arguments fail for at least four reasons.

First, Coleman seeks to import the limitations of dependent claim 9 into claim 1 defying the principles of claim differentiation.  *See Level 3 Commc'ns, LLC, 589 F.Supp.2d* at 682. Dependent claim 9 requires that the partition "is disposed between said upper air chamber and said lower peripheral air chamber so as to prevent air communication therebetween."  Thus, there is a presumption that independent claim 1 has a broader scope than claim 9. As claim 9 incudes a limitation preventing air communication between chambers, which claim 1 does not, claim 1 is broader with respect to air communication between chambers.  Accordingly, claim 1 includes partitions that permit air communication between the air chambers and partitions that do not permit such air communication.

Second, the language of dependent claim 9 directly contradicts Coleman's argument that the term "interposed" means "preventing air communication" while the term "disposed" means allowing for air communication. (*See* Dkt. 53 at 25). But dependent claim 9 states "wherein said partition is ***disposed*** between said upper air chamber and said lower peripheral air chamber so as to ***prevent air communication therebetween.***"  Thus, claim 9 uses both the word "disposed" and requires the partition "prevent[] air communication." Therefore, it is clear that the applicant used the words interposed and disposed interchangeably and that the applicant further clarified that the embodiment of claim 9 prevents air communication.

Third, there is no other support for Coleman's argument that TWW intended the term "interposed" to have such a narrow meaning as to "prevent[] air communication." (*See* Dkt. 53 at 25). There was no express lexicography by TWW, so there is no need to construe this claim term based on the word "interposed" when the claim language already describes that the plastic partition

is "between said top and bottom sheets."

Fourth, Coleman argues that "[w]ithout this additional clarification, the scope of what it means for the claimed plastic partition to be 'adapted to define a concave air bag' is unclear." (*See* Dkt. 53 at 27). This is wrong. Claim 1 defines the limitations of the claimed plastic partition and the figures of the '926 Patent clearly show what it means for the plastic partition to be "adapted to define a concave air bag." This particular limitation is present in all embodiments, regardless of preventing or allowing air communication. There were no rejections during prosecution and a person of ordinary skill would understand what the partition refers to in the context of the '926 Patent.

This Court should find that this claim term carries its plain and ordinary meaning.

**D.   The term "inflatable unit" need not be construed.**

As discussed in TWW's Opening Brief, "inflatable unit" requires no construction particularly in light of the reminder of the language of claim 1. In its proposed construction Coleman again runs afoul of claim differentiation. Coleman seeks to import the limitations of dependent claim 9 into claim 1, again defying the principles of claim differentiation. *See Level 3 Commc'ns, LLC* 589 F. Supp. 2d at 682. Dependent claim 9 further requires the inflatable unit include two air inlets and two air valves. Claim 1 only requires "an inflatable unit operable so as to introduce air into said upper air chamber and said annular lower peripheral air chamber." As discussed above, nothing in claim 1 prevents air communication between the chambers and nothing in claim 1 requires two air inlets and two air valves. (*See* Dkt. 52 at 22-23). As a result, the Court should find that the claim term "inflatable unit" carries its plain and ordinary meaning.

**E.      The term "fixing" is not indefinite and does not require further construction.**

TWW, in its Opening Brief, explained that the term "fixing" is clear on its face to a person of ordinary skill in the art, does not render the claims indefinite, and no construction is necessary as "fixing" describes the result or effect of the "suction cup," not the method. (*See* Dkt. 52 at 23-24). The term "fixing" does not require, nor does it contain, a limitation or specification of degree. (*See* Dkt. 52 at 24). Accordingly, Coleman's cited cases addressing terms of degree are inapplicable.

Further, the term "fixing" does not render the claim indefinite because the term simply describes the result of the claimed limitations as would be understood by a person of ordinary skill in the art. (*See* Stevick Decl. ¶¶ 35-39). The specification describes the process of "fixing" when discussing the "suction cup" aspect of the inventions: "so that the bed 100 acts as a suction cup, thereby fixing the bed 100 relative to the support surface 6." Exh. 2 at col. 4:27-29. Then, "[w]hen the person leaves the bed 100, the upper air chamber 103 can be restored to its original shape, and the concave air bag 105 can be once again filled with air. The inflatable bed 100 can be easily moved at this time." Exh. 2 at col. 4:29-34.  As shown in the specification, "fixing" is not a term of degree but a readily understandable term to a person of ordinary skill in the art.

"Fixing," as used in the '926 Patent, does not render the claims indefinite and should be given its plain and ordinary meaning.

**III.      Conclusion**

Team Worldwide Corporation respectfully requests that this Court adopt TWW's proposed constructions as set forth in the Joint Claim Construction Chart. (Dkt.  48-1).

 Dated: March 25, 2021

By: */s/*_____
William R. Poynter (VSB No. 48672)
David Sullivan (VSB No. 45027)

KALEO LEGAL
4456 Corporation Lane, Suite 135
Virginia Beach, VA 23462
Phone: 757.238.6383
Fax: 757.304.6175
wpoynter@kaleolegal.com
dsullivan@kaleolegal.com

J. Michael Woods (*pro hac vice*)
RuyakCherian LLP
1901 L St. NW, Suite 700
Washington, DC 20036
Telephone: (202) 838-1560
michaelw@ruyakcherian.com


Of Counsel:

Korula Cherian
RuyakCherian LLP
1936 University Ave., Ste. 350
Berkeley, CA 94702
Telephone: (510) 944-0190
sunnyc@ruyakcherian.com

*Attorneys for Team Worldwide Corporation*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 25, 2021, a copy of DEFENDANT/COUNTERCLAIM PLAINTIFF

TEAM    WORLDWIDE    CORPORATION'S    RESPONSIVE    BRIEF    ON    CLAIM

CONSTRUCTION was electronically filed with the Clerk of Court using the CM/ECF system,

which will send notification of such filing to all registered users.

Dated: March 25, 2021

/s/William R. Poynter
_____

William R. Poynter (VSB No. 48672)
KALEO LEGAL
4456 Corporation Lane, Suite 135
Virginia Beach, VA 23462
Phone: 757.238.6383
Fax: 757.304.6175
wpoynter@kaleolegal.com