IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| The Coleman Company, Inc., )<br>)<br>    *Plaintiff/Counterclaim Defendant*, )<br>)<br>v. )<br>)<br>Team Worldwide Corporation, )<br>)<br>    *Defendant/Counterclaim Plaintiff.* )<br>_____ ) | Civil Action No: 2:20cv351-RGD-RJK |

**REPLY IN SUPPORT OF DEFENDANT
TEAM WORLDWIDE CORPORATION'S MOTION TO COMPEL DISCOVERY**

The discovery responses and document productions that Coleman has made since the filing of TWW's May 14, 2021 motion to compel have cured the majority of the deficiencies in Coleman's discovery that TWW addressed in its opening brief. Nonetheless, as of the filing of this reply, two deficiencies in Coleman's document production and discovery responses remain.[1]

**I. COLEMAN'S INTERROGATORY RESPONSES FAIL TO PROVIDE REQUESTED FINANCIAL INFORMATION FOR THE ACCUSED COLEMAN PRODUCTS**

Coleman's responses to TWW's first set of interrogatories also remains deficient. As described in TWW's opening brief, TWW's interrogatory no. 14 sought financial information regarding the infringing Coleman airbed products. The interrogatory seeks, "all financial information for the '926 Time Period for each [accused product and additional infringing products identified by Coleman in response to TWW's interrogatory no. 13], including the buyer or person

---

[1] Shortly before the filing of this reply, TWW received a production from Coleman that counsel for Coleman has described as including the remaining supplier agreements at issue, which may cure one of the two remaining issues addressed in this reply brief. TWW will update the Court as soon as it has reviewed this latest production.

to whom You made each sale, the cost, the price of sale, the number of units sold, and the net profits, on a monthly-basis." (Ex. A at p. 8).[2] Since TWW filed its opening brief on May 14, Coleman has served two additional supplemental responses to this interrogatory which confuse matters even further. Despite serving four separate responses to TWW's interrogatory, Coleman's interrogatory responses remain deficient. As described in detail below, none of the responses provide the information sought, namely the cost, price of sale, number of units sold, or net profits on a monthly basis for the accused Coleman products and the documents cited in Coleman's responses do not clearly provide the information sought by TWW.

Coleman has served four separate responses to this interrogatory including an original response, first supplemental response, second supplemental response, and finally a third supplemental response on May 28, 2021. (*See* Exh. A). Coleman's second and third supplemental responses were served after TWW filed its motion to compel. Coleman's responses have included a table embedded in Coleman's first supplemental response, and citation to documents produced by Coleman in Coleman's second and third supplemental responses.

Critically, it is not discernable from the information produced by Coleman what the data in the original table or the subsequently produce documents actually means. As non-limiting examples, the chart included in Coleman's first supplemental response includes data for certain accused products identified as "sales" which corresponds to dollar amount values and "units sold" which corresponds to numeric values. Coleman's response does not describe or disclose what the term "sales" actually means and leaves TWW to speculate as to whether this information corresponds to revenue, profits, gross sales, net sales or some other figure.

---

[2] Page number citations to Exhibit A refer to the page number printed in the footer of the exhibit.

Coleman's second and third supplemental responses—both served after TWW filed its motion to compel—merely added to the confusion. Coleman's second supplemental response cites to four separate Microsoft Excel spreadsheets, but the Excel spreadsheets also include financial information for products that Coleman alleges practice the asserted Coleman patent so it is not possible to tell which products were included in that spreadsheet as practicing Coleman's patent and which products were included as products that infringe TWW's asserted patents.[3] Additionally, the spreadsheets include data organized into rows with values inserted for each corresponding column heading. Critically, it is not at all clear what the column headings mean, rendering the documents cited by Coleman in response to TWW's interrogatory largely incomprehensible.

It is also not at all clear how the data produced in the various spreadsheets cited in Coleman's interrogatory responses relates to each other. Coleman's third supplemental response to interrogatory no. 14 represents that the data included in the cited spreadsheet is "additional sales information" for the accused products, but the relationship between this new spreadsheet and the initial chart and previously cited spreadsheets is not at all apparent from Coleman's responses.

It is also unclear from the data whether information for the entirety of the 2014 calendar year was included, or whether the data was somehow truncated. Additionally, data is still missing for certain SKUs identified as infringing products by TWW. Further, despite the interrogatory

---

[3] TWW's interrogatory no. 13 sought an identification of additional products that infringe the asserted TWW patent. In its original interrogatory response, Coleman represented that, "Coleman intends to produce information within its possession, custody, and control relating to Coleman products over the period requested, from which TWW may ascertain information responsive to this request. Coleman will supplement its answer to this interrogatory after such documents are produced." Coleman never provided the supplemental answer to this interrogatory that it stated it would provide.

requesting financial information "on a monthly basis" monthly data was only produced for the year 2014.

When a party cites documents in response to Rule 33(d), the documents must "actually reveal answers to the interrogatories." *Brown v. Blue Cross and Blue Shield of Alabama*, No. 3:13cv121-GCM, 2014 U.S. Dist. LEXIS 96105, at *6 (W.D.N.C. July 15, 2014). Further, "If a party chooses to produce records in lieu of answering interrogatories pursuant to Rule 33(d), 'the producing party must show that a review of the offered documents will, in fact, reveal answers to the interrogatories." *Daedalus Blue, LLC v. Microstrategy Inc.*, No. 2:20cv551, Dkt. 55, at *7-8 (E.D. Va. May 3, 2021).

Coleman's response to TWW's interrogatory no. 14 falls well short of meeting the standard and is deficient because, as described above, it is not at all clear what the information and documents produces by Coleman actually demonstrate with respect to the financial performance of the accused products. TWW therefore requests an order from the Court requiring Coleman to supplement its interrogatory response to: 1) identify which products Coleman views as relevant to its response to TWW's interrogatory no. 14; 2) describe with particularity what the column headings in the chart and produced Excel documents mean; 3) describe with particularity how the information and documents produced in Coleman's various responses to TWW's interrogatory no. 14 all relate to the other information provided; 4) confirm whether or not any data exists for SKU numbers 2000031639, 2000031096, and 2000031633; 5) confirm that complete data for the entire year of 2014 has been provided; and 6) provide the financial data on a monthly basis as requested by the interrogatory.

## II. COLEMAN'S DOCUMENT PRODUCTION REMAINS DEFICIENT—IT HAS NOT PRODUCED ALL OF THE REQUESTED AGREEMENTS WITH ITS AIRBED MANUFACTURERS.[4]

Coleman produced an additional 10,225 documents to TWW on May 28, 2021. Based on TWW's preliminary review, all but 17 of these documents appear to have been produced in response to TWW's requests for email discovery. Although TWW's review of these newly produced documents remains ongoing, but TWW's review of Coleman's document production has demonstrated ongoing deficiencies.

Coleman still owes TWW several missing airbed supplier agreements. (*See* Dkt. No. 80 at 7-8). For example, Coleman identified the suppliers who manufacture the accused Coleman airbeds at issue in this case in Coleman's First and Second supplemental responses to TWW's first set of interrogatories, but Coleman has only produced its agreement with one of the identified suppliers.

The requested airbed supplier agreements are responsive to at least TWW's RFP Nos. 36, 37, and 73. (*See* Dkt. No. 80-5 at pp. 18-19, 37).[5] Notably, in response to each of these RFPs at issue, Coleman responded that, "[s]ubject to and without waiving the foregoing objections, Coleman responds that it will conduct a reasonable search and will produce any non-privileged documents responsive to this request." (*Id.*). Coleman's response did not state that Coleman would withhold any documents responsive to the requests at issue. Additionally, courts have rejected attempts by parties to rely on similarly general discovery objections to withhold documents.

---

[4] Counsel for Coleman represented in a June 3, 2021 email that Coleman had located the additional manufacturer agreements at issue and would produce it to TWW on June 3, 2021. As of this filing, TWW is in recent of an additional document production from Coleman which is currently under review.

[5] This information is also responsive to TWW's interrogatory no. 20 which sought, in part, that Coleman, "[d]scribe fully and in complete detail all manufacturing agreements, sales agreements, distribution agreements, testing agreements and/or other agreements that refer or relate to any of the '926 Accused Products." (Exh. A at p. 11).

*Daedalus Blue, LLC v. Microstrategy, Inc.*, Civil Action No. 2:20-cv-551-RCY-RJK, Dkt. No. 55 at *4-6 (E.D. Va. May 3, 2021) (filed here as Dkt. No. 80-7); *see also Paulino v. Dollar Gen. Corp.*, 3:12–CV–75, 2013 WL 1773892, at *12 (N.D.W. Va. Apr. 25, 2013) (collecting cases to support the proposition that "[g]eneralized, boilerplate objections 'are highly disfavored in the Fourth Circuit.'"). Despite its response indicating that Coleman would produce the requested documents and information, Coleman's production of supplier agreements remains deficient.

### III.   TWW COMPLIED WITH THE MEET AND CONFER REQUIREMENT

Coleman's opposition to TWW's motion to compel relies heavily on the form over substance argument that TWW somehow failed to meet and confer while admitting—as it must— that *the parties did in fact meet and confer regarding the deficiencies in Coleman's document production and interrogatory responses on April 21, 2021 and exchanged subsequent correspondence regarding the deficiencies in Coleman's production.* (*See e.g.*, Opp. at 2, 3, 7). Coleman's opposition even admits that Coleman's real complaint is that TWW "filed the present motion to compel without ***revisiting the issues***." (Opp. at. 2). The parties discussed the extensive deficiencies in Coleman's document production and responses during the meet and confer. Due to the extensive deficiencies in Coleman's production and discovery responses, the parties agreed that TWW would follow up with a letter detailing the deficiencies in Coleman's production and responses. TWW served the detailed letter, as it promised it would, on April 23, 2021. (Dkt. No. 80-3). In its letter TWW requested that Coleman cure the deficiencies in its production by a date certain, April 27, 2021.

TWW received a largely non-responsive letter from Coleman on April 30, 2021 that did not make any commitments to address the deficiencies identified by TWW or provide a date certain by when Coleman would do so or complete its document production. (Dkt. No. 80-4). TWW filed

5

its motion to compel out of necessity after meeting and conferring with Coleman, and reviewing the subsequent productions and discovery responses that Coleman stated were coming.

The cases cited in Coleman's opposition to support their meet and confer-based argument are distinguishable and inapplicable to the set of facts at issue in this case. In *Jenkins v. Wal-Mart Stores, Inc.*, No. 2:19-cv-271, 2021 U.S. Dist. LEXIS 66128 (E.D. Va. Apr. 5, 2021), the deficiency of Wal-Mart's discovery responses *were never mentioned during a phone call between the two parties' counsels*. The same was true in *Kolon Indus. v. E.I. du Pont de Nemours & Co.*, No. 3:11cv622, 2012 U.S. Dist. LEXIS 200354 (E.D. Va. Feb. 23, 2021). In *Kolon*, the lack of response to the interrogatories was never raised by the moving party prior to close of discovery. Also in *Reed v. Beverly Hills Porsche*, 6:17-cv-59, 2017 U.S. Dist. LEXIS 227319 (W.D. Va. Nov. 22, 2017), the court ruled against the moving party, because the moving party "did not certify that [it] had met and conferred with Defendants and provided no evidence that counsel meaningfully met and conferred—or attempted to meet and confer in good faith—before filing a motion to compel discovery." *Id*. at *3.

None of the three cases can apply in this case, because—as readily admitted by Coleman—TWW and Coleman did in fact meet and confer to discuss the deficiencies at issue in Coleman's production and discovery responses. Coleman cannot contest this fact and, therefore, its meet and confer-based argument must fail.

### IV. TWW IS ENTITLED TO ITS FEES IN CONNECTION WITH THE FILING OF THIS MOTION—COLEMAN IS NOT ENTITLED TO ITS FEES

In an attempt to resolve the deficiencies in Coleman's discovery responses, TWW met and conferred and attempted to work through the issues with Coleman. TWW never received any concrete commitment that Coleman would cure the deficiencies in its production, or even a date certain by which Coleman would attempt to do so or complete its production. This is true despite

the parties' April 21 meet and confer and TWW's April 23 letter detailing the numerous deficiencies that remained in Coleman's document production and discovery responses. Additionally, as of the filing of TWW's motion, Coleman had only produced a total of 578 documents in this case. TWW met and conferred in good faith, and filed its motion when it was met with wholly non-committal responses from Coleman and after Coleman produced only an additional 288 documents. TWW should be awarded its fees as a result. *Flame Glory Wealth Shipping Pte Ltd. v. Indus. Carriers, Inc.*, No. 2:13-CV-658, 2014 U.S. Dist. LEXIS 190377, at *4 (E.D. Va. Apr. 30, 2014) (granting motion to compel attorneys' fees, finding withholding party's position was not substantially justified).

### V.    CONCLUSION

For the foregoing reasons, Defendant TWW respectfully requests that the Court enter an Order compelling Coleman to produce all documents responsive to TWW's First Set of Document Requests including the documents identified herein and compelling Coleman to supplement its interrogatory responses.

Respectfully submitted,

Dated: June 3, 2021

By: /s/ William R. Poynter
William R. Poynter (VSB No. 48672)
David Sullivan (VSB No. 45027)
KALEO LEGAL
4456 Corporation Lane, Suite 135
Virginia Beach, VA 23462
Phone: 757.238.6383
Fax: 757.304.6175
wpoynter@kaleolegal.com
dsullivan@kaleolegal.com

J. Michael Woods (pro hac vice)
**RuyakCherian LLP**
1901 L St. NW, Suite 700
Washington, DC 20036
Telephone: (202) 838-1560

michaelw@ruyakcherian.com

Of Counsel:

Korula Cherian
**RuyakCherian LLP**
1936 University Ave., Ste. 350
Berkeley, CA 94702
Telephone: (510) 944-0190
sunnyc@ruyakcherian.com

*Attorneys for Team Worldwide Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system and the counsel of record are being served with a copy of this document via electronic mail on June 3, 2021.

By: /s/ William R. Poynter
William R. Poynter (VSB No. 48672)
David Sullivan (VSB No. 45027)
KALEO LEGAL
4456 Corporation Lane, Suite 135
Virginia Beach, VA 23462
Phone: 757.238.6383
Fax: 757.304.6175
wpoynter@kaleolegal.com
dsullivan@kaleolegal.com