IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| The Coleman Company, Inc., ) | |
| ) | |
|    *Plaintiff/Counterclaim Defendant*, ) | |
| ) | |
| v. ) | Civil Action No: 2:20cv351-RGD-RJK |
| ) | |
| Team Worldwide Corporation, ) | |
| ) | |
|    *Defendant/Counterclaim Plaintiff* ) | |
| ) | |
| and ) | |
| ) | |
| Cheng-Chung Wang ) | |
| ) | |
|    *Counterclaim Plaintiff* ) | |
| _____ ) | |

**TEAM WORLDWIDE CORPORATION AND CHENG-CHUNG WANG'S OPPOSITION TO PLAINTIFF THE COLEMAN COMPANY, INC.'S MOTION TO EXCLUDE AND STRIKE OPINIONS OFFERED BY DR. GLEN STEVICK**

Defendant/Counterclaim Plaintiff Team Worldwide Corporation and Counterclaim Plaintiff Cheng-Chung Wang (collectively, "TWW") hereby submit the following as their Opposition to Plaintiff The Coleman Company, Inc.'s ("Coleman") Motion to Exclude and Strike Opinions Offered by Dr. Glen Stevick.

**I.    Introduction**

Dr. Stevick's opinions, as reflected in his reports, are based on reliable principles and methods and are relevant as applied to the facts of this matter. Moreover, as Dr. Stevick explains in his reports, the testing criticized by Coleman was not required for his opinions that the Coleman Accused Products meet each and every limitation of the asserted clams of the '926 Patent. Because the asserted claims are apparatus and not method claims, Claim Element 1g of the '926 Patent (the "whereby" clause) which Coleman points to provides the **result** of the claim limitations and is not

1

itself a limitation. Regardless, the testing performed by Dr. Stevick is reliable, replicable, and demonstrates the resulting suction cup effect described in the asserted claims.

In its Motion, Coleman also mischaracterizes Dr. Stevick's testimony and reports and improperly characterizes Dr. Stevick's clear explanations of the suction cup effect, air flow, and pressure changes. Dr. Stevick's explanations and opinions here are intended to assist the trier of fact to understand these concepts. As explained below, Dr. Stevick's findings and opinions are not conclusory *ipse dixit* as argued by Coleman.

Dr. Stevick's opinions are based on sufficient facts as required by *Daubert* and Rule 702 of the Federal Rules of Evidence. He utilized reliable principles and methods, which he has applied to the facts of the case. At most, the arguments advanced by Coleman can be addressed by cross-examination, not exclusion. TWW respectfully requests that this Court deny Coleman's Motion to Exclude and Strike Certain Opinions offered by Dr. Glen Stevick.

**II.    Background**

Dr. Stevick has Bachelor of Science, Master of Science, and Doctor of Philosophy degrees in mechanical engineering with over thirty-five years of experience in mechanical engineering and similar engineering disciplines. He provided expert opinions regarding the infringement of U.S. Patent No. 6,754,926 (the "'926 Patent") by the Coleman Accused Products in two reports dated July 6, 2021 and August 12, 2021, respectively.[1]

---

[1] To avoid filing additional copies under seal of exhibits previously filed by Coleman under seal in its Motion, TWW cites by references certain exhibits filed by Coleman as the following: ECF No. 142-2, Filed Under Seal as ECF No. 143, Expert Report of Dr. Glen Stevick, Ph.D. Regarding Infringement of U.S. Patent No. 6,754,926, July 6, 2021 (hereinafter, Stevick Opening Report); ECF No. 142-4, Filed Under Seal as ECF No. 144, Reply Expert Report of Dr. Glen Stevick, Ph.D. Regarding Infringement of U.S. Patent No. 6,754,926, August 21, 2021 (hereinafter, Stevick Rebuttal Report). TWW will submit additional copies of the referenced exhibits under seal if requested to do so by the Court.

### III. Legal Standard

Admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides that a qualified expert may present opinion testimony if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. The Court's role is to act as a "gatekeeper" to ensure that expert testimony is based upon relevant and reliable principles and methodologies and whether the methodology is "sufficiently tied to the facts of the case." *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1299 (Fed. Cir. 2015); *Unilock USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1306 (Fed. Cir. 2011). The focus of the *Daubert* analysis is solely on "principles and methodology," not the conclusions generated by those methodologies. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993). It is only when "proffered evidence…has a greater potential to mislead than enlighten" should it be excluded – the court need not determine whether the expert testimony is correct or irrefutable. *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999). The dept of the data relied upon by an expert, or factual disputes regarding information relied upon by experts, is properly addressed by cross-examination, not exclusion. *Daubert*, 509 U.S. at 596; *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012); *Lee v. Va. St. Bd. of Elections*, No. 3:15-CV-357-HEH, 2016 WL 554829, at *2 (E.D. Va. Feb. 10, 2016).

### IV. Argument

    **A. Dr. Stevick's analysis was based on his evaluation of structural limitations of the asserted claims and his testing was helpful to show the resulting effect of those structural limitations**

3

Claim 1 of the '926 Patent recites in structural terms the elements of that independent claim. Accordingly, in his reports, Dr. Stevick provided an element-by-element structural analysis of the Coleman Accused Products, which Coleman has not challenged in this Motion.

Claim Element 1g of the '926 Patent further states that "whereby, when a person moves onto said top surface of said top sheet, air is ejected from said concave air bag via a space between said bottom sheet and the support surface so that said bed acts as a suction cup, thereby fixing said bed relative to the support surface." (ECF No. 18-1 ('926 Patent) col. 5 lines 33-38). As Dr. Stevick explains in his reports, during use of the air mattress, a person "moves onto and applies a downward force to the top surface of the top sheet. When that happens, air is ejected from the concave airbag between the space between the bottom sheet and the support surface. The result is an effect where the bed acts as a suction cup, fixing the bed relative to the support surface." Stevick Opening Report at ¶ 119.

Importantly, as Dr. Stevick also points out, no testing is required because the asserted claims of the '926 Patent are **apparatus** claims and not **method** claims. *See* Stevick Opening Report at ¶ 122; Stevick Rebuttal Report at ¶ 28. The "whereby" clause in Claim Element 1g does not add structural limitations to the claim but rather recites the results of the structural limitations in the claim. *Curtis Mfg. Co. v. Plasti-Clip Corp.*, 135 F.3d 778, 1998 WL 45452, at *10 n.5 (Fed. Cir. Feb. 6, 1998) (Unpublished) (internal citations omitted) ("A 'whereby' clause that merely states the result of the limitations in the claim adds nothing to the patentability or substance of the claim.").

In his Opening Infringement Report, Dr. Stevick explains that Claim Element 1g is nonetheless satisfied because the accused Coleman products meet the structural limitations of the asserted claims of the '926 Patent:

4

> In my opinion, the construction of the Accused Products to have a concave air bag, i.e. a cavity bounded by the floor below and concave bottom sheet of the airbed above, as shown in my analysis for element 1(c) alone confirms that the Accused Products meet the limitations of claim 1g in that "whereby, when a person moves onto said top surface of said top sheet, air is ejected from said concave air bag via a space between said bottom sheet and the support surface so that said bed acts as a suction cup, thereby fixing said bed relative to the support surface."

Stevick Opening Report at ¶ 121. Dr. Stevick concluded that the Coleman Accused Products meet the structural limitations of the claim because, *inter alia*, they have a concave air bag ("i.e. a cavity bounded by the floor below and a concave bottom sheet of the airbed above"). *Id.* at ¶ 93-99. The existence of the concave air bag in the Coleman Accused Products, created by the annular peripheral portion of the air bed contacting the support surface when the central portion of the bottom sheet of the airbed is not in contact with the support surface (*Id.* at ¶ 97), is sufficient to demonstrate that the suction cup effect will occur when a person moves onto and applies pressure to the top of the air mattress.

Although testing was not required because the accused Coleman products meet the structural limitations of the asserted claims, Dr. Stevick performed manometer pressure testing to further demonstrate the resulting air flow and pressure change. As described by Dr. Stevick in his Opening Report, this simple test involved using a flat linoleum floor with an opening for a plastic tube coming from underneath the floor, and the outside of the tube sealed to the floor, such that the plastic tube interior was open to the center of the area of the concave air bag when an inflated Accused Product was placed on the linoleum floor. *Id.* at 122. The other end of the plastic tube was connected to a manometer to measure pressure changes when a weight was applied to and removed from the top surface of the Accused Product. *Id.* Dr. Stevick made video recordings of the manometer's pressure readings, which reflect air flow from areas of high pressure to areas of low pressure (**Exhibit A**, Deposition of Dr. Glen Stevick, August 20, 2021, 253:10-21) when a

5

person got on to or off of a Coleman Accused Product. Stevick Opening Report at ¶ 122. This testing was done using a reliable form of measurement, the manometer, which Coleman does not contest. Moreover, Dr. Stevick testified in his deposition regarding exactly what the testing showed and what the manometer was measuring:

> Q: What does the manometer test measure?
>
> A: It shows that you get a high pressure when you get on, forcing air out. And when you move, get off, that corresponds to when you reverse the load on a suction cup. You pull a vacuum.

Ex. A, 253:10-14.

### B. Dr. Stevick's deposition testimony does not contradict his report.

In an attempt to challenge Dr. Stevick's opinions, Coleman's Motion mischaracterizes Dr. Stevick's testimony. As discussed in the previous section, Dr. Stevick testified on what was physically occurring under the airbed in the concave air bag. His testimony described the process by which air is ejected out of the concave air bag, because, as Dr. Stevick later explains, air flow moves from higher pressure to lower pressure spaces. *Id.* at 253:10-21. He further stated that when the person on top of the airbed moves "that corresponds to when you reverse the load on a suction cup.· You pull a vacuum." *Id.* at 253:10-14. Dr. Stevick further explained this effect later in his deposition stating that "if you're on the edge [of the bed] and you tend to tip it, that's when the suction cup will help you." *Id*. at 282:7-12. Dr. Stevick's testimony was consistent with his reports and his opinions and explanation regarding the suction cup effect.

### C. Dr. Stevick's use of manometer pressure testing is relevant and reliable.

Coleman does not assert that a manometer is an improper tool or methodology for detecting pressure changes in its Motion or that placing a tube underneath a mattress is not a reliable method of evaluating pressure underneath the mattress compared to the air pressure outside of the mattress. Coleman also does not challenge Dr. Stevick's conclusion that the pressure changes in the concave

air bag are the result of reliable scientific principles. To the extent that Coleman takes issue with the results of Dr. Stevick's testing, or what the testing purports to demonstrate, or the conclusion that the change in pressure must be as a result of air flow and not some other factor, that is properly the subject of cross-examination.

Dr. Stevick's opinions are not *ipse dixit* but a reasoned conclusion based upon basic laws of physics. Specifically, Dr. Stevick testified that air flows from high pressure to low pressure, and by performing a manometer test, you can determine that "air had to flow" based upon the change in pressure underneath the mattress. *Id.* at 253:15-254:17. Further, as Dr. Stevick explained in his report, "[w]hen a person moves atop the airbed, the person's weight applies a downward force to the airbed. This reduces the volume of the concave air bag…and pushes the air out of the concave air bag." Stevick Opening Report at ¶ 120. A person moving on top of the air bed can reverse this effect creating a vacuum, fixing the bed to the floor. *Id.* Coleman argues that Dr. Stevick's use of the phrase "during use" is somehow conclusory, but this is a reference to the simple application of pressure to the top of the mattress, forcing air out from beneath the mattress. *Id.* These concepts of force, pressure, and airflow are not conclusory assertions of Dr. Stevick's own design; rather, they are the scientific concepts upon which he bases his reliable scientific analysis.

   **D.**  **Dr. Stevick's conclusions are replicable and verifiable.**

This Court, in its Markman Order, ruled that the term "fixing" does not require construction and its plain and ordinary meaning applies. (ECF No. 71). In so ruling, the Court explained that certainty as to "how much" force is required to "fix" a mattress to a support surface is not required, and the common definition of the word "fix," including to make "stable in position," captures the resulting suction cup functionality of the mattress. (ECF No. 71). Moreover, as discussed above, testing is not required to show the suction cup effect as this is just the result of the structural limitations and not a limitation itself.

Dr. Stevick's testing shows the resulting suction cup effect is replicable using the parameters set by Dr. Stevick's testing and measurements. Dr. Stevick's opinion from his testing is that the change in pressure from the resulting air flow creates a suction cup effect. Stevick Opening Report at ¶¶ 119-24. This Court's *Markman* ruling reflects that that suction cup effect is sufficient to capture that the mattress is fixed to the support surface, and specific measurement of the level to which the mattress is fixed, or the level of force or pressure at issue is not required. (ECF No. 71).

**V.      Conclusion**

For the reasons set forth above, TWW respectfully requests that this Court deny Coleman's Motion to Exclude and Strike Certain Opinions offered by Dr. Glen Stevick.

Dated: November 4, 2021

Respectfully submitted,

By:  /s/ Alexandra M. Gabriel
Alexandra M. Gabriel (VSB No. 89185)
William R. Poynter (VSB No. 48672)
David Sullivan (VSB No. 45027)
KALEO LEGAL
4456 Corporation Lane, Suite 135
Virginia Beach, VA 23462
Phone: 757.238.6383
Fax: 757.304.6175
agabriel@kaleolegal.com
wpoynter@kaleolegal.com
dsullivan@kaleolegal.com

Thomas M. Dunham (pro hac vice)
J. Michael Woods (pro hac vice)
**RuyakCherian LLP**
1901 L St. NW, Suite 700
Washington, DC 20036
Telephone: (202) 838-1560
tomd@ruyakcherian.com
michaelw@ruyakcherian.com

Korula Cherian
Robert Harkins
**RuyakCherian LLP**
1936 University Ave., Ste. 350
Berkeley, CA 94702
Telephone: (510) 944-0190
sunnyc@ruyakcherian.com
bobh@ruyakcherian.com

*Attorneys for Team Worldwide Corporation and Cheng-Chung Wang*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing on November 4, 2021 with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all registered users.

                                                By: /s/ Alexandra M. Gabriel
                                                Alexandra M. Gabriel (VSB No. 89185)
                                                KALEO LEGAL
                                                4456 Corporation Lane, Suite 135
                                                Virginia Beach, VA 23462
                                                Phone: 757.238.6383
                                                Fax: 757.304.6175
                                                agabriel@kaleolegal.com