**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

| | | |
|---|---|---|
| The Coleman Company, Inc., | ) | |
| *Plaintiff/Counterclaim Defendant*, | ) | |
| v. | ) | Civil Action No: 2:20cv351-RGD-RJK |
| Team Worldwide Corporation, | ) | |
| *Defendant/Counterclaim Plaintiff* | ) | |
| and | ) | |
| Cheng-Chung Wang | ) | |
| *Counterclaim Plaintiff* | ) | |

**TEAM WORLDWIDE CORPORATION AND CHENG-CHUNG WANG'S OPPOSITION TO PLAINTIFF THE COLEMAN COMPANY, INC.'S MOTION FOR SUMMARY JUDGMENT**

Defendant/Counterclaim Plaintiff Team Worldwide Corporation and Counterclaim Plaintiff Cheng-Chung Wang (collectively, "TWW") hereby submit the following as their Opposition to Plaintiff The Coleman Company, Inc.'s ("Coleman") Motion for Summary Judgment of Non-Infringement of the '926 Patent and Infringement of the '618 Patent. Coleman is not entitled to summary judgment on non-infringement of U.S. Patent No. 6,754,926 (the "'926 Patent"), nor is it entitled to summary judgment on infringement of U.S. Patent No. 7,089,618 (the "'618 Patent") due to material disputes of fact.

## I. Introduction

Coleman's Motion for Summary Judgment asserts that there is no genuine issue of material fact as to non-infringement by Coleman of Claims 1 and 2 of TWW's '926 Patent and as to infringement by TWW of the asserted claims of Coleman's '618 Patent. However, TWW has provided evidence, in the form of relevant and reliable expert opinions and testing, through the reports and testimony of its technical expert, Dr. Glen Stevick, that preclude summary judgment in Coleman's favor on these issues for at least the reasons set forth below.[1]

## II. Coleman's Alleged Undisputed Facts

### A. Facts Alleged by Coleman to Support Summary Judgment of No Infringement of the '926 Patent.

1. Undisputed.
2. Undisputed.
3. Undisputed.
4. Undisputed.
5. Undisputed.
6. Undisputed.
7. Undisputed.

[1] To avoid filing additional copies under seal of exhibits previously filed by Coleman under seal in its Motion, TWW cites by references certain exhibits filed by Coleman as the following: ECF No. 135-2, Filed Under Seal as ECF No. 136, Expert Report of Dr. Glen Stevick, Ph.D. Regarding Infringement of U.S. Patent No. 6,754,926, July 6, 2021 (hereinafter, Stevick '926 Opening Report); ECF No. 142-4, Filed Under Seal as ECF No. 144, Reply Expert Report of Dr. Glen Stevick, Ph.D. Regarding Infringement of U.S. Patent No. 6,754,926, August 21, 2021 (hereinafter, Stevick '926 Reply Report); ECF No. 135-7, Filed Under Seal as ECF No. 139, Reply Expert Report of Dr. Glen Stevick, Ph.D. Regarding Infringement of U.S. Patent No. 6,754,926, August 21, 2021 (hereinafter, Stevick '618 Report). TWW will submit additional copies of the referenced exhibits under seal if requested to do so by the Court.

8. Disputed. Claim 1 of the '926 Patent requires additional limitations beyond just the concave air bag.

9. Disputed. Dr. Stevick's measurements demonstrate a distance between the straight edge instrument held end-to-end against the annular peripheral portion of the bottom sheet, and the approximate center point of the bottom sheet. Stevick '926 Opening Report at ¶ 98. Dr. Stevick's report indicates that he "disagree(s) with Dr. Singhose that there would be 'sag' allowing the bottom sheet to contact the floor." Stevick '926 Reply Report at ¶ 68. "When the airbag is properly inflated for use, there is inherent tension created in these structures necessarily resulting in a concave air bag as claimed." *Id.* Further, Dr. Singhose's alleged AirGapTest is flawed – a camera side view angle demonstrated a gap between the straight edge instrument and the bottom sheet of the airbed at seconds 17-19. *Id.* at ¶ 70.

10. Undisputed. However, TWW notes that, while Dr. Stevick acknowledged that any span would include sag (Exhibit A, Deposition of Dr. Glen Stevick, August 20, 2021, 235:18-23), his report specifies that "when the airbag is properly inflated for use, there is inherent tension created in these structures necessarily resulting in a concave air bag as claimed." Stevick '926 Reply Report at ¶ 68. Further, Dr. Stevick's testimony confirms that there would not be sufficient sag to eliminate the suction cup effect, that his observation of Dr. Singhose's results is that the airbed does not appear to have sufficient sag to touch the floor, and that his nanometer test demonstrated negative pressure. Ex. A, 237:15–238:6.

11. Undisputed.

12. Disputed. Although Dr. Stevick stated he did not measure the sag, he also stated that the bed did not look like it sagged enough to reach the floor and that all the beds tested had a negative pressure. Ex. A, 238:1-6

13. Disputed. While Paragraph 13 accurately quotes what the parties have referred to as Claim Element 1g of the ’926 Patent is a “whereby” clause that states the result of the claimed structure and does not impose additional claim limitations. *See, e.g.*, *Titan Atlas Mfg. Inc. v. Sisk*, 894 F. Supp. 2d 754, 763 (W.D. Va. 2012).

14. Disputed. Dr. Stevick specifies in his report that the manometer testing was not required for him to form his opinions that the Accused Products meet the limitations of Claim Element 1g of the ’926 Patent. Stevick ’926 Opening Report at ¶ 122.

15. Disputed. Claim Element 1g of the ’926 Patent is a “whereby” clause that states the result of the claimed structure and does not impose additional claim limitations. *See, e.g.*, *Hoffer v. Microsoft Corp.*, 405 F.3d 1326, 1329 (Fed. Cir. 2005).

16. Undisputed.

17. Disputed. Dr. Stevick used a manometer to demonstrate pressure change underneath the Coleman Accused Products, that is, in the concave air bag, to demonstrate the suction cup effect. Stevick ’926 Opening Report at ¶¶ 121-23.

18. Disputed. Dr. Stevick also noted that he was showing the effect of the force holding the air mattress in place and that it will apply a resisting force. Ex. A, 267:24–268:3.

19. Disputed. Dr. Stevick used a manometer to demonstrate pressure change underneath the Coleman Accused Products, that is, in the concave air bag, to demonstrate the suction cup effect. Stevick ’926 Opening Report at ¶¶ 121-23.

20. Undisputed.

21. Undisputed.

22. Disputed. While a manometer does not specifically measure airflow, a manometer measures pressure change, and air flows from areas of high pressure to areas of low pressure. Ex. A, 253:10–25.

23. Disputed. Dr. Stevick's manometer videos demonstrate the change in the manometer, and his report explains the resulting pressure change. Stevick '926 Opening Report at ¶ 122.

24. Undisputed.

25. Undisputed.

26. Disputed. This description of a suction cup is incomplete and not described in the context of the '926 Patent.

**B. Facts Alleged by Coleman to Support Summary Judgment of Infringement of the '618 Patent.**

27. Undisputed. While TWW does dispute Dr. Singhose's underlying opinions, TWW does not dispute that Coleman's expert, Dr. Singhose, opined that the accused TWW Products infringe the asserted claims.

28. Undisputed.

29. Disputed. TWW does not dispute that all of the TWW accused products practice TWW's "Sure Grip" design, but TWW disputes that the "Sure Grip" design includes "side support beams extending from a top panel to a side panel and from a bottom panel to a side panel."

30. Disputed. TWW does not dispute that the three non-infringement arguments included in the Expert Report of Dr. Glen Stevick, Ph.D. Regarding Non-Infringement of the '618 Patent referenced as Undisputed Fact No. 30 are the non-infringement arguments asserted with respect to all TWW Accused Products. However, TWW asserts that other non-

infringement arguments were made by Dr. Stevick with respect to specific individual or groups of Accused Products and that Dr. Stevick opined as to the inaccuracies and misrepresentations in Dr. Singhose's report. Stevick '618 Report at ¶¶ 53-86.

31. Disputed. TWW does not agree that the TWW accused products have "side support beams."

32. Disputed. The TWW Accused Products do not include a single air chamber as asserted by Coleman. Rather, the TWW Accused Products include multiple air chambers: "at least an upper air chamber and an annular lower peripheral air chamber." Stevick '618 Report at ¶ 43.

33. Disputed. The TWW accused products have coils extending from the top panel to the bottom panel and the partition. Ex. A, 190:9–16.

**III. Legal Standard**

A party is entitled to summary judgment only if it can demonstrate that there is no genuine issue of material fact in dispute and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Strobel v. W.B.W. Enters.*, 319 Fed. Appx. 201, 202 (4th Cir. 2008). The Court must view all facts in the light most favorable to the non-moving party, here TWW, and must draw all reasonable inferences in favor of TWW. *Anderson*, 477 U.S. at 255; *Strobel*, 319 Fed. Appx. at 202. The nonmoving party does not need to "produce evidence in a form that would be admissible at trial in order to avoid summary judgment." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). With respect to the question of patent infringement, "[a]n infringement issue is properly decided upon summary judgment when no reasonable jury could find every limitation recited in the properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents." *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1339, 59 U.S.P.Q.2d 1290 (Fed. Cir. 2001).

## IV. Argument

### A. Coleman is Not Entitled to Summary Judgment of No Literal Infringement of the Asserted Claims of the '926 Patent for at least Five Reasons as Discussed Below

As discussed below, Coleman's arguments that its products do not meet certain limitations fail in view of Dr. Stevick's opinions and, at a minimum, create disputed material facts rendering summary judgment inappropriate. "[I]nfringement is assessed by comparing the accused device to the claims, and the accused device infringes if it incorporates every limitation of a claim, either literally or under the doctrine of equivalents." *Nazomi Commc'ns, Inc. v. Arm Holdings, PLC*, 403 F.3d 1364, 1372 (Fed.Cir.2005). While a party may not overcome a summary judgment motion using mere conclusory statements, competing expert testimony is sufficient to create a genuine issue of material fact. *Mytee Prod., Inc. v. Harris Rsch., Inc.*, 615 F. Supp. 2d 1163, 1168 (S.D. Cal. 2009), *aff'd*, 439 F. App'x 882 (Fed. Cir. 2011). With respect to expert testimony, it is not the court's role to weigh expert credibility or determine whether the expert is correct. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993); *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999). In the context of a summary judgment motion, whether an expert's opinion is "supported by credible observations and whether objective tests or experiments were appropriate or necessary to support such opinions are determinations that will go to the weight given each opinion by the trier of fact…." *Mytee Prod., Inc. v. Harris Rsch., Inc.*, 615 F. Supp. 2d 1163, 1168 (S.D. Cal. 2009), aff'd, 439 F. App'x 882 (Fed. Cir. 2011).

#### 1. Evidence Advanced by TWW Creates a Genuine Issue of Material Fact that the Coleman Accused Products Contain a "Concave Air Bag" Which Precludes Summary Judgment.

First, this Court in its *Markman* order ruled that the term "concave air bag" is to be given its plain and ordinary meaning. (ECF No. 71). The Court rejected Coleman's argument that the concave air bag must have a specific minimum heigh, only that *some* minimum height was

required. (*Id.*) Dr. Stevick, noting that the term "concave air bag" has its plain and ordinary meaning, opined that the Coleman Accused Products have a concave air bag because the central portion of the bottom sheet of the airbed does not contact the support surface, only the annular peripheral portion contacts the floor.




Stevick '926 Opening Report at ¶ 97. Dr. Stevick then measured the distance between a straight edge instrument and the approximate center point of the bottom sheet to demonstrate the presence of a concave air bag beneath the air beds. *Id.* at ¶ 98.



Coleman argues that when the accused air beds are in a different orientation such as leaning closer to the floor, the gap between the bottom of the air bed and the floor is reduced. Based upon Dr. Stevick's physical examination, concavity, and manometer testing results (*Id.* at ¶¶ 98-99, 122-23), he determined that the particular orientation of the airbed was immaterial to his analysis. Stevick '926 Reply Report at ¶ 67. Furthermore, Dr. Stevick explained that the inherent tension created in the airbed necessarily results in a concave air bag when the mattress is properly inflated for use. *Id.* at ¶ 68. Dr. Stevick also noted that a gap was observable even in the testing performed by Coleman's expert, Dr. Singhose, that supposedly showed a reduced gap under the air bed. *Id.* at ¶ 70; Ex. A, 237:16-238:6), and that the gap was sufficient to create a concave air bag because there "simply needs to be a volume of air space created by the structures recited in the claims, as can be seen in Figure 7 of the 926 Patent."




FIG. 7

*Id.* at ¶ 74.

All of the Coleman Accused Products include the "concave air bag" limitation of the asserted claims of the '926 Patent. At a minimum, Dr. Stevick's opinions, measurements, and factual statements are sufficient to create a genuine issue of material fact which precludes summary

judgment in Coleman's favor. *See Mytee Prod., Inc. v. Harris Rsch., Inc.*, 615 F. Supp. 2d 1163, 1168 (S.D. Cal. 2009), aff'd, 439 F. App'x 882 (Fed. Cir. 2011).

**2. There is a Genuine Issue of Material Fact that the Coleman Accused Products Act as a "Suction Cup," which Precludes Summary Judgment in Coleman's Favor.**

Claim 1 of the '926 Patent states that "whereby, when a person moves onto said top surface of said top sheet, air is ejected from said concave air bag via a space between said bottom sheet and the support surface so that said bed acts as a suction cup…." (ECF No. 18-1 ('926 Patent) col. 5 lines 33–38). As Dr. Stevick explains in his report, during use of an air mattress, " a person moves onto and applies a downward force to the top surface of the top sheet. When that happens, air is ejected from the concave air bag between a space between the bottom sheet and the support surface. The result is a suction cup effect where the bed acts like a suction cup." Stevick '926 Opening Report at ¶ 119.

Importantly, as Dr. Stevick also points out, no testing is required because the asserted claims of the '926 Patent are **apparatus** claims and not **method** claims. (*See id.* at ¶ 122; Stevick '926 Reply Report at ¶ 28. The "whereby" clause in Claim Element 1g does not add structural limitations to the claim but rather recites the results of the structural limitations in the claim. *Curtis Mfg. Co. v. Plasti-Clip Corp.*, 135 F.3d 778, 1998 WL 45452, at *10 n.5 (Fed. Cir. Feb. 6, 1998) (Unpublished) (internal citations omitted) ("A 'whereby' clause that merely states the result of the limitations in the claim adds nothing to the patentability or substance of the claim.").

In his Opening Infringement Report, Dr. Stevick explains that Claim Element 1g is nonetheless satisfied because the accused Coleman products meet the structural limitations of the asserted claims of the '926 Patent:

> In my opinion, the construction of the Accused Products to have a concave air bag, i.e. a cavity bounded by the floor below and concave bottom sheet of the airbed above, as shown in my analysis for element 1(c) alone confirms that the Accused

> Products meet the limitations of claim 1g in that "whereby, when a person moves onto said top surface of said top sheet, air is ejected from said concave air bag via a space between said bottom sheet and the support surface so that said bed acts as a suction cup, thereby fixing said bed relative to the support surface."

Stevick '926 Opening Report at ¶ 121. Dr. Stevick concluded that the Coleman Accused Products meet the structural limitations of the claim because, *inter alia*, they have a concave air bag ("i.e. a cavity bounded by the floor below and a concave bottom sheet of the airbed above"). *Id.* at ¶ 93-99. The existence of the concave air bag in the Coleman Accused Products, created by the annular peripheral portion of the air bed contacting the support surface when the central portion of the bottom sheet of the airbed is not in contact with the support surface (*Id.* at ¶ 97), is sufficient to demonstrate that the suction cup effect will occur when a person moves onto and applies pressure to the top of the air mattress.

Although testing was not required because the accused Coleman products meet the structural limitations of the asserted claims, Dr. Stevick performed manometer pressure testing to further demonstrate the resulting air flow and pressure change. As described by Dr. Stevick in his July 6, 2021 report, this simple test involved using a flat linoleum floor with an opening for a plastic tube coming from underneath the floor, and the outside of the tube sealed to the floor, such that the plastic tube interior was open to the center of the area of the concave air bag when an inflated Accused Product was placed on the linoleum floor. *Id.* at ¶ 122. The other end of the plastic tube was connected to a manometer to measure pressure changes when a weight was applied to and removed from the top surface of the Accused Product. *Id.* Dr. Stevick made video recordings of the manometer's pressure readings, which reflect air flow from areas of high pressure to areas of low pressure (Ex. A, 253:10-21) when a person got on to or off of a Coleman Accused Product. Stevick '926 Opening Report at ¶ 122. This testing was done using a reliable form of measurement,

the manometer, which Coleman does not contest. Moreover, Dr. Stevick testified in his deposition on exactly what the testing showed and what the manometer was measuring:

> Q: What does the manometer test measure?
>
> A: It shows that you get a high pressure when you get on, forcing air out. And when you move, get off, that corresponds to when you reverse the load on a suction cup. You pull a vacuum.

Ex. A, 253:10-14.

All of the Coleman Accused Products meet the structural limitations of the asserted claims of the '618 Patent which results in the accused airbeds acting as a "suction cup." At a minimum, Dr. Stevick's opinions, measurements, and factual statements are sufficient to create a genuine issue of material fact which precludes summary judgment in Coleman's favor.

### 3. There is a Genuine Issue of Material Fact that the Coleman Accused Products "Fix" the Air Bed Relative to the Support Surface Which Precludes Summary Judgment in Coleman's Favor.

This Court, in its Markman Order, ruled that the term "fixing" does not require construction and its plain and ordinary meaning applies. (ECF No. 71). In so ruling, the Court explained that certainty as to "how much" force is required to "fix" a mattress to a support surface is not required, and the common definition of the word "fix," including to make "stable in position," captures the resulting suction cup functionality of the mattress. (ECF No. 71). Moreover, as discussed above, testing is not required to show the suction cup effect as this is just the result of the structural limitations and not a limitation itself.

Dr. Stevick's testing shows the resulting suction cup effect is replicable using the parameters set by Dr. Stevick's testing and measurements. Dr. Stevick's opinion from his testing is that the change in pressure from the resulting air flow creates a suction cup effect. Stevick '926 Opening Report at ¶¶ 119-24. This Court's *Markman* ruling reflects that that suction cup effect is sufficient to capture that the mattress is fixed to the support surface, and specific measurement of

the level to which the mattress is fixed, or the level of force or pressure at issue is not required. (ECF No. 71).

All of the Coleman Accused Products meet the structural limitations of the asserted claims of the ’926 Patent, which results in the accused airbeds being “fixed” relative to the support surface. At a minimum, Dr. Stevick’s opinions, measurements, and factual statements are sufficient to create a genuine issue of material fact, which precludes summary judgment in Coleman’s favor.

4. **There is a Genuine Issue of Material Fact that the Coleman Accused Products Eject Air from the Concave Air Bag via a Space Between the Bottom Sheet and Support Surface Which Precludes Summary Judgment in Coleman’s Favor**

As Dr. Stevick opined, because the Coleman Accused Products meet the structural limitations of the asserted claims of the ’926 Patent, the result is that “[w]hen a person moves onto said top surface of said top sheet, air is ejected from said concave air bag via a space between said bottom sheet and the support surface.” *See* ’926 Patent, Claim 1. Dr. Stevick’s manometer tests further demonstrate that air is ejected out of the concave air bag, because otherwise there would be no resulting change in pressure. Stevick ’926 Reply Report at ¶ 76. As explained in his deposition, all of the tests “pulled a vacuum,” demonstrating that there was “adequate air chamber” to create the suction effect. Ex. A, 234:5-14. While a manometer does not specifically measure air flow itself, air flows from areas of high pressure to areas of low pressure. Ex. A, 253:10-25.

Dr. Stevick’s conclusions are based upon his factual observations and measurements – to the extent that Coleman disputes those observations, whether they were credible, and whether further observations or testing were necessary for Dr. Stevick to form these opinions this creates a genuine issue of material fact which precludes summary judgment in Coleman’s favor. *See Mytee*

*Prod., Inc. v. Harris Rsch., Inc.*, 615 F. Supp. 2d 1163, 1168 (S.D. Cal. 2009), aff'd, 439 F. App'x 882 (Fed. Cir. 2011).

### B. Coleman is Not Entitled to Summary Judgment of No Infringement of the Asserted Claims of the '926 Patent Under the Doctrine of Equivalents for at least the Reasons Discussed Below.

Under the doctrine of equivalents, a product that does not literally infringe the express terms of a patent "may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product…and the claimed elements of the patented invention." *Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 21, 29 (1997). This doctrine prevents accused infringers from avoiding infringement by "changing only minor or insubstantial details of the claimed invention while retaining their essential functionality." *Sage Products, Inc. v. Devon Industries, Inc.*, 126 F.3d 1420, 1424, 44 U.S.P.Q.2d 1103 (Fed. Cir. 1997). A finding of equivalence is a determination of fact for the jury. *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 609–10, 70 (1950). Proof regarding equivalents may be made through experts or those versed in the technology at issue. *Id.*

Coleman argues that TWW cannot identify an equivalent to the "concave air bag" because "Dr. Stevick never identified an air bag defined by the bottom sheet of the mattress and the support surface." Motion at 18. But, as discussed in Section IV.A.1, Dr. Stevick specifically identified the concave air bag in the Coleman Accused Products in his opinions and with images in his reports. Stevick '926 Opening Report at ¶¶ 97-98.

Also, Dr. Stevick explains in his report that, in addition to the claims being literally infringed, the identified plastic partition is equivalent to the claimed plastic partition because both partitions perform substantially the same function by creating a concave air bag (Stevick '926 Opening Report at ¶ 99; Ex. A, 237:15–238:6) and demonstrated by the results of Dr. Stevick's manometer testing.

All of the Coleman Accused Products meet the limitations of the asserted claims of the ’618 Patent either literally or under the doctrine of equivalents. At a minimum, Dr. Stevick’s opinions, measurements, and factual statements are sufficient to create a genuine issue of material fact which precludes summary judgment in Coleman’s favor.

### C. Coleman is Not Entitled to Summary Judgment of Infringement of the Asserted Claims of the ’618 Patent for at least the Reasons Discussed Below

#### 1. The TWW Accused Products Do Not Infringe the Asserted Claims of the ’618 Patent Because they Do Not Include Air Chambers defined by Common Peripheral Edges of the Mattress Panels.

All the asserted claims of the ’618 patent require the air chamber be defined by certain structures, including the “at least one side panel, the first panel, and the second panel being joined to one another along their common peripheral edges to define an air chamber therebetween.” Unlike the structure claimed in the ’618 Patent, the TWW accused products have separately defined air chambers that are defined by different structures. Stevick ’618 Report at ¶¶ 46–47.

As Dr. Stevick explains, the TWW accused products have separate air chambers created by the internal structures shown below. The image below is a cut away of the side of a TWW accused air mattress. The structures shown by the red arrows in the image below extend all the way around the air mattress periphery thus creating separate air chambers at the upper and lower corners of the air mattress separate from the central air chamber (shown by a green arrow).



Stevick '618 Report at ¶ 49.

This is unlike, for example, Figs. 5-6 of the '618 patent (shown below) which only show a single air chamber given that the side support beams (25) are not connected to one another. Figures 5 and 6 below illustrate how the side support beams 25 of the '618 Patent are open and not connected in the corners of the airbed and, thus, do not create separate air chambers.




*Id.* at ¶ 41.

The figure below from Dr. Stevick's Opening Report illustrates that no individual air chamber is defined by the common peripheral edges which are shown by the red dots. The asserted claims of the '618 Patent require all of the common peripheral edges, represented by the red dots to define an air chamber. In the TWW accused products, there is no single air chamber defined by the common peripheral edges as required in the asserted claims of the '618 Patent. The central air chamber (outlined in green below) does not even touch the common peripheral edges.



*Id.* at 48.

Additionally, Coleman argues that the separate air chambers in the TWW accused products are not separate because there is air flow through small holes in the walls (what Coleman alleges are the "side support beams") of the separate chambers to allow these separate air chambers to inflate when the air bed is inflated. But Coleman provides no support for this argument. To the contrary, Dr. Stevick explains that the presence of these air holes does not change his opinion that the TWW accused products have separate air chambers. *Id.* at ¶ 42 n.7. At a minimum, Dr. Stevick's opinions and factual statements are sufficient to create a genuine issue of material fact for the issues presented by Coleman which precludes summary judgment in Coleman's favor.

### 2. The TWW Accused Products Do Not Infringe Asserted Claims 1, 2, 15, and 16 of the '618 Patent Because these Products Have More than One Air Chamber

According to the Court's claim construction order, claims 1, 2, 15, and 16 each require a single air chamber. The Accused Products do not infringe claims 1, 2, 15, and 16 at least because the TWW accused products include multiple air chambers, as discussed in the preceding section. As Coleman noted in its Motion, the Court during claim construction declined to limit the term "the air chamber" to a single air chamber for all claims. (*See* ECF No. 71 at 12). However, the Court stated that "to run support coils continuously from top to bottom of the bed, **it would seem the bed would require only a single air chamber**." *Id*. (emphasis added). Based on the court's claim construction guidance, because of the claimed mattress coils, the air mattress of asserted claims 1, 2, 15, and 16 are limited to a single air chamber. *See* Stevick '618 Report at ¶ 34.

As discussed in the preceding section, the TWW accused products have multiple air chambers and, thus, cannot infringe claims 1, 2, 15, and 16 of the '618 Patent. Mr. Li, Coleman's validity expert, testified during his deposition that the '926 Patent required multiple air chambers:



Exhibit B, Deposition of Wayne Li, August 17, 2021, 158:3-22 (emphasis added). Dr. Stevick stated in his report that he understood that the TWW accused products "practice TWW's Sure Grip design, disclosed in the '926 Patent," and Coleman does not dispute this. Stevick '618 Report at ¶ 43. Mr. Li confirmed that TWW's '926 Patent discloses multiple air chambers.

At a minimum, Dr. Stevick's opinions and factual statements are sufficient to create a genuine issue of material fact for the issues presented by Coleman which precludes summary judgment in Coleman's favor.

## V. Conclusion

For the reasons set forth above, TWW respectfully requests that this Court deny Coleman's Motion for Summary Judgment with respect to non-infringement by Coleman of the '926 Patent and infringement by TWW of the '618 Patent.

Dated: November 4, 2021

Respectfully submitted,

By: _/s/ Alexandra M. Gabriel__________
Alexandra M. Gabriel (VSB No. 89185)
William R. Poynter (VSB No. 48672)
David Sullivan (VSB No. 45027)

KALEO LEGAL
4456 Corporation Lane, Suite 135
Virginia Beach, VA 23462
Phone: 757.238.6383
Fax: 757.304.6175
agabriel@kaleolegal.com
wpoynter@kaleolegal.com
dsullivan@kaleolegal.com

Thomas M. Dunham (pro hac vice)
J. Michael Woods (pro hac vice)
**RuyakCherian LLP**
1901 L St. NW, Suite 700
Washington, DC 20036
Telephone: (202) 838-1560
tomd@ruyakcherian.com
michaelw@ruyakcherian.com

Korula Cherian
Robert Harkins
**RuyakCherian LLP**
1936 University Ave., Ste. 350
Berkeley, CA 94702
Telephone: (510) 944-0190
sunnyc@ruyakcherian.com
bobh@ruyakcherian.com

*Attorneys for Team Worldwide Corporation and Cheng-Chung Wang*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing on November 4, 2021 with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all registered users.

By: _/s/ Alexandra M. Gabriel_________
Alexandra M. Gabriel (VSB No. 89185)
KALEO LEGAL
4456 Corporation Lane, Suite 135
Virginia Beach, VA 23462
Phone: 757.238.6383
Fax: 757.304.6175
agabriel@kaleolegal.com