IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| THE COLEMAN COMPANY, INC., § § *Plaintiff/Counterclaim Defendant,* § § v. § § TEAM WORLDWIDE CORPORATION, § § *Defendant/Counterclaim Plaintiff* § § and § § CHENG-CHUNG WANG, § § *Counterclaim Plaintiff.* § | Civil Action No. 2:20-cv-351-RGD JURY TRIAL DEMANDED |

**MEMORANDUM IN SUPPORT OF TEAM WORLDWIDE CORPORATION'S MOTION TO EXCLUDE AND STRIKE CERTAIN OPINIONS OFFERED BY DR. WILLIAM SINGHOSE AND MR. GARY OLSEN**

Defendant Team Worldwide Corporation ("TWW"), by and through its undersigned counsel, submits the following as its Memorandum in Support of TWW's Motion to Exclude and Strike Certain Opinions offered by Dr. William Singhose and Mr. Gary Olsen.

**I.   INTRODUCTION**

TWW respectfully requests the Court to exclude and strike the expert testimony of Dr. William Singhose, related to infringement of U.S. Patent No. 7,089,618 ("the '618 Patent") by certain accused inflatable airbed products, as irrelevant and unreliable in violation of Rule 702 of the Federal Rules of Evidence. Dr. Singhose identified 92 accused inflatable airbed products in his opening expert report as allegedly infringing the '618 Patent. His opinions regarding certain of these products are irrelevant or unreliable for at least three reasons.

1

First, Dr. Singhose accused 12 products which were not offered for sale or sold by TWW in the United States during the damages period. The Court should exclude Dr. Singhose's infringement opinions regarding these 12 products as irrelevant under FRE 702. The expert testimony of Dr. Singhose as to these 12 products will not help the jury to understand the evidence or issues in this case.

Second, the asserted claims of the '618 Patent are directed to the interior construction of an airbed. For the majority of accused inflatable airbed products, Dr. Singhose failed to examine the interior construction of the airbeds. Dr. Singhose failed to cite any sample, product specification, website, or other document that showed the interior construction of 47 accused inflatable airbed products. The expert testimony of Dr. Singhose as to these 47 products is not based on sufficient facts or data and it is not a product of reliable principles and methods that have been reliably applied to the facts of this case. Thus, Dr. Singhose has no reliable basis for his infringement opinions regarding these 47 products and the Court should exclude his opinions regarding these 47 products as unreliable under FRE 702.

Third, the Court should also exclude Mr. Olsen's damages opinions relying on Dr. Singhose's infringement opinions as to these disputed products. Any damages opinion offered by Mr. Olsen on these products is unreliable as it is based on Dr. Singhose's flawed opinions.

## II. BACKGROUND

### A. Asserted Patent

The Coleman Company, Inc. ("Coleman") asserts the '618 Patent in this case. Figures 1 and 7 of the '618 Patent are reproduced below.



(ECF No. 1-1, '618 Patent).

Exemplary claim 1 of the '618 Patent is copied below.

> "1. An air mattress, comprising:
> a first panel and a spaced second panel;
> at least one side panel extending between the first panel and the second panel;
> the at least one side panel, the first panel, and the second panel being joined to one another along their common peripheral edges to define an air chamber therebetween, the air chamber having a depth measured between the first panel and the second panel in the range of from about ten inches to about eighteen to about twenty-four inches;
> at least one mattress coil disposed within said air chamber, said at least one coil being affixed to and extending continuously from the first panel to the second panel, respectively;
> a first side support beam extending in the lengthwise direction of the at least one side panel, said first side support beam having a first edge affixed to the at least one side panel, a second edge affixed to the first panel, and a section between the first edge and the second edge where the first side support beam is attached neither to said at least one side panel nor the first panel, the first side support beam being arranged such that when the air chamber is filled with air, the section of the first side support beam is in tension and the first side support beam limits outward expansion of said at least one side panel; and
> a second side support beam extending in the lengthwise direction of the at least one side panel, said second side support beam having a first edge affixed to the at least one side panel, a second edge affixed to the second panel, and a section between the first edge and the second edge where the second side support beam is attached neither to said at least one side panel nor the second panel, and the second side support beam being arranged such that when the air chamber is filled with air, the section of the second side support beam is in tension and the second side support beam limits outward expansion of said at least one side panel."

(*Id.*)

### B. Expert Reports

For Coleman, Dr. William Singhose submitted an opening expert report on infringement of the '618 Patent, dated July 6, 2021. Also, Mr. Gary Olsen submitted an amended opening expert on damages related to infringement of the '618 Patent, dated July 23, 2021.[1] For TWW, Dr. Glen Stevick submitted a rebuttal expert report on non-infringement of the '618 Patent, dated July 30, 2021. For Coleman, Dr. Singhose submitted a reply expert report on infringement of the '618 Patent, dated August 12, 2021.

### III. LEGAL STANDARD

Federal Rule of Evidence 702 states: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."

The District Court serves as a "gatekeeper" to determine whether the expert testimony admitted into evidence is both relevant and reliable. *See Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509, U.S. 579, 588 (1993)). This gatekeeping role of the Court ensures that "a standard of evidentiary reliability" is maintained during trial. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999). District courts have considerable leeway in evaluating the reliability of an expert's analysis, but must focus on the expert's underlying methodology, not the expert's conclusion itself. *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 195 (4th Cir. 2017).

---

[1] Mr. Olsen's original opening expert report on damages was served on July 6, 2021.

IV. **ARGUMENT**

**A. Expert testimony related to twelve accused products is irrelevant and should be excluded.**

Dr. Singhose identified 92 accused products in his opening expert report on infringement. *See* Exhibit A, Expert Report of William Singhose, Phd. Regarding Infringement of U.S. Patent No. 7,089,618, July 6, 2021, Appendix D (hereinafter, "Singhose Opening Report"). Of these 92 products, Dr. Singhose opined on twelve products that were not offered for sale or sold by TWW in the United States during the damages period:

1. Concierge Collection model no. GR700000141
2. Concierge Collection model no. GR700000142
3. Concierge Collection model no. GR700000143
4. Insta-bed model no. 8404820
5. JCA model no. JCA-QD35BP
6. Kelty model no. 77110089
7. Insta-bed model no. 84000417
8. Serta model no. 985290221
9. Serta model no. 98500616
10. Serta model no. 8503418
11. Serta model no. ST8400160-Parent
12. Serta model no. ST840020-T

*See* Exhibit B, Expert Report of Dr. Glen Stevick, Ph.D. Regarding Non-Infringement of U.S. Patent No. 7,089,618, July 30, 2021, ¶¶ 25-27 (hereinafter, "Stevick Rebuttal Report").

Because these products were not offered for sale or sold by TWW in the United States during the damages period, these twelve products do not satisfy the standard set forth in 35 U.S.C. § 271 for infringement. Dr. Stevick's statements on these twelve products in the Stevick Rebuttal Report are consistent with the discovery produced in this case, primarily TWW's financial documents which did not include sales data for these twelve products. Coleman's damages expert also noted in Schedule 6 of his report that he did not have any sales data for these 12 products, which is understandable as TWW had no such data to provide. *See* Exhibit C, Amended Expert

5

Report of Gary D. Olsen, July 23, 2021, Schedule 2 (hereinafter, "Olsen Amended Opening Damages Report"). Moreover, Dr. Singhose <u>did not dispute that these twelve products were not offered for sale or sold by TWW in the United States during the damages period</u> in the Singhose Reply Report. *See generally* Exhibit D, Rebuttal Expert Report of William Singhose, Phd. Regarding Infringement of U.S. Patent No. 7,089,618, August 12, 2021 (hereinafter, "Singhose Reply Report").

Because these 12 products do not satisfy the standard set forth in 35 U.S.C. § 271 for infringement, these 12 products are not relevant to this case. Testimony from Dr. Singhose as to these 12 products risks jury confusion and prejudice to TWW. Accordingly, TWW respectfully requests that the Court exclude the opinions of Dr. Singhose related to infringement of the '618 Patent by these 12 products as irrelevant. *See* FRE 702; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509, U.S. 579, 597 (1993).

**B. Expert testimony related to 47 accused products is unreliable and should be excluded.**

As discussed above, there are 12 accused products that are irrelevant, leaving 80 accused products remaining at issue in this case. *See* Ex. A, Singhose Opening Report, Appendix D. Of those 80 remaining products, Dr. Singhose only examined the interior construction of 33 products based on physical samples, product specifications, or other documents identified in his reports. As shown by exemplary claim 1 of the '618 Patent, *supra* section II.A., Coleman's asserted claims are directed at the interior construction of an airbed. *See, e.g.,* Ex. B, Stevick Rebuttal Report, ¶ 28.

But to reliably opine on infringement, a technical expert must rely on sufficient facts or data. *See* FRE 702. As will be discussed below, Dr. Singhose lacked sufficient facts to opine on infringement because he failed to examine the interior construction of 47 products:

1. Etek City model no. SG00CH21E
2. Etek City model no. SG00CH22E
3. Insta-bed model no. 84002815
4. Insta-bed model no. 84003315
5. Insta-bed model no. 840018G
6. Insta-bed model no. 8404720
7. Insta-bed model no. 840024
8. Insta-bed model no. 840025
9. Insta-bed model no. 9841515
10. Insta-bed model no. 84003215
11. Insta-bed model no. 98400214
12. Insta-bed model no. 98401614
13. Insta-bed model no. 98401714
14. Insta-bed model no. 9841815
15. Insta-bed model no. 840017BP
16. Insta-bed model no. 840017W
17. Insta-bed model no. 84002815G
18. Insta-bed model no. 84003115G
19. SereneLife model no. SLABTW53
20. SereneLife model no. SLABFL60
21. SereneLife model no. SLABQU69
22. SereneLife model no. SLMFPFL76 (corrected from SLMFPFL75 based on Olsen Damages Report)
23. Serta model no. 85002214
24. Serta model no. 85002714
25. Serta model no. ST840012
26. Serta model no. ST840014
27. Serta model no. ST840015
28. Serta model no. 8500714
29. Serta model no. 8504820
30. Serta model no. 85001514
31. Serta model no. 85001614
32. Serta model no. 85002314
33. Serta model no. 98502815
34. Serta model no. 98503216
35. Serta model no. 98503316
36. Serta model no. ST840017B
37. Serta model no. ST840020
38. Simpli Comfy model no. 8500081140296
39. Simpli Comfy model no. 8500081140333
40. Simpli Comfy model no. 8500081140678
41. Simpli Comfy model no. 8500081140692
42. SimplySleeper model no. SS-89Q
43. SimplySleeper model no. SS-83Q
44. SoundAsleep model no. SAAM-08
45. Unknown model no. L840018G
46. Unknown model no. LST840017
47. Unknown model no. LST840018

Testimony from Dr. Singhose as to these 47 products is unreliable and prejudices TWW. The asserted claims of the '618 Patent are directed at the interior construction of an airbed, as shown by exemplary claim 1. *See supra* section II.A. In the context of the asserted claims, in order to reliably opine on infringement, Dr. Singhose needed to examine the interior construction of the airbed to determine whether the claim elements are present.

In his opening expert report, Dr. Singhose only examined the interior construction of 27 products. *See* Ex. A, Singhose Opening Report, Appendix D, columns 1-6; *see also* Ex. B, Stevick Rebuttal Report, ¶¶ 28-32. In his reply expert report, Dr. Singhose additionally examined the

interior construction of 6 products, in response to criticism from Dr. Stevick. *See, e.g.,* Ex. D, Singhose Reply Report, ¶¶ 59-60. Thus, Dr. Singhose examined the interior construction of 33 out of the 80 airbeds remaining at issue in this case. Dr. Singhose's examination was based on physical samples, product specifications, or other documents such as product webpages having images showing the interior construction of the 33 airbeds.

In contrast, for the other 47 airbeds, Dr. Singhose could only see the exterior view of the airbed. Thus, Dr. Singhose was unable to examine the interior structures of the 47 airbeds and failed to review any product specifications, images, or other information on the interior construction of these 47 airbeds. This examination is not sufficient to opine on infringement in the context of the asserted claims. *See L & W, Inc. v. Shertech, Inc.*, 471 F.3d 1311, 1318 (Fed. Cir. 2006) ("Shertech cannot simply 'assume' that all of L & W's products are like the one [the expert] tested and thereby shift to L & W the burden to show that is not the case.").

### 1. Improper "Representative" Analysis

Dr. Singhose improperly attempted to use a "representative" infringement analysis of 3 products and apply that analysis equally to these 47 products. However, exterior-only examination of the 47 products is not sufficient under FRE 702. Because Dr. Singhose did not examine the interior construction of the 47 products, then he has no reliable basis for opining that his analysis of the interior construction of Insta-bed model no. 840016G, Serta model no. ST840018, or SoundAsleep model no. SAAM-01, applies equally to any of the 47 unexamined products. *See Alloc, Inc. v. Pergo, L.L.C.*, 751 F. Supp. 2d 1049, 1053 (E.D. Wis. 2010), *aff'd*, 426 F. App'x 909 (Fed. Cir. 2011) (granting motion for summary judgment of non-infringement based on lack of claim limitation when "[Plaintiff] is accusing all 24 sub-brands of infringement [but its expert] examined only three of the accused sub-brands")

Further, Dr. Singhose has no reliable basis for concluding there are no material differences between any of these 47 products relative to the three examined airbeds or relative to each other. "[Plaintiff] cannot simply 'assume' that all of [Defendant's] products are like the one [Plaintiff's expert] tested and thereby shift to [Defendant] the burden to show that is not the case." *L & W, Inc. v. Shertech, Inc.,* 471 F.3d 1311, 1318 (Fed. Cir. 2006).

Representative analysis is useful to avoid repetition in an expert report, but only so long as there is a reliable basis for comparison; here, there is not. "[T]he prohibition against allowing *ipse dixit* testimony by experts merely clarifies that the district court's broad discretion includes the discretion to find that there is 'simply too great an analytical gap between the data and the opinion proffered.'" *ePlus, Inc. v. Lawson Software, Inc*., 764 F. Supp. 2d 807, 813 (E.D. Va. 2011) (citing collection of cases). Dr. Singhose failed to sufficiently examine 47 out of the 80 airbeds remaining at issue in this case. *See* Ex. C, Stevick Rebuttal Report, ¶¶ 55, 60, 63, 65-68, 70-71, 73-77, 80-81, and 83-86. Accordingly, his opinions should be excluded.

### 2. Improper Reliance on Exterior Features

Dr. Singhose improperly attempted to justify his infringement opinions based on three exterior features of an airbed, which is not sufficient in the context of the asserted claims. Based on exterior-only views, Dr. Singhose relied upon three exterior features: (1) a 3-bump shape on the side panel, (2) dimpling on the top and/or bottom panels, and (3) dimensions of the airbed. *See, e.g.,* Ex. A, Singhose Opening Report, ¶¶ 53-54. None of these external features are recited in the asserted claims. As discussed in paragraphs 28-32 of Dr. Stevick's Rebuttal Report (Ex. B), this exterior-only examination is not sufficient because there is no reliable way to conclude whether a product with those three exterior features necessarily includes the claimed interior structures.

9

For 47 of the accused products Dr. Singhose relied only on these external features, which are not recited in the claims, and not the internal construction of these products. Dr. Singhose's own report provides an example of why relying only on external features is insufficient. In his opening expert report, Dr. Singhose cited a website with an image purportedly showing the interior construction for an airbed. Ex. A, Singhose Opening Report, ¶ 122 n.2. These images also show the same external features that Dr. Singhose relied on for the 47 accused products: 3-bumps, dimpling, and 78 x 60 x 19 inch dimensions. However, the website Dr. Singhose cites for this product shows a materially different design then what is claimed in of the '618 Patent. The image on the website for this airbed shows an airbed with two interior, middle sheets, thus creating the 3-bump appearance instead of the "side support beams" of the asserted claims of the '618 Patent. This image also shows an airbed with interior coils, thus creating the dimples.



Ex. B, Stevick Rebuttal Report, ¶ 30. [2]

During his deposition, Dr. Singhose admitted that based on what is shown, this airbed would not infringe the asserted claims of the '618 Patent. *See* Exhibit E, Deposition of Dr. William Singhose, August 18, 2021, 135:9-11 (hereinafter, "Dep. of Dr. Singhose"). Ultimately, this image

---

[2] The link cited by Dr. Singhose in his Opening Report, and referenced by Dr. Stevick in his Rebuttal Report, is: https://www.amazon.com/dp/B084DDQW73?tag=barcodeindex-20&linkCode=osi&th=1&psc=1 (JCA model no. JCA-QD35BP).

shows that an exterior-only examination of an airbed, looking for those three exterior features, is not sufficient to opine on infringement.

When confronted with this image during deposition, Dr. Singhose admitted that he did not obtain a physical sample of this particular airbed to verify whether or not the claimed interior structures were present. *See* Ex. E, Dep. of Dr. Singhose, 135:17-22. Counsel for TWW followed up:



*Id.* at 137:12-17. Dr. Singhose's reliance on exterior features of an airbed is therefore not sufficient to opine on the interior structures of the airbed. Dr. Singhose did not rely on the requisite facts or data for the 47 airbeds pursuant to FRE 702.

### 3. Dr. Singhose in his Reply Report tries to Justify his Earlier Opinion on Later Alleged Statements by Dr. Stevick

In his reply report, Dr. Singhose attempted to cure his failure to examine the interior construction of 47 products by relying on a mischaracterization of Dr. Stevick's rebuttal report to show there are no material differences among the accused products in the context of the '618 Patent. *See* Ex. D, Singhose Reply Report, ¶¶ 41-58. Thus, Dr. Singhose is attempting to justify his earlier opinions, submitted July 6, 2021, based on alleged statements by Dr. Stevick that were not submitted until July 30, 2021. This is improper for at least three reasons.

First, Dr. Stevick did not state that all accused products were the same for the purposes of the '618 Patent in his rebuttal report. Dr. Stevick simply relied on TWW's interrogatory responses and documents for his understanding that all the accused products practice TWW's asserted '926 Patent, which requires, for example, multiple air chambers in contrast to the '618 Patent. *See, e.g.,*

11

Ex. B, Stevick Rebuttal Report, ¶ 42. Dr. Stevick did not make any representations concerning the accused products and the '618 Patent. Dr. Stevick need not examine or verify the interior construction of all accused products for his rebuttal report because it is Coleman, not TWW, who carries the burden for proving infringement of the '618 Patent.

Second and more importantly, Dr. Singhose cannot base his ***earlier*** opinion (dated July 6) on statements in a ***later*** report by Dr. Stevick (dated July 30). Dr. Singhose had no sufficient bases to submit his earlier opinions in his opening expert report dated July 6, 2021. Without sufficient bases, Dr. Singhose's earlier opinions are just the *ipse dixit* of Coleman's expert. "[N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *ePlus, Inc. v. Lawson Software, Inc.*, 764 F. Supp. 2d 807, 813 (E.D. Va. 2011).

Third, as discussed above, Coleman cannot shift the burden of proof to TWW. *See L & W, Inc. v. Shertech, Inc.*, 471 F.3d 1311, 1318 (Fed. Cir. 2006). Dr. Stevick was only tasked with responding to the opening expert report submitted by Dr. Singhose. It is Coleman and Dr. Singhose who must ***prove*** infringement of the '618 Patent. *Starhome GmbH v. AT&T Mobility LLC*, 743 F.3d 849, 858 (Fed. Cir. 2014) ("To prove infringement, the patentee must show that the accused device meets each claim limitation, either literally or under the doctrine of equivalents.").

TWW respectfully requests that the Court exclude Dr. Singhose's infringement opinions as to the 47 products discussed above as unreliable under FRE 702.

## V. CONCLUSION

For at least the foregoing reasons, TWW respectfully requests the Court to exclude and strike the expert testimony of Dr. William Singhose related to the 12 products identified herein as irrelevant under FRE 702. Specifically, TWW requests the Court exclude and strike references to

these 12 products in at least paragraphs 128-129, 193-194, 262, 265, and 266 and Appendix D of the Singhose Opening Report.

TWW also respectfully requests the Court to exclude and strike the expert testimony of Dr. William Singhose related to the 47 products, identified herein, as unreliable under FRE 702. Specifically, TWW requests the Court exclude references to these 47 products in at least paragraphs 54, 128-129, 193-194, 263, 268, 269, 270, and 271-275 and Appendix D of the Singhose Opening Report.

Additionally, TWW also respectfully requests the Court exclude and strike the expert testimony of Mr. Gary Olsen regarding damages, which relies upon Dr. Singhose's infringement opinions as to these disputed products. Specifically, TWW requests the Court exclude and strike references to the 12 and the 47 products in at least paragraphs 22, 25-28, 46, 53, 55, 56, and Schedules 2 and 5-6 of the Olsen Amended Opening Damages Report.

Dated: November 5, 2021

Respectfully submitted,

　/s/ Alexandra M. Gabriel
Alexandra M. Gabriel (VSB No. 89185)
William R. Poynter (VSB No. 48672)
David Sullivan (VSB No. 45027)
KALEO LEGAL
4456 Corporation Lane, Suite 135
Virginia Beach, VA 23462
Phone: 757.238.6383
Fax: 757.304.6175
agabriel@kaleolegal.com
wpoynter@kaleolegal.com
dsullivan@kaleolegal.com

Thomas M. Dunham (pro hac vice)
J. Michael Woods (pro hac vice)
**RuyakCherian LLP**
1901 L St. NW, Suite 700
Washington, DC 20036
Telephone: (202) 838-1560

tomd@ruyakcherian.com
michaelw@ruyakcherian.com


Korula Cherian
Robert Harkins
**RuyakCherian LLP**
1936 University Ave., Ste. 350
Berkeley, CA 94702
Telephone: (510) 944-0190
sunnyc@ruyakcherian.com
bobh@ruyakcherian.com

*Attorneys for Team Worldwide Corporation and Cheng-Chung Wang*

14

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing on November 5, 2021, with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all registered users.

s/ Alexandra M. Gabriel
Alexandra M. Gabriel (VSB No. 89185)
KALEO LEGAL
4456 Corporation Lane, Suite 135
Virginia Beach, VA 23462
Phone: 757.238.6383
Fax: 757.304.6175
agabriel@kaleolegal.com
