**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

THE COLEMAN COMPANY, INC.,

*Plaintiff/Counterclaim Defendant,*

v.

TEAM WORLDWIDE CORPORATION,

*Defendant/Counterclaim Plaintiff*

and

CHENG-CHUNG WANG,

*Counterclaim Plaintiff.*

§
§
§
§
§
§
§
§
§
§
§
§
§
§

Civil Action No. 2:20-cv-351-RGD

JURY TRIAL DEMANDED

**MEMORANDUM IN SUPPORT OF TEAM WORLDWIDE CORPORATION'S
MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF PLAINTIFF'S U.S.
PATENT NO. 7,089,618 AND OF THE VALIDITY OF DEFENDANT'S U.S. PATENT
NO. 6,754,926**

# TABLE OF CONTENTS

I.   Introduction ..................................................................................................................... 1

II.  Background / Statement of Facts...................................................................................... 3

   A.   Coleman's '618 Patent (ECF No. 1-1) ....................................................................... 3

   B.   JP Application No. 1974-034811 to Aoki ("Aoki") ................................................... 4

   C.   U.S. Patent No. 6,701,559 to Boso et al. ("Boso") .................................................... 5

III. Statement of Undisputed Facts (SUF) ............................................................................ 6

IV. Legal Standard ................................................................................................................ 10

V.  Argument ........................................................................................................................ 11

   A.   The '618 Patent is Invalid. ......................................................................................... 11

   1.   Claims 1, 2, 15, 16, and 17 of the '618 Patent are Anticipated by Aoki. ........................ 11

   2.   Claims 1, 2, 15, 16 and 17 of the '618 Patent are Obvious over Aoki in view of Boso.... 15

   3.   Claims 15 and 16 of the '618 Patent are Invalid as Anticipated......................................... 19

      i.      Claims 15 and 16 of the '618 Patent are Anticipated by TWW's Sure Grip Insta
            Bed. .................................................................................................................... 19

      ii.     Claims 15 and 16 of the '618 Patent are Anticipated by TWW's '926 Patent as
            Coleman Has Accused TWW Products Which Practice TWW's Patent of
            Infringing the '618 Patent. ................................................................................. 23

   B.   The '926 Patent is Not Invalid under 35 U.S.C. §§ 101 and 112. ..................................... 25

   1.   35 U.S.C. § 101 ............................................................................................................... 25

   2.   35 U.S.C. § 112 ............................................................................................................... 28

VI. Conclusion ..................................................................................................................... 30

i

# TABLE OF AUTHORITIES

**Cases**

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1341 (Fed. Cir. 2001) ............ 30

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) ......................................................... 11

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) .................................................................... 10

*Curtis Mfg. Co. v. Plasti-Clip Corp.*, 135 F.3d 778, 1998 WL 45452, at *10 n.5 (Fed. Cir. Feb. 6, 1998) (Unpublished) ................................................................................................................... 29

*In re Schreiber*, 128 F.3d 1473, 1480 (Fed. Cir. 1997) ......................................................... 23, 25

*Ineos USA LLC v. Berry Plastics Corp.*, 783 F.3d 865, 869 (Fed. Cir. 2015)............................ 16

*Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1223 (Fed. Cir. 2006) ....................... 30

*Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1339 (Fed. Cir. 2003).................................. 13

*Raytheon Co. v. Roper Corp.*, 724 F.2d 951, 958 (Fed. Cir. 1983)............................................. 26

*SmithKline Diagnostics Inc. v. Helena Lab. Corp.*, 859 F.2d 878, 882 (Fed. Cir. 1988)............ 13

**Statutes**

35 U.S.C. §101............................................................................................................... passim

35 U.S.C. §102............................................................................................................... passim

35 U.S.C. §112............................................................................................................... passim

I.    **Introduction**

Team Worldwide Corporation ("TWW") respectfully moves the Court for summary judgment of invalidity of the asserted claims of The Coleman Company, Inc.'s ("Coleman") U.S. Patent No. 7,089,618 (the "'618 Patent") and for no invalidity of TWW's U.S. Patent No. 6,754,926 (the "'926 Patent") for alleged lack of utility, indefiniteness, and no disclosure of the best mode.[1] TWW has identified several prior art references for the '618 Patent that warrant summary judgment of invalidity, including a Japanese patent application that anticipates each asserted claim of the '618 Patent. With respect to the '926 Patent, Coleman's invalidity arguments for alleged lack of utility, indefiniteness, and no disclosure of the best mode fail as a matter of law.

A Japanese prior art patent application, Aoki, that pre-dates the '618 Patent by 30 years, anticipates all asserted claims of the '618 Patent. Aoki addresses the same problem purportedly addressed by the '618 Patent – preventing the bulging out of the sides, top, and bottom of inflatable air mattresses. And, as discussed herein, Aoki addressed this problem in the same way as the '618 Patent by providing diagonal bracing strips 10 (in Figure 2 of Aoki at below left in red) compared to the '618 Patent side support beams 25 (in Fig. 7 of the '618 Patent below right in red).







Aoki, Figure 2      '618 Patent, Figure 7

---

[1] Counterclaim Plaintiff Cheng-Chung Wang joins in the Motion with respect to the validity of the '926 Patent.

As with the '618 Patent (above right), Aoki discloses a top panel 1, a bottom panel 2, and side panels 3 and 4 (see above left). Aoki also discloses vertical tension strips 6 which meet the plain and ordinary meaning of the mattress coil limitations of the '618 Patent. Moreover, Aoki states that it can be used in air mattresses of any size thus satisfying the claim limitations of the '618 Patent on mattress height. Over 30 years before the '618 Patent, Aoki solved the same problem described in the '618 Patent. Aoki anticipates each asserted claim of the '618 Patent and this Court should grant summary judgment of invalidity as the asserted claims of the '618 Patent as anticipated by Aoki.[2][3]

With respect to the '926 Patent, Coleman's arguments under 35 U.S.C. §§ 101 and 112 fail warranting summary judgment of no invalidity in TWW's favor. Under 35 U.S.C. § 101, Coleman's expert argues that TWW's '926 Patent is invalid as it lacks utility related to the "suction cup" effect. But Coleman's argument fails as the '926 Patent meets the requirements for utility under Federal Circuit precedent. Coleman's indefiniteness argument also fails as this Court has already ruled against Coleman on this same indefiniteness argument. Coleman further argues the '926 is invalid under 35 U.S.C. § 112 because allegedly no best mode is disclosed for the '926 Patent. But since the American Invents Act (AIA) there is no statutory basis for invalidity with best mode.

---

[2] Aoki anticipates the asserted claims of the '618 Patent. To the extent the Court finds that Aoki does not disclose, e.g., the mattress coil limitations of the '618 Patent, both the Boso prior art reference and TWW's prior art product, Queen Raised Sure Grip Insta-Bed, model no. 822523, disclose these limitations as discussed herein. If the Court finds that Aoki does not disclose the mattresses height limitation then Boso also discloses this limitation as discussed herein.

[3] Also, as discussed herein, claims 15 and 16 of the '618 Patent are anticipated by TWW's '926 Patent as Coleman has accused TWW products which practice TWW's patent of infringing the '618 Patent. Coleman does not dispute that the TWW products Coleman accused practice the '926 Patent nor does it dispute that the '926 Patent is prior art to the '618 Patent.

TWW respectfully requests the Court enter summary judgment of invalidity of all asserted claims of the '618 Patent and summary judgment of no invalidity of the asserted claims of the '926 Patent under 35 U.S.C. § 101 and 35 U.S.C. § 112 for indefiniteness and best mode.

## II.   Background / Statement of Facts

On June 29, 2020, Coleman filed a complaint with the United States District Court, Eastern District of Virginia, for patent infringement of its '618 Patent against TWW. On November 11, 2020, TWW filed a counterclaim asserting infringement by Coleman of the '926 Patent.

### A.  Coleman's '618 Patent (ECF No. 1-1)

The '618 Patent generally relates to the internal construction of inflatable air mattresses. The '618 Patent discloses "an air mattress comprised of a first or top panel and a spaced second or bottom panel, and at least one side panel extending between the first panel and the second panel, the respective panels being joined together along their common peripheral edges to define a single air chamber therebetween." (ECF No. 1-1, '618 Patent, at col. 2:58-64). Figure 1 of the '618 Patent, reproduced below, illustrates an air mattress 5 with a top panel 7, bottom panel 8, and side panels 9, 11, 12, 13 where each side panel extends between the top and bottom panels. (ECF No. 1-1). The panels are joined along their common peripheral side edges and together define an air chamber 10. The air chamber may be filled with air via use of the air inlet or fill valve 17. *Id.* The patent also discloses at least one side support beam 25, as shown in Figure 7 below, which attaches to a top or bottom panel and a side panel which limits the expansion of the side panels when the mattress is inflated or weight is applied to the mattress. *Id.* This aids in preventing the sides of the air mattress from bulging outward. *Id.*

3



*Id.* at Fig. 7.

The '618 Patent also discloses the use of internal "mattress coils" extending from the top sheet to the bottom sheet. *See id.*, Figs. 5 and 6 below.



### B. JP Application No. 1974-034811 to Aoki ("Aoki")

Aoki was filed on June 28, 1972 and is titled "Box Shaped Aire Mattress." **Exhibit A**, JP Application No. 1974-034811 to Aoki. As shown below, Aoki discloses a box shaped air mattress 5 with a top panel 1, a bottom panel 2, and side panels 3 and 4. Air mattress 5 includes a plurality of vertical tension strips 6 that continuously extend between the top and bottom panels 1 and 2. *Id.* Air mattress 5 also includes diagonal bracing tension strips 10 that are connected fixedly to the top panel 1 and side panel 3. *Id.* The diagonal bracing tension strips 10 are adhered to adhesion bases 11 and 11' at gluing positions 8 and 9, respectively. *See id.* at 3.



Figure 1-2 of Aoki.

Aoki also addressed the bulging problem of the '618 Patent and explicitly discusses a problem of existing air mattresses where they only have tension strips attached to the top and bottom panels of an airbed. *Id.* Thus, upon inflation, the mattress bulges outward causing the top and bottom panels a, b to become arc-shaped. Aoki describes that upon inflation, the diagonal bracing strips 10 are placed in tension so that the corners of the airbed are at substantially right angles. *See id.* at 3-4. Aoki teaches this construction will prevent bulging so that the airbed is more stable.

### C.  U.S. Patent No. 6,701,559 to Boso et al. ("Boso")

U.S. Patent No. 6,701,559 to Boso et al. issued from U.S. Application No. 09/918,561, which was filed on August 1, 2001, and titled "Increased Height Inflatable Support System." **Exhibit B**, U.S. Patent No. 6,701,559 to Boso et al. Boso was cited by the U.S. Patent and Trademark Examiner multiple times throughout the prosecution of the '618 Patent but not in combination with Aoki. Boso discloses double height air mattress chambers, e.g., where "upper chamber 20 is constructed with side gussets approximately ten inches high, and lower chamber 21 is constructed with Side gussets approximately fifteen inches high." *Id.* at col. 4:29-32.

Boso further states "PVC strips 15 can be attached to the inner surface of the top and bottom of each chamber, illustrated as 18 and 19" and "[s]uch PVC strips 15 create channels, which help to shape and structurally reinforce upper chamber 20 and lower chamber 21" and that "[i]t should be apparent to one skilled in the art that alternative chamber support architectures, such as the 'coil construction' technique known in the art, may be employed without departing from the spirit or scope of the present invention." *Id.* at col. 5:8-16; Fig. 1.



Figure 1

*Id.* at Fig. 1.

## III.   Statement of Undisputed Facts (SUF)

1.      Coleman has accused certain TWW products of infringing claims 1, 2, and 15-17 of the '618 Patent. Claim 2 depends on independent claim 1 and claims 15-17 depend on independent claim 13 (not asserted).

2.      Japanese Patent Application No. 1974-034811 to Aoki was filed in the Japanese language on June 28, 1972, and titled, "Box shaped air mattress." Ex. A, Aoki. Aoki qualifies as prior art under 35 U.S.C. 102(b) to the '618 Patent. Defendant does not contest the fact that Aoki is prior art under 35 U.S.C. 102(b) to the '618 Patent that was filed on June 18, 2003. **Exhibit C**, Prosecution History of the '618 Patent, at 195.

3.      In response to the opinions of Dr. Stevick, TWW's technical expert, that Aoki anticipated all asserted claims of the '618 Patent, Mr. Li, Coleman's validity expert, only disputed the claim elements related to "mattress coils" and "air chamber having a depth measured between the first panel and the second panel in the range of from about ten inches to about eighteen to about twenty-four inches."

4.      Dr. Stevick presents evidence that Aoki anticipates claims 1, 2, and 15-17. *See* **Exhibit D**, Expert Report of Dr. Glen Stevick, Ph.D. Regarding Invalidity of U.S. Patent No 7,089,618, July 6, 2021, at ¶¶ 130-31 (Claim 1), 144-49 (Claim 1), 150 (Claim 2), 158-62 (Claim 15), 164 (Claim 15), 158-62 (Claim 16, 17), 165 (Claim 16), 166 (Claim 17). *See* also **Exhibit E**,

Rebuttal Reply Expert Report of Dr. Glen Stevick, Ph.D. regarding Validity of U.S. Patent No. 7,089,618, August 12, 2021, ¶¶ 66-81.

5.     Coleman does not dispute that Aoki anticipates claims 1, 2, and 15-17 of the '618 Patent with the exception of the following two limitations: (1) "Aoki does not expressly or inherently disclose 'about ten to about eighteen to about twenty-four inches,' that is recited in claims 1 [claim element 1[c]] and 17 of the '618 Patent"; and (2) "based on the definition provided by the '618 Patent, Aoki does not disclose 'coils' [claim element 1[d] and claims 15 and 16]." **Exhibit F**, Rebuttal Expert Report of Wayne Li Regarding Validity of U.S. Patent No. 7,089,618, July 30, 2021, at ¶¶ 88, 102.

6.     U.S. Patent No. 6,701,559 to Boso et al. issued from U.S. Application No. 09/918,561, which was filed on August 1, 2001, and titled "Increased Height Inflatable Support System." Ex. B, Boso. Boso qualifies as prior art under 35 U.S.C. 102(a) and 102(e) to the '618 Patent.

7.     Dr. Stevick presents evidence that claims 1, 2, and 15-17 are obvious over Aoki in view of Boso. S*ee* Ex. D, Stevick Invalidity Report, at ¶¶ 207-21 (Claim 1), ¶ 222 (Claim 2),224 (Claim 3), 225 (Claim 16), 226 (Claim 17); Ex. E, Stevick Invalidity Reply Report, at ¶¶ 85-89 (Claims 1, 2, and 15-17). *See also* SUF ¶ 4.

8.     Coleman does not dispute that Aoki in view of Boso obviates claims 1, 2, and 15-17 of the '618 Patent with the exception of the limitations discussed in SUF ¶ 5 and that "that this disclosure in Boso does not disclose the coils that are disclosed and claimed in the ''618 Patent 'coils' for claim element 1[d] and claims 15 and 16. Ex. F, Li Validity Rebuttal Report, at ¶¶ 117-22.

9.     During prosecution of the '618 Patent, the Examiner, in a June 15, 2004 Office Action, rejected claims 1-6, 11, 16, and 20-23, stating "Boso et al. discloses an air mattress comprising…the air chamber having a depth measured between the first panel and the second panel in the range ***of from about 10 inches to about 18 to 24 inches, specifically 15 inches*** (col. 4, lines 29-35) (emphasis added). Boso et al. further discloses strips (15) disposed within the air chamber and being affixed to extending continuously from the first panel to the second panel. Boso et al. further discloses, at col. 5, lines 10-16, that 'alternative chamber support architectures, such as the 'coil construction' technique known in the art, may be employed. ***Boso et al. teaches at least one mattress coil***." Ex. C, at p. 127 (emphasis added).

10.    During prosecution of the '618 Patent, the Examiner, in a January 6, 2005 Office Action, rejected claims 1, 2, 5, 11, 16, 21-24, and 26, stating "[e]ither of the chambers formed by upper layer of 20 and upper layer of 14 or by lower layer of 14 and lower layer of 21 is disclosed as in the range of from about 10 inches to about 18 to 24 inches. Boso et al. further discloses strips (15) disposed within the air chamber and being affixed to extending continuously from the first panel to the second panel." *Id.* at 79-80.

11.    During prosecution of the '618 Patent, the Examiner, in a June 16, 2005 Final Office Action, rejected claims 1-6 and 11-15, stating "Boso et al. '559 discloses…[e]ither of the chambers formed by upper layer of 20 and upper layer of 14 or by lower layer of 14 and lower layer of 21 is disclosed as in the range of from about 10 inches to about 18 to 24 inches. Boso et al. '559 further discloses strips (15) disposed within the air chamber and being affixed to extending continuously from the first panel to the second panel." *Id.* at 51.

12.    During prosecution of the '618 Patent, the Examiner, in a December 2, 2005 Office Action, rejected claims 1-6 and 11-15, stating "Boso et al. '559 discloses … [e]ither of the

chambers formed by upper layer of 20 and upper layer of 14 or by lower layer of 14 and lower layer of 21 is disclosed as in the range of from about 10 inches to about 18 to 24 inches. Boso et al. '559 further discloses strips (15) disposed within the air chamber and being affixed to extending continuously from the first panel to the second panel." *Id.* at 27.

13.     Dr. Singhose testified in deposition on what constitutes a "coil" in a mattress in the context of the '618 Patent as follows:



**Exhibit G**, Deposition of Dr. Singhose, August 18, 2021, at 76:10-77:13. Dr. Singhose also opined on the structure of a coil disclosed in the '618 specification as follows:



*Id*. at 78:20-79:14.

14.     Dr. Stevick presents evidence that TWW's prior art product, Queen Raised Sure Grip Insta-Bed, anticipates claims 15 and 16 of the '618 Patent. *See* Ex. D, Stevick Invalidity

Report, at ¶¶ 423-27, 429-43 (Claim 15, 16), 445-447 (Claim 15), 448 (Claim 16. *See also* Ex. H, Stevick Invalidity Reply Report, at  ¶¶ 121-27 (Claim 15, 16).

15.     Coleman does not dispute that TWW's prior art product, Queen Raised Sure Grip Insta-Bed, anticipates claims 15 and 16 of the '618 Patent with the exception of the following two limitations: (1) "the #822523 Product does not disclose the "coils" recited by claims 15 and 16 of the '618 Patent"; and (2) "If this product is found to have multiple chambers, then it is my opinion that it does not disclose 'said air chamber' claimed by the '618 Patent claims 15 and 16." Ex. F, Li Validity Rebuttal Report, at ¶¶ 161-64.

16.     Dr. Stevick presents evidence that TWW's '926 Patent anticipates claims 15 and 16 of the '618 Patent. S*ee* Ex. D, Stevick Invalidity Report, at ¶¶ 329-41 (Claim 15, 16), 343 (Claim 15), 344 (Claim 16). *See* also Ex. E, Stevick Invalidity Reply Report, at ¶¶ 110-13 (Claims 15, 16).

17.     Coleman does not dispute that TWW's prior art product, Queen Raised Sure Grip Insta-Bed, anticipates claims 15 and 16 of the '618 Patent with the exception of the following two limitations: (1) "Wang '926 does not include 'said air chamber' recited by claims 15 and 16 of the '618 Patent"; and (2) "claims 15 and 16 of the '618 Patent that recite "coils" are not anticipated by Wang '926." Ex. F, Li Validity Rebuttal Report, at ¶¶ 150-52.

IV.   **Legal Standard**

Summary judgment should be rendered if the pleadings and materials show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as matter of law. Fed. R. Civ. P. 56(a). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this

showing, the burden then shifts to the party opposing summary judgment to designate specific facts showing there is a genuine issue for trial. *Id.* at 324. To survive a motion for summary judgment, the nonmovant must show that there are genuine factual issues that can only be resolved by the trier of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

V. **Argument**

A. **The '618 Patent is Invalid.**

1. **Claims 1, 2, 15, 16, and 17[4] of the '618 Patent are Anticipated by Aoki.**

The Aoki prior art reference, which pre-dates the '618 Patent by thirty years, anticipates the asserted claims of the '618 Patent. *See* SUF ¶ 5. In response to Dr. Stevick's opinions showing Aoki anticipates each element of each asserted claim, Coleman offers two arguments attempting to refute anticipation – one of which blatantly read limitations of the specification into claims and represents Coleman's double standard in claim interpretation between validity and infringement. *See* Ex. D, Stevick Invalidity Report, at ¶¶ 126-71; Ex. F, Li Validity Rebuttal Report, , at ¶¶ 84-107; SUF ¶ 5.

First, Mr. Li, Coleman's validity expert, argues that Aoki does not disclose the "mattress coils" limitation of the '618 Patent based on his interpretation that "mattress coils" are limited to a very narrow disclosure in the specification. However, Mr. Li's opinions on "mattress coils" are flawed because Coleman's infringement expert used a much broader interpretation of "mattress coils" in his opinions on the alleged infringement of TWW's products. *See Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) (citations and internal quotation

---

[4] On July 30, 2021, Coleman informed TWW that it narrowed its asserted claims for the '618 Patent to claims 1, 2, and 15-17. TWW now seeks summary judgment on these narrowed asserted claims, although Dr. Stevick offered opinions on Coleman's originally asserted claims (1, 2, 4, 10, 13-17, and 21) in his reports based on TWW's counterclaim of invalidity for the '618 Patent.

marks omitted) ("A patent may not, like a nose of wax, be twisted one way to avoid anticipation and another to find infringement.").

Second, Mr. Li argues that Aoki does not disclose the mattress height limitation of the asserted claims of the '618 Patent but ignores the specific disclosure of Aoki.

*"Mattress Coils"*

Claim 1[5] of the '618 Patent recites "at least one mattress coil disposed within said air chamber, said at least one coil being affixed to and extending continuously from the first panel to the second panel, respectively." Mr. Li, during his deposition, when asked what is required for the mattress coils of the '618 patent, responded by identifying one specific description of mattress coils in the specification which stated ████████████████████████████████

████████████████████████████████████████████████████████████

████████████████  **Exhibit H**, Deposition of Wayne Li, August 17, 2021, at 117:18-21.

Referring to the mattress coil limitation in claim 1, Mr. Li was asked ███████████

████████████████████████████████████████████████████████████

████████████████████████████████████████  and Mr. Li answered, ███████████

████████████████████████████████████████████████████████████

████████████████  *Id.* at 119:14-24 (emphasis added).

In contrast to Mr. Li's testimony, Dr. Singhose, Coleman's infringement expert, during his deposition was asked about his understanding of what constitutes a "mattress coil." Dr. Singhose opined that ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

---

[5] Asserted claims 2, 15, and 16 also includes a "mattress coil" limitation.



SUF ¶ 13 (emphasis added). Dr. Singhose further explained that the ██████████ *Id.* When asked if each coil ██████████ Dr. Singhose replied ███ *Id*. Dr. Singhose further stated ██████████ *Id.*

Coleman is improperly using a double standard by interpreting a claim term – "mattress coil" – one way for invalidity and another for infringement. To support his validity opinions, Mr. Li requires an extremely narrow interpretation for a "mattress coil" where "each coil 18 has a first elongate member 19 and the spaced second elongate member 20 joined at one end to a first plate 21 and a spaced second end to a second plate 23." In contrast, to support his infringement opinions, Dr. Singhose maintains that a "mattress coil" is simply made of "structures that extend between those two would tend to hold those surfaces, those panels together when it's inflated." Coleman cannot have it both ways. *SmithKline Diagnostics Inc. v. Helena Lab. Corp*., 859 F.2d 878, 882 (Fed. Cir. 1988) ("A claim must be interpreted the same for both validity and infringement.").

The Federal Circuit is clear that in assessing validity, a party must apply the same claim interpretation used for an infringement analysis. *See Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1339 (Fed. Cir. 2003) ("An assessment of the likelihood of validity of a patent claim over the prior art also involves a two-step process. The first step is the ***same claim construction implicated in an infringement analysis***.") (emphasis added).

As stated above, Dr. Singhose describes a "mattress coil" where "structures that extend between those two would tend to hold those surfaces, those panels together when it's inflated." As

Dr. Stevick opines, Aoki discloses such coils as "vertical tension strips" where "the box shaped air mattress (5) comprised of a top surface fabric (1), bottom surface fabric … (4), a plurality of vertical tension strips (6) are provided between the top surface fabric (1) and bottom surface fabric (2)." Ex. A, Aoki, at 2. Aoki further explains that the coil tension strips reduce bulging where the "box shaped air mattress (5) of the present invention is provided with vertical tension strips (6) along with diagonal bracing tension strips (10) as described above, so that the middle portions of the respective surfaces do not bulge and become arc-shaped when the mattress is filled with air." *Id.* at 4.

Thus, Coleman's arguments that Aoki does not disclose the "mattress coil" limitation of the asserted claims of the '618 Patent fail as Aoki discloses "mattress coils" using Dr. Singhose's interpretation of this limitation used in his infringement analysis. Accordingly, Aoki clearly discloses the use of "mattress coils" as recited in the asserted claims.

*Mattress Height*

Claims 1, 2, and 17 of the '618 Patent refer to a mattress height limitation. For example, claim 1 recites an "air chamber having a depth measured between the first panel and the second panel in the range of from about ten inches to about eighteen to about twenty-four inches." Coleman argues that Aoki does not disclose this mattress height limitation and that to meet this limitation Mr. Li stated that the reference must describe this exact range of heights. *See* Ex. F, Li Validity Rebuttal Report, at ¶¶ 88-105; Ex. H, Li Deposition, at 113:12-114:3. Coleman's argument fails as Aoki discloses mattress heights in the claimed range.

Regarding mattress height, Aoki discloses that "using diagonal bracing tension strips allows the top surface fabric and bottom surface fabric to be kept substantially at right angles to the side surface fabrics in box shaped ***air mattresses of any size***, thus making it possible to fabricate

large box shaped air mattresses." Ex. A, Aoki, at 5. Aoki's disclosure for "large box shaped air mattresses" of "any size" anticipates the limitation of "ten inches to about eighteen to about twenty-four inches" as recited in claim 1 and using similar language in claim 17. *Id.*

*Summary*

As discussed above, Aoki anticipates the asserted claims of the '618 Patent. Mr. Li, in his Rebuttal Report, argued that "Aoki lacks at least the height and coil limitations that are recited in Asserted Claims 1, 2, 15, 16, and 17." Ex. F, Li Validity Rebuttal Report, at ¶ 106. As presented here, Dr. Singhose, Coleman's infringement expert, defined "coils" as "structures that extend between those two would tend to hold those surfaces, those panels together when it's inflated." SUF ¶ 13. Aoki clearly discloses such structures in its use of "vertical tension strips (6) along with diagonal bracing tension strips (10) as described above, so that the middle portions of the respective surfaces do not bulge and become arc-shaped when the mattress is filled with air." Ex. A, Aoki, at 4-5.

In a similar manner, Aoki also discloses the use of tension strips for "box shaped *air mattresses of any size*, thus making it possible to fabricate large box shaped air mattresses." *Id.* Accordingly, Aoki anticipates claims 1, 2, and 15-17 of the '618 Patent. This Court should grant summary judgment of invalidity for the asserted claims of the '618 Patent.

## 2. Claims 1, 2, 15, 16 and 17 of the '618 Patent are Obvious over Aoki in view of Boso.

Claims 1, 2, 15, 16, and 17 are also obvious over Aoki in view of Boso. *See* SUF ¶ 7. As discussed in the preceding section, Aoki anticipates the asserted claims of the '618 Patent. Coleman only disputes Aoki's disclosure of the "mattress coil" and mattress height limitations. In the event that the Court finds that Aoki does not disclose both or either of these two limitations, the Boso reference discloses both rendering the asserted claims obvious. *See* SUF ¶ 8.

*Mattress Height*

With respect to mattress height, throughout the prosecution history of the '618 Patent the Examiner repeatedly rejected the mattress height claim limitation citing Boso. In fact, in four separate Office Actions, *i.e.*, on June 15, 2004, January 6, 2005, June 16, 2005, and December 2, 2005, the Examiner cited Boso as disclosing the claimed height range. *See* Ex. C, '618 Prosecution History, at 27, 51, 79-80, 127. For example, in the June 15, 2004 Office Action, the Examiner states "Boso et al. discloses an air mattress comprising…the air chamber having a depth measured between the first panel and the second panel in the range of from about 10 inches to about 18 to 24 inches, specifically 15 inches (col. 4, lines 29-35)" and also that "Boso et al. further discloses strips (15) disposed within the air chamber and being affixed to extending continuously from the first panel to the second panel." *See* SUF ¶¶ 9-12.

Coleman argues that Boso does not disclose this mattress height limitation and that to meet this limitation Mr. Li stated that the reference must describe this exact range of heights. *See* Ex. F, Li Validity Rebuttal Report, at ¶¶ 88-105; Ex. H, Li Deposition, at 113:12-114:3. Contrary to Mr. Li's statement, a prior art reference need not disclose the exact range as the disclosure of a point in that range is sufficient for anticipation. *See Ineos USA LLC v. Berry Plastics Corp.*, 783 F.3d 865, 869 (Fed. Cir. 2015) ("We hold that the district court correctly granted summary judgment of anticipation. ***When a patent claims a range, as in this case, that range is anticipated by a prior art reference if the reference discloses a point within the range***.") (*citing Titanium Metals Corp. v. Banner*, 778 F.2d 775, 782 (Fed. Cir. 1985)) (emphasis added).

Coleman also argues that Boso "does not disclose a double height mattress with a single chamber of about 10 to about 18 to about 24 inches, which is recited by independent claim 1 of the '618 Patent" such that it "teaches away from a single chamber/layer air mattress of about 10

inches to about 18 to about 24 inches." Ex. F, Li Validity Rebuttal Report, at ¶ 95. But Coleman

has argued repeatedly that the '618 Patent *is not limited to a single air chamber*. In interpreting

the Court's claim construction order, Dr. Singhose, Coleman's infringement expert, stated: "In

view of the Court's Order, it appears that the very argument regarding whether 'an air chamber'

or 'the air chamber' was necessary limited to a single air chamber was specifically rejected by the

Court." **Exhibit I**, Rebuttal Expert Report of William Singhose, Ph.D. Regarding Infringement of

U.S. Patent No. 7,089,618, at ¶ 12. Thus, Coleman's argument here requiring that a reference

disclose the height of a single air chamber mattress rings false.

*Mattress Coils*

With respect to mattress coils, Boso discloses "[w]ithin upper chamber 20 and lower

chamber 21, PVC strips 15 can be attached to the inner surface of the top and bottom of each

chamber, illustrated as 18 and 19" and that "[i]t should be apparent to one skilled in the art that

alternative chamber support architectures, such as the '***coil construction***' technique known in the

art, may be employed without departing from the spirit or scope of the present invention." Ex. B,

Boso, at col. 5:8-16 (emphasis added).

Regarding Boso and the mattress coil limitation, Coleman reiterates the same argument it

used for Aoki stating Boso does not disclose the specific structure described in the specification

for mattress coils. As discussed in Section V.A.1, this argument fails in light of the interpretation

of mattress coils Coleman used in its infringement analysis. Mr. Li also points to the disclosure in

Boso showing the mattress coils "attached to the inner surface of the top and bottom of each

chamber" as opposed to through the entire height of the air mattress. Ex. F, Li Validity Rebuttal

Report, at ¶ 119. But Dr. Stevick was clear in his opinion that it would be obvious to adapt the

disclosure of Boso showing coils extending from the top to the bottom of an air chamber to a single

air chamber (as argued by Coleman) mattress. *See* Ex. D, Stevick Invalidity Report, at ¶ 218; Ex.

E, Stevick Invalidity Reply Report, at ¶¶ 88-89.

*Motivation to Combine*

For both the mattress height and mattress coil limitations, Dr. Stevick explained how a

POSA would have been motivated to combine the disclosure of Boso with Aoki:

> 215. A POSA would recognize that users were demanding deeper air mattresses that provided more comfort. Thus, it would have been obvious to adapt Aoki to accommodate the deeper air mattress such as the Boso mattress that includes a 10 inch-high air chamber and a 15 inch-high air chamber.

> 216. Aoki and Boso provide a teaching, suggestion, or motivation to combine Aoki's box shaped air mattresses of any size with Boso's 10 and 15 inch high air chambers. Such a combination represents combining prior art elements (air mattresses) according to known methods (double height or 10 to 25" airbed). Therefore, in my opinion, the teachings of Aoki in combination with Boso to render this claim element obvious.

> 219. A POSA would recognize the use of coils or I-beams was a matter of design choice and could be used interchangeably. Thus, it would have been obvious to adapt Aoki to accommodate the coils of Boso in place of Aoki's tension strips. Further, Aoki and Boso provide a teaching, suggestion, or motivation to combine Aoki's vertical tension strip design with Boso coils. Such a combination represents combining prior art elements (air mattress internal supports) according to known methods (the use of coils). Therefore, in my opinion, the teachings of Aoki in combination with Boso render this claim element obvious.

Ex. D, Stevick Invalidity Report, at ¶¶ 215-19.

*Summary*

If the Court finds that Aoki alone does not anticipate the asserted claims of the '618 Patent,

the asserted claims are obvious over Aoki in view of Boso. For Aoki, Coleman only disputes the

mattress height and mattress coils limitation. For mattress height, Boso discloses specific mattress

heights in the claimed range of the '618 Patent. With respect to mattress coils, Boso discloses coils,

consistent with the interpretation of mattress coils used by Coleman in its infringement analysis,

which would have been obvious for a POSA to extend from the top to the bottom of a single air

mattress. Finally, Dr. Stevick explained a POSA would have been motivated to combine the teachings of Boso and Aoki to adapt Aoki for air mattress in the height of the claimed range and to accommodate the coils of Boso in place of the vertical tensioning strips of Aoki. Accordingly, Aoki in view of Boso renders the asserted claims of the '618 Patent obvious. This Court should grant summary judgment of invalidity for the asserted claims of the '618 Patent.

### 3. Claims 15 and 16 of the '618 Patent are Invalid as Anticipated.

#### i. Claims 15 and 16 of the '618 Patent are Anticipated by TWW's Sure Grip Insta Bed.

TWW's prior art product, the Queen Raised Sure Grip Insta-Bed, model no. 822523 ("TWW's prior art product"), anticipates asserted claims 15 and 16 of the '618 Patent under 35 U.S.C. § 102(a), which states "A person shall be entitled to a patent unless (a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent." *See* SUF ¶ 14. As discussed below, this TWW product was known in the United States prior to the date of invention, June 18, 2003, of the '618 Patent[6] and included all of the limitations of claims 15 and 16 of the '618 Patent.

TWW sold its prior art product in the United States through a distributor, American Recreation Products.[7] The 2002 American Recreation Products shipping manifest (**Exhibit J**, ARP 2002, TWW-COL-00038714) shows the TWW prior art product described as "Queen Raised Sure Grip Inst Bed." Further, ARP 2002 shows that over ▮▮▮▮ units of the #822523 entered the United States in 2002 (10/19/2002 – 11/5/2002) with a destination of ▮▮▮▮▮▮▮, prior to the '618 Patent

---

[6] June 18, 2003 is the filing date of the application which led to the '618 Patent. Coleman has not asserted an earlier date of invention.

[7] American Recreation Products is now known as Exxel Outdoors, LLC and produced documents in response to a third party subpoena from Coleman.

filing date of June 18, 2003. Ex. J, ARP 2002. As shown, and reproduced below, in a 2002 Wenzel[8] catalog, the model #822523 is illustrated along with models #822520 in a twin size and model #822522 in a full size. *See* **Exhibit K**, EXXEL21_210034924 at 210034932.



In addition, another American Recreation Products document shows ████████ of TWW's prior art product, model no. 822523, being returned to the Wenzel division from the Home Shopping Network as of March 12, 2003. *See id.* at EXXEL21_210045998. All three of these documents demonstrate that TWW's prior art product, airbed model no. 822523, was "was known or used by others in this country…before the invention thereof by the applicant for patent." *See* 35 U.S.C. § 102(a).

Coleman only makes a single argument attempting to refute that TWW's prior art product anticipates claims 15 and 16. *See* SUF ¶ 15. Mr. Li argues that claims 15 and 16 are not anticipated by TWW's prior art product "because the #822523 Product does not disclose the 'coils' recited by claims 15 and 16 of the '618 Patent." Ex. F, Li Validity Rebuttal Report at ¶ 162. First, as discussed in Sections V.A.1 and V.A.2, Mr. Li applied a narrow interpretation of "mattress coils" that was completely different than the interpretation Coleman used for its infringement analysis. Under Federal Circuit law, as discussed in Section V.A, Coleman is required to use the same interpretations for its infringement analysis as its validity analysis. Thus, Coleman's interpretation

---

[8] Wenzel was a division of American Recreation Products.

of the "mattress coils" limitation is Dr. Singhose's statement that the "mattress coils" are "structures that extend between those two would tend to hold those surfaces, those panels together when it's inflated." SUF ¶ 13.

TWW's product specification sheet for TWW's prior art product, model no. 822523, shows an external view of the air mattress. *See* **Exhibit L**, TWWCOL-00026953. An annotated illustration of the 822523 Insta Bed is reproduced below:



Ex. D, Stevick Invalidity Report, at ¶ 437.

Claims 15 and 16 depend from claim 13 and, *e.g.*, claim 16 adds the additional limitation: a plurality of mattress coils disposed within said air chamber, each said coil being separately affixed to and extending continuously from the top panel to the bottom panel, respectively."[9] (ECF-1-1 at cl. 16). The TWW prior art product, model no. 822523 Insta Bed, discloses a "plurality of mattress coils disposed within said air chamber affixed to and extending continuously from the

---

[9] Claim 15 adds the additional limitation: "at least one mattress coil disposed within said air chamber, said at least one coil being affixed to and extending continuously from the top panel to the bottom panel, respectively." (ECF No. 1-1 at cl. 15).

top panel to the bottom panel" as shown in annotated Ex. K below showing a cutaway side view which discloses the "mattress coils."



See Ex. D, Stevick Invalidity Report, at ¶ 443.

The TWW prior art product discloses the "mattress coils" limitation, particularly in light of Dr. Singhose's interpretation that these coils are "structures that extend between those two would tend to hold those surfaces, those panels together when it's inflated." SUF ¶ 13. TWW's prior art product anticipates claims 15 and 16 of the '618 Patent. The only other point Mr. Li makes with respect to the TWW prior art product is "[i]f this product is found to have multiple chambers, then it is my opinion that it does not disclose 'said air chamber' claimed by the '618 Patent claims 15 and 16. *See* SUF ¶ 15. First, this statement contradicts Coleman's representations in its motion for summary judgment that the '618 Patent is not limited to a single air chamber. (*See* ECF No. 135 at 24 ("Court's express findings on this issue that the term "air chamber" does not limit the invention to mattresses with only "a single air chamber.")). Second, as illustrated above, and discussed by Dr. Stevick in his Invalidity Report, the TWW prior art product discloses a plurality of mattress coils within a single air chamber. *See* Ex. D, Stevick Invalidity Report, at ¶ 443.

Accordingly, TWW's prior art product anticipates claims 15 and 16 of the '618 Patent. This Court should grant summary judgment of invalidity for claims 15 and 16 of the '618 Patent.

ii. **Claims 15 and 16 of the '618 Patent are Anticipated by TWW's '926 Patent as Coleman Has Accused TWW Products Which Practice TWW's Patent of Infringing the '618 Patent.**

Coleman's has accused a number of TWW products of infringing, *inter alia*, claims 15 and 16 of the '618 Patent. As discussed by TWW's expert, these same accused products all practice TWW's '926 Patent, which Coleman does not dispute. Coleman also does not dispute that TWW's '926 Patent is prior art to the '618 Patent, as the application which led to the '926 Patent was filed on August 29, 2002, almost ten months before the application which led to the '618 Patent. Thus, Coleman has asserted the '618 Patent against TWW products which practice a patent that is prior art to the '618 Patent. A fundamental tenet of patent law is "[t]hat which infringes if later anticipates if earlier." *In re Schreiber*, 128 F.3d 1473, 1480 (Fed. Cir. 1997) (internal citations omitted).

In his Rebuttal Report on noninfringement of the '618 Patent, Dr. Stevick stated that "[a]ll of the remaining Accused Products at issue I understand practice TWW's Sure Grip design, disclosed in the '926 Patent." **Exhibit M**, Expert Report of Dr. Glen Stevick, Ph.D. Regarding Noninfringement of U.S. Patent No. 7,089,618, July 30, 2021, at ¶ 33. As an example, the image below shows the inflatable air mattress built-in pump face of a TWW Accused Product that is marked with the '926 Patent (in red). **Exhibit N**, TWWCOL-00026070.



Importantly, the features Coleman points to as allegedly infringing the '618 Patent are features disclosed and claimed in TWW's '926 Patent. Specifically, the image to the left below is a cut-away of a TWW accused product showing the elements of the asserted claims of the '618 Patent. This identification of elements from the '618 Patent corresponds to the disclosure of the '926 Patent. In a comparison of Figure 7 (to the right below) of the '926 Patent to the cutaway image of a TWW Accused Product, (1) corresponds to the "First (Top) Panel"; (2) corresponds to the "Second (Bottom) Panel"; (5) corresponds to the "Side Panel"; (4) corresponds to the "Second Side Support Beam";[10] and (31) corresponds to the "Coil."



Cutaway image of TWW Accused Product from **Exhibit O**, Expert Report of William Singhose, Ph.D. Regarding Infringement of U.S. Patent No. 7,089,618, July 6, 2021, at ¶ 49.



'926 Patent, Fig. 7, ECF No. 18-1.

Consistent with the above, Dr. Stevick also opined that TWW's '926 Patent anticipates claims 15 and 16 of the '618 Patent. *See* SUF ¶ 16. Coleman makes only two arguments in an

---

[10] Claims 15 and 16 of the '618 Patent only claim "at least one side support beam" as opposed to a first and second side support beam in independent claim 1.

attempt to refute anticipation by the '926 Patent. *See* SUF ¶ 17. First, Coleman argues that the '926 Patent claims an air mattress with at least two air chambers and "does not include 'said air chamber' recited by claims 15 and 16 of the '618 Patent." Ex. F, Li Validity Rebuttal Report, at ¶ 151. However, as discussed in Section V.A.3.ii, this statement contradicts Coleman's representations in its motion for summary judgment that the '618 Patent is not limited to a single air chamber. (*See* ECF No. 135 at 24 ("Court's express findings on this issue that the term 'air chamber' does not limit the invention to mattresses with only 'a single air chamber.'")). Second, Coleman argues that the '926 Patent does not disclose the "mattress coil" limitations of claim 15 and 16 of the '618 Patent. But, as discussed in Section V.A, Coleman's argument fails as Mr. Li applied a much narrower interpretation of "mattress coils" for validity than Dr. Singhose used for infringement, contrary to Federal Circuit law. The '926 Patent discloses the "mattress coil" limitations at least under the interpretation Coleman used for its infringement analysis. TWW's '926 Patent anticipates claims 15 and 16 of the '618 Patent.

By accusing TWW products that practice the '926 Patent of infringing clams 15 and 16 of the '618 Patent ("that which infringes if later"), Coleman has acknowledged that the '926 Patent anticipates claims 15 and 16 of the '618 Patent ("anticipates if earlier"). *See In re Schreiber*, 128 F.3d at 1480. This Court should grant summary judgment of invalidity for claims 15 and 16 of the '618 Patent.

## B.  The '926 Patent is Not Invalid under 35 U.S.C. §§ 101 and 112.

### 1.  35 U.S.C. §101

TWW's '926 Patent is not invalid under 35 U.S.C. § 101 as lacking utility under Federal Circuit law, as Coleman argues, because the '926 Patent has both a stated objective and the claimed

inventions enjoyed commercial success. Coleman's arguments to the contrary completely ignore the requirements for utility under Federal Circuit precedent.

Mr. Li, in his opening report alleges that the "Asserted claims are invalid under 35 U.S.C. § 101 as lacking utility." **Exhibit P**, Opening Expert Report of Wayne Li, July 6, 2021, at ¶ 31. Mr. Li further states that "it is my opinion that the mattress that is the subject of the Asserted Claims does not actually function as a 'suction cup'" and that "it is my opinion that the Asserted Claims are invalid under 35 U.S.C. § 101 as lacking utility." *Id.* at ¶ 166.

The test for invalidity under 35 U.S.C. § 101 related to utility is that "When a properly claimed invention meets at least one stated objective, utility under § 101 is clearly shown." *Raytheon Co. v. Roper Corp.*, 724 F.2d 951, 958 (Fed. Cir. 1983) (internal citations omitted).

*Stated Objective*

The '926 Patent notes that "[w]hen a person moves onto a top surface of the bed, air is ejected from the air bag so that the bed acts as a suction cup, there by fixing the bed relative to the support surface." (ECF No. 18-1 at Abstract). The '926 Patent also states that "the main object of the present invention is to provide an inflatable bed that is capable overcoming the aforementioned drawbacks of the prior art" where the "invention relates to an inflatable bed, more particularly to an inflatable bed that can be produced at a relatively low cost." (ECF No. 18-1 at col. 1:6-8 and 63-65). Thus, the '926 Patent clearly provides "at least one stated objective" as required by Federal Circuit precedent.

*Commercial Success*

Utility is also supported by the existence of commercial success for the patented inventions. *See Raytheon Co. v. Roper Corp.*, 724 F.2d 951, 959 (Fed. Cir. 1983) (internal citations omitted)

("[p]roof of such utility is further supported when, as here, the inventions…have on their merits been met with commercial success.").

The '926 Patent has also met with significant commercial success. For example, TWW sold ▮▮▮▮▮ air beds during the damages period that practice Sure Grip technology, which is the commercialization of the inventions in the '926 Patent. **Exhibit Q**, Rebuttal Expert Report of Dr. Glen Stevick, Ph.D. regarding Validity of U.S. Patent No. 6,754,926, July 30, 2021, at ¶ 276. In addition, a sales production report from 2002 highlights the shipment of over ▮▮▮▮ units of model 822523 "Queen Raised Sure Grip Inst Bed" in October and November of 2002. *Id.*

TWW manufactured and sold many TWW Sure Grip Products that practice the '926 Patent claims including at least Serta-branded airbeds and Insta-Bed-branded airbeds. Many of the TWW Products advertise the resulting suction cup effect of the airbed construction, claimed in the '926 Patent, as the "Sure Grip Stability System." *Id.* at ¶ 271. For example, TWW's Serta ST840007 Queen Raised Headboard Airbed featured the "Patented Sure Grip Bottom Creates Natural Suction Between The Airbed And The Floor Which Eliminates Sliding" and "Securely Grips The Floor For Added Stability." *Id.*

Retailers such as Walmart that re-sell TWW products including the Serta Elevated Diamond Coil Airbed, Queen that embody the claimed inventions of the '926 Patent advertise the "Patented Sure Grip bottom design creates a suction between the bed and the floor which keeps your airbed in place all through the night." *Id.* at ¶ 272.

Many independent industry reviews emphasized the benefits of TWW's patented airbed design. For example, a TWW Sure Grip Product was praised by Editor-in-Chief of BestAirMattressGuide.com in an article titled "Insta-Bed Queen Raised Sure Grip Bottom with Built-In Pump Review" and dated October 29, 2013. *Id.* at ¶ 273. The article emphasized TWW's

design was "…convenient when it comes to getting in or out of them." *Id*. The article also mentioned that "you will be able to lie down or get out of the mattress quite conveniently," that it "[t]ightly grips the room's floor without sliding," and the "convenient height of the mattress" at 22 inches. *Id*. Further, the United States Patent and Trademark Office considered § 101 and did not issue a rejection on § 101 and the '926 Patent issued.

The '926 Patent meets the Federal Circuit's requirements for utility under 35 U.S.C. § 101 as the '926 Patent has a stated objective and the claimed inventions have met with commercial success. Accordingly, the Court should grant summary judgment of no invalidity of the '926 Patent under 35 U.S.C. § 101.

### 2.  35 U.S.C. § 112

TWW's '926 Patent is not invalid under 35 U.S.C. §  112 for either indefiniteness or best mode. Coleman argues indefiniteness and best mode based only on the one "whereby" clause of the asserted claims which includes "so that said bed acts as a suction cup." Based only on this one portion of the claims, Coleman argues that the '926 Patent is indefinite and lacks disclosure of a best mode. Coleman's argument here fails as the Court has already addressed indefiniteness in its Claim Construction Order and patent law no longer permits a defense of invalidity for best mode.

35 U.S.C. § 112(a) states that "[t]he specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor or joint inventor of carrying out the invention."

Importantly, Coleman's incorrect entering assumption for all its arguments is that some detailed description of how a suction cup functions is required for the asserted claims of the '926

Patent. But, as discussed at length in TWW's Opposition to Coleman's Motion to Strike Certain Opinions of Dr. Stevick, the asserted claims of the '926 Patent are apparatus claims and not method claims. (*See* ECF No. 151 at 4-5). This "whereby" clause does not add structural limitations to the claim but, rather, recites the results of the structural limitations in the claim. (*Id.*); *see Curtis Mfg. Co. v. Plasti-Clip Corp.*, 135 F.3d 778, 1998 WL 45452, at *10 n.5 (Fed. Cir. Feb. 6, 1998) (Unpublished) (internal citations omitted) ("A 'whereby' clause that merely states the result of the limitations in the claim adds nothing to the patentability or substance of the claim."). Coleman argues for a disclosure of the so-called "suction cup effect" that is not required as this is the result of the structural claim limitations in the '926 Patent and not a function in a method claim that must be disclosed.

### Indefiniteness

Coleman's argument that the asserted claims of the '926 Patent are indefinite because of the claim term "fixing" should be rejected on its face as the Court has already ruled on indefiniteness. In the Court's Claim Construction Order, the Court rejected Coleman's argument that the claims were indefinite due to the claim term "fixing" stating: "[I]t's clear that infringement occurs when one 'makes, uses, offers to sell, or sells' a system that uses the claim suction cup structure to 'fix' a mattress to a support surface." (ECF No. 71 at 23). The Court should reject Coleman's attempt to revisit the Court's decision and grant summary judgment of no invalidity of the '926 Patent for indefiniteness.

### Best Mode

In arguing for invalidity based on best mode, Coleman ignores that the America Invents Act changes 35 U.S.C. § 282 such that best mode may no longer be used as a basis for invalidity. See 35 U.S.C. § 282 ("(3) Invalidity of the patent or any claim in suit for failure to comply with—

(A) any requirement of section 112, ***except that the failure to disclose the best mode shall not be a basis on which any claim of a patent may be canceled or held invalid or otherwise unenforceable***; ….") (emphasis added). As such, Coleman has no legal basis to argue invalidity based on best mode.

## VI.    Conclusion

For the reasons discussed herein, TWW respectfully requests that the Court grant summary judgment as to:

- Invalidity for all asserted claims of the '618 Patent as anticipated by Aoki and/or obvious over Aoki in view of Boso;

- Invalidity of claims 15 and 16 of the '618 Patent as anticipated by TWW's prior art product;

- Invalidity of claims 15 and 16 of the '618 Patent as anticipated by TWW's '926 Patent as Coleman has accused TWW products of infringement that practice the '926 Patent;

- No invalidity of TWW's '926 Patent under 35 U.S.C. § 101 for lack of utility; and

   No invalidity of TWW's '926 Patent under 35 U.S.C. § 112 for indefiniteness and best mode.


Dated: November 10, 2021                          Respectfully submitted,

                                         By: /s/ Alexandra M. Gabriel
                                         Alexandra M. Gabriel (VSB No. 89185)
                                         William R. Poynter (VSB No. 48672)
                                         David Sullivan (VSB No. 45027)
                                         KALEO LEGAL
                                         4456 Corporation Lane, Suite 135
                                         Virginia Beach, VA 23462
                                         Phone: 757.238.6383
                                         Fax: 757.304.6175
                                         agabriel@kaleolegal.com
                                         wpoynter@kaleolegal.com
                                         dsullivan@kaleolegal.com

                                         Thomas M. Dunham (pro hac vice)
                                         J. Michael Woods (pro hac vice)
                                         **RuyakCherian LLP**
                                         1901 L St. NW, Suite 700

Washington, DC 20036
Telephone: (202) 838-1560
tomd@ruyakcherian.com
michaelw@ruyakcherian.com

Korula Cherian
Robert Harkins
**RuyakCherian LLP**
1936 University Ave., Ste. 350
Berkeley, CA 94702
Telephone: (510) 944-0190
sunnyc@ruyakcherian.com
bobh@ruyakcherian.com

*Attorneys for Team Worldwide Corporation*
*and Cheng-Chung Wang*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing on November 10, 2021 with the

Clerk of Court using the CM/ECF system, which will send a notification of such filing to all

registered users.

<div style="margin-left: 40%;">

By: _/s/ Alexandra M. Gabriel_____
Alexandra M. Gabriel (VSB No. 89185)
KALEO LEGAL
4456 Corporation Lane, Suite 135
Virginia Beach, VA 23462
Phone: 757.238.6383
Fax: 757.304.6175
agabriel@kaleolegal.com

</div>