IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| THE COLEMAN COMPANY, INC.<br><br>Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>TEAM WORLDWIDE CORPORATION,<br><br>Defendant/Counterclaim Plaintiff. | C.A. No: 2:20-cv-351-RGD |

**REPLY IN SUPPORT OF COLEMAN'S MOTION FOR SUMMARY JUDGMENT OF COLEMAN'S NON-INFRINGEMENT OF THE '926 PATENT AND OF TWW'S INFRINGEMENT OF THE '618 PATENT**

No material facts are in dispute here, only TWW's incorrect interpretation of the law and its attempt to reconstrue the claims to avoid infringement. Coleman moved for summary judgment of infringement of Coleman's '618 Patent and of non-infringement of TWW's '926 Patent. TWW's response (Dkt. 156) fails to raise a genuine issue of material fact that precludes summary judgment on either of these issues.

First, summary judgment of non-infringement of TWW's '926 Patent should be granted. TWW's only evidence on these issues—Dr. Stevick's asserted opinions—are fatally flawed and do not account for required limitations of the '926 patent claims. Accordingly, TWW cannot carry its burden of proof on infringement, warranting summary judgment. Indeed, TWW does not dispute that "[n]either TWW nor Dr. Stevick[] … quantify any amount of suction purportedly produced by any alleged structure of the Coleman products." (Dkt. 135 at 6 (admitting Coleman's SMF 16)). TWW also does not dispute that Dr. Stevick failed to measure any force "fixing" any Coleman product in place—or that Dr. Stevick fails to provide evidence of a concave air bag between the bottom of any Coleman air bed and a support surface.

1

Perhaps recognizing that it lacks proof that any Coleman air bed has structure to act as a "suction cup" or "fix" it relative to the support surface, TWW now argues that the claim element (referred to as "1g") is not a limitation of the '926 Patent. But the prosecution history, this Court's prior Claim Construction Order, and the claim language itself show that this element is a limitation of the '926 Patent. Furthermore, TWW's own expert asserts that the '926 Patent is valid *because of this claim element*. Patents must be interpreted consistently for validity and infringement, and the Court should reject TWW's attempt to rely on element 1g for validity and ignore it for infringement.

Second, summary judgment of infringement of Coleman's '618 Patent is warranted. There are no factual disputes regarding the structure of the TWW products. Instead, TWW makes legally incorrect arguments about claim construction issues already resolved by this Court. Such arguments do not raise a disputed issue of material fact and are properly resolved on summary judgment.

The Court should enter summary judgment in favor of Coleman on both issues.

**I.   The Coleman Products do not infringe the asserted claims of the '926 Patent because Claim element 1g is a limitation and TWW has failed to show that any Coleman Product includes this and other elements.**

**A.   Claim element 1g of the '926 Patent is a limitation that must be met for a product to infringe.**

Claim element 1g of the '926 Patent is a claim limitation that must be met for any Coleman product to infringe. Claim element 1g recites:

> whereby, when a person moves onto said top surface of said top sheet, air is ejected from said concave air bag via **a space** between said bottom sheet and the support surface so that said bed acts as **a suction cup**, **thereby fixing said bed relative to the support surface**.

Dkt. 18-1 at col. 5, lines 33–38, *emphasis added*.

First, TWW's argument that element 1g is not a limitation contradicts the Claim Construction Order. Dkt. 71. ("the Order"). In the Order, the Court construed element 1g in part by interpreting the term "fixing." Dkt. 71 at 23. If claim element 1g was not a limitation, there would be no reason for the Court to interpret the meaning of claim element 1g because its meaning would be irrelevant to the infringement analysis. And if TWW contended that the *entire* whereby clause did not "impose additional claim limitations," as it now argues at summary judgment (e.g., Dkt. 156 at 3), then it was incumbent on TWW to say so during the claim construction briefing.[1] So the Order construing claim element 1g indicates that this Court has already found that element 1g is a limitation. *See Lonestar Inventions LP v. Nintendo of Am., Inc*, 2009 WL 1011734, at *9 (E.D. Tex. Apr. 14, 2009) (finding that a whereby clause required construction because it added a "meaningful limitation" to the claim).

The Court's analysis in the Order also shows that this Court has interpreted 1g as a claim limitation. Specifically, the Order held that it is "clear that infringement occurs when one … sells a system that uses the claim suction cup structure to 'fix' a mattress to a support surface." *See* Dkt. 71 at 23 (internal quotations omitted). Therefore, TWW is wrong to argue that 1g is not a limitation because this Court has already held that 1g is a limitation that the Coleman beds must meet to infringe.

Second, claim element 1g is a claim limitation because it sets forth structural limitations that are material to patentability, and does not merely recite a "result" as TWW contends. The

---

[1] TWW did not argue during briefing on the claim construction issues that any limitation in the asserted '926 Patent claims were non-limiting. *See generally* Dkt. 56 at 12. TWW further failed to respond to Coleman's interrogatory specifically asking whether it believed any limitations were non-limiting. *See* Exhibit B, TWW's response to Coleman's interrogatory No. 15. TWW's belated attempt to now introduce such arguments on summary judgment is thus improper, as it has waived such arguments. *Wechsler v. Hunt Health Sys., Ltd.*, 1999 WL 672902, at *2 (S.D.N.Y. Aug. 27, 1999) ("In this case, plaintiff does not dispute that failure to disclose a position in response to a contention interrogatory can result in preclusion of that position.").

whereby clause of the '926 Patent recites a new structure ("a space") from which air is ejected from the concave air bag. Therefore, the whereby clause recites additional structure, and not merely a result. *See Lonestar Inventions*, 2009 WL 1011734, at *9. Additionally, claim element 1g is a limitation because it adds positive limitations to the other claims. As the Order explains, the concave air bag in claim 1 must have sufficient "height" to generate suction as required in element 1g. Dkt. 71 at 19. So, the suction cup structure claimed in element 1g affects the other structures in claim 1. Therefore, claim element 1g is a limitation because it adds positive structural limitations to claim 1.

Third and finally, claim element 1g is material to patentability, and therefore a limitation. *Hoffer v. Microsoft Corp.*, 405 F.3d 1326, 1329 (Fed. Cir. 2005). As an initial matter, the examiner reviewing the original patent application included terms directed to the "suction cup" within the clause in his prior art searching, indicating the patent examiner viewed the clause as material to the patentability analysis. *See* Dkt. 52-11 at 37–3.9.

And consistent with the examiner's patentability analysis, TWW's expert agrees that that claim element 1g is a limitation on the '926 Patent. For example, TWW does not dispute that Dr. Stevick's report on the validity of the '926 Patent relies on claim element 1g to purportedly distinguish the '926 Patent from the prior art. *Compare* Dkt. 135 at 6, ¶ 15 to Dkt. 156 at 2 ¶ 15. Specifically, Dr. Stevick opines that a prior art reference fails to anticipate the '926 Patent because it does not disclose a suction cup effect. *See* Dkt. 137 ¶ 170. So TWW's expert, like the Patent Office, views the suction cup effect as material to patentability.[2] And Patent claims "must be interpreted and given the same meaning for purposes of both validity and infringement

---

[2] TWW has most recently pointed to the limitations found in the whereby clause in support of its claim of utility for the '926 Patent, asserting the language as a "stated objective" of the patent. *See* Dkt. 171 at 27–28.

analyses." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001). Therefore, Dr. Stevick's assertion that 1g distinguishes the '926 Patent from the prior art is also a concession that 1g is a claim limitation that must be met for the '926 Patent to be infringed.³

In sum, the above points show that claim element 1g is a limitation that must be met for infringement, and this Court, TWW's expert, and the U.S. Patent Office agree on this point.

Against these undisputed facts, TWW asks this Court to ignore the alleged novelty of the '926 Patent by decreeing that the 50-word "whereby" clause at the end of claim 1 of the "'926 Patent is non-limiting. This attempt should be rejected. TWW argues that the whereby clause in the '926 Patent merely "states the result" of limitations and is not a limitation itself. *See* Dkt. 156 at 9. TWW relies on cases where the "whereby" clause merely states an intended result, without further reciting structure, citing *Titan Atlas Mfg. Inc. v. Sisk*, 894 F. Supp. 2d 754, 763 (W.D. Va. 2012) *Hoffer v. Microsoft Corp.*, 405 F.3d 1326, 1329 (Fed. Cir. 2005); and *Curtis Mfg. Co. v. Plasti-Clip Corp.*, 135 F.3d 778, 1998 WL 45452, at *10 n.5 (Fed. Cir. Feb. 6, 1998). But as the *Hoffer* court stated, when a patent claim includes a clause beginning with the term "whereby" (a "whereby clause"), and that clause is "an integral part of the invention," then the clause is "material to patentability, [and] it cannot be ignored to change the substance of the invention." *Hoffer,* 405 F.3d at 1329. And both *Curtis* and *Titan* acknowledge that when a whereby clause recites features that are "structural in character and import into the count the structural features" that the claim seeks to produce, then the whereby clause is limiting. See Titan, 894 F. Supp. 2d 754, 762 (quoting *Scheinman v. Zalkind,* 27 C.C.P.A. 1354, 112 F.2d 1017, 1019 (1940); *Curtis* 1998 WL 45452, at *10 n.5 (citing *Scheinman*)). Here, claim element 1g is plainly material to patentability and thus is a limitation of the '926 Patent. Indeed, the "whereby" clause positively

---

³ As noted in Coleman's opening brief, TWW's expert admitted at deposition that all elements of the '926 patent claims were limiting. *See* Dkt. 135 at 13.

states that the structure of the "concave air bag" is configured to express air and act as a suction cup so that the bed is fixed to the support surface. This not simply an "intended result," but instead language that informs the required claimed air bed structure, is material to the alleged invention, and is a positive recitation of what is required by the claimed invention. *Mintz v. Dietz & Watson, Inc.*, 2009 WL 3378985, at *2 (S.D. Cal. Oct. 19, 2009) *citing Scheinman*, 112 F.2d 1017, 1019 (1940).

This case is similar to *Lexington Luminance LLC v. Amazon.com, Inc.*, 2016 WL 1337254 (D. Mass. Apr. 4, 2016). There, the patent-at-issue was directed to a light emitting diode designed to reduce defects. Claim 1 of the patent included a whereby clause reciting how the defect reduction was achieved. *Id*. at 4. That Court held that the whereby clause was a limitation because "the clause establishes the structure by which reduction in defect density is achieved" *Id*. at 8. The Court explained that the whereby clause not only explained the goal of the invention, but also the "structure that causes" that goal to be met. *Id*.

In the present case, the '926 Patent is directed to an air mattress that has a concave airbag that "acts as a suction cup" and is fixed in place by that structure. Dkt. 18-1 at 5:33–38, Abstract. As both the Abstract o and the specification explain, when a person moves onto the top of the bed, air is ejected from the concave air bag 105 between the bottom of the bed and the support surface "*so that* the bed 100 acts as a suction cup, thereby fixing the bed" to the support surface. *Id.* at 4:24–34 (emphasis added), Abstract. "When the person leaves the bed … the concave air bag" is "once again filled with air," so that the bed "can be easily moved at this time." *Id.* The specification further explains that "in actual practice" the bed has certain relative proportions between the upper air chamber and concave air bag "*so that*" there can be "sufficient space to permit downward deformation of the upper air chamber." *Id*. at 4:35–40 (emphasis added). The

suction cup fixing the bed to the support surface is therefore an integral part of the invention. *Hoffer,* 405 F.3d at 1330.

The "whereby" clause in claim 1 of the '926 Patent "establishes the structure" of how that fixing effect is achieved. *Lexington Luminance*, 2016 WL 1337254 at *8. Specifically, claim 1 of the '926 patent recites "a space" where air is ejected, and that the bed acts as "a suction cup." Dkt. 18-1 at 5:35–38. Therefore, like the claim element at issue in *Lexington Luminance*, claim element 1g does more than just state the goal of the '926 Patent. Instead, element 1g recites a new structure ("a space") that allows air to be exhausted from under the mattress so the bed acts as "a suction cup" structure. Without claim element 1g, nothing in the claims describes the space for exhausting air, the suction cup structure that is formed when the bed acts as a suction cup, or how the "fixing" effect is achieved. Therefore, claim element 1g is a claim limitation that must be met for infringement because it adds structures to the claim and does not merely recite a result.

Moreover, as described above, claim element 1g also adds to the substance of Claim 1 by requiring that the concave air bag have a minimum height in order to generate the suction cup effect. See Dkt. 71 at 19. Accordingly, the whereby clause at issue here is "material and substantive," and this case is unlike *Titan*, or *Curtis* where the whereby clause only recited an inherent effect or mere result. *See Titan*, 894 F. Supp. 2d 754, 763; *Curtis*, 135 F.3d 778.

Finally, the claims should be interpreted in line with the "major objective" of the '926 patent—which is to create a suction cup structure that fixes the mattress in place. *See Hill-Rom Co. v. Kinetic Concepts, Inc.*, 209 F.3d 1337, 1341 (Fed. Cir. 2000); *see e.g.* Dkt. 18-1 at Abstract, 2:25–27, 4:25–30, 5:33–38 (examples showing that the purpose of the claims is a suction cup effect). Indeed, both TWW and its expert have repeatedly described the '926 patent

claims as being directed to creating a suction cup. Dkt. 114, at 60:10–61:23 (TWW counsel explaining, at the claim construction hearing, the purpose of the patent was to have a "bed to create suction under it" and that TWW commercialized the technology and promoted it as a "Sure Grip bottom" to create "suction … which eliminates sliding"): *See* Dkt. 136 ¶ 45. Accordingly, TWW's attempt to now ignore the very part of the claim that recites this alleged novelty (in a bid to avoid infringement) is improper. Claim element 1g is a limitation that must be met for any Coleman product to infringe.

**B.    TWW's Response Brief fails to create a genuine issue of fact regarding claim element 1g**

TWW has failed to prove infringement of the '926 Patent because TWW has failed to introduce evidence that Claim element 1g is met. TWW does not dispute Coleman's material undisputed fact #16, which states that "[n]either TWW nor Dr. Stevick's opinions quantify any amount of suction purportedly produced by any alleged structure of the Coleman products." *Compare* Dkt. 135 at 6 ¶ 16 to Dkt. 156 at 3 ¶ 16 (admitting Coleman's SMF #16). This admission is dispositive: as admitted by TWW, it lacks cognizable evidence that the Coleman air beds "act as a suction cup" or "fix" to any support surface.

Similarly, Coleman's material undisputed fact #18 states that "Dr. Stevick **did not** do any tests to **measure the force of suction** that purportedly holds the Coleman Air mattresses in place." Dkt. 135 at 6 ¶ 18, *emphasis added*. TWW purports to dispute this fact but fails to cite to evidence supporting the position. Instead, TWW points to the same testimony relied on by Coleman that illustrates that Dr. Stevick did not do any tests to measure any force of suction (*see* Dkt. 156 at 3 ¶ 18):

> **Q. You did not do any test to measure the force holding any of the air mattresses in place, did you?**
>
> **A. No.** I'm just showing the effect is there and that it will apply a resisting force.[4]

So TWW has failed to dispute this fact with evidence that contradicts it. To the contrary, Dr. Stevick admits that he did not measure the force that allegedly "fixes" a mattress in place. Further, as outlined in Coleman's opening brief, Dr. Stevick's opinion that "it will apply a resisting force" is not backed up by any calculations or data quantifying that force. Indeed, it is undisputed that Dr. Stevick never measured suction beneath any of the Coleman beds. *Compare* Dkt. 135 at 6 ¶ 16 to Dkt. 156 at 3 ¶ 16 (admitting Coleman's SMF #16). So, Dr. Stevick cannot use the one test he did to calculate a force because never quantified the pressure he alleges exists.

Furthermore, TWW's response brief fails to address the key contradiction in Dr. Stevick's testimony, which Coleman noted in its opening brief. Dr. Stevick testified that the pressure under the air bed when a person moved on to the air bed was a "high pressure"—the exact opposite of the suction cup effect, which requires a vacuum. *See* Dkt. 135 at 15. In other words, TWW's own expert testified that his own experiments did not show suction when a person moved onto the air bed. *See* Dkt. 135 at 15.  TWW's response brief doesn't resolve this inconsistency or introduce any other facts that show suction exists when someone moves onto the Coleman beds. *See* Dkt. 156 at 10–12. TWW's infringement arguments are based entirely on the flawed and wholly conclusory testimony of Dr. Stevick, which TWW does not attempt to reconcile in their opposition brief.

Furthermore, TWW's arguments about air flow and fixing should be rejected because they contradict the claim construction order and their own expert's testimony. TWW argues that

---

[4] TWW cites the same testimony, as Coleman, but in a different exhibit. *Compare* Dkt. 135-1 at 267:24–268:3 and Dkt. 152-1 at 267:24–268:3.

9

they have proved that air is ejected because a change in pressure shows air flow. See Dkt. 156 at 12. Such unsupported attorney argument should be ignored. In contrast to what TWW alleges, there is no evidence in the record to support that pressure change results in air flow as required by claim 1 of the '926 patent. Instead, the only testimony on this issue confirms just the opposite—*i.e.*, that an undefined pressure change does not prove any attendant air flow as required by the claim. Compare Dkt. 135 at 7 ¶ 24 to Dkt. 156 at 4 ¶ 24.

Similarly, TWW's attempt to misconstrue this Court's prior Claim Construction Order is unsupportable. The claim construction order expressly held that the plain and ordinary meaning of "fixing" applied, and that this included fastening, making firm, or stable. See Dkt. 71 at 23; Dkt. 135-1 at 267:24–268:3. While the Court said "there might not be *absolute certainty* as to how much force is required to 'fix' the mattress to a support surface," the Court also confirmed that infringement can only occur when "a system … *uses the claim[ed] suction cup* structure to '*fix*' a mattress to a support surface." S*ee* Dkt. 71 at 23 (emphasis added). TWW is wrong to say that the Court said no force at all was required based on the recitation of the claims. Thus, to prove infringement of the '926 patent, TWW would need to prove that the Coleman products are fixed in place by *some* suction force. Because TWW has no such evidence, its assertion of infringement fails as a matter of law.[5]

At bottom, with fact and expert discovery completed, TWW has no evidence to support that any Coleman mattress is fixed in place by a concave air bag — to *any* degree of "certainty" —that acts as a suction cup as required by the '926 patent claims. TWW's failure to produce

---

[5] If the Coleman products lack that element, as a matter of law then they cannot infringe. *See Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l*, Inc., 389 F.3d 1370, 1378 (Fed. Cir. 2004).

cognizable evidence on such limitations is dispositive. [6] *Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d 1370, 1378 (Fed. Cir. 2004) ("Literal infringement requires that each and every limitation set forth in a claim appear in an accused product…").

**C.     TWW's Response Brief fails to create a genuine issue of fact as to other limitations of the '926 Patent**

Notwithstanding the above, TWW also fails to show that the Coleman Products meet limitations apart from those found in the '926 Patent "whereby clause." For example, Claim 1 of the '926 Patent recites that "a concave airbag" is defined by "said bottom sheet, said partition, and the support surface." Dkt. 18-1 at 5:14–15. Thus, when the bottom sheet is not placed against a support surface, no "bag" can exist as required by claims, since the defined structure requires both a bottom sheet and support surface (*e.g.*, the floor).

In its response, TWW does not dispute that the only assertions by Dr. Stevick regarding the alleged "concave airbag" are directed to the Coleman mattress on its side—not on the ground.  *See* Dkt. 156 at 1 ¶ 5. TWW does not dispute that the bed is not usable on its side (Dkt. 156 at 1 ¶ 6) (admitting that Coleman's SMF #6 that Coleman's products are not usable when placed on their sides); cf. Dkt. 18-1 at 1 ('926 Patent Abstract ("An inflatable bed has a bottom surface that is *disposed on a support surface* ...."). Furthermore, TWW does not dispute that their expert failed to take any pictures or analyze the alleged "concave air bag" when the mattress was placed in a normal position against the floor (see Dkt. 156 at 1 ¶ 7). As such, as outlined in Coleman's opening brief, TWW has no proof that an air bag exists in the configuration expressly contemplated in the patent and required by the claims (*i.e.*, expressly being formed by the support surface and bottom of the air mattress).

---

[6] In contrast, Coleman's expert directly tested the accused products and confirmed that no suction cup force existed. *See* Exhibit A, (Singhose '926 Rebuttal Report) at 40–69.

11

TWW's opposition asserts that its expert showed that a concave air bag exists because he measured the bed on its side, and a concave surface is allegedly present when one bed is turned upside down. Dkt. 156 at 7. But TWW's argument ignores the language of the claims. The concave air bag is "defined by" the bottom sheet, partition, and *support surface.* What TWW's pictures show are, at best, concave *surfaces*, but until the edges of those surfaces are placed against the *support surface*, no concave *air bag* is formed, because the air bag is an enclosed structure that is formed by the support surface and the bottom sheet and partition. *See* Dkt. 18-1 at 5:14–15. So thus, TWW's argument that its expert's photos support a concave air bag is legally insufficient because none of the photos show the *air bag* formed with the support surface.

TWW's only evidence that such an air bag exists is the *opinion* of its expert. In the testimony cited by TWW, TWW's expert testified that it "looked like" the mattress didn't sag so much that sagged to touch the floor. However, as explained in Coleman's opening brief, this opinion is pure speculation because the "air bag" is underneath the mattress—and not visible to the user. Stevick plainly could not see what any alleged "air bag" "looked like" through routine observation, and Dr. Stevick did not take any pictures of the alleged space between the underside of the mattress and the support surface.[7] As such, there is no way that Stevick can testify as to what the air bag "looked like" or whether it remains despite sag (which he admits exists). *Compare* Dkt. 135 at 5 ¶¶ 10–12 to Dkt. 156 at 2 ¶¶ 10–12. So TWW's expert cannot say that an air bag exists at all, much less that it is the claimed concave air bag. Such conclusory assertions

---

[7] Coleman's expert used a camera system inserted into the TWW mattresses to take photographs of internal structures that would not be visible from the outside to prove infringement of the '618 patent. *See* Dkt. 138 at ¶¶ 122–128. It would have been possible for Stevick to take pictures of the internal structures of the Coleman beds, including the alleged concave air bag, but Stevick failed to do so.

are not proof of required elements of a claim.[8] A showing of infringement—both literal and under the doctrine of equivalents—requires that the products include every element of the claim. *Dolly, Inc. v. Spalding & Evenflo Companies, Inc.*, 16 F.3d 394, 398 (Fed. Cir. 1994); *Frank's Casing Crew & Rental Tools, Inc.*, 389 F.3d 1370, 1378 (Fed. Cir. 2004). Because TWW lacks such evidence (apart from the "whereby clause" language), summary judgment is warranted.

II. **TWW's response brief fails to create a genuine issue of material fact that prevents summary judgment of infringement of Coleman's '618 Patent**

Summary judgment of infringement of the '618 Patent should also be granted. TWW's opposition is based on legal arguments about what Coleman's claims mean—not disputes of material fact. Specifically, TWW's non-infringement argument is entirely based on the definition of the already-decided phrase "air chamber" and whether the Coleman patent requires that the accused products include only a single chamber. TWW's construction and resulting argument are wrong, and summary judgment should be granted in Coleman's favor.

A. **TWW's products infringe because they have a single air chamber defined by the top, bottom, and side**

All of TWW's products include one inflatable chamber that is formed by a top, bottom, and side panel that are joined together at their edges. TWW's brief does not dispute this. *See generally* Dkt. 156 at 14–17. And TWW's brief does not dispute that the TWW products are inflated using only one single inlet. C*ompare* Dkt. 135 at 8 ¶ 32 to Dkt. 156 at 5 ¶ 32. As opposed to pointing to disputed material facts, TWW instead seeks to narrowly construe the definition of "air chamber" to require a "single air chamber"—a construction this Court has previously rejected. But this argument is irrelevant because the TWW products include a single air chamber that is inflated and deflated through a single inlet (a fact undisputed by TWW).

---

[8] Additionally, such statements are not scientific testimony and should be excluded. *See* Dkt. 142.

TWW's opposition argues that this one air chamber in its products is not a single air chamber because the side support beams inside TWW's products form additional air chambers. But it is undisputed that the TWW products all have holes in the side support beams (what TWW calls "walls") that allow air to freely flow through those side support beams. *See* Dkt. 135 at 16, c*ompare* Dkt. 135 at 8 ¶ 31 to Dkt. 156 at 5 ¶ 31. Since air can flow freely through the side support beams, the side support beams do not form "chambers" under the plain and ordinary meaning of that term.[9]

A simple example shows how TWW's argument is incorrect. TWW does not dispute that its products each include a top panel, side panel, and bottom panel joined together at airtight edges. TWW also does not dispute that side the support beams stretch between the side panel and the top panel, as well as between the bottom panel and the side panel. So if the seal between the top panel and the side panel is unsealed, then the *entire mattress* will deflate because air free flows throughout the internal structures of the air bed. *See* Dkt. 135 at 27–28. Similarly, if the side panel, top panel, or bottom panel were removed, the entire mattress would also deflate, because the side support beams have holes and allow for free flow of air through the internal structure. On the other hand, the addition (or removal) of a side support beam would have *no effect* on the inflation/deflation of the mattress because each beam is just that—a beam. It is a structure that maintains structural support within the air chamber inside the four walls of the air mattress. It does not create additional sealed air chambers or otherwise disturb the free flow of air throughout the entire interior of the air mattresses. As such, because there is a single chamber

---

[9] Despite relying on the definition of "chamber" to argue that its products do not infringe, TWW's brief does not itself propose any definition of "chamber." *See generally* Dkt. 156 at 14–17. And TWW's expert also does not propose a definition of "chamber." See Dkt. 139 at 42 n. 7. Instead, TWW relies entirely on expert *opinion* to argue that multiple chambers exist, without ever explaining what definition is being applied to reach that opinion. *See* Dkt. 156 at 16

in each of the TWW products formed by the top, bottom, and side panels, TWW's attempt to construe the ''618 patent claims to require "a single chamber" is irrelevant.

**B.     The '618 Patent does not require a single air chamber, and TWW is incorrect to argue that it does.**

Coleman's opening brief explains in detail why the '618 Patent does not require a single air chamber. Specifically, Coleman shows that, in the prosecution history, the '618 Patent claims were distinguished over "double layer" air mattresses, not "double chamber" air mattresses. See Dkt. 136 at 25. TWW's opposition completely fails to rebut this point and does not even mention the prosecution history of the '618 Patent. See Dkt. 135 at 16–17. TWW has conceded that the prosecution history of the '618 Patent does not limit the '618 Patent to a single air chamber.

Instead of rebutting Coleman's analysis of the '618 Patent and its prosecution history, TWW cites one line from the court's claim construction order, where this Court said stated that for "some claims" "i**t would seem** the bed would require only a single chamber." But this Court expressly held in that same order "**the plain and ordinary meaning of this term applies, which does not require a single air chamber**." See Dkt. 71 at 11. This Court has never held that any particular claim requires a single air chamber, and TWW gives no reason for the Court to do so here, because TWW concedes that the prosecution history shows the opposite. The Court should reject TWW's argument that the claim construction order limits the '618 Patent to single chamber designs.

Finally, TWW cites one section of testimony from Coleman's invalidity expert Wayne Li and argues that because Wayne Li testified that the '926 Patent includes two chambers, the TWW products that allegedly include that technology have two chambers. But the chambers disclosed by the '926 patent are not at issue nor relevant to the limitations of the '618 patent claims. Moreover, TWW ignores that the '926 Patent includes multiple embodiments. In one of those

15

embodiments, the '926 patent includes two chambers, which—consistent with the arguments above—are filled with two separate valves. See Dkt. 18-1 at 6 ('926 Patent FIG. 7). Similarly, Li's recognition that some embodiments disclosed in the '926 Patent may include "double chamber" designs does not have anything to do with whether the TWW products accused in this case have a single or double chamber (as described above, the TWW products in this case have a single chamber with one valve).

Additionally, TWW's quote of Li's testimony omits the latter portion of his answer, where Li elaborates that he is talking about how the "partition" in the '926 Patent is like a double *layer* construction in the prior art (before being cut-off by TWW's counsel). *See* Dkt. 157 at 158:23–159:3. In any case, Li's testimony about another patent is irrelevant to the actual structure of the TWW products in this case, which self-evidently include only one inflatable chamber.

In sum, TWW's response brief fails to show that the '618 Patent is limited to single chamber designs. But even if TWW were correct, TWW's arguments on this point are irrelevant because the TWW products all have a single chamber, as described in the section above.

### III. Conclusion

TWW fails to point to material facts that prevent entering summary judgment for Coleman. Instead of showing pointing to other evidence that shows a dispute of material fact, TWW's opposition retreads the same legal arguments that were rejected during claim construction. These legal arguments are incorrect and do not raise a dispute of fact that precludes summary judgement. Accordingly, the Court should grant Coleman's Motion for Summary Judgment of Coleman's Non-infringement of the '926 Patent and TWW's Infringement of the '618 Patent.

Dated: November 10, 2021                Respectfully submitted,

*s/ R. Braxton Hill, IV*
R. Braxton Hill, IV (VSB 41539)
Michael W. Smith (VSB 01125)
CHRISTIAN & BARTON LLP
901 East Cary Street, Suite 1800
Richmond, Virginia 23219
(804) 697-4108
bhill@cblaw.com
msmith@cblaw.com

John W. Harbin (pro hac vice)
David S. Moreland (pro hac vice)
Gregory S. Carlin (pro hac vice)
Warren J. Thomas (pro hac vice)
Steven M. Philbin (pro hac vice)
Meunier Carlin & Curfman LLC
999 Peachtree Street NE, Suite 1300
Atlanta, Georgia 30309
(404) 645-7700
jharbin@mcciplaw.com
dmoreland@mcciplaw.com
gcarlin@mcciplaw.com
wthomas@mcciplaw.com
sphilbin@mcciplaw.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on this 10th day of November 2021, I electronically filed the above REPLY IN SUPPORT OF COLEMAN'S MOTION FOR SUMMARY JUDGMENT OF COLEMAN'S NON-INFRINGEMENT OF THE '926 PATENT AND OF TWW'S INFRINGEMENT OF THE '618 PATENT with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all attorneys of record:

<u>s/ R. Braxton Hill, IV</u>
R. Braxton Hill, IV (VSB 41539)
CHRISTIAN & BARTON, LLP
901 East Cary Street, Suite 1800
Richmond, Virginia 23219
Tel: (804) 697-4100
Fax: (804) 697-6108
bhill@cblaw.com

*Counsel for the Plaintiff,*
*The Coleman Company, Inc.*

18