# EXHIBIT E

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

| | | |
|---|---|---|
| THE COLEMAN COMPANY, INC., | § | |
| | § | |
| *Plaintiff/Counterclaim Defendant,* | § | Civil Action No. 2:20-cv-351-RGD |
| | § | |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| TEAM WORLDWIDE CORPORATION, | § | |
| | § | |
| *Defendant/Counterclaim Plaintiff.* | § | |

## TEAM WORLDWIDE CORPORATION'S SUPPLEMENTAL RESPONSES TO THE COLEMAN COMPANY'S FIRST SET OF INTERROGATORIES (NOS. 1-15)

Pursuant to Local Rule 26(c) and Rule 33 of the Federal Rules of Civil Procedure, Defendant/Counterclaim Plaintiff Team Worldwide Corporation ("Defendant" or "TWW") hereby provides its supplemental responses to Plaintiff The Coleman Company's ("Plaintiff" or "Coleman") First Set of Interrogatories ("Interrogatories") as follows.

Discovery is ongoing on this case, and TWW's responses are based on, and therefore necessarily limited by, the records and information still in existence, presently recollected, and thus far discovered in the course of preparing these responses. TWW is continuing its investigation and discovery into the subject matter of this action and thus reserves the right to produce any subsequently-discovered facts, documents or information. TWW will supplement these responses as necessary to comply with the requirements of Fed. R. Civ. P. 26(e).

TWW has made specific objections to certain Interrogatories, to the extent they seek information protected from disclosure by the attorney-client privilege, work product immunity, or any other applicable privilege or immunity. TWW will not disclose any information so protected,

and the inadvertent disclosure or identification of any such information is not intended as, and will not constitute, a waiver of such privilege, doctrine, or immunity.

TWW's responses are based on a reasonable search for responsive information that is within TWW's possession, custody, or control and will answer, subject to any objections, with such responsive, non-privileged information that it may find.  Such response shall not mean that an answer or fact exists.  Likewise, where TWW indicates that an answer is made subject to a specific objection on the grounds of vagueness, ambiguity and/or over-breadth, this shall mean that TWW will limit its answer in accordance with the terms of the objection.

TWW's responses to these Interrogatories are directed solely to discoverable facts, and any statement made in response to such a request shall not be deemed an admission of any kind, including relevance, with respect to the subject matter of any such legal conclusion.

None of the Responses herein is a direct or indirect admission (i) of the truth or accuracy of any statement or characterization asserted by Coleman in any pleading or other filing with the Court; (ii) of the validity of any objection by Coleman to any interrogatory propounded in this action by TWW; or (iii) that any interrogatory propounded by TWW in this action is wholly or partially objectionable under any applicable law or rules.

### OBJECTIONS TO PLAINTIFF'S DEFINITIONS AND INSTRUCTIONS

1.     TWW objects to the Definition 8 of the term "Complaint," to the extent it refers to any document other than the Operative Complaint in the pending matter.

2.     TWW objects to Definition 10 of the term "TWW Accused Products" as overly broad, unduly burdensome, vague, ambiguous, not relevant, and not proportional to the needs of the case to the extent it seeks information on products not made or sold by TWW, and to the extent it seeks information on products other than TWW products with SKU Nos. 85001714, ST840017,

ST840011, ST840015, ST840018 and Insta-Bed SKU Nos. 84003115, 840017G or that is not relevant to any party's claims or defenses.  TWW further objects to the definition of "TWW Accused Products" to the extent that it includes products that are not alleged to fall within the scope of the Asserted Patent(s).

3.      TWW objects to Definition 13 of the terms "communication", "communicated" or "contact" to the extent the definition includes communication protected from disclosure by the attorney-client, work-product, or other applicable privilege.

4.      TWW objects to Definition 14 of the term "customer" as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks information related to activities outside of the United States.

5.      TWW objects to Definition 16 of "document" or "documents" to the extent that it calls for the production of electronically stored information ("ESI") from sources that are not reasonably accessible because of undue burden or cost.

6.      TWW objects to Definition 18 of the term "identify," to the extent that the definition seeks to impose an obligation to provide information greater than that required by the Federal Rules of Civil Procedure, the Local Rules of the Eastern District of Virginia, and any other applicable law.

7.      TWW objects to Definition 21 of the terms "reflecting", "referring", "relating/related" and/or "concerning" as overly broad, unduly burdensome, and vague. Specifically, Definition 21 is objectionable to the extent that these terms are not limited to responses containing, constituting, showing, or making express reference to the subject matter. TWW cannot fully determine – without undue burden – which documents "refer to," "relate to" and/or "concern" the subject matter.

8.     TWW objects to Definition 26 as overbroad, unduly burdensome, and imposing obligations beyond what is required by the Federal Rules of Civil Procedure, the Local Rules of the Eastern District of Virginia, and any other applicable law.

## SPECIFIC OBJECTIONS TO FIRST SET OF INTERROGATORIES

**INTERROGATORY NO. 1**: In view of your denials set forth in your Answer, including Paragraphs 28-35 and your Fifth, Sixth, Seventh, Ninth, Eleventh, and Twelfth Affirmative Defenses and Your First Counterclaim for patent non-infringement, state the factual basis and all reasons that you contend that you do not infringe any claim of Coleman Patent(s), and identify (i) all documents evidencing, supporting or otherwise relating to those facts and (ii) all persons with knowledge of any of the facts.

**RESPONSE**: TWW incorporates its objections to Plaintiff's Definitions and Instructions set forth above. TWW further objects to this Interrogatory to the extent it seeks information protected by the attorney-client, work-product, or other applicable privilege.  TWW objects to this Interrogatory to the extent it calls for a legal conclusion.  TWW further objects to this Interrogatory as premature to the extent it calls for subsequent discovery in this action and/or expert testimony that will be provided according to deadlines set by the Court.  TWW objects to this Interrogatory to the extent it seeks information within Plaintiff's possession, custody or control, or to the extent it seeks information in the public domain.  TWW further objects to this Interrogatory to the extent it seeks confidential, proprietary, or trade secret information.  TWW will only produce such information pursuant to a protective order entered in this proceeding. TWW further objects to this Interrogatory as overly broad, unduly burdensome, vague, ambiguous, not relevant and not proportional to the needs of the case to the extent it seeks information on products other than TWW products with SKU Nos. 85001714, ST840017, ST840011, ST840015, ST840018 and Insta-Bed SKU Nos.

84003115, 840017G or that is not relevant to any party's claims or defenses.  TWW further objects to this Interrogatory to the extent it seeks information beyond TWW's actual knowledge, custody, or control. TWW objects to this Interrogatory to the extent it is not temporally limited or seeks information for a time period that is not proportional to the needs of the case and/or seeks to impose obligations beyond what is required by the Federal Rules of Civil Procedure, the Local Rules of the Eastern District of Virginia, and any other applicable law.

Subject to and without waiving the foregoing objections, TWW responds:

It is Coleman's burden to show that the '618 Accused Products include each and every limitation of each asserted claim, not TWW's burden to show they do not.

To the extent the claims of the '618 Patent are valid, the '618 Accused Products do not infringe claim 13, at least for the following reason:  TWW's products do not meet the limitations "at least one internal side support beam extending in the lengthwise direction of the at least one side panel, the at least one internal side support beam having a first edge affixed to an inside of the at least one side panel, a second edge affixed to an inside of at least one of the top panel and the bottom panel, and a section between the first edge and the second edge where the first side support beam is attached neither to said at least one side panel nor said at least one of the top panel and the bottom panel, the internal side support beam being arranged such that when the air chamber is filled with air, the section of the internal side support beam is in tension and the internal side support beam limits outward expansion of said at least one side panel."

Additionally, there can be no infringement under the doctrine of equivalents at least due to prosecution history estoppel, including amendments and/or arguments made to the pending claims of the underlying application that issued as the '618 Patent during prosecution.

Moreover, this Interrogatory prematurely requests information that will be the subject of TWW's technical expert witness's testimony, and accordingly, TWW's technical expert witness will be most knowledgeable about the subject matter of this Interrogatory. TWW's experts' opinions will be disclosed at the time and in the manner provided by the Rule 16(b) Scheduling Order (Dkt. 26).

Furthermore, this Interrogatory prematurely requests information that will be disclosed at the time and in the manner provided by the Order (Dkt. 27) on the claim construction process. TWW reserves the right to amend or modify its analysis based on the claims as construed by the Court once the claim construction order issues.

TWW reserves its right to supplement and/or amend its response to this Interrogatory as discovery continues.

**INTERROGATORY NO. 2**: In view of your denials set forth in your Answer, including your Third, Eighth, Tenth, and Thirteenth Affirmative Defenses and Your Second Counterclaim for patent invalidity, state the factual basis and all reasons supporting any allegation that the Coleman Patent(s) is invalid or unenforceable and identify (i) all documents evidencing, supporting, or otherwise relating to such facts and (ii) all persons with knowledge of any of the facts.

**RESPONSE**: TWW incorporates its objections to Plaintiff's Definitions and Instructions set forth above. TWW further objects to this Interrogatory to the extent it seeks information protected by the attorney-client, work-product, or other applicable privilege. TWW objects to this Interrogatory to the extent it calls for a legal conclusion. TWW further objects to this Interrogatory as premature to the extent it calls for subsequent discovery in this action and/or expert testimony that will be provided according to deadlines set by the Court. TWW objects to this Interrogatory to the extent it seeks information within Plaintiff's possession, custody or control, or to the extent it seeks

information in the public domain.  TWW further objects to this Interrogatory to the extent it seeks confidential, proprietary, or trade secret information.  TWW will only produce such information pursuant to a protective order entered in this proceeding.   TWW further objects to this Interrogatory as premature to the extent it calls for subsequent discovery in this action and/or expert testimony that will be provided according to deadlines set by the Court.  TWW further objects to this Interrogatory to the extent it seeks information beyond TWW's actual knowledge, custody or control. TWW further objects to this Interrogatory to the extent it is not temporally limited or seeks information for a time period that is not proportional to the needs of the case and/or seeks to impose obligations beyond what is required by the Federal Rules of Civil Procedure, the Local Rules of the Eastern District of Virginia, and any other applicable law.

Subject to and without waiving the foregoing objections, TWW responds:

TWW is continuing to collect and review information that may be relevant to the subject matter of this Interrogatory. Consistent with TWW's Answer (Dkt. 18), TWW maintains that:

i.   Coleman's claims are barred, in whole or in part, by the doctrine of estoppel and waiver.

ii.   The claims of the '618 Patent are invalid, ineligible, and/or void for failure to meet the conditions for patentability set forth in 35 U.S.C. §§ 101 et seq. and, more particularly, failure to comply with the requirements of 35 U.S.C. §§ 101, 102, 103, 112, et. seq., and/or the Rules and Regulations of the U.S. Patent & Trademark Office set forth in Title 37 of the Code of Federal Regulations pertaining thereto in view of at least the prior art identified during prosecution of the '618 Patent and at least the following additional references which anticipate and/or render the '618 Patent obvious alone or in combination with each other: U.S. Patent Nos. 4,064,579; 4,700,419; 4,698,984; and 5,906,019.

iii.    The claims of the '618 Patent are invalid under one or more provisions of 35 U.S.C. §§ 101, 102, 103, and/or 112.

iv.    Coleman is barred, based on statements, representations, and admissions made during prosecution of the patent application resulting in the '618 Patent from asserting any interpretation of any valid, enforceable claim of the '618 Patent that would be broad enough to cover any TWW product alleged to infringe the '618 Patent, either literally or under the doctrine of equivalents.

Moreover, this Interrogatory prematurely requests information that will be the subject of TWW's technical expert witness's testimony, and accordingly, TWW's technical expert witness will be most knowledgeable about the subject matter of this Interrogatory.  TWW's experts' opinions will be disclosed at the time and in the manner provided by the Rule 16(b) Scheduling Order (Dkt. 26).

Furthermore, this Interrogatory prematurely requests information that will be disclosed at the time and in the manner provided by the Order (Dkt. 27) on the claim construction process. TWW reserves the right to amend or modify its analysis based on the claims as construed by the Court once the claim construction order issues.

TWW hereby fully incorporates by reference Exhibit A provided with this set of responses. In addition to that chart, TWW also hereby fully incorporates by reference as prior art the references cited on the face of the '618 Patent as well as in the prosecution history of the underlying application that issued as the '618 Patent as showing that the claim limitations are present in those prior art references.

TWW is continuing to collect and review information that may be relevant to the subject matter of this Interrogatory. TWW reserves its right to supplement and/or amend its response to this Interrogatory as discovery continues.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:**

TWW hereby fully incorporates by reference Supplemental Exhibit A provided with this set of supplemental responses.

**INTERROGATORY NO. 3**: Identify the date range for which any TWW Accused Products, whether in whole or in part, was designed, developed, and/or tested.

**RESPONSE**: TWW incorporates its objections to Plaintiff's Definitions and Instructions set forth above, including without limitation with respect to the term "TWW Accused Products." TWW further objects to this Interrogatory to the extent it seeks information protected by the attorney-client, work-product, or other applicable privilege. TWW objects to this Interrogatory to the extent it calls for a legal conclusion. TWW further objects to this Interrogatory to the extent it seeks confidential, proprietary, or trade secret information. TWW further objects to this Interrogatory to the extent it is not temporally limited or seeks information for a time period that is not proportional to the needs of the case and/or seeks to impose obligations beyond what is required by the Federal Rules of Civil Procedure, the Local Rules of the Eastern District of Virginia, and any other applicable law. TWW further objects to this Interrogatory as premature to the extent it calls for subsequent discovery in this action and/or expert testimony that will be provided according to deadlines set by the Court. TWW further objects to this Interrogatory to the extent that it seeks confidential business, financial, proprietary, or sensitive information or trade secrets of third parties, which is subject to pre-existing protective order(s) and/or confidentiality agreements. TWW will not produce such information absent an express order to the contrary from

a court of competent jurisdiction, or an authorization from the third party having the interest in the information's confidentiality.  TWW further objects to this Interrogatory as overly broad, unduly burdensome, vague, ambiguous, not relevant and not proportional to the needs of the case to the extent it seeks information on acts taken with respect to products other than TWW products with SKU Nos. 85001714, ST840017, ST840011, ST840015, ST840018 and Insta-Bed SKU Nos. 84003115, 840017G or that is not relevant to any party's claims or defenses.  TWW further objects to this Interrogatory to the extent it seeks information beyond TWW's actual knowledge, custody or control.

Subject to and without waiving the foregoing objections, TWW responds:

TWW is continuing to collect and review information that may be relevant to the subject matter of this Interrogatory.  TWW states that at least one of the products identified by Coleman as a TWW Accused Product was on sale at least as early as 2011.  TWW also refers to its response to Interrogatory No. 7 herein. TWW reserves its right to supplement and/or amend its response to this Interrogatory as discovery continues.

**INTERROGATORY NO. 4**: Describe in detail all facts concerning the date, method, and circumstances by which you first became aware of the Coleman Patent(s), and identify the person(s) involved.

**RESPONSE**: TWW incorporates its objections to Plaintiff's Definitions and Instructions set forth above.  TWW objects to this Interrogatory to the extent it seeks information protected by the attorney-client, work-product, or other applicable privilege.  TWW objects to this Interrogatory to the extent it seeks information within Plaintiff's possession, custody or control, or to the extent it seeks information in the public domain.  TWW further objects to this Interrogatory to the extent it seeks confidential, proprietary, or trade secret information.  TWW will only produce such

information pursuant to a protective order entered in this proceeding.  TWW further objects to this Interrogatory to the extent that it seeks confidential business, financial, proprietary, or sensitive information or trade secrets of third parties, which is subject to pre-existing protective order(s) and/or confidentiality agreements.  TWW will not produce such information absent an express order to the contrary from a court of competent jurisdiction, or an authorization from the third party having the interest in the information's confidentiality.  TWW further objects to this Interrogatory to the extent it seeks information beyond TWW's actual knowledge, custody or control.

Subject to and without waiving the foregoing objections, TWW responds:

TWW first became aware of the '618 Patent sometime after Coleman filed its Complaint on June 29, 2020.

TWW is continuing to collect and review information that may be relevant to the subject matter of this Interrogatory. TWW reserves its right to supplement and/or amend its response to this Interrogatory as discovery continues.

**INTERROGATORY NO. 5**: Identify each person with knowledge of, or having been involved in, the design, conception, creation, development, manufacture, modification, engineering, or testing of any TWW Accused Products. Include in your answer a brief description of each person's role and/or activities as it relates to the TWW Accused Products.

**RESPONSE**: TWW incorporates its objections to Plaintiff's Definitions and Instructions set forth above, including without limitation with respect to the term "TWW Accused Products."  TWW objects to this Interrogatory as vague and ambiguous in its use of the term "involved."  TWW further objects to this Interrogatory to the extent it seeks information protected by the attorney-client, work-product, or other applicable privilege.  TWW objects to this Interrogatory to the extent

it seeks information within Plaintiff's possession, custody or control, or to the extent it seeks information in the public domain.  TWW further objects to this Interrogatory to the extent it seeks information regarding third parties and/or individuals who TWW does now control.  TWW further objects to this Interrogatory to the extent it seeks confidential, proprietary, or trade secret information.  TWW will only produce such information pursuant to a protective order entered in this proceeding.  TWW further objects to this Interrogatory as overly broad, unduly burdensome, vague, ambiguous, not relevant and not proportional to the needs of the case to the extent it seeks information on products other than TWW products with SKU Nos. 85001714, ST840017, ST840011, ST840015, ST840018 and Insta-Bed SKU Nos. 84003115, 840017G or that is not relevant to any party's claims or defenses. TWW further objects to this Interrogatory as not relevant to the issues in the litigation and/or not proportional to the needs of the case to the extent it is not properly limited in time. TWW further objects to this Interrogatory to the extent it seeks information beyond TWW's actual knowledge, custody or control.

Subject to and without waiving the foregoing objections, TWW responds:

TWW hereby fully incorporates the information its Initial Disclosures served on December 29, 2020, including as they may be amended during this lawsuit. Specifically, in response to this Interrogatory, TWW identifies:

i. Mr. Cheng Chung (Tony) Wang invented all of the claimed inventions in the '926 Patent through his work at TWW in the field of inflatable products. Mr. Tony Wang is knowledgeable about the conception, reduction to practice, and prosecution of the underlying application that issued as the '926 Patent.

ii. Mr. Chien Hua (Kenneth) Wang is the General Manager at TWW in the field of inflatable products. Mr. Kenneth wang is knowledgeable about TWW's products, sales and

marketing of TWW's products, licensing of TWW's intellectual property, and TWW's financial information.

TWW is continuing to collect and review information that may be relevant to the subject matter of this Interrogatory. TWW reserves its right to supplement and/or amend its response as discovery continues.

**INTERROGATORY NO. 6**: In view of your denials of Paragraph 31 of Coleman's Complaint, describe in detail all facts that support or refute any contention that your infringement of the Coleman Patent(s) was not willful, including, without limitation, any opinions of counsel you obtained that relate to the infringement, validity, and/or enforceability of the Coleman Patent(s).

**RESPONSE**: TWW incorporates its objections to Plaintiff's Definitions and Instructions set forth above. TWW further objects to this Interrogatory to the extent it seeks information protected by the attorney-client, work-product, or other applicable privilege. TWW objects to this Interrogatory to the extent it calls for a legal conclusion. TWW objects to this Interrogatory to the extent it seeks information within Plaintiff's possession, custody or control, or to the extent it seeks information in the public domain. WW further objects to this Interrogatory to the extent it seeks confidential, proprietary, or trade secret information. TWW further objects to this Interrogatory as premature to the extent it calls for subsequent discovery in this action and/or expert testimony that will be provided according to deadlines set by the Court. TWW further objects to this Interrogatory to the extent it seeks information beyond TWW's actual knowledge, custody or control.

Subject to and without waiving the foregoing objections, TWW responds:

To the extent the subject matter is relevant to this Interrogatory, TWW hereby fully incorporates its response to Interrogatory No. 4 herein. After becoming aware of Coleman's infringement allegations, TWW conducted an appropriate investigation of Coleman's allegations.

The details of that investigation are protected by the attorney-client privilege and attorney work product doctrine, but TWW determined that it does not infringe claim 13 of the '618 Patent and/or that claim 13 of the '618 Patent is invalid.

TWW reserves its right to supplement and/or amend its response to this Interrogatory as discovery continues.

**INTERROGATORY NO. 7**: Identify all financial information or data for each TWW Accused Products and any product related in any way or sold with any TWW Accused Products, for the time period of six (6) years prior to the filing of this suit to the present, including but not limited to sales volume (in units and U.S. dollars), cost of goods sold (including labor, materials, and overhead), and gross profit.

**RESPONSE**:

TWW incorporates its objections to Plaintiff's Definitions and Instructions set forth above, including without limitation with respect to the term "TWW Accused Products." TWW further objects to this Interrogatory to the extent it seeks information protected by the attorney-client, work-product, or other applicable privilege. TWW objects to this Interrogatory to the extent it calls for a legal conclusion. TWW objects to this Interrogatory to the extent it seeks information within Plaintiff's possession, custody or control, or to the extent it seeks information in the public domain. TWW further objects to this Interrogatory to the extent it seeks confidential, proprietary, or trade secret information. TWW will only produce such information pursuant to a protective order entered in this proceeding. TWW further objects to this Interrogatory to the extent that it seeks confidential business, financial, proprietary, or sensitive information or trade secrets of third parties, which is subject to pre-existing protective order(s) and/or confidentiality agreements. TWW will not produce such information absent an express order to the contrary from a court of

14

competent jurisdiction, or an authorization from the third party having the interest in the information's confidentiality. TWW further objects to this Interrogatory as overly broad, unduly burdensome, vague, ambiguous, not relevant and not proportional to the needs of the case to the extent it seeks information on products other than TWW products with SKU Nos. 85001714, ST840017, ST840011, ST840015, ST840018 and Insta-Bed SKU Nos. 84003115, 840017G or that is not relevant to any party's claims or defenses.  TWW further objects to the phrase "any product related in any way or sold with any TWW Accused Products" as vague, ambiguous and undefined.  TWW further objects to this Interrogatory as overly broad, unduly burdensome, vague, ambiguous, not relevant, and not proportional to the needs of the case to the extent it purports to require TWW to inquire of persons other than its employees and/or representatives who would reasonably be expected to have responsive information.  TWW further objects to this Interrogatory as premature to the extent it calls for subsequent discovery in this action and/or expert testimony that will be provided according to deadlines set by the Court.

Subject to and without waiving the foregoing objections, TWW responds:

Once a protective order is entered in this case, TWW will produce and identify confidential documents responsive to this Interrogatory pursuant to FRCP 33(d).

TWW is continuing to collect and review information that may be relevant to the subject matter of this Interrogatory. TWW reserves its right to supplement and/or amend its response to this Interrogatory as discovery continues.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 7:

Pursuant to Fed. R. Civ P. 33(d), TWW identifies the following documents: TWW-COL-00025102, TWW-COL-00027276, TWW-COL-00027279, TWW-COL-00034078-79TWW-COL-00034077, TWW-COL-00034603, TWW-COL-00034605,

**INTERROGATORY NO. 8**: Describe in complete detail the development of the subject matter claimed in the TWW Patent(s) from conception to reduction to practice, on a claim-by-claim and element-by-element basis, including the factual and legal basis and supporting evidence for what Plaintiff contends to be the date and manner of invention (i.e., conception, actual and constructive reduction to practice, any diligence leading to reduction to practice, design, and development) for each claim of the TWW Patent(s); the date of invention for each of the asserted claims in the TWW Patent(s), if TWW contends different dates of invention for each claim, and a detailed description of the basis for that contention; all persons who participated in the conception and reduction to practice of each claim of the TWW Patent(s) and descriptions of each person's role and participation in the conception, diligence, and reduction to practice; all persons having knowledge of such conception, diligence, and reduction to practice; and all documents supporting your response.

**RESPONSE**: TWW incorporates its objections to Plaintiff's Definitions and Instructions set forth above. TWW further objects to this Interrogatory to the extent it seeks information protected by the attorney-client, work-product, or other applicable privilege. TWW objects to this Interrogatory to the extent it calls for a legal conclusion. TWW further objects to this Interrogatory as premature to the extent it calls for subsequent discovery in this action and/or expert testimony that will be provided according to deadlines set by the Court.   TWW objects to this Interrogatory to the extent it seeks information within Plaintiff's possession, custody, or control, or to the extent it seeks information in the public domain.  TWW further objects to this Interrogatory to the extent it seeks confidential, proprietary, or trade secret information.  TWW will only produce such information pursuant to a protective order entered in this proceeding.   TWW further objects to this Interrogatory to the extent that it seeks confidential business, financial, proprietary, or sensitive

16

information or trade secrets of third parties, which is subject to pre-existing protective order(s) and/or confidentiality agreements. TWW will not produce such information absent an express order to the contrary from a court of competent jurisdiction, or an authorization from the third party having the interest in the information's confidentiality. TWW further objects to this Interrogatory to the extent it is not temporally limited or seeks information for a time period that is not proportional to the needs of the case and/or seeks to impose obligations beyond what is required by the Federal Rules of Civil Procedure, the Local Rules of the Eastern District of Virginia, and any other applicable law.  TWW further objects to this Interrogatory as premature to the extent it calls for subsequent discovery in this action and/or expert testimony that will be provided according to deadlines set by the Court.  TWW further objects to this Interrogatory to the extent it is compound and/or contains multiple subparts.  TWW will count each subpart as a separate interrogatory pursuant to Federal Rule of Civil Procedure 33(a).  TWW will not respond to interrogatories in excess of the allotted number of interrogatories established in the Court's scheduling order.

     Subject to and without waiving the foregoing objections, TWW responds:

i. Mr. Cheng Chung Wang (Tony Wang) invented all of the claimed inventions in the '926 Patent through his work at TWW in the field of inflatable products. The claimed inventions were made as a result of work at TWW, as Mr. Tony Wang founded TWW and continuously worked in the inflatable product field for several decades. Conventional air mattresses were usually under 10" in height and mainly used for camping. However, for home use, it is more comfortable and convenient for air mattresses to be over 14" in height. Yet, air mattresses with height over 14" were problematic because: (1) the air mattresses were more costly to produce; (2) the air mattresses were not stable because the center

portion of the bottom of the air mattress tends to bulge outward; (3) the air mattresses were not stable because of the light weight of the air mattress; and (4) it was difficult to obtain higher heights (such as 18" and above) because the side walls of the air mattress tend to bulge outward as the mattress height increases.   To overcome the aforementioned drawbacks of conventional air mattresses, Mr. Tony Wang came up with the invention as disclosed in the '926 Patent which is: (1) less costly to produce; (2) more stable, as only the border margin of the bottom of the mattress is in contact with the floor; (3) more stable, as the air mattress does not shift as easily due to the "suction cup" phenomenon of the claimed structural arrangement; and (4) able to obtain higher mattress heights (as high as 22"), as the sides wall of the mattress will not bulge due to the tension creased by the claimed partition.

ii.   The '926 Patent describes each claimed invention therein.

iii.   The conception and reduction to practice of the claimed inventions in the '926 Patent predate the filing of the underlying U.S. application that issued as the '926 Patent. Mr. Tony Wang developed the inventions prior to communicating them to patent counsel who used that information to draft the foreign priority application, Taiwanese Application No. 91108942 which was ultimately filed on April 30, 2002. Specifically, Mr. Tony Wang conceived of and reduced to practice the inventions in the '926 Patent prior to at least April 30, 2002, and design drawings were created by that date according to his design that show that the claimed inventions were conceived of and reduced to practice by that date.

iv.   Mr. Tong Wang communicated the inventions to patent counsel prior to April 30, 2020, who used that information to draft the foreign priority application and the underlying U.S. application that issued as the '926 Patent. Neither Mr. Tony Wang nor TWW discussed

18

the inventions with any third parties prior to April 30, 2002. TWW is investigating the extent to which any additional drawing, notes, or handmade sample disclosing the inventions exists and the extent to which it was communicated to others including patent counsel. TWW will not disclose documents, individuals, or conversations protected by the attorney-client privilege and attorney work product doctrine.

v.   Pursuant to FRCP 33(d), TWW identifies the following non-confidential documents as responsive to this Interrogatory: TWW-COL-00000593; TWW-COL-00000233.

vi.   Once a protective order is entered in this case, TWW will produce and identify confidential documents responsive to this Interrogatory pursuant to FRCP 33(d).

vii.   Mr. Tony Wang is knowledgeable of the conception and reduction to practice of the inventions in the '926 Patent.

TWW is continuing to collect and review information that may be relevant to the subject matter of this Interrogatory. TWW reserves its right to supplement and/or amend its response as discovery continues.

**INTERROGATORY NO. 9**: Describe in detail the facts and circumstances regarding any discussion, disclosure, collaboration, or communication with a third party; sale of; offer to sell; public use; and/or other public disclosure relating to the subject matter of the TWW Patent(s) prior to the filing of the patent applications issuing as the TWW Patent(s), or any application that has issued or could issue for a Related TWW Patent(s), including identification of all parties to and the date of each such event and any documentation supporting your response.

**RESPONSE**: TWW incorporates its objections to Plaintiff's Definitions and Instructions set forth above. TWW further objects to this Interrogatory to the extent it seeks information protected by the attorney-client, work-product, or other applicable privilege. TWW objects to this Interrogatory

to the extent it calls for a legal conclusion. TWW further objects to this Interrogatory to the extent it seeks confidential, proprietary, or trade secret information. TWW further objects to this Interrogatory to the extent that it seeks confidential business, financial, proprietary, or sensitive information or trade secrets of third parties, which is subject to pre-existing protective order(s) and/or confidentiality agreements. TWW will not produce such information absent an express order to the contrary from a court of competent jurisdiction, or an authorization from the third party having the interest in the information's confidentiality. TWW further objects to this Interrogatory to the extent it is not temporally limited or seeks information for a time period that is not proportional to the needs of the case and/or seeks to impose obligations beyond what is required by the Federal Rules of Civil Procedure, the Local Rules of the Eastern District of Virginia, and any other applicable law. TWW further objects to this Interrogatory as overly broad, unduly burdensome, vague, ambiguous, not relevant, and not proportional to the needs of the case to the extent it purports to require TWW to inquire of persons other than its employees and/or representatives who would reasonably be expected to have responsive information. TWW further objects to this Interrogatory as premature to the extent it calls for subsequent discovery in this action and/or expert testimony that will be provided according to deadlines set by the Court. TWW further objects to this Interrogatory to the extent it seeks information beyond TWW's actual knowledge, custody, or control. TWW further objects to this Interrogatory to the extent it seeks information regarding third parties and/or individuals who TWW does not control.

Subject to and without waiving the foregoing objections, TWW responds:

TWW is not presently aware of any disclosure, collaboration, or communication with a third party; sale of; offer to sell; public use; and/or other public disclosure relating to the subject matter of the '926 Patent prior to the filing of the underlying foreign application on April 30, 2002.

TWW reserves its right to supplement and/or amend its response to this Interrogatory as discovery continues.

**INTERROGATORY NO. 10**: Describe in detail the facts and circumstances regarding any discussion, disclosure, collaboration, or communication with a third party; sale of; offer to sell; public use; and/or other public disclosure relating to the subject matter of the TWW Patent(s) prior to the filing of the patent applications issuing as the TWW Patent(s), or any application that has issued or could issue for a Related TWW Patent(s), including identification of all parties to and the date of each such event and any documentation supporting your response.

**RESPONSE**: TWW incorporates its objections to Plaintiff's Definitions and Instructions set forth above. TWW further objects to this Interrogatory to the extent it seeks information protected by the attorney-client, work-product, or other applicable privilege.  TWW objects to this Interrogatory to the extent it calls for a legal conclusion.  TWW further objects to this Interrogatory to the extent it seeks confidential, proprietary, or trade secret information.  TWW further objects to this Interrogatory to the extent that it seeks confidential business, financial, proprietary, or sensitive information or trade secrets of third parties, which is subject to pre-existing protective order(s) and/or confidentiality agreements. TWW will not produce such information absent an express order to the contrary from a court of competent jurisdiction, or an authorization from the third party having the interest in the information's confidentiality. TWW further objects to this Interrogatory to the extent it is not temporally limited or seeks information for a time period that is not proportional to the needs of the case and/or seeks to impose obligations beyond what is required by the Federal Rules of Civil Procedure, the Local Rules of the Eastern District of Virginia, and any other applicable law.  TWW further objects to this Interrogatory as overly broad, unduly burdensome, vague, ambiguous, not relevant, and not proportional to the needs of the case

21

to the extent it purports to require TWW to inquire of persons other than its employees and/or representatives who would reasonably be expected to have responsive information.  TWW further objects to this Interrogatory as premature to the extent it calls for subsequent discovery in this action and/or expert testimony that will be provided according to deadlines set by the Court.  TWW further objects to this Interrogatory to the extent it seeks information beyond TWW's actual knowledge, custody, or control. TWW further objects to this Interrogatory to the extent it seeks information regarding third parties and/or individuals who TWW does not control.

Subject to and without waiving the foregoing objections, TWW responds:

TWW hereby fully incorporates its response to Interrogatory No. 9 herein. TWW reserves its right to supplement and/or amend its response to this Interrogatory as discovery continues.

**INTERROGATORY NO. 11**: State the date on which TWW first became aware of any alleged infringement by Coleman of the TWW Patent(s) and describe in detail the circumstances by which TWW became aware of each such alleged infringement, including the identity of the persons who first became aware, the circumstances under which such persons first became aware, and any actions taken by TWW in response to gaining such awareness, including all attempts to acquire or perform analyses of the Coleman Accused Products prior to filing the Complaint.

**RESPONSE**: TWW incorporates its objections to Plaintiff's Definitions and Instructions set forth above. TWW objects to this Interrogatory to the extent it seeks information protected by the attorney-client, work-product, or other applicable privilege.  TWW objects to this Interrogatory to the extent it calls for a legal conclusion.  TWW objects to this Interrogatory to the extent it seeks information within Plaintiff's possession, custody or control, or to the extent it seeks information in the public domain.  TWW further objects to this Interrogatory to the extent it seeks confidential, proprietary, or trade secret information.  TWW will only produce such

22

information pursuant to a protective order entered in this proceeding.  TWW further objects to

this Interrogatory to the extent that it seeks confidential business, financial, proprietary, or

sensitive information or trade secrets of third parties, which is subject to pre-existing protective

order(s) and/or confidentiality agreements.  TWW will not produce such information absent an

express order to the contrary from a court of competent jurisdiction, or an authorization from the

third party having the interest in the information's confidentiality.  TWW further objects to this

Interrogatory as overly broad, unduly burdensome, vague, ambiguous, not relevant and not

proportional to the needs of the case. TWW further objects to this Interrogatory to the extent it

seeks information beyond TWW's actual knowledge, custody or control.

Subject to and without waiving the foregoing objections, TWW responds:

i.    TWW is continuing to collect and review information that may be relevant to the subject

matter of this Interrogatory and will supplement its response if and when additional

information is available.

ii.   TWW conducted an appropriate pre-filing investigation under FRCP 11, as well as all

other applicable requirements, before filing its Counterclaim (Dkt. 18) in this lawsuit.

The details of that investigation are protected by the attorney-client privilege and attorney

work product doctrine.

iii.  Mr. Kenneth Wang is knowledgeable regarding TWW's awareness of some infringing

products.

TWW is continuing to collect and review information that may be relevant to the subject

matter of this Interrogatory. TWW reserves its right to supplement and/or amend its response as

discovery continues.

23

**INTERROGATORY NO. 12**: Describe in complete detail on a claim-by-claim and element-by-element basis the factual and legal bases and supporting evidence for your contention that the asserted claims of the TWW Patent(s) are not invalid, providing, for each claim element the bases for any contention that the element is not found in the prior art and an explanation of why the element would not have been obvious to a person of ordinary skill in the art (providing your definition of such a person) over the prior art of the claimed priority date, including any objective indicia you claim supports non obviousness and all documents and things in support of your position and all persons with knowledge in support of your position.

**RESPONSE:** TWW incorporates its objections to Plaintiff's Definitions and Instructions set forth above.  TWW objects to the term "prior art" to the extent it is vague and ambiguous, unintelligible and/or calls for a legal conclusion, and to the extent that it is broader than the meaning of prior art pursuant to 35 U.S.C. § 101 *et seq*. TWW further objects to this Interrogatory to the extent it seeks information protected by the attorney-client, work-product, or other applicable privilege.  TWW objects to this Interrogatory to the extent it calls for a legal conclusion.  TWW further objects to this Interrogatory to the extent it seeks confidential, proprietary, or trade secret information.

TWW further objects to this Interrogatory to the extent that it seeks confidential business, financial, proprietary, or sensitive information or trade secrets of third parties, which is subject to pre-existing protective order(s) and/or confidentiality agreements. TWW will not produce such information absent an express order to the contrary from a court of competent jurisdiction, or an authorization from the third party having the interest in the information's confidentiality.

TWW further objects to this Interrogatory as overly broad, unduly burdensome, vague, ambiguous, not relevant, and not proportional to the needs of the case to the extent it purports to require TWW to inquire of persons other than its employees and/or representatives who would reasonably be

expected to have responsive information. TWW further objects to this Interrogatory as premature to the extent it calls for subsequent discovery in this action and/or expert testimony that will be provided according to deadlines set by the Court. TWW further objects to this Interrogatory to the extent it seeks information beyond TWW's actual knowledge, custody, or control. TWW further objects to this Interrogatory to the extent it seeks information regarding third parties and/or individuals who TWW does not control. TWW further objects to this Interrogatory to the extent it is not temporally limited or seeks information for a time period that is not proportional to the needs of the case and/or seeks to impose obligations beyond what is required by the Federal Rules of Civil Procedure, the Local Rules of the Eastern District of Virginia, and any other applicable law.

Subject to and without waiving the foregoing objections, TWW responds:

i.   TWW maintains that the claimed inventions of the '926 Patent are valid.

ii.   TWW sells products that embody the claimed inventions of the '926 Patent. In terms of structure, the claimed invention provides a sure grip stability system.

iii.   As one example, in TWW's box art for the Serta ST840007 Queen Raised Headboard Airbed, TWW emphasizes:

a.   "Patented Sure Grip$^{TM}$ Bottom Creates Natural Suction Between The Airbed And The Floor Which Eliminates sliding"

b.   "Securely Grips The Floor For Added Stability"



*See* TWW-COL-00000213.

iv.  As another example, Retailers such as Walmart that re-sell TWW products including the

Serta Elevated Diamond Coil Airbed, Queen that embody the claimed inventions of the

'926 Patent advertise:

a.  "Patented Sure Grip bottom design creates a suction between the bed and the floor

which keeps your airbed in place all through the night" *See* TWW-COL-00000007.

Moreover, this Interrogatory prematurely requests information that will be the subject of

TWW's expert witness(es)' testimony, and accordingly, TWW's expert witness(es) will be most

knowledgeable about the subject matter of this Interrogatory.  TWW's experts' opinions will be

disclosed at the time and in the manner provided by the Rule 16(b) Scheduling Order (Dkt. 26).

TWW is continuing to collect and review information that may be relevant to the subject

matter of this Interrogatory. TWW reserves its right to supplement and/or amend its response to

this Interrogatory as discovery continues.

**INTERROGATORY NO. 13**: State fully and with particularity on a claim-by-claim and

element-by-element basis all facts and reasons upon which TWW bases its contentions that

Coleman is infringing the TWW Patent(s), describing in detail how Coleman's allegedly infringe,

literally or through the doctrine of equivalents, each and every element of the TWW Patent Claim(s) that You contend Coleman infringes, and all factual and legal basis supporting these contentions; and all documents supporting your response.

**RESPONSE**: TWW incorporates its objections to Plaintiff's Definitions and Instructions set forth above. TWW objects to the term "prior art" to the extent it is vague and ambiguous, unintelligible and/or calls for a legal conclusion, and to the extent that it is broader than the meaning of prior art pursuant to 35 U.S.C. § 101 *et seq.* TWW further objects to this Interrogatory to the extent it seeks information protected by the attorney-client, work-product, or other applicable privilege.  TWW objects to this Interrogatory to the extent it calls for a legal conclusion.  TWW further objects to this Interrogatory as premature to the extent it calls for subsequent discovery in this action and/or expert testimony that will be provided according to deadlines set by the Court.  TWW further objects to this Interrogatory to the extent it seeks information beyond TWW's actual knowledge, custody, or control. TWW objects to this Interrogatory to the extent it seeks information within Plaintiff's possession, custody or control, or to the extent it seeks information in the public domain. TWW will answer with only such documents in its possession, custody, or control that can be found as a result of a reasonable search of files and other locations that might reasonably be expected to contain the requested information.  TWW further objects to this Interrogatory to the extent it seeks information regarding third parties and/or individuals who TWW does not control. TWW further objects to this Interrogatory to the extent it seeks confidential, proprietary, or trade secret information.  TWW will only produce such information pursuant to a protective order entered in this proceeding.  TWW further objects to this Interrogatory to the extent it is not temporally limited or seeks information for a time period that is not proportional to the needs of

the case and/or seeks to impose obligations beyond what is required by the Federal Rules of Civil Procedure, the Local Rules of the Eastern District of Virginia, and any other applicable law.

Subject to and without waiving the foregoing objections, TWW responds:

TWW hereby fully incorporates by reference Exhibit B provided with this set of responses. TWW reserves its right to supplement and/or amend its response to this Interrogatory as discovery continues.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 13:** TWW hereby fully incorporates by reference Supplemental Exhibit C provided with this set of supplemental responses.

**INTERROGATORY NO. 14**: State fully and with particularity all facts and reasons upon which TWW bases its contentions about what the correct measure of damages should be in this case, should Coleman be found liable on any of the infringement counts brought against Coleman, including whether and why TWW contends that it may seek lost profits, any rates that Plaintiff contends are customary royalty rates in the industry for relevant technologies, the identity of exemplary rates supporting such alleged royalty rates, the amount that Plaintiff contends is a reasonable royalty amount for a license to the TWW Patent(s), and the identify of those persons most knowledgeable about the bases for TWW's infringement damages contentions.

**RESPONSE**: TWW incorporates its objections to Plaintiff's Definitions and Instructions set forth above. TWW further objects to this Interrogatory to the extent it seeks information protected by the attorney-client, work-product, or other applicable privilege.  TWW objects to this Interrogatory to the extent it calls for a legal conclusion.  TWW further objects to this Interrogatory as premature to the extent it calls for subsequent discovery in this action and/or expert testimony that will be provided according to deadlines set by the Court.  TWW will only produce such information

pursuant to a protective order entered in this proceeding. TWW further objects to this Interrogatory as overly broad, unduly burdensome, vague, ambiguous, not relevant, and not proportional to the needs of the case to the extent it purports to require TWW to inquire of persons other than its employees and/or representatives who would reasonably be expected to have responsive information. TWW objects to this Interrogatory to the extent it seeks information within Plaintiff's possession, custody or control, or to the extent it seeks information in the public domain. TWW will answer with only such documents in its possession, custody, or control that can be found as a result of a reasonable search of files and other locations that might reasonably be expected to contain the requested information. TWW further objects to this Interrogatory to the extent it is compound and/or contains multiple subparts. TWW will count each subpart as a separate interrogatory pursuant to Federal Rule of Civil Procedure 33(a). TWW will not respond to interrogatories in excess of the allotted number of interrogatories established in the Court's scheduling order.

Subject to and without waiving the foregoing objections, TWW responds:

i.   The relevant time period for damages is 6 years prior to the filing of TWW's Counterclaim (Dkt. 18).

ii.  This interrogatory prematurely requests information that will be the subject of TWW's expert witness(es)' testimony, and accordingly, TWW's expert witness(es) will be most knowledgeable about the subject matter of this Interrogatory. TWW's experts' opinions will be disclosed at the time and in the manner provided by the Rule 16(b) Scheduling Order (Dkt. 26).

iii. TWW contends it is entitled to lost profits on all sales, or alternatively a reasonable royalty, which is the minimum measure of damages guaranteed by statute to TWW in the event of

infringement. Every sale of '926 Accused Products is a lost sale that TWW would have made because there are no non-infringing alternatives. TWW contends that all infringing sales resulted in lost profits to TWW. TWW is entitled to damages for Coleman's willful infringing sales. A decision regarding treble damages is to be made if willfulness is shown and is based on facts including that Coleman knew of the '926 Patent and its infringement but nevertheless continued to sell infringing products. Attorneys' fees are the subject of post-trial filings if the Court deems them warranted and will be the basis of a request at that time based on the fees incurred to that date. TWW's expert will provide further or additional information on these and/or additional remedies that TWW seeks in this case.

iv.   Mr. Kenneth Wang is knowledgeable about the bases for TWW's damages.

TWW reserves its right to supplement and/or amend its response to this Interrogatory as discovery continues.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 14:** TWW fully incorporates by reference its supplemental response to interrogatory no. 7 above. Pursuant to Fed. R. Civ. P. 33(d), TWW identifies the following documents: TWW-COL-00025102, TWW-COL-00024864, TWW-COL-00026203, TWW-COL-00026226, TWW-COL-00026673, TWW-COL-00026695, TWW-COL-00026716, TWW-COL-00026780, TWW-COL-00026818, TWW-COL-00026883, TWW-COL-00026965, TWW-COL-00027002, TWW-COL-00027076, TWW-COL-00027108, TWW-COL-00027131, TWW-COL-00027195, TWW-COL-00027276, TWW-COL-00027279, TWW-COL-00027316,   TWW-COL-00027333,   TWW-COL-00034077-79,   TWW-COL-00034603, TWW-COL-00034605-06.

**INTERROGATORY NO. 15**: State fully and with particularity all facts and details involving TWW's contentions about the proper meaning of the terms "concave air bag," "suction cup," and

"fixing" as used in the TWW Patent Claim(s), including but not limited to, whether TWW contends the terms are non-limiting, TWW's proposed construction of the terms, all intrinsic and/or extrinsic evidence that TWW intends to rely on to support any such construction, and individuals who can explain TWW's definition of the terms.

**RESPONSE**:

TWW incorporates its objections to Plaintiff's Definitions and Instructions set forth above.

TWW further objects to this Interrogatory to the extent it seeks information protected by the attorney-client, work-product, or other applicable privilege. TWW objects to this Interrogatory to the extent it calls for a legal conclusion. TWW further objects to this Interrogatory as premature to the extent it calls for subsequent discovery in this action and/or expert testimony that will be provided according to deadlines set by the Court and for claim constructions which will be provided in accordance with deadlines set by the Court. TWW will provide its response to this Interrogatory with its claim constructions in accordance with the Court's schedule. TWW objects to this Interrogatory to the extent it seeks information within Plaintiff's possession, custody or control, or to the extent it seeks information in the public domain. TWW further objects to this Interrogatory as overly broad, unduly burdensome, vague, ambiguous, not relevant, and not proportional to the needs of the case to the extent it purports to require TWW to inquire of persons other than its employees and/or representatives who would reasonably be expected to have responsive information. TWW further objects to this Interrogatory to the extent it seeks information regarding third parties and/or individuals who TWW does not control. TWW further objects to this Interrogatory to the extent it seeks confidential, proprietary, or trade secret information. TWW will only produce such information pursuant to a protective order entered in this proceeding.

Subject to and without waiving the foregoing objections, TWW responds:

This Interrogatory prematurely requests information that will be disclosed at the time and in the manner provided by the Order (Dkt. 27) on the claim construction process. TWW will provide its proposed constructions for these terms, if necessary, with supporting evidence in accordance with the Court's order on claim construction.

TWW reserves its right to supplement and/or amend its response to this Interrogatory as discovery continues.

Dated: May 28, 2021

By: */s/ J. Michael Woods*
J. Michael Woods (*pro hac vice*)
**RuyakCherian LLP**
1901 L St. NW, Suite 700
Washington, DC 20036
Telephone: (202) 838-1560
michaelw@ruyakcherian.com

William R. Poynter (VSB No. 48672)
David Sullivan (VSB No. 45027)
KALEO LEGAL
4456 Corporation Lane, Suite 135
Virginia Beach, VA 23462
Phone: 757.238.6383
Fax: 757.304.6175
wpoynter@kaleolegal.com
dsullivan@kaleolegal.com

Of Counsel:

Korula Cherian
**RuyakCherian LLP**
1936 University Ave., Ste. 350
Berkeley, CA 94702
Telephone: (510) 944-0190
sunnyc@ruyakcherian.com

*Attorneys for Team Worldwide Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that counsel of record are being served with a copy of this document via electronic mail on May 28, 2021.

Respectfully submitted,

By: ___/s/ J. Michael Woods_____

## SUPPLEMENTAL EXHIBIT A TO TWW'S RESPONSE TO INTERROGATORY NO. 2

The Coleman Asserted Claims of the '618 Patent are anticipated under 35 U.S.C. § 102 and thereby rendered invalid by at least the following prior art references as well as rendered obvious under 35 U.S.C. § 103 either alone or combined with knowledge known to one of skill in the art at the time of the purported inventions claimed in the patent, as well as in combination with any of the other listed prior art references, for example under 35 U.S.C. § 103(a):

- JP Application No. 1974-034811 to Aoki ("Aoki")
- US Patent No. 4,689,843 to Santo ("Santo I")
- US Patent No. 4,700,419 to Santo ("Santo II")
- US Patent No. 4,064,579 to Winther ("Winther")
- US Patent No. 5,906,019 to McCarthy et al. ("McCarthy")
- DE Publication No. 24-04-699 to Kirsch ("Kirsch")
- JP Application No. 08-89367 to Usami ("Usami")
- PCT Publication No. 1998-048134 to Kessi et al. ("Kessi")
- US Patent No. 6,804,848 to Rose ("Rose")
- US Patent No. 5.598,593 to Wolfe ("Wolfe")
- All prior art references cited in the '618 Patent
- All prior art references cited in the '618 Patent Background
- DE Publication No. 12-48-282 to Semperit AG ("Semperit")
- FR Publication No. 606.176A to Mellano ("Mellano")
- FR Publication No. 2136914A1 to Hutchinson Cie TS ("Hutchinson")
- GB Publication No. 308290A to Earle ("Earle")
- GB Publication No. 453227A to Thomson ("Thomson")
- WO Publication No. 1998048134A to Edouard and Gérard ("Edouard")
- JP Publication No. 05-317141A to Uerudaa ("Uerudaa")
- JP Publication No. 06-090840A to Koichi ("Koichi")
- JP Publication No. 08-336442A to Tekkosho ("Tekkosho")
- JP Publication No. 11-313859A to Care Supply Japan KK ("Care Supply")
- US Patent No. 66,706 to Hamilton ("Hamilton")
- US Patent No. 2,016,054 to Sentell ("Sentell")

- US Patent No. 2,604641 to Reed ("Reed")
- US Patent No. 3,864,767 to Metrologic Instruments ("Metrologic")
- US Patent No. 4,187,569 to Calleance ("Calleance I")
- US Patent No. 4,245,364 to Calleance ("Calleance II")
- US Patent No. 5,115,526 to Boyd ("Boyd")
- US Patent No. 6,754,926 to Wang ("Wang" or TWW Asserted Patent)
- US Patent No. 6,243,894 to Kosumsuppamala et al.
- US Patent No. 6,430,763 to Kosumsuppamala et al.
- US Patent No. 4,541,135 to Karpov
- CN Publication No. 22 4 1061 Y to Zhang ("Zhang")
- CN Publication No. 23 9 1508 Y to Xiao ("Xiao")
- CN Publication No. 24 4 2592 Y to Jin ("Jin")
- CN Publication No. 87 2 09563 U to Lei ("Lei")
- September 1992 publication titled Testing of the Cocoon-4 Sleeping Shelter by Defence and Civil Institute of Environmental Medicine
- April 2003 online publication by Aqua Leisure Inflatables
- June 2001 online publication by The Wet Set Inflatables describing its line of Inflatable products
- July 2001 online publication by Gaymar Industries, Inc. titled "RSM180S Sof.Matt Low Air Loss"
- October 2001 article by MotorHome titled "Sleeping Well on the Road"
- June 2002 online publication by Intex describing Comfort-Rest Airbeds
- February 2002 online publication by Coleman titled "Air Mats"
- February 2002 online publication by Coleman titled "Airbeds & Pumps"
- December 2002 Backpacker.com/gear publication titled "4 pads that will put you to sleep"
- December 2002 online publication by New World Manufacturing titled "Waterbed Mattresses"
- February 2003 online publication by New World Manufacturing titled "Air Mattresses and Related Products"
- February 2003 online publication titled "Sleeping on air"

TWW also incorporates by reference all prior art shown on the '618 Patent as "References Cited" or discussed anywhere in the prosecution history of the underlying patent applications for the '618 Patent.

In addition to the explicit references identified herein, the '618 Patent is rendered obvious when "the inferences and creative steps that a person of ordinary skill in the art would employ" are taken into account. *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007).

To the extent that the following contentions reflect constructions of claim limitations consistent with or suggested by Coleman in infringement contentions, discovery responses, or taken in conjunction with any pleading or argument in the case, no inference is intended nor should any be drawn that TWW agrees with Coleman's claim constructions, and TWW expressly reserves the right to contest to such claim constructions. TWW offers such contentions solely in the alternative to any position they may ultimately take as to any claim construction issues.

The following contentions are exemplary and subject to revision and amendment pursuant to Federal Rule of Civil Procedure 26(e) and the Orders of record in this matter subject to further investigation and discovery regarding the references and the Court's construction of the claims at issue.

| '618 Patent Invalidity Exemplary Contentions: Anticipation by Aoki and/or Obviousness by Aoki and/or Obviousness by Aoki with Santo | | |
|---|---|---|
| Claim | Claim Term | Reference |
| 1 preamble | An air mattress, comprising: | Aoki, Title, translation:  "Box shaped air mattress" |
| 1a | a first panel and a spaced second panel; | Aoki, Para. 2, translation:  A box shaped air mattress, being an air mattress fashioned in a box shape, wherein a vertical tension strip is provided between the top surface fabric and bottom surface fabric |
| 1b | at least one side panel extending between the first panel and the second panel; | Aoki, Para. 3, translation: In the box shaped air mattress (5) comprised of a top surface fabric (1), bottom surface fabric (2), length direction side surface fabric (3) and width direction side surface fabric (4), a plurality of vertical tension strips (6) are provided between the top surface fabric (1) and bottom surface fabric (2). |
| 1c | the at least one side panel, the first panel, and the second panel being joined to one another along their | Aoki, Para. 2, translation: A box shaped air mattress, being an air mattress fashioned in a box shape, wherein a vertical tension strip is provided between the top surface fabric and bottom surface fabric, and a diagonal bracing tension strip is provided respectively between the top surface fabric and length direction side surface fabric, the bottom surface |

| '618 Patent Invalidity Exemplary Contentions: Anticipation by Aoki and/or Obviousness by Aoki and/or Obviousness by Aoki with Santo | | |
|---|---|---|
| Claim | Claim Term | Reference |
|  | common peripheral edges to define an air chamber therebetween, the air chamber having a depth measured between the first panel and the second panel in the range of from about ten inches to about eighteen to about twenty-four inches; | fabric and length direction surface fabric, the top surface fabric and width direction side surface fabric, and the bottom surface fabric and width direction side surface fabric.<br><br>Wolfe, Col. 6:31-32, "The total air bed height is about 12 inches (inflated), …." Rose, Col. 1:44-48, "Therefore, the need to provide a high-profile mattress, i.e., one that is about 15" in height, using adjustable air chambers is a problem requiring much attention." |
| 1d | at least one mattress coil disposed within said air chamber, said at least one coil being affixed to and extending continuously from the first panel to the second panel, respectively; | '019 Patent, Col. 1:10-18.  The prior art is shown in FIG. 1, and discloses a typical coil air mattress indicated generally at 1. Such air mattresses are made of plain PVC sheeting or flocked PVC sheeting.  Such air mattresses have as their internal components a plurality of coils.  In FIG. 2, the coil air mattress has a top sheet 3, a bottom sheet 4, and a gusset wall. The top sheet and bottom sheet are joined to the gusset wall by butt seams 6 and 7.  The coils restrain the distance between the top sheet and the bottoms when the air mattress is filled with air.<br><br><br><br>FIG. 2<br>(PRIOR ART) |
| 1e | a first side support beam extending in the | Aoki, Para. 3, translation: Diagonal bracing tension strips (10) are similarly adhered between the bottom surface fabric (2) and length direction side surface fabric (3), between |

| | | '618 Patent Invalidity Exemplary Contentions:<br>Anticipation by Aoki and/or<br>Obviousness by Aoki and/or<br>Obviousness by Aoki with Santo |
|---|---|---|
| Claim | Claim Term | Reference |
| | lengthwise direction of the at least one side panel, said first side support beam having a first edge affixed to the at least one side panel, a second edge affixed to the first panel, and a section between the first edge and the second edge where the first side support beam is attached neither to said at least one side panel nor the first panel, the first side support beam being arranged such that when the air chamber is filled with air, the section of the first side support beam is in tension and the first side support beam limits outward expansion of said at least one side panel; and | the top surface fabric (1) and width direction side surface fabric (4), and between the bottom surface fabric (2) and width direction side surface fabric (4).<br><br>Aoki, Para. 3, translation:  As a result of providing diagonal bracing tension strips (10) in this manner, when the air pressure inside the box shaped air mattress (5) increases and the length direction side surface fabric (3) and width direction side surface fabric (4) starts to bulge outward, the diagonal bracing tension strips (10) are tensioned, so that the relationships between the respective surface fabrics, i.e. the length direction side surface fabric (3) and width direction side surface fabric (4) in relation to the top surface fabric (1) and bottom surface fabric (2), become substantially at a right angle.<br><br>Aoki, Fig. 2:<br><br><br>FIG. 2<br><br>Santo II, Col 4:59-5:25:  In still another alternate embodiment of the perimeter air chamber of this invention, as shown in FIGS. 7 and 8, the alternate perimeter support air chamber 14" contains a plurality of tie members 30a, 30b for maintaining the chamber in its rectilinear configuration. The tie members 30a, 30b, which are formed for example of a similar material as that used to form the tie members of the embodiments of FIGS. 1-5, |

| '618 Patent Invalidity Exemplary Contentions: Anticipation by Aoki and/or Obviousness by Aoki and/or Obviousness by Aoki with Santo | | |
|---|---|---|
| Claim | Claim Term | Reference |
| | | are respectively interconnected between the inside surface of the exterior marginal perimeter wall 14b" and the upper and lower walls 14d", 14c". The interconnection, which is accomplished by heat sealing for example, is made at particularly selected locations to provide the necessary forces on the walls of the perimeter air chamber 14" to maintain its rectilinearity in the manner similar to that described above with reference to the embodiment of FIGS. 1-5. Specifically, the joining of one edge of the tie members 30a, 30b to the perimeter wall 14b" is effected respectively along the lines 32a, 32b at approximately a distance d1 ' one-third of the wall 14b" from its top and bottom, and the the joining of the opposite edges of the tie members respectively to the upper and lower walls is respectively effected along lines 34a, 34b at approximately an equal distance d2 ' from the vertical projections of the first mentioned lines respectively on the upper and lower walls. Accordingly, as in the embodiment of FIGS. 1-5, the tie members 30a, 30b counteract the forces tending to bow the marginal perimeter wall outwards and maintain the marginal perimeter air chamber 14" in its substantially rectilinear configuration. Of course, the tie members 30a, 30b could be formed as one continuous member joined to the marginal perimeter wall at similar locations to that shown in FIG. 7 and 8, or at one central location as that shown in FIGS. 2-5.<br><br>Santo II, Abstract: An improved floatation sleep system of the type including a liquid-containing bladder, an air chamber surrounding the marginal perimeter of the bladder, and a substantially planar sheet interconnecting opposed portions of the air chamber. By this invention, the exterior of the air chamber is maintained in a substantially rectilinear configuration to yield the desirable overall rectilinear appearance of conventional bedding.<br><br>Santo II, Fig. 7: |

| '618 Patent Invalidity Exemplary Contentions: Anticipation by Aoki and/or Obviousness by Aoki and/or Obviousness by Aoki with Santo | | |
|---|---|---|
| Claim | Claim Term | Reference |
| | |   FIG. 7 |
| 1f | a second side support beam extending in the lengthwise direction of the at least one side panel, said second side support beam having a first edge affixed to the at least one side panel, a second edge affixed to the second panel, and a section between the first edge and the second edge where the second side support beam is attached neither to said at least one side panel nor the second panel, and the second side support beam being arranged such that when the air chamber is filled | See previous element |

| '618 Patent Invalidity Exemplary Contentions: Anticipation by Aoki and/or Obviousness by Aoki and/or Obviousness by Aoki with Santo | | |
|---|---|---|
| Claim | Claim Term | Reference |
|  | with air, the section of the second side support beam is in tension and the second side support beam limits outward expansion of said at least one side panel. |  |
| 2 | The air mattress of claim 1, wherein the respective first edges of the two side support beams are spaced from one another on the at least one side wall of the mattress. | Aoki, Para. 3: Diagonal bracing tension strips (10) are similarly adhered between the bottom surface fabric (2) and length direction side surface fabric (3), between the top surface fabric (1) and width direction side surface fabric (4), and between the bottom surface fabric (2) and width direction side surface fabric (4).  FIG. 2 Santo II, Col 4:59-5:25.  In still another alternate embodiment of the perimeter air chamber of this invention, as shown in FIGS. 7 and 8, the alternate perimeter support air chamber 14" contains a plurality of tie members 30a, 30b for maintaining the chamber in its rectilinear configuration. The tie members 30a, 30b, which are formed for example of a similar material as that used to form the tie members of the embodiments of FIGS. 1-5, are respectively interconnected between the inside surface of the exterior marginal perimeter wall 14b" and the upper and lower walls 14d", 14c". The interconnection, which |

| '618 Patent Invalidity Exemplary Contentions: Anticipation by Aoki and/or Obviousness by Aoki and/or Obviousness by Aoki with Santo | | |
| --- | --- | --- |
| Claim | Claim Term | Reference |
| | | is accomplished by heat sealing for example, is made at particularly selected locations to provide the necessary forces on the walls of the perimeter air chamber 14" to maintain its rectilinearity in the manner similar to that described above with reference to the embodiment of FIGS. 1-5. Specifically, the joining of one edge of the tie members 30a, 30b to the perimeter wall 14b" is effected respectively along the lines 32a, 32b at approximately a distance d1 ' one-third of the wall 14b" from its top and bottom, and the the joining of the opposite edges of the tie members respectively to the upper and lower walls is respectively effected along lines 34a, 34b at approximately an equal distance d2 ' from the vertical projections of the first mentioned lines respectively on the upper and lower walls. Accordingly, as in the embodiment of FIGS. 1-5, the tie members 30a, 30b counteract the forces tending to bow the marginal perimeter wall outwards and maintain the marginal perimeter air chamber 14" in its substantially rectilinear configuration. Of course, the tie members 30a, 30b could be formed as one continuous member joined to the marginal perimeter wall at similar locations to that shown in FIG. 7 and 8, or at one central location as that shown in FIGS. 2-5.<br><br><br>FIG. 7 |
| 4 | The air mattress of claim 1, wherein the first side support beam and the second side | Aoki, Para. 3:  As a result of providing diagonal bracing tension strips (10) in this manner, when the air pressure inside the box shaped air mattress (5) increases and the length direction side surface fabric (3) and width direction side surface fabric (4) starts to bulge outward, the diagonal bracing tension strips (10) are tensioned, so that the relationships |

| '618 Patent Invalidity Exemplary Contentions: Anticipation by Aoki and/or Obviousness by Aoki and/or Obviousness by Aoki with Santo | | |
|---|---|---|
| Claim | Claim Term | Reference |
|  | support beam are each constructed and arranged to limit the outward expansion of the at least one side panel of the air mattress. | between the respective surface fabrics, i.e. the length direction side surface fabric (3) and width direction side surface fabric (4) in relation to the top surface fabric (1) and bottom surface fabric (2), become substantially at a right angle.<br><br>'419 Patent, Abstract: An improved floatation sleep system of the type including a liquid-containing bladder, an air chamber surrounding the marginal perimeter of the bladder, and a substantially planar sheet interconnecting opposed portions of the air chamber. By this invention, the exterior of the air chamber is maintained in a substantially rectilinear configuration to yield the desirable overall rectilinear appearance of conventional bedding. |
| 10 preamble | An air mattress, comprising: | Aoki, Title, translation:  "Box shaped air mattress" |
| 10a | a first panel and a spaced second panel; | Aoki, Para. 2, translation:  A box shaped air mattress, being an air mattress fashioned in a box shape, wherein a vertical tension strip is provided between the top surface fabric and bottom surface fabric |
| 10b | at least one side panel extending between the first panel and the second panel; | Aoki, Para. 3, translation: In the box shaped air mattress (5) comprised of a top surface fabric (1), bottom surface fabric (2), length direction side surface fabric (3) and width direction side surface fabric (4), a plurality of vertical tension strips (6) are provided between the top surface fabric (1) and bottom surface fabric (2). |
| 10c | the at least one side panel, the first panel, and the second panel being joined to one another along their common peripheral edges to define an air chamber therebetween; | Aoki, Para. 2, translation: A box shaped air mattress, being an air mattress fashioned in a box shape, wherein a vertical tension strip is provided between the top surface fabric and bottom surface fabric, and a diagonal bracing tension strip is provided respectively between the top surface fabric and length direction side surface fabric, the bottom surface fabric and length direction surface fabric, the top surface fabric and width direction side surface fabric, and the bottom surface fabric and width direction side surface fabric. |

| '618 Patent Invalidity Exemplary Contentions: Anticipation by Aoki and/or Obviousness by Aoki and/or Obviousness by Aoki with Santo | | |
|---|---|---|
| Claim | Claim Term | Reference |
| 10d | a first side support beam extending in the lengthwise direction of the at least one side panel, said first side support beam having a first edge affixed to the at least one side panel, a second edge affixed to the first panel, and a section between the first edge and the second edge where the first side support beam is attached neither to said at least one side panel nor the first panel, the first side support beam being arranged such that when the air chamber is filled with air, the section of the first side support beam is in tension and the first side support beam limits outward expansion of said at least one side panel; and | Aoki, Para. 3, translation: Diagonal bracing tension strips (10) are similarly adhered between the bottom surface fabric (2) and length direction side surface fabric (3), between the top surface fabric (1) and width direction side surface fabric (4), and between the bottom surface fabric (2) and width direction side surface fabric (4).

Aoki, Para. 3, translation:  As a result of providing diagonal bracing tension strips (10) in this manner, when the air pressure inside the box shaped air mattress (5) increases and the length direction side surface fabric (3) and width direction side surface fabric (4) starts to bulge outward, the diagonal bracing tension strips (10) are tensioned, so that the relationships between the respective surface fabrics, i.e. the length direction side surface fabric (3) and width direction side surface fabric (4) in relation to the top surface fabric (1) and bottom surface fabric (2), become substantially at a right angle.

Aoki, Fig. 2: |

| | | ’618 Patent Invalidity Exemplary Contentions:<br>Anticipation by Aoki and/or<br>Obviousness by Aoki and/or<br>Obviousness by Aoki with Santo |
|---|---|---|
| Claim | Claim Term | Reference |
| | | <br><br>FIG. 2<br><br>Santo II, Col 4:59-5:25:  In still another alternate embodiment of the perimeter air chamber of this invention, as shown in FIGS. 7 and 8, the alternate perimeter support air chamber 14″ contains a plurality of tie members 30a, 30b for maintaining the chamber in its rectilinear configuration. The tie members 30a, 30b, which are formed for example of a similar material as that used to form the tie members of the embodiments of FIGS. 1-5, are respectively interconnected between the inside surface of the exterior marginal perimeter wall 14b″ and the upper and lower walls 14d″, 14c″. The interconnection, which is accomplished by heat sealing for example, is made at particularly selected locations to provide the necessary forces on the walls of the perimeter air chamber 14″ to maintain its rectilinearity in the manner similar to that described above with reference to the embodiment of FIGS. 1-5. Specifically, the joining of one edge of the tie members 30a, 30b to the perimeter wall 14b″ is effected respectively along the lines 32a, 32b at approximately a distance d1 ′ one-third of the wall 14b″ from its top and bottom, and the |

| '618 Patent Invalidity Exemplary Contentions: Anticipation by Aoki and/or Obviousness by Aoki and/or Obviousness by Aoki with Santo | | |
| --- | --- | --- |
| Claim | Claim Term | Reference |
| | | the joining of the opposite edges of the tie members respectively to the upper and lower walls is respectively effected along lines 34a, 34b at approximately an equal distance d2 ' from the vertical projections of the first mentioned lines respectively on the upper and lower walls. Accordingly, as in the embodiment of FIGS. 1-5, the tie members 30a, 30b counteract the forces tending to bow the marginal perimeter wall outwards and maintain the marginal perimeter air chamber 14" in its substantially rectilinear configuration. Of course, the tie members 30a, 30b could be formed as one continuous member joined to the marginal perimeter wall at similar locations to that shown in FIG. 7 and 8, or at one central location as that shown in FIGS. 2-5. Santo II, Abstract: An improved floatation sleep system of the type including a liquid-containing bladder, an air chamber surrounding the marginal perimeter of the bladder, and a substantially planar sheet interconnecting opposed portions of the air chamber. By this invention, the exterior of the air chamber is maintained in a substantially rectilinear configuration to yield the desirable overall rectilinear appearance of conventional bedding. Santo II, Fig. 7: |

| '618 Patent Invalidity Exemplary Contentions: Anticipation by Aoki and/or Obviousness by Aoki and/or Obviousness by Aoki with Santo | | |
|---|---|---|
| Claim | Claim Term | Reference |
| | |  |
| 10e | a second side support beam extending in the lengthwise direction of the at least one side panel, said second side support beam having a first edge affixed to the at least one side panel, a second edge affixed to the second panel, and a section between the first edge and the second edge where the second side support beam is attached neither to said | See previous element |

| '618 Patent Invalidity Exemplary Contentions: Anticipation by Aoki and/or Obviousness by Aoki and/or Obviousness by Aoki with Santo | | |
|---|---|---|
| Claim | Claim Term | Reference |
| | at least one side panel nor the second panel, the second side support beam being arranged such that when the air chamber is filled with air, the section of the second side support beam is in tension and the second side support beam limits outward expansion of said at least one side panel. | |
| 13 preamble | An air mattress, comprising: | Aoki, Title, translation:  "Box shaped air mattress" |
| 13a | a top panel and a spaced bottom panel | Aoki, Para. 2, translation:  A box shaped air mattress, being an air mattress fashioned in a box shape, wherein a vertical tension strip is provided between the top surface fabric and bottom surface fabric |
| 13b | at least one side panel extending between the top panel and the bottom panel | Aoki, Para. 2, translation: In the box shaped air mattress (5) comprised of a top surface fabric (1), bottom surface fabric (2), length direction side surface fabric (3) and width direction side surface fabric (4), a plurality of vertical tension strips (6) are provided between the top surface fabric (1) and bottom surface fabric (2). |
| 13c | the at least one side panel, the top panel, and the bottom panel being joined to one another along their common peripheral edges to | Aoki, Para. 2, translation: A box shaped air mattress, being an air mattress fashioned in a box shape, wherein a vertical tension strip is provided between the top surface fabric and bottom surface fabric, and a diagonal bracing tension strip is provided respectively between the top surface fabric and length direction side surface fabric, the bottom surface fabric and length direction surface fabric, the top surface fabric and width direction side surface fabric, and the bottom surface fabric and width direction side surface fabric. |

| '618 Patent Invalidity Exemplary Contentions: Anticipation by Aoki and/or Obviousness by Aoki and/or Obviousness by Aoki with Santo | | |
|---|---|---|
| Claim | Claim Term | Reference |
| | define an air chamber therebetween; and | |
| 13d | at least one internal side support beam extending in the lengthwise direction of the at least one side panel, the at least one internal side support beam having a first edge affixed to an inside of the at least one side panel, a second edge affixed to an inside of at least one of the top panel and the bottom panel, and a section between the first edge and the second edge where the first side support beam is attached neither to said at least one side panel nor said at least one of the top panel and the bottom panel, the internal side support beam being arranged such that when the air chamber is filled | Aoki, Para. 3, translation: Diagonal bracing tension strips (10) are similarly adhered between the bottom surface fabric (2) and length direction side surface fabric (3), between the top surface fabric (1) and width direction side surface fabric (4), and between the bottom surface fabric (2) and width direction side surface fabric (4).<br><br>Aoki, Para. 3, translation:  As a result of providing diagonal bracing tension strips (10) in this manner, when the air pressure inside the box shaped air mattress (5) increases and the length direction side surface fabric (3) and width direction side surface fabric (4) starts to bulge outward, the diagonal bracing tension strips (10) are tensioned, so that the relationships between the respective surface fabrics, i.e. the length direction side surface fabric (3) and width direction side surface fabric (4) in relation to the top surface fabric (1) and bottom surface fabric (2), become substantially at a right angle.<br><br>Aoki, Fig. 2: |

| | | '618 Patent Invalidity Exemplary Contentions:<br>Anticipation by Aoki and/or<br>Obviousness by Aoki and/or<br>Obviousness by Aoki with Santo |
|---|---|---|
| Claim | Claim Term | Reference |
| | with air, the section of the internal side support beam is in tension and the internal side support beam limits outward expansion of said at least one side panel. | FIG. 2<br><br><br><br>Santo II, Col 4:59-5:25:  In still another alternate embodiment of the perimeter air chamber of this invention, as shown in FIGS. 7 and 8, the alternate perimeter support air chamber 14" contains a plurality of tie members 30a, 30b for maintaining the chamber in its rectilinear configuration. The tie members 30a, 30b, which are formed for example of a similar material as that used to form the tie members of the embodiments of FIGS. 1-5, are respectively interconnected between the inside surface of the exterior marginal perimeter wall 14b" and the upper and lower walls 14d", 14c". The interconnection, which is accomplished by heat sealing for example, is made at particularly selected locations to provide the necessary forces on the walls of the perimeter air chamber 14" to maintain its rectilinearity in the manner similar to that described above with reference to the embodiment of FIGS. 1-5. Specifically, the joining of one edge of the tie members 30a, 30b to the perimeter wall 14b" is effected respectively along the lines 32a, 32b at approximately a distance d1 ' one-third of the wall 14b" from its top and bottom, and the |

| '618 Patent Invalidity Exemplary Contentions: Anticipation by Aoki and/or Obviousness by Aoki and/or Obviousness by Aoki with Santo | | |
|---|---|---|
| Claim | Claim Term | Reference |
| | | the joining of the opposite edges of the tie members respectively to the upper and lower walls is respectively effected along lines 34a, 34b at approximately an equal distance d2 ' from the vertical projections of the first mentioned lines respectively on the upper and lower walls. Accordingly, as in the embodiment of FIGS. 1-5, the tie members 30a, 30b counteract the forces tending to bow the marginal perimeter wall outwards and maintain the marginal perimeter air chamber 14" in its substantially rectilinear configuration. Of course, the tie members 30a, 30b could be formed as one continuous member joined to the marginal perimeter wall at similar locations to that shown in FIG. 7 and 8, or at one central location as that shown in FIGS. 2-5. <br><br> Santo II, Abstract: An improved floatation sleep system of the type including a liquid-containing bladder, an air chamber surrounding the marginal perimeter of the bladder, and a substantially planar sheet interconnecting opposed portions of the air chamber. By this invention, the exterior of the air chamber is maintained in a substantially rectilinear configuration to yield the desirable overall rectilinear appearance of conventional bedding. <br><br> Santo II, Fig. 7: |

| '618 Patent Invalidity Exemplary Contentions: Anticipation by Aoki and/or Obviousness by Aoki and/or Obviousness by Aoki with Santo | | |
|---|---|---|
| Claim | Claim Term | Reference |
| | |  |

| '618 Patent Invalidity Exemplary Contentions: Anticipation by Aoki and/or Obviousness by Aoki and/or Obviousness by Aoki with Santo | | |
|---|---|---|
| Claim | Claim Term | Reference |
| 14 | The air mattress of claim 13, wherein the second edge of the at least one internal side support beam affixed to one of the top and bottom panels, respectively, extends substantially parallel to the joined edge of said one of the top and bottom panels and the at least one side panel. | <br><br>FIG. 3<br><br>FIG. 4<br><br>Utility model registration applicant:  Kokoku Kagaku Kogyo K.K.<br><br>Aoki:  Figures show the side support beam would be substantially parallel to joined edge |

| | '618 Patent Invalidity Exemplary Contentions:<br>Anticipation by Aoki and/or<br>Obviousness by Aoki and/or<br>Obviousness by Aoki with Santo | |
|---|---|---|
| Claim | Claim Term | Reference |
| | | <br>Santo II:  Fig. 7 shows side support beam running substantially parallel to joined edge. |
| 15 | The air mattress of claim 13, further comprising at least one mattress coil disposed within said air chamber, said at least one coil being affixed to and extending continuously from the top panel to the bottom panel, respectively. | |
| 16 | The air mattress of claim 15, further comprising a plurality of | See claim 1 |

| \'618 Patent Invalidity Exemplary Contentions: Anticipation by Aoki and/or Obviousness by Aoki and/or Obviousness by Aoki with Santo | | |
|---|---|---|
| Claim | Claim Term | Reference |
|  | mattress coils disposed within said air chamber, each said coil being separately affixed to and extending continuously from the top panel to the bottom panel, respectively. |  |
| 17 | The air mattress of claim 13, said air chamber having a depth measured between the top panel and the bottom panel in the range of from about ten inches to about eighteen to about twenty-four inches. | See claim 1<br><br>Wolfe, Col. 6:31-32, "The total air bed height is about 12 inches (inflated), …." Rose, Col. 1:44-48, "Therefore, the need to provide a high-profile mattress, i.e., one that is about 15" in height, using adjustable air chambers is a problem requiring much attention." |
| 21 preamble | An air mattress, comprising: | Aoki, Title, translation:  "Box shaped air mattress" |
| 21a | a first panel and a spaced second panel; | Aoki, Para. 2, translation:  A box shaped air mattress, being an air mattress fashioned in a box shape, wherein a vertical tension strip is provided between the top surface fabric and bottom surface fabric |
| 21b | at least one side panel extending between the first panel and the second panel; | Aoki, Para. 3, translation: In the box shaped air mattress (5) comprised of a top surface fabric (1), bottom surface fabric (2), length direction side surface fabric (3) and width direction side surface fabric (4), a plurality of vertical tension strips (6) are provided between the top surface fabric (1) and bottom surface fabric (2). |
| 21c | the at least one side panel, the first panel, | Aoki, Para. 2, translation: A box shaped air mattress, being an air mattress fashioned in a box shape, wherein a vertical tension strip is provided between the top surface fabric and |

| | | '618 Patent Invalidity Exemplary Contentions:<br>Anticipation by Aoki and/or<br>Obviousness by Aoki and/or<br>Obviousness by Aoki with Santo |
|---|---|---|
| Claim | Claim Term | Reference |
| | and the second panel being joined to one another along their common peripheral edges to define an air chamber therebetween; and | bottom surface fabric, and a diagonal bracing tension strip is provided respectively between the top surface fabric and length direction side surface fabric, the bottom surface fabric and length direction surface fabric, the top surface fabric and width direction side surface fabric, and the bottom surface fabric and width direction side surface fabric. |
| | a pair of side support beams extending in the lengthwise direction of each said side panel, each said side support beam having a first edge and a second edge, wherein the first edge of the first side support beam is affixed to the side panel and the second edge thereof is affixed to the first panel and a section between the first edge and the second edge is attached neither to said at least one side panel nor the first panel, and the first edge of the second side support beam is affixed | Aoki, Para. 3, translation: Diagonal bracing tension strips (10) are similarly adhered between the bottom surface fabric (2) and length direction side surface fabric (3), between the top surface fabric (1) and width direction side surface fabric (4), and between the bottom surface fabric (2) and width direction side surface fabric (4).<br><br>Aoki, Para. 3, translation:  As a result of providing diagonal bracing tension strips (10) in this manner, when the air pressure inside the box shaped air mattress (5) increases and the length direction side surface fabric (3) and width direction side surface fabric (4) starts to bulge outward, the diagonal bracing tension strips (10) are tensioned, so that the relationships between the respective surface fabrics, i.e. the length direction side surface fabric (3) and width direction side surface fabric (4) in relation to the top surface fabric (1) and bottom surface fabric (2), become substantially at a right angle.<br><br>Aoki, Fig. 2: |

| | | '618 Patent Invalidity Exemplary Contentions:<br>Anticipation by Aoki and/or<br>Obviousness by Aoki and/or<br>Obviousness by Aoki with Santo |
|---|---|---|
| Claim | Claim Term | Reference |
| | to the side panel and the second edge thereof is affixed to the second panel and a section between the first edge and the second edge is attached neither to said at least one side panel nor the second panel, each side support beam being arranged such that when the air chamber is filled with air, the section of each side support beam is in tension and the side support beam limits outward expansion of said at least one side panel. | <br><br>FIG. 2<br><br>Santo II, Col 4:59-5:25:  In still another alternate embodiment of the perimeter air chamber of this invention, as shown in FIGS. 7 and 8, the alternate perimeter support air chamber 14" contains a plurality of tie members 30a, 30b for maintaining the chamber in its rectilinear configuration. The tie members 30a, 30b, which are formed for example of a similar material as that used to form the tie members of the embodiments of FIGS. 1-5, are respectively interconnected between the inside surface of the exterior marginal perimeter wall 14b" and the upper and lower walls 14d", 14c". The interconnection, which is accomplished by heat sealing for example, is made at particularly selected locations to provide the necessary forces on the walls of the perimeter air chamber 14" to maintain its rectilinearity in the manner similar to that described above with reference to the embodiment of FIGS. 1-5. Specifically, the joining of one edge of the tie members 30a, 30b to the perimeter wall 14b" is effected respectively along the lines 32a, 32b at approximately a distance d1 ' one-third of the wall 14b" from its top and bottom, and the |

| '618 Patent Invalidity Exemplary Contentions:<br>Anticipation by Aoki and/or<br>Obviousness by Aoki and/or<br>Obviousness by Aoki with Santo | | |
|---|---|---|
| Claim | Claim Term | Reference |
| | | the joining of the opposite edges of the tie members respectively to the upper and lower walls is respectively effected along lines 34a, 34b at approximately an equal distance d2 ' from the vertical projections of the first mentioned lines respectively on the upper and lower walls. Accordingly, as in the embodiment of FIGS. 1-5, the tie members 30a, 30b counteract the forces tending to bow the marginal perimeter wall outwards and maintain the marginal perimeter air chamber 14" in its substantially rectilinear configuration. Of course, the tie members 30a, 30b could be formed as one continuous member joined to the marginal perimeter wall at similar locations to that shown in FIG. 7 and 8, or at one central location as that shown in FIGS. 2-5.<br><br>Santo, Abstract: An improved floatation sleep system of the type including a liquid-containing bladder, an air chamber surrounding the marginal perimeter of the bladder, and a substantially planar sheet interconnecting opposed portions of the air chamber. By this invention, the exterior of the air chamber is maintained in a substantially rectilinear configuration to yield the desirable overall rectilinear appearance of conventional bedding.<br><br>Santo II, Fig. 7: |

| '618 Patent Invalidity Exemplary Contentions: Anticipation by Aoki and/or Obviousness by Aoki and/or Obviousness by Aoki with Santo | | |
|---|---|---|
| Claim | Claim Term | Reference |
| | |  |

**EXHIBIT B TO TWW'S RESPONSE TO INTERROGATORY NO. 13**

| | | '926 Patent Infringement Contentions: Coleman SupportRest Elite PillowStop Double-High Airbed, Queen | | |
|---|---|---|---|---|
| Claim | Claim Term | Literal Infringement Analysis | | Doctrine of Equivalents Analysis |
| 1 preamble | An inflatable bed adapted to be disposed on a support surface, said inflatable bed comprising: | Subject to further discovery and disclosures that may increase the number of '926 Accused Products, TWW identifies at least the **Coleman SupportRest Elite PillowStop Double-High Airbed, Queen ("Exemplar")** as a non-limiting representative example of '926 Accused Products that Coleman has imported, used, offered for sale, or sold any of the products or otherwise committed acts of literal infringement under 35 U.S.C. § 271(a) and/or acts of indirect infringement for inducement or contributory infringement under 35 U.S.C. §271(b) and/or (c) or any other applicable section of 35 U.S.C. § 271 or other applicable statute) of the '926 Patent.

The identified non-limiting representative example is not materially different from any of the '926 Accused Products in the context of the '926 Patent.
The '926 Accused Products include, but are not limited to, the following and products in the same family or product line such as varying sizes or additional feature configurations thereof:

- Aerobed® Luxury Pillow Top Twin 16-inch Air Mattress 2000032300
- Coleman SupportRest Elite PillowStop Double-High Airbed 2000035467
- Coleman SupportRest Plus Pillowstop with 120V Pump Combo 2000025763
- Coleman All-Terrain Plus Double High Airbed Mattress, Queen Size with pump included 2000025764
- AeroBed Comfort Lock Twin Air Mattress (Built-in Pump) 2000033090
- AeroBed One-Touch Comfort Air Mattress Twin 17 inch 2000025526
- AeroBed One-Touch Comfort Air Mattress Queen 17 inch 2000025527 | | To the extent that this element is not literally present in a '926 Accused Product, the '926 Accused Product would nevertheless infringe under the doctrine of equivalents, because each of these '926 Accused Products has structure that is, if not literally the structure recited in the claim, then equivalent to it. |

| | | | |
|---|---|---|---|
| | | <ul><li>Coleman Air Mattress \| Double-High SupportRest Air Bed for Indoor or Outdoor Use 2000018351</li><li>Coleman GuestRest Double High Airbed Queen 2000031095</li><li>Coleman Air Mattress Double-High SupportRest Air Bed for Indoor or Outdoor Use 2000018352</li><li>Coleman SupportRest Elite Queen 2000035466</li><li>Coleman SupportRest Elite Queen 2000025036</li><li>Aerobed Queen Headboard Grand Lit 18 inch height Opticomfort Gray Air Mattress with remote control</li><li>Aerobed Air Mattress with Built-in Pump with Quilted Foam Topper 2000025529</li><li>Aerobed Pillowtop 24-inch Air Mattress with USB  2000031380</li></ul>Each of the '926 Accused Products meets all elements of the TWW Asserted Claims of the '926 Patent. TWW's theory of infringement is the same for all '926 Accused Products regardless of varying sizes or additional feature configurations thereof.<br><br>The preamble of a claim is generally not limiting. However, the preamble of claim 1 is met by the each of the '926 Accused Products. The '926 Accused Products are all inflatable beds, also known as airbeds or air mattress. All of the '926 Accused Products are adapted to be disposed on a support surface, such as the floor.<br><br>As shown below, the Exemplar is an inflatable bed, otherwise known as an airbed. The bed is adapted to be disposed on a support surface, e.g., the floor. | Any differences between any '926 Accused Product and this claim limitation are insubstantial. Each of the '926 Accused Products is an inflatable bed adapted to be disposed on a support surface. The '926 Accused Products are designed by Coleman to perform substantially the same functions, in the same way, to achieve the same results as the recited limitations.<br><br>Given the proper construction of the claim terms, this limitation is |

61



**Coleman SupportRest Elite PillowStop Double-High Airbed**

**Description**

Wake up as comfortable as you went to sleep with a Coleman® SupportRest™ Elite PillowStop™ Double High Airbed. The PillowStop™ design has a raised edge at the head of the bed that helps keep your pillows in place, so they're still under your head when you wake up in the morning. The antimicrobial treated sleep surface resists odor, mold, mildew and fungus on the product, so you can offer a bed to your friends and family with confidence. It comes with the convenience of a SwiftRise™ built-in 120V peformance pump, which will inflate your bed in under three minutes. Once you find the perfect firmness, the AirTight® system will help keep it there, since it's factory-tested to be leak-free. With the Support Lock™ reinforced construction providing lasting, stable support, your guests might never want to leave. When you're ready to pack up, you can use the pump to deflate your airbed completely, making it easier to fit it into the included carry bag.

(See https://www.coleman.com/camp-furniture/airbeds/supportrest-elite-pillowstop-double-high-airbed-queen/COL_2000025035.html ).

literally present in the Exemplar and the other '926 Accused Products. However, based on a future construction issued by the Court, TWW reserves the right to amend or add to its doctrine of equivalents contention.

**Features**

- Item# 2000025035
- Antimicrobial sleep surface resists odor, mold, mildew and fungus from forming on the product
- PillowStop™ design uses a raised head to help keep your pillows in place
- SwiftRise™ built-in 120V pump inflates your bed in under 3 minutes
- Pump completely deflates your airbed for easier packing and compact storage
- AirTight® system is factory-tested to be leak-free
- Support Lock™ reinforced construction lets you enjoy a more stable sleeping surface
- Double Lock™ valve is dual-sealed to be leak-free
- Double-high height makes getting in and out of bed easier
- Soft plush top creates a velvet-like sleep surface for more comfort
- Fits standard queen size sheets
- Supports up to 600 lbs.
- Approximate Inflated Dimensions: 78 x 60 x 18 in.
- Carry bag included
- 1-year limited warranty

(See https://www.coleman.com/camp-furniture/airbeds/supportrest-elite-pillowstop-double-high-airbed-queen/COL_2000025035.html ).

Based on a review of the '926 Accused Products, TWW believes the above evidence is representative of all '926 Accused Products in that such products include the same type of structures as recited with respect to this claim element.

| 1a | a plastic top sheet having a top surface, a bottom surface, and an | This element is literally present in the '926 Accused Products because they all include a plastic top sheet having a top surface, a bottom surface, and an outer periphery: | To the extent that this element is not literally present in a '926 |

| | | | | |
|---|---|---|---|---|
| | outer periphery; | As shown below, the Exemplar includes a plastic top sheet with a top surface, a bottom surface, and an outer periphery. | | Accused Product, the '926 Accused Product would nevertheless infringe under the doctrine of equivalents, because each of these '926 Accused Products has structure that is, if not literally the structure recited in the claim, then equivalent to it.

Any differences between any '926 Accused Product and this claim limitation are insubstantial. Each of the '926 Accused Products includes a top sheet as set forth in further limitations of |



"A plastic top sheet having a top surface,....."



"a bottom surface,"



"and an outer periphery"



"a plastic bottom sheet disposed under said top sheet and having a lower end that is adapted to be disposed on the support surface, and an outer periphery;"

| | | Based on a review of the '926 Accused Products, TWW believes the above evidence is representative of all '926 Accused Products in that such products include the same type of structures as recited with respect to this claim element. | the claim. The '926 Accused Products are designed by Coleman to perform substantially the same functions, in the same way, to achieve the same results as the recited limitations.

Given the proper construction of the claim terms, this limitation is literally present in the Exemplar and the other '926 Accused Products. However, based on a future construction issued by the Court, TWW reserves the right to amend or add to its doctrine of |

| | | | equivalents contention. |
|---|---|---|---|
| 1b | a plastic bottom sheet disposed under said top sheet and having a lower end that is adapted to be disposed on the support surface, and an outer periphery; | This element is literally present in the '926 Accused Products because they all include a plastic bottom sheet disposed under said top sheet and having a lower end that is adapted to be disposed on the support surface, and an outer periphery:<br><br>As shown below, the Exemplar includes a plastic bottom sheet disposed under the top sheet. The bottom sheet has a lower end that is adapted to be disposed on the support surface, e.g., the floor. The bottom sheet also has an outer periphery. | To the extent that this element is not literally present in a '926 Accused Product, the '926 Accused Product would nevertheless infringe under the doctrine of equivalents, because each of these '926 Accused Products has structure that is, if not literally the structure recited in the claim, then equivalent to it.<br><br>Any differences between any '926 Accused Product and this claim limitation are |



insubstantial. Each of the '926 Accused Products includes a bottom sheet as set forth in further limitations of the claim. The '926 Accused Products are designed by Coleman to perform substantially the same functions, in the same way, to achieve the same results as the recited limitations.

Given the proper construction of the claim terms, this limitation is literally present in the Exemplar and the other '926 Accused Products.

| | | Based on a review of the '926 Accused Products, TWW believes the above evidence is representative of all '926 Accused Products in that such products include the same type of structures as recited with respect to this claim element. | However, based on a future construction issued by the Court, TWW reserves the right to amend or add to its doctrine of equivalents contention. |
|---|---|---|---|
| 1c | a plastic partition interposed between said top and bottom sheets and having an outer periphery that is spaced apart from and that is disposed between said outer peripheries of said top and bottom sheets so as to be adapted to define a concave air | This element is literally present in the '926 Accused Products because they all include a plastic partition interposed between said top and bottom sheets and having an outer periphery that is spaced apart from and that is disposed between said outer peripheries of said top and bottom sheets so as to be adapted to define a concave air bag among said bottom sheet, said partition, and the support surface:<br><br>As shown below, the Exemplar includes a plastic partition interposed between the top and bottom sheets. The partition has an outer periphery that is spaced apart from and is disposed between the outer peripheries of the top and bottom sheets. | To the extent that this element is not literally present in a '926 Accused Product, the '926 Accused Product would nevertheless infringe under the doctrine of equivalents, because each of these '926 Accused Products has structure that is, if not literally the structure recited in the |

bag among said bottom sheet, said partition, and the support surface;



"a plastic partition interposed between said top and bottom sheets and having an outer periphery that is spaced apart from and that is disposed between said outer peripheries of said top and bottom sheets"

claim, then equivalent to it.

Any differences between any '926 Accused Product and this claim limitation are insubstantial. Each of the '926 Accused Products includes a partition as set forth in further limitations of the claim. The '926 Accused Products are designed by Coleman to perform substantially the same functions, in the same way, to achieve the same results as the recited limitations.

Given the proper



"so as to be adapted to define a concave air bag among said bottom sheet, said partition, and the support surface; ..."

As shown above, the Exemplar's structural arrangement is adapted to define a concave air bag among the bottom sheet, the partition, and the support surface (e.g., the floor).

Based on a review of the '926 Accused Products, TWW believes the above evidence is representative of all '926 Accused Products in that such products include the same type of structures as recited with respect to this claim element.

construction of the claim terms, this limitation is literally present in the Exemplar and the other '926 Accused Products. However, based on a future construction issued by the Court, TWW reserves the right to amend or add to its doctrine of equivalents contention.

| 1d | a plastic pull band unit for connecting fixedly said bottom surface of said top sheet to an assembly of said bottom sheet and said partition; | This element is literally present in the '926 Accused Products because they all include a plastic pull band unit for connecting fixedly said bottom surface of said top sheet to an assembly of said bottom sheet and said partition:<br><br>As shown below, the Exemplar includes at least one plastic pull band unit for connecting fixedly (a) the bottom surface of the top sheet to (b) an assembly of the bottom sheet and the partition.<br><br><br><br>Based on a review of the '926 Accused Products, TWW believes the above evidence is representative of all '926 Accused Products in that such products include the same type of structures as recited with respect to this claim element. | To the extent that this element is not literally present in a '926 Accused Product, the '926 Accused Product would nevertheless infringe under the doctrine of equivalents, because each of these '926 Accused Products has structure that is, if not literally the structure recited in the claim, then equivalent to it.<br><br>Any differences between any '926 Accused Product and this claim limitation are insubstantial. Each of the '926 Accused |

| | | | Products includes a pull band unit as set forth in further limitations of the claim. The '926 Accused Products are designed by Coleman to perform substantially the same functions, in the same way, to achieve the same results as the recited limitations.<br><br>Given the proper construction of the claim terms, this limitation is literally present in the Exemplar and the other '926 Accused Products. However, based on a future construction issued by the |
|---|---|---|---|

| | | | Court, TWW reserves the right to amend or add to its doctrine of equivalents contention. |
|---|---|---|---|
| 1e | a plastic annular surrounding sheet disposed around said top sheet, said bottom sheet, and said partition and connected fixedly to said outer peripheries of said top sheet, said bottom sheet, and said partition so as to define an upper air chamber that is disposed among said top sheet, said partition, and said | This element is literally present in the '926 Accused Products because they all include a plastic annular surrounding sheet disposed around said top sheet, said bottom sheet, and said partition and connected fixedly to said outer peripheries of said top sheet, said bottom sheet, and said partition so as to define an upper air chamber that is disposed among said top sheet, said partition, and said surrounding sheet and that is disposed above said concave air bag, and an annular lower peripheral air chamber that is disposed among said partition, said surrounding sheet, and said bottom sheet and that is disposed around said concave air bag:

As shown below, the Exemplar includes a plastic annular surrounding sheet, which is disposed around the top sheet, the bottom sheet, and the partition. The surrounding sheet it connected fixedly to the outer peripheries of the top sheet, the bottom sheet, and the partition; which defines an upper air chamber and an annular lower peripheral air chamber.

The upper air chamber is disposed among the top sheet, the partition, and the surrounding sheet and above the concave air bag. The annular lower peripheral air chamber is disposed among the partition, the surrounding sheet, and the bottom sheet and around the concave air bag. | To the extent that this element is not literally present in a '926 Accused Product, the '926 Accused Product would nevertheless infringe under the doctrine of equivalents, because each of these '926 Accused Products has structure that is, if not literally the structure recited in the claim, then equivalent to it. |

surrounding sheet and that is disposed above said concave air bag, and an annular lower peripheral air chamber that is disposed among said partition, said surrounding sheet, and said bottom sheet and that is disposed around said concave air bag; and





a plastic annular surrounding sheet disposed around said top sheet, said bottom sheet, and said partition and connected fixedly to said outer peripheries of said top sheet, said bottom sheet, and said partition so as to define an upper air chamber that is disposed among said top sheet, said partition, and said surrounding sheet and that is disposed above said concave air bag, and an annular lower peripheral air chamber that is disposed among said partition, said surrounding sheet, and said bottom sheet and that is disposed around said concave air bag….

Based on a review of the '926 Accused Products, TWW believes the above evidence is representative of all '926 Accused Products in that such products include the same type of structures as recited with respect to this claim element.

Any differences between any '926 Accused Product and this claim limitation are insubstantial. Each of the '926 Accused Products includes an annular surrounding sheet as set forth in further limitations of the claim. The '926 Accused Products are designed by Coleman to perform substantially the same functions, in the same way, to achieve the same results as the recited limitations.

Given the proper construction of

| | | | the claim terms, this limitation is literally present in the Exemplar and the other '926 Accused Products. However, based on a future construction issued by the Court, TWW reserves the right to amend or add to its doctrine of equivalents contention. |
|---|---|---|---|
| 1f | an inflatable unit operable so as to introduce air into said upper air chamber and said annular lower peripheral air chamber; | This element is literally present in most of the '926 Accused Products because they all include an inflatable unit operable so as to introduce air into said upper air chamber and said annular lower peripheral air chamber:<br><br>As shown below, the Exemplar includes an inflatable unit, also known as a pump. The pump is operable so as to introduce air into the upper air chamber and the annular lower peripheral air chamber, for example, during inflation of the inflatable bed. The dial on the pump can be turned in a clockwise direction for inflation. | To the extent that this element is not literally present in a '926 Accused Product, the '926 Accused Product would nevertheless infringe under the doctrine of equivalents, because each of |

these '926 Accused Products has structure that is, if not literally the structure recited in the claim, then equivalent to it.

Any differences between any '926 Accused Product and this claim limitation are insubstantial. The '926 Accused Products are designed by Coleman to perform substantially the same functions, in the same way, to achieve the same results as the recited limitations.

Given the proper



an inflatable unit operable so as to introduce air into said upper air chamber and said annular lower peripheral air chamber

As further shown below, the Exemplar includes at least one opening to allow for air to enter the upper air chamber and the annular lower peripheral chamber.

77



Opening to introduce air into "said annular lower peripheral chamber"

To the extent any '926 Accused Products do not include an inflatable unit, Coleman directs customers to use its Coleman® QuickPump™ Unit air pump. By at least these affirmative acts, Coleman actively encourages direct infringement of the '926 Patent in the United States, with the specific intent to induce infringement of the '926 Patent or was at a minimum willfully blind of inducing infringement of the '926 Patent.

construction of the claim terms, this limitation is literally present in the Exemplar and the other '926 Accused Products. However, based on a future construction issued by the Court, TWW reserves the right to amend or add to its doctrine of equivalents contention.



**Instructions accompanying the Coleman Air Mattress Double-High SupportRest Air Bed for Indoor or Outdoor Use**

Coleman also knowingly, and intentionally contributes to the infringement of the '926 Patent by actively encouraging others to make, use, offer for sale, sell, and/or import the '926 Accused Products. For example, as shown below, for Coleman airbed products without a built-in- air pump, Coleman sells its Coleman® QuickPump™ Unit air pumps, which are not a staple article of commerce suitable for a substantial non-infringing use, that are used by customers to infringe one or more claims of the '926 Patent. Coleman does so knowing or should have known that such products are especially made or especially adapted for use in infringement of the '926 Patent.



★★★★★ 4.5 (2)

AC 120V QuickPump

★★★★☆ 4.3 (9)

QuickPump™ 120V Pump

★★★☆☆ 3.4 (51)

QuickPump™ Rechargeable Pump

★★★★☆ 4.2 (5)

QuickPump™ 12V Pump

★★★★☆ 4.1 (36)

QuickPump™ 4D Pump

**Coleman® QuickPump™ Unit available at www.coleman.com/camp-furniture/air-pumps?**

| | | Based on a review of the '926 Accused Products, TWW believes the above evidence is representative of all '926 Accused Products in that such products include the same type of structures as recited with respect to this claim element. | |
|---|---|---|---|
| 1g | whereby, when a person moves onto said top surface of said top sheet, air is ejected from said concave air bag via a space between said bottom sheet and the support surface so that said bed acts as a suction cup, thereby fixing said bed relative to the support surface. | This element is literally present in the '926 Accused Products because they all are designed such that when a person moves onto said top surface of said top sheet, air is ejected from said concave air bag via a space between said bottom sheet and the support surface so that said bed acts as a suction cup, thereby fixing said bed relative to the support surface.<br><br>Based on a review of the '926 Accused Products, TWW believes the above evidence is representative of all '926 Accused Products in that such products include the same type of structures as recited with respect to this claim element. | To the extent that this element is not literally present in a '926 Accused Product, the '926 Accused Product would nevertheless infringe under the doctrine of equivalents, because each of these '926 Accused Products has structure that is, if not literally the structure recited in the claim, then equivalent to it.<br><br>Any differences between any '926 Accused Product and this claim limitation |

| | | | are insubstantial. Each of the '926 Accused Products is capable of the "suction cup" phenomenon to provide for the desired stability as set forth in further limitations of the claim. The '926 Accused Products are designed by Coleman to perform substantially the same functions, in the same way, to achieve the same results as the recited limitations.

Given the proper construction of the claim terms, this limitation is literally present |

|  |  |  | in the Exemplar and the other '926 Accused Products. However, based on a future construction issued by the Court, TWW reserves the right to amend or add to its doctrine of equivalents contention. |
|---|---|---|---|

**EXHIBIT C TO TWW'S RESPONSE TO INTERROGATORY NO. 13**

| Claim | Claim Term | Literal Infringement Analysis | Doctrine of Equivalents Analysis |
|---|---|---|---|
| 2a | The inflatable bed as claimed in claim 1, wherein said bottom sheet has a central top portion that is spaced apart from said top sheet, and an annular peripheral portion that extends outwardly and downwardly from a periphery of said central top portion so as to define said concave air bag among said central top portion, said annular peripheral portion, and the support surface, said annular peripheral portion having an upper end that is | The '926 Accused Products literally infringe the inflatable bed as claimed in claim 1. See analysis of claim 1, which is fully incorporated herein by reference. Claim 2 depends from claim 1. <br><br> This element is literally present in the '926 Accused Products because they all literally infringe the elements of claim 1, wherein said bottom sheet has a central top portion that is spaced apart from said top sheet, and an annular peripheral portion that extends outwardly and downwardly from a periphery of said central top portion so as to define said concave air bag among said central top portion, said annular peripheral portion, and the support surface, said annular peripheral portion having an upper end that is connected fixedly to said periphery of said central top portion, and a lower end that is adapted to be disposed on the support surface: <br><br> As shown below, the Exemplar includes a central portion of the bottom sheet that is spaced apart from the top sheet. The bottom sheet has an annular peripheral portion that extends outwardly and downwardly from a periphery of the central portion, defining the concave air bag. The annular peripheral portion has an upper end that is connected fixedly to the periphery of the central portion. The annular peripheral portion also has a lower end that is adapted to be disposed on the support surface, e.g., the floor. | To the extent any terms of independent claim 1 are referred to in dependent claim 2, the doctrine of equivalents analysis regarding claim 1 apply equally here and are hereby incorporated into this claim. <br><br> To the extent that this element is not literally present in a '926 Accused |

connected fixedly to said periphery of said central top portion, and a lower end that is adapted to be disposed on the support surface;



Product, the '926 Accused Product would nevertheless infringe under the doctrine of equivalents, because each of these '926 Accused Products has structure that is, if not literally the structure recited in the claim, then equivalent to it.

Any differences between any '926 Accused Product and this claim limitation are insubstantial. Each of the '926 Accused Products includes a bottom sheet as set forth in further limitations of



the claim. The '926 Accused Products are designed by Coleman to perform substantially the same functions, in the same way, to achieve the same results as the recited limitations.

Given the proper construction of the claim terms, this limitation is literally present in the Exemplar and the other '926 Accused Products. However, based on a future construction issued by the Court, TWW reserves the right to amend or add to its doctrine of

| | | | equivalents contention. |
|---|---|---|---|
| | | 

Based on a review of the '926 Accused Products, TWW believes the above evidence is representative of all '926 Accused Products in that such products include the same type of structures as recited with respect to this claim element. | |
| 2b | said partition having an inner periphery that is connected fixedly to an upper portion of said annular peripheral portion of said bottom sheet; | The '926 Accused Products literally infringe the inflatable bed as claimed in claim 1. See analysis of claim 1, which is fully incorporated herein by reference. Claim 2 depends from claim 1.

This element is literally present in the '926 Accused Products because they all literally infringe the elements of claim 1, also including said partition having an inner periphery that is connected fixedly to an upper portion of said annular peripheral portion of said bottom sheet:

As shown below, the Exemplar includes an inner periphery of the partition. The inner periphery is connected fixedly to an upper portion of the annular peripheral portion of the bottom sheet. | To the extent any terms of independent claim 1 are referred to in dependent claim 2, the doctrine of equivalents analysis regarding |



Based on a review of the '926 Accused Products, TWW believes the above evidence is representative of all '926 Accused Products in that such products include the same type of structures as recited with respect to this claim element.

claim 1 apply equally here and are hereby incorporated into this claim.

To the extent that this element is not literally present in a '926 Accused Product, the '926 Accused Product would nevertheless infringe under the doctrine of equivalents, because each of these '926 Accused Products has structure that is, if not literally the structure recited in the claim, then equivalent to it.

| | | | Any differences between any '926 Accused Product and this claim limitation are insubstantial. Each of the '926 Accused Products includes a partition as set forth in further limitations of the claim. The '926 Accused Products are designed by Coleman to perform substantially the same functions, in the same way, to achieve the same results as the recited limitations.<br><br>Given the proper construction of the claim terms, this limitation is |

| | | | literally present in the Exemplar and the other '926 Accused Products. However, based on a future construction issued by the Court, TWW reserves the right to amend or add to its doctrine of equivalents contention. |
|---|---|---|---|
| 2c | said pull band unit being connected fixedly to said bottom surface of said top sheet and an assembly of said central top portion of said bottom sheet and said partition; | The '926 Accused Products literally infringe the inflatable bed as claimed in claim 1. See analysis of claim 1, which is fully incorporated herein by reference. Claim 2 depends from claim 1.  This element is literally present in the '926 Accused Products because they all literally infringe the elements of claim 1, also including said pull band unit being connected fixedly to said bottom surface of said top sheet and an assembly of said central top portion of said bottom sheet and said partition:  As shown below, the Exemplar includes the pull band unit being connected fixedly to (a) the bottom surface of the top sheet and (b) an assembly of the central top portion of the bottom sheet and the partition. | To the extent any terms of independent claim 1 are referred to in dependent claim 2, the doctrine of equivalents analysis regarding claim 1 apply equally here |



Based on a review of the '926 Accused Products, TWW believes the above evidence is representative of all '926 Accused Products in that such products include the same type of structures as recited with respect to this claim element.

and are hereby incorporated into this claim.

To the extent that this element is not literally present in a '926 Accused Product, the '926 Accused Product would nevertheless infringe under the doctrine of equivalents, because each of these '926 Accused Products has structure that is, if not literally the structure recited in the claim, then equivalent to it.

Any differences between any '926 Accused

| | | | Product and this claim limitation are insubstantial. Each of the '926 Accused Products includes a pull band unit as set forth in further limitations of the claim. The '926 Accused Products are designed by Coleman to perform substantially the same functions, in the same way, to achieve the same results as the recited limitations.<br><br>Given the proper construction of the claim terms, this limitation is literally present in the Exemplar and the other |
|---|---|---|---|

| | | | ʻ926 Accused Products. However, based on a future construction issued by the Court, TWW reserves the right to amend or add to its doctrine of equivalents contention. |
|---|---|---|---|
| 2d | said upper air chamber being defined among said top sheet, said partition, said surrounding sheet, and said center top portion of said bottom sheet, said lower peripheral air chamber being defined among said partition, said surrounding sheet, and said annular peripheral portion of said bottom sheet. | The '926 Accused Products literally infringe the inflatable as claimed in claim 1. See analysis of claim 1, which is fully incorporated herein by reference. Claim 2 depends from claim 1.<br><br>This element is literally present in the '926 Accused Products because they all literally infringe the elements of claim 1, also including said upper air chamber being defined among said top sheet, said partition, said surrounding sheet, and said center top portion of said bottom sheet, said lower peripheral air chamber being defined among said partition, said surrounding sheet, and said annular peripheral portion of said bottom sheet:<br><br>As shown below, the Exemplar includes the upper air chamber being defined among the top sheet, the partition, the surrounding sheet, and the center portion of the bottom sheet. The Exemplar also includes the lower peripheral air chamber being defined among the partition, the surrounding sheet, and the annular peripheral portion of the bottom sheet. | To the extent any terms of independent claim 1 are referred to in dependent claim 2, the doctrine of equivalents analysis regarding claim 1 apply equally here and are hereby incorporated |

| | | | into this claim.<br><br>To the extent that this element is not literally present in a '926 Accused Product, the '926 Accused Product would nevertheless infringe under the doctrine of equivalents, because each of these '926 Accused Products has structure that is, if not literally the structure recited in the claim, then equivalent to it.<br><br>Any differences between any '926 Accused Product and this claim limitation are |
|---|---|---|---|
| | | <br><br>Based on a review of the '926 Accused Products, TWW believes the above evidence is representative of all '926 Accused Products in that such products include the same type of structures as recited with respect to this claim element. | |

| | | | insubstantial. Each of the '926 Accused Products includes an upper air chamber and lower peripheral air chamber as set forth in further limitations of the claim. The '926 Accused Products are designed by Coleman to perform substantially the same functions, in the same way, to achieve the same results as the recited limitations.

Given the proper construction of the claim terms, this limitation is literally present in the Exemplar |

| | | | and the other '926 Accused Products. However, based on a future construction issued by the Court, TWW reserves the right to amend or add to its doctrine of equivalents contention. |
| --- | --- | --- | --- |