IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

THE COLEMAN COMPANY, INC.,

    Plaintiff/Counter-Defendant,

v.

                                                                                                 CIVIL NO. 2:20cv351

TEAM WORLDWIDE CORPORATION,

    Defendant/Counter-Plaintiff,

and

CHENG-CHUNG WANG,

    Counter-Plaintiff.

**ORDER**

This matter comes before the Court pursuant to cross summary judgment orders filed by both The Coleman Company ("Plaintiff") and Team Worldwide Corporation ("Defendant"). ECF Nos. 134, 170. As stated below, Plaintiff's Motion for Summary Judgment is **DENIED**. ECF No. 134. Defendant's Motion for Summary Judgment is **GRANTED IN PART**. ECF No. 170.

**I.    PROCEDURAL HISTORY**

On June 29, 2020, The Coleman Company, Inc. ("Plaintiff") filed the instant lawsuit against Team Worldwide Corporation ("Defendant") alleging one count of Infringement of the '618 Patent. ECF No. 1 at 5. Count One alleges the following: "[Defendant] has been and is infringing at least claim 13 of the '618 Patent, either literally or under the doctrine of equivalents, by making, using, selling, offering for sale, and/or importing for sale in the United States, including within this judicial district, without license or authority, products covered by the '618 patent, including, for example, the '618 Accused Products." Id. at 7.

1

On November 11, 2020, Defendant filed its answer to Plaintiff's Complaint, including three counterclaim counts. ECF No. 18. On February 16, 2021, this Court granted leave for Defendant to file an amended answer, adding in Mr. Wang as a necessary party. ECF No. 47. Defendant filed its Amended Answer and Counterclaim on March 1, 2021, including the same three counterclaim counts. These three counts include:

- Count I: Declaratory Judgment of Non-Infringement of the '618 Patent
- Count II: Declaratory Judgment of the Invalidity of the '618 Patent
- Count III: Counterclaim for Infringement of the '926 Patent

ECF No. 47 at 12–14.

On February 18, 2021, the parties submitted their Joint Statement on Claim Construction in which they identified eleven disputed terms from the Asserted Patents and provided proposed constructions. ECF No. 48-1. The Court issued its original <u>Markman</u> hearing order on May 5, 2021. ECF No. 71. On October 21, 2021, Plaintiff filed its summary judgment motion ("Plaintiff's Summary Judgment Motion") asking the Court for a ruling of infringement of the '618 Patent and noninfringement of the '926 Patent. ECF Nos. 134, 135. On November 10, 2021, Defendant filed its summary judgment motion ("Defendant's Summary Judgment Motion") asking for a ruling of invalidity of the '618 Patent and validity of the '926 Patent. ECF Nos. 170, 171. Both motions have been fully briefed and a hearing on the motions was held on February 1, 2022. The motions are now ripe for consideration.

## II. LEGAL STANDARDS

A party is entitled to summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict

2

for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986); see also Kelley v. United Parcel Service, Inc., 2013 WL 2480211, at *1 (4th Cir. June 11, 2013). The moving party has the initial burden of showing that no genuine dispute of material facts exists; however, "[o]nce a [moving party] makes a properly supported motion for summary judgment, the burden shifts to the [nonmoving party] to set forth specific facts showing that there is a genuine issue for trial." Sylvia Development Corp. v. Calvert County, Md., 48 F.3d 810, 817 (4th Cir. 1995).

When reviewing a motion for summary judgment, the Court must "draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion." Tuck v. Henkel Corp., 973 F.2d 371, 374 (4th Cir.1992), cert. denied, 507 U.S. 918 (1993); see also EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 405 (4th Cir. 2005). However, "only 'reasonable' inferences from the evidence need be considered by the court." Sylvia Development Corp., 48 F.3d at 818. The Court of Appeals for the Fourth Circuit has further elaborated on this principle, indicating that "[p]ermissible inferences must still be within the range of reasonable possibility . . . and it is the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Id. (quoting Ford Motor Co. v. McDavid, 259 F.2d 261, 266 (4th Cir. 1958), cert denied, 358 U.S. 908 (1958)). "Whether an inference is reasonable cannot be decided in a vacuum; it must be considered 'in light of the competing inferences' to the contrary." Id. (citing Matsushita Elect. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986)).

Thus, "[c]onclusory or speculative allegations do not suffice, nor does a mere scintilla of evidence in support of [the nonmoving party's] case," to defeat an otherwise properly supported motion for summary judgment. Kelley, 2013 WL 2480211, at *1 (quoting Thompson v. Potomac

Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002)). "Accordingly, to deny a motion for summary judgment, '[t]he disputed facts must be material to an issue necessary for the proper resolution of the case, and the quality and quantity of the evidence offered to create a question of fact must be adequate to support a jury verdict.'" Standard Fire Ins. Co. v. Armstrong, 2013 WL 1933828, at *2 (E.D. Va. May 8, 2013) (quoting Thompson v. Everett, Inc. v. Nat'l Cable Adver., LP, 57 F.3d 1317, 1323 (4th Cir. 1995)).

The motions deal with issues of patent infringement and validity of the relevant patents, so law in those areas is relevant to the instant motions.

### A. PATENT INFRINGEMENT

Whether patent infringement has occurred is a question of fact. Electro-Mechanical Corp. v. Power Distribution Products, Inc., 926 F. Supp. 2d 822, 835 (W.D. Va. 2013) (citing Bai v. L & L Wings, Inc., 160 F.3d 1350, 1353 (Fed. Cir. 1998)). "Because . . . infringement is itself a fact issue, a district court must approach a motion for summary judgment of infringement or non-infringement with a care proportioned to the likelihood of its being inappropriate." SRI Int'l v. Matsushita Elec. Corp. of Am., 775 F.2d 1107, 1116 (Fed. Cir. 1985).

With respect to patent infringement, the Federal Circuit has explained that "[s]ummary judgment of non-infringement requires a two-step analytical approach." Pitney Bowes, Inc. v. Hewlett-Packard Co., 182 F.3d 1298, 1304 (Fed. Cir. 1999). First, the patent claims must be construed to determine their scope, which is a question of law. Id. (citing Carroll Touch, Inc. v. Electro Mechanical Sys., Inc., 15 F.3d 1573, 1576 (Fed. Cir. 1993). Second, "a determination must be made as to whether the properly construed claims read on the accused device." Id.

Findings of infringement or non-infringement can encompass two theories. First, literal infringement occurs when "'every limitation set forth in a claim [is] found in an accused product, exactly.'" MiTile, Ltd. v. Hasbro, Inc., 984 F. Supp. 2d 525, 530 (E.D. Va. 2013) (quoting

4

Southwall Techs., Inc. v. Cardinal IG Co., 54 F.3d 1570, 1575 (Fed. Cir. 1995)). "If any claim limitation is absent from the accused device, there is no literal infringement as a matter of law." Amgen, Inc. v. F. Hoffman–La Roche, Ltd., 580 F.3d 1340, 1374 (Fed. Cir. 2009).

The second theory is known as the doctrine of equivalents. Under this doctrine, "'a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention.'" N5 Technologies LLC v. Capital One N.A., 56 F. Supp. 3d 755, 760 (E. D. Va. 2014) (quoting Warner–Jenkinson Co., Inc. v. Hilton Davis Chem. Co., 520 U.S. 17, 21 (1997)). The Supreme Court has made it clear this doctrine must be applied per each individual element of the patent and not to the patent as a whole. Warner–Jenkinson Co., Inc., 520 U.S. at 21. If any one element fails to meet this test, there is no infringement. N5 Technologies LLC, 56 F. Supp. 3d at 760–61. However, "the doctrine should never be used to vitiate a claim term because potential competitors should be able to rely upon the language of the patent claims." W.L. Gore & Associates, Inc. v. Medtronic, Inc., 874 F. Supp. 2d 526, 542 (E.D. Va. 2012) (citation omitted).

### B. PATENT VALIDITY

Defendant's Summary Judgment Motion asserts that the '618 Patent is invalid as anticipated or obvious. ECF No. 171. The Court must begin with the presumption that an issued patent is valid. 35 U.S.C. § 282. In arguing on summary judgment that a patent is invalid, a movant must show by clear and convincing evidence that the claimed invention was patented before the critical date of the patent at issue, which is one year before the patent application was filed. Eli Lilly & co. v. Barr Labs., Inc., 251 F.3d 955, 962 (Fed. Cir. 2001). As stressed, any evidence must be viewed in the light most favorable to the nonmoving party. Tuck, 973 F.2d at 374.

"[T]he necessary first step in considering patent validity or invalidity is to determine the proper meaning of the relevant disputed claim terms." Virginia Innovation Sciences, Inc. v. Samsung Electronics, Co., Ltd., 983 F. Supp. 2d 713, 723 (E.D. Va. 2014). As the Court has already issued a Markman opinion in this case, see ECF No. 71, any relevant terms the Court has already considered will be interpreted according to its May 5, 2021 order.

### 1. Anticipation

Title 35, section 102 of the United States Code deals with invalidity of a patent due to anticipation and provides that:

> [a] person shall be entitled to a patent unless . . . (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or sale in this country, more than one year prior to the date of the application for patent in the United States.

35 U.S.C. § 102. Whether a patent was anticipated by prior art is a question of fact but can be decided on summary judgment if no genuine dispute exists as to those facts. Enzo Biochem, Inc. v. Applera Corp., 599 F.3d 1325, 1331 (Fed. Cir. 2010). "A patent is invalid for anticipation if a single prior art reference discloses each and every limitation of the claimed invention." Virginia Innovation Sciences, Inc., 983 F. Supp. 2d at 724 (citing cases). An element does not have to be explicit and can be "inherent" if the missing element is "necessarily present in the thing described in the reference, and that it would be so recognized by persons of ordinary skill." In re Robertson, 169 F.3d 743, 745 (Fed. Cir. 1999) (quotation omitted).

### 2. Obviousness

Title 35, section 102 of the United States Code deals with invalidity of a patent due to obviousness and provides that:

> if the differences between the subject matter sought to be patented and the prior art are such that the subject matter would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

35 U.S.C. § 103(a). Again, the underlying findings in an obviousness analysis are factual in nature but can be decided on summary judgment if no genuine dispute exists as to those facts. Tokai Corp. v. Easton Enterprises, Inc., 632 F.3d 1358, 1366 (Fed. Cir. 2011). Courts follow a four-factor test determined by Graham v. John Deere Co., 383 U.S. 1, 17–18 (1966) in analyzing obviousness: "(1) the scope and content of the prior art, (2) the differences between the prior art and the claims at issue, (3) the level of ordinary skill in the art, and (4) any relevant secondary considerations, such as commercial success, long felt but unsolved needs, and the failure of others." Wyers v. Master Lock Co., 616 F.3d 1231, 1237 (Fed. Cir. 2010) [hereinafter the "Graham factors"]. The Court must consider all four Graham factors in reaching its conclusion regarding obviousness. Virginia Innovation Sciences, Inc., 983 F. Supp. 2d at 725.

Intel Corp. v. VIA Techs., Inc., 319 F.3d 1357, 1366 (Fed. Cir. 2003).

### III. ANALYSIS

As a preliminary matter, the parties dispute the legal meaning of three terms. As claim construction is a legal question for the Court to decide, Phillips v. AWH Corp., 415 F.3d 1303, 1318 (Fed. Cir. 2005), the Court will decide these legal questions before deciding whether summary judgment is warranted.

#### A. CLAIM CONSTRUCTION

First, the parties dispute whether the "whereby" clause contained in Defendant's '926 Patent is properly a claim limitation of the patent. Defendant's position is that it is contained in a "whereby" clause, which does not add structural limitations to the claims. ECF No. 152 at 10 (citing Curtis Mfg. Co. v. Plasti-Clip Corp., 135 F.3d 778, 1998 WL 45452 (Fed. Cir. Feb. 6, 1998) (unpublished)). Plaintiff claims the entire whereby clause is a claim limitation, countering by citing Lexington Luminance LLC v. Amazon.com, Inc., No. 12-cv-12216, 2016 WL 1337254 (D.

Mass. Apr. 4, 2016). The district court there held that a "whereby" clause can be a limitation to a claim where the clause explains the "structure that causes" the goal of the patent to be met. Id. at *8.

> Lexington Luminance LLC is persuasive. The relevant claim there read:
>
> A semiconductor light-emitting device comprising:
>
>> a substrate;
>>
>> a textured district defined on the surface of said substrate comprising a plurality of etched trenches having a sloped etching profile with a smooth rotation of micro-facets without a prescribed angle of inclination;
>>
>> a first layer disposed on said textured district comprising a plurality of inclined lower portions, said first layer and said substrate form a lattice-mismatched misfit system, said substrate having at least one of a group consisting of group III-V, group IV, group II-VI elements and alloys, ZnO, spinel and sapphire; and
>>
>> a light-emitting structure containing an active layer disposed on said first layer, **whereby said plurality of inclined lower portions are configured to guide extended lattice defects away from propagating into the active layer**.

Lexington Luminance LLC, 2016 WL 1337254, at *4 (emphasis added). Citing Federal Circuit precedent, the court stated that use of the term "whereby" is not determinative. Id. at *8 (citing Hoffer v. Microsoft Corp., 405 F.3d 1326, 1329 (Fed. Cir. 2005)). If the clause states a condition that is material to patentability, it is a limitation. Hoffer, 405 F.3d at 1329. The Federal Circuit held that the whereby clause connoted extra structural elements that fairly limited the claim. Lexington Luminance LLC, 2016 WL 1337254, at *8.

The Court holds that the suction cup functionality, and not the "fixing" effect, is "a condition that is material to patentability" and should be considered a claim limitation. Hoffer, 405 F.3d at 1329. The '926 Patent claims at issue are structured to function as a suction cup by pushing air out of the concave air bag when a person lays on the mattress. ECF No. 52-2 at 11. This suction cup capability is "described in the specification and prosecution history as an integral

8

part of the invention." See Hoffer, 405 F.3d at 1330; ECF No. 52-2 at 10. The specification specifically states that the proportions of the claimed invention must be so that there can be "sufficient space to permit downward deformation of the upper air chamber" into the concave air bag. ECF No. 52-2 at 10. Thus, the suction cup functionality of the patent properly defines the structure and proportions of the mattress and must be a claim limitation.

This limitation is met through the process of a person laying on the mattress. When this occurs, "[a]ir in the concave air bag is ejected at the same time via a space between the lower end of the . . . bottom sheet and the support so that the bed acts as a suction cup." ECF No. 52-2 at 10. Thus, this air ejection from the concave air bag is what makes the mattress "act as a suction cup" and creates the effect of "fixing" the mattress to the support surface. Id. The mattress is designed to use this air ejection functionality as a method of achieving the goal of adhesion, but whether the mattress becomes "fixed" to the floor is an effect determined by outside forces. Thus, as the Court as previously stated, "'it is clear that infringement occurs when one makes, uses, offers to sell, or sells' a system that uses the claim[ed] suction cup structure." ECF No. 71 at 23 (quoting MasterMine Software, Inc. v. Microsoft Corporation, 874 F.3d 1307, 1316 (Fed. Cir. 2017)).

Second, the parties dispute the proper interpretation of the word "coil" in Plaintiff's '618 Patent. This dispute first arose during Defendant's validity briefing, so the Court ordered supplemental Markman briefing to address the term. ECF No. 214. Defendant claims the prosecution history and the patent language support its definition of "flexible material attached to the top panel and the bottom panel." ECF No. 216 at 8–13. Plaintiff proposes a definition primarily based on the specification of the '618 Patent: "At least two closely spaced elongate

9

members connecting a mattress top and bottom surface to approximate the size and stability of a conventional spring mattress coil." ECF No. 217 at 1–4.

The Court finds Plaintiff's definition more closely resembles the structure of the coils in the '618 Patent. The patentee was forced to overcome objections from the patent officer that the prior art Boso '388 contained the patentee's coils adapted to other prior art configurations. See ECF No. 171-3 at 27–29. The patentee overcame objections by focusing on the unique structure of the side supports beam and did not mention or differentiate the coil structure. Id. at 21–23. Thus, a reasonable inference is that the coils in the patent possess "spaced elongate members formed of a flexible material that is weldable to the top and bottom panels of the mattress." Id. at 28 (quoting patent officer's findings). This language is supported by the patent specification, which focuses on the fact that these structures extend through a single chamber from top to bottom. ECF No. 52-1 at 8. Defendant's definition is too broad and would potentially comprise the "I-beam" material used in the prior art that the background of the '618 Patent teaches away from. See id. at 6 (discussing horizontal I-beams used in prior art).

Thus, the Court arrives at the following definition for "coil" in the '618 Patent: "flexible structures possessing spaced elongate members that extend continuously from the first to the second panel."

Finally, the parties somewhat dispute a previous interpretation of the Court, mainly whether the '618 Patent comprises a single air chamber or multiple. ECF Nos. 135 at 21; 152 at 14–17. The Court previously declined to limit every claim in the '618 Patent to a single air chamber, because iterations of the patent without coils could contain multiple air chambers and still meet the elements of those claims. See ECF No. 71 at 12 ("Defendant correctly points out that the prosecution history of the '618 Patent distinguishes Claim 1 from other prior art that

contained multiple air chambers, as the central sheet in that prior art made it impossible to run support coils continuously from top to bottom of the bed."). Based on this prosecution history, it was the Court's view that "to run support coils continuously from top to bottom of the bed, it would seem the bed would require only a single air chamber." Id. To the extent that the parties are still confused by this guidance, the Court clarifies that based on the prosecution history of the patent and the specification, any claim in the '618 Patent that utilizes the coil structure is limited to only a single air chamber.

With these legal conclusions settled, the Court now turns to the merits of the parties claims.

**B.   INFRINGEMENT OF THE '618 PATENT**

First, Plaintiff argues that Defendant is infringing Claims 1, 2, 15, 16, and 17 of its '618 Patent by selling products that meet the element of its claims. ECF No. 135 at 3, 20–28. Defendant disputes this by claiming that there is a factual dispute over the number of air chambers in its products and by what structures the air chambers are defined by. ECF No. 152 at 15–19. Defendant is correct that Claims 1, 2, 15, 16 are limited to a single air chamber and that the air chamber in Claims 1, 2, 15, 16, and 17 are all defined by "at least one side panel, the first panel, and the second panel being joined to one another along their common peripheral edges." See ECF No. 52-1 at 9–10 (giving relevant '618 Patent claim language), No. 152 at 15. Defendant contends its products contain three separate air chambers, each defined by different elements than the relevant claims of the '618 Patent. ECF No. 152 at 15–19. Defendant's expert Dr. Stevick agrees with this position, and the Court finds his testimony creates a factual dispute best left for the jury on these issues. As there are factual disputes as to all claims of the '618 Patent asserted on summary judgment, summary judgment will be **DENIED** as to infringement of the '618 Patent.

**C.   NON-INFRINGEMENT OF THE '926 PATENT**

Second, Plaintiff claims its is not infringing Claims 1 and 2 of the '926 Patent with its

11

products. ECF No. 135 at 9–18. The Court finds that there is a factual dispute regarding whether Plaintiff's products "act as a suction cup," which is a required limitation of Claims 1 and 2. Defendant's expert Dr. Stevick has testified that Plaintiff's products contain a concave air bag and when a person lays on the product, a pressure increase occurs in the concave air bag. Because of that pressure change, "the air had to flow [from the concave air bag] to cause that change in pressure." ECF No. 142-1 at 11–12. Plaintiff challenges that assumption but has already lost its Daubert challenge to strike this portion of Dr. Stevick's testimony. See ECF No. 225. Thus, Plaintiff's objections are best left to cross-examination than a ruling on summary judgment. Accordingly, summary judgment regarding noninfringement of the '926 Patent is **DENIED**.

### D. INVALIDITY OF THE '618 PATENT

Third, Defendant asks the Court to declare the '618 Patent invalid based on four general grounds: (1) the '618 Patent is anticipated by Aoki; (2) the '618 Patent is obvious based on Aoki in view of Boso; and (3) the '618 Patent is anticipated by TWW's prior sales of product #822523; and (4) the '618 Patent is anticipated by TWW's '926 Patent. However, the Court finds factual disputes as to all of these. Plaintiff's expert Dr. Wayne Li argues Aoki does not contain the coils and height limitations in the '618 Patent. ECF No. 171-6 at 36–43. There is a factual dispute whether it was obvious to adapt Boso to a double height, single air chamber design. Id. at 46–48. There is a factual dispute over whether product #822523 contains "coils." Id. at 61–62. Finally, there is a factual dispute over whether TWW's patent contains the same "air chamber" as contemplated by the '618 Patent. See supra section III.A. As these issues are inherently factual in nature, the Court cannot say that Defendant has shown by clear and convincing evidence that the '618 Patent is invalid. Therefore, summary judgment on the invalidity of the '618 Patent is **DENIED**.

### E. VALIDITY OF THE '926 PATENT

Finally, Defendant asks for a ruling on the validity of the '926 Patent on two grounds: (1) the '926 Patent has utility under 35 U.S.C. § 101 and the patent is not indefinite based on the "fixing" effect under 35 U.S.C. § 112. The Court holds there is no factual dispute as to these arguments and therefore summary judgment is appropriate as to validity of the '926 Patent regarding utility and indefiniteness.

#### 1. 35 U.S.C. § 101

Section 101 of Title 35, which defines the subject matter eligible for patent protection, states:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

"Patent eligibility under § 101 is a question of law that may contain underlying questions of fact." CosmoKey Solutions GmbH & Co. KG v. Duo Security LLC, 15 F.4th 1091, 1095 (Fed. Cir. 2021) (citations omitted). Utility itself is a question of fact. Raytheon Co. v. Roper Corp., 724 F.2d 951 (Fed. Cir. 1983). "When a properly claimed invention meets at least one stated objective, utility under § 101 is clearly shown." Id. at 958.

The '926 Patent states the "invention relates to an inflatable bed, more particularly to an inflatable bed that can be produced at a relatively low cost." ECF No. 52-2 at 9. The description of the prior art mainly deals with the manufacturing difficulties of the prior art, including high costs. Id. The summary of the invention states that the main objective of the patent is to "provide an inflatable bed that is capable of overcoming the aforementioned drawbacks of the prior art," which once again deal with manufacturing costs. Id. Finally, the end of the specification section clearly states that "it is apparent that the inflatable beds [previously described] are relatively simple

13

in construction, and are easy to manufacture such that the manufacturing costs of the beds can be reduced to a minimum." Id. at 10.

All of this goes to show that the stated main objective of the '926 Patent is simply a cheaper, easier to manufacturer air mattress. Plaintiff attempts to argue the only objective is the suction cup limitation in Claims 1 and 2 and that the invention fails to achieve this, but Plaintiff cannot overcome the clear language of the patent describing this manufacturing cost goal and this argument is more fitted for an operability argument under 35 U.S.C. § 112, which is not the subject of summary judgment here. Defendant has also shown that the invention has been commercially successful, considering Defendant has sold millions of units and received positive commercial reviews during the damages period dealing with the '926 Patent. ECF No. 137 at 88–92. Plaintiff does not dispute this assertion and proof of commercial success supports a finding of utility under § 101. Raytheon Co., 724 F.2d at 959. Finally, Plaintiff does not contest that the Patent Office considered section § 101 and still issued the '926 Patent. Thus, Defendant has provided substantial proof that the '926 Patent has utility and Plaintiff has failed to show a genuine issue of material fact. Thus, summary judgment is **GRANTED** only for validity of the '926 Patent for utility under 35 U.S.C. § 101.

    2.    35 U.S.C. § 112

Defendant also asks for a ruling on whether the Claims 1 and 2 of the '926 Patent are valid and a ruling stating that "best mode" is no longer a defense for patent infringement. Section 112 of Title 35 gives the requirements for a patent to be valid for specificity. Plaintiff argues the '926 Patent is invalid based on the vagueness of the term "fixing" in the whereby clause of the '926 Patent. However, as stated in the original Markman order and as clarified above, "fixing" is properly an effect of the invention and should not be read as a claim limitation. See supra section III.A; ECF No. 71 at 22–23. The suction cup limitation works when an invention uses the suction

cup structure to eject air out of a concave air bag when a person lays on the mattress. Thus, the Court finds that Plaintiff has not presented a genuine issue of material fact regarding the indefiniteness of the '926 Patent and therefore summary judgment is **GRANTED** as to the validity of the '926 Patent based on indefiniteness.

Defendant also asks for a ruling barring Plaintiff from independently asserting a best mode defense under § 112. However, Plaintiff acknowledges such a defense no longer exists and states it is not attempting to assert one. ECF No. 187 at 29. Thus, the Court refrains from commenting on the issue and any worries towards what an expert might testify to can be handled on a motion to strike at trial.

## IV. CONCLUSION

As stated above, Plaintiff's Motion for Summary Judgment is **DENIED**. ECF No. 134. Defendant's Motion for Summary Judgment is **GRANTED IN PART**. ECF No. 170.

The Clerk is **DIRECTED** to forward a copy of this Order to all Counsel of Record.

**IT IS SO ORDERED.**

/s/
Robert G. Doumar
Senior United States District Judge

Norfolk, VA
February 3, 2022