# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

THE COLEMAN COMPANY, INC.

Plaintiff/Counterclaim Defendant,

v.                                          C.A. No. 2:20-cv-351-RGD

TEAM WORLDWIDE CORPORATION,                 Hon. Robert G. Doumar

Defendant/Counterclaim Plaintiff.

**COLEMAN'S OBJECTIONS TO JANUARY 31, 2022 ORDER OF MAGISTRATE JUDGE LEONARD DENYING MOTION TO EXCLUDE AND STRIKE CERTAIN OPINIONS OFFERED BY DR. GLEN STEVICK**

## **<u>TABLE OF CONTENTS</u>**

I.     Introduction ............................................................................................................... 1

II.    Background................................................................................................................. 2

III.   Legal Standard .......................................................................................................... 3

    A.     Standard of Review for Objections to Magistrate Judge Order ........................ 3

    B.     Expert Witness Standard ................................................................................... 4

IV.   Argument ................................................................................................................... 5

    A.     Summary of Dr. Stevick's Opinions ................................................................ 5

    B.     The Order does not apply the correct standard to exclude conclusory opinions severed from the underlying tests or data................................................................ 9

    C.     The Order clearly erred and is contrary to law in concluding there is no contradiction between Dr. Stevick's opinions and what the claim requires ........................................ 14

V.     Conclusion ................................................................................................................ 17

## I.   Introduction

Pursuant to Fed. R. Civ. P. 72(a), plaintiff and counterclaim defendant The Coleman Company, Inc. ("Coleman") respectfully objects to the Magistrate Judge's January 31, 2022 Order (ECF No. 225, "the Order") denying Coleman's Motion to Exclude and Strike certain opinions offered by the technical expert for defendant and counterclaim plaintiff Team Worldwide Corp. (TWW), Dr. Glen Stevick (Dr. Stevick) (ECF No. 141).

The Order constitutes clear error in several distinct ways. First, the Order did not correctly apply the legal standards requiring exclusion of the expert's unexplained assertions that the bed acts as a suction cup— *ipse dixit* parroting of the claim language—based only on observing a momentary, unquantified pressure change. Second, the Order failed to recognize that Dr. Stevick's unsupported, back-fill deposition testimony directly *contradicts* his expert report conclusions, confirming the unscientific and unsupported nature of his purported expert opinions. Third, the Order erroneously concluded that it is "scientific certainty" that air had to flow to cause a pressure change when no expert said that was the case (nor is there any record evidence to support any such conclusion). And finally, the Order erroneously permitted Dr. Stevick's testimony even though it is untestable and unverifiable in view of his lack of measurements, calculations, or data in applying any scientific method—contrary to the gatekeeper role required by *Daubert* and its progeny.

Given the above, Coleman requests that the Court exclude Dr. Stevick's unsupported and unexplained infringement opinions regarding element 1g of TWW's asserted claims.[1]

---

[1] Should the Court grant these objections, Coleman submits that no genuine issue of fact would remain regarding TWW's infringement claim against Coleman. In particular, the Court noted that a factual dispute existed based on the Magistrate's Order denying Coleman's motion to exclude. *See* ECF No. 232 at 12. With proper exclusion of Dr. Stevick's unsupported testimony,

## II.     Background

Claim element 1g of TWW's '926 Patent requires a bed to "act as a suction cup" to practice TWW's asserted claims.[2] Dr. Stevick, TWW's technical expert witness on infringement issues, opined without analysis that the Coleman products meet such limitation (and therefore infringe) based on manometer tests showing unquantified and unexplained purported changes of pressure. But a change in pressure is not what is claimed. Instead, the claims require that the bed "act as a suction cup." This requires that the bed include the "structure and proportions" necessary to act as a suction cup.[3] *See* Order on Summary Judgment (Feb. 4, 2022), ECF No. 232 at 9.

To bridge the gap between the claim language and his experiments, Dr. Stevick only offers conclusory, speculative, and contradictory opinions. Such opinions are unreliable, legally deficient, and inadmissible under Rule 702 and *Daubert*.

_____

no factual issues remain, warranting reconsideration of the Court's denial of Coleman's summary judgment motion.

[2] The Court held that an infringing airbed must "act as a suction cup" to meet the limitations of TWW's asserted claims. ECF No. 232 at 12. While the Court stated that the "'fixing' effect" was *not* a separate limitation of the claim (*id.* at 8), the reasoning in Coleman's Motion to Exclude Dr. Stevick are directly applicable to the Court's revised claim construction, which supports the present objections. That is, Dr. Stevick's purported expert report should be excluded because it fails to address how the bed "acts as suction cup" (as well as also failing to show that the Coleman products would be *fixed* relative to the support surface). Coleman respectfully disagrees with the Court's holding that the "fixing" term is not a limitation (and reserves all rights as to that issue, including those issues resolved by the Magistrate's Order relating thereto).

[3] The Court's summary judgment order found that the suction cup limitation was a critical feature of the claim. While the Court found that no "fixing" was required to show an infringing air bed, an infringing structure still must be configured to be able to produce suction sufficient to be capable of causing a mattress to fix to a surface (acting as a suction cup). *See* ECF No. 232 at 9. Indeed, requiring a concave air bag structure capable of producing suction is the crux of the alleged invention. *Id.* The patent emphasizes this through repeated explanation that the (alleged) invention is capable of fixing the bed to a support surface and by providing exemplary structures capable of producing sufficient suction to fix relative to a support surface. *See* ECF No. 18-1 at Abstract, 2:26–27, 4:27–28, 5:37–38.

### III.    Legal Standard

#### A.    Standard of Review for Objections to Magistrate Judge Order

When a district court designates a magistrate judge to hear and decide "a pretrial matter not dispositive of a party's claim or defense," such as discovery orders, the district court "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A); *see also Robles v. United States*, No. 2:19-CV-111, 2020 WL 8254267, at *1 (E.D. Va. Oct. 15, 2020) (treating order granting *Daubert* motion as a nondispositive). A reviewing court reviews "the factual portions of [a] Magistrate Judge's order under the clearly erroneous standard," but reviews "legal conclusions to determine if they are contrary to law." *Bruce v. Hartford*, 21 F. Supp. 3d 590, 594 (E.D. Va. 2014) (citing *HSBC Bank USA, Nat. Ass'n v. Resh,* No. 3:12-cv-668, 2014 WL 317820, at *7 (S.D.W. Va. Jan. 28, 2014)).

A magistrate judge's factual findings are *clearly erroneous* when, "although there is evidence to support [the findings], the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *Harman v. Levin*, 772 F.2d 1150, 1153 (4th Cir. 1985). If a reviewing court is not firmly convinced that such an error has occurred, then "the magistrate judge's order must be affirmed." *Giganti v. Gen–X Strategies, Inc.*, 222 F.R.D. 299, 304–05 (E.D. Va. 2004).

A magistrate judge's order is *contrary to law* when it "failed to apply or misapplied statutes, case law, or procedural rules." *Stafford v. Bojangles Restaurants, Inc.*, No. 3:20-CV-266-MOC, 2021 WL 5024529, at *1 (W.D.N.C. Oct. 28, 2021) (citing *Catskill Dev. LLC v. Park Place Entm't Corp.*, 206 F.R.D. 78, 86 (S.D.N.Y. 2002)). The magistrate judge's application of legal rules is reviewed without deference. *See Bruce v. Hartford*, 21 F. Supp. 3d 590, 594 (E.D

Va. 2014) (quoting *HSBC Bank USA, Nat. Ass'n v. Resh*, No. 3:12-cv-668, 2014 WL 317820, at *7 (S.D.W. Va. Jan. 28, 2014)).

### B.    Expert Witness Standard

Expert testimony is admissible only if it is "[1] based on sufficient facts or data, [2] the product of reliable principles and methods, and [3] the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. The district court serves as the "gatekeeper," which "imposes a special obligation upon a trial judge to ensure that scientific testimony is not only relevant, but reliable." *See, e.g.*, *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 137 (1999). Expert testimony thus must be excluded where the expert's reasoning or methodology cannot be reasonably applied to the facts at issue. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993) ("An additional consideration under Rule 702—and another aspect of relevancy— is whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.").

Moreover, "[n]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). *Ipse dixit* opinions are opinions that fail to offer analysis beyond, "It is so because I, the expert, say it is so." *ePlus, Inc. v. Lawson Software, Inc.*, 764 F. Supp. 2d 807, 815 (E.D. Va. 2011), *aff'd,* 700 F.3d 509 (Fed. Cir. 2012). These are "precisely that kind of opinion that *Daubert*, *Kumho*, and *Joiner* require the district courts to exclude." *Id.*; *see also Copeland v. Bieber*, No. 2:13CV246, 2016 WL 7079569, at *5 (E.D. Va. Sept. 8, 2016) (excluding an expert's reports containing "conclusory statements without adequate explanation or support").

## IV.    Argument

### A.  Summary of Dr. Stevick's Opinions

As the Court by now knows, based at least on the summary judgment briefing and the Court's order, TWW's claims that Coleman Products infringe TWW's '926 Patent hinge on Dr. Stevick's opinions that the accused products meet claim element "1g" of the '926 Patent. Claim. Element 1g provides as follows:

> whereby, *when a person moves onto said top surface* of said top sheet, *air is ejected from said concave air bag* via a space between said bottom sheet and the support surface *so that said bed acts as a suction cup*, thereby fixing said bed relative to the support surface.

'926 Patent 5:33–37 (emphasis added). The parties have disputed whether this *whereby*-clause is limiting, and the Court's Summary Judgment Order concluded that "the suction cup functionality" is indeed a limitation because the suction cup functionality is "an integral part of the invention" and "defines the structure and proportions of the mattress." ECF No. 232, 8–9.

Infringement of a patent claim requires that every limitation is in the "accused device either literally or under the doctrine of equivalents." *PC Connector Sols. LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1364 (Fed. Cir. 2005). However, Dr. Stevick fails to even attempt to provide a *reasoned explanation* for how limitation 1g is met. Instead, Dr. Stevick relies on a series of conclusory assertions and unquantified video excerpts to summarily conclude that claim element 1g is satisfied. Each video lasts about 15-30 seconds and shows only a "manometer" (pressure meter), which sometimes moves (in different magnitudes) during the video. While his report makes conclusory assertions as to what the video purports to show, Dr. Stevick does *not* attempt to explain how such movement equates to any suction cup effect, explain any of the manometer readings in any manner, or opine on how such readings show that the bed "acts as a suction cup." Instead, the videos are explained only as showing the manometer's movement as a

5

person (not shown) allegedly moves on and off the Coleman products—followed by Dr. Stevick's conclusory assertion that such movement satisfies element 1g of Claim 1 of the '926 patent. This type of bare, conclusory opinion is impermissible under *Daubert* and its progeny and must be excluded.

Any conclusion that the images support a finding that the bed "acts as a suction cup" is unsupported by the videos and the cursory description of them provided by Dr. Stevick. His opening report includes a *single paragraph* discussing the videos of the purported manometer test, reproduced below in its entirety:

> 122.   Although not required for my opinion that the Accused Products meet the limitations of claim 1g, I performed testing on some Accused Products to demonstrate what occurs in element 1g.  Specifically, at my facility we used a flat linoleum floor with an opening for a plastic tube coming from underneath the floor, and the outside of the tube sealed to the floor, such that the plastic tube interior was open to the center of the area of the concave air bag when an inflated Accused Product was placed on the linoleum floor.  The other end of the plastic tube  was connected to a manometer to measure pressure changes when a weight was applied to and removed from the top surface of the Accused Product. A weight of approximately 150 pounds was applied to the bed.  The manometer showed the pressure change in the concave air bag as the air was being ejected when the weight was applied to the air bed, and then when the air returned to the concave air bag when the weight was removed consistent with the element 1g description and the specification of the '926 Patent. See '926 Patent at col. 4, ll. 22-34. Videos showing the movement of the manometer in response to this test are included as Exhibits 101-113 for Accused Products, with Exhibit 113 showing the manometer test for the Exemplar air bed.

ECF No. 143 ¶ 122. Notably absent from this paragraph is any assertion that the videos show a suction "force" or that the Coleman beds "act as a suction cup" as required by the claims. Moreover, as set forth in detail below, the videos cannot do so, and Dr. Stevick's opinions to that effect are therefore unreliable.

The image below is a screenshot of one of Dr. Stevick's videos, for the representative Coleman product. The screenshot shows minor, unexplained changes in the fluid level of the manometer for the only test of the representative product.[4]

**Stevick Opening Report EX. 113 at 11 seconds:**



The minor difference in values between the left and right sides of the tubes lasts only about 1–2 seconds. Following that 1–2 second displacement, the manometer returns to the original value (timestamp 00:13 in the video, shown below). Dr. Stevick's report does not include any discussion or opinions (other than his general conclusion copied above) on whether and how the unexplained, unquantified pressure change is *meaningful* or *relevant* to the claimed invention, how such change establishes suction underneath the air mattress, or to what extent a minor and

---

[4] Dr. Stevick includes 11 similar videos purportedly showing the results of tests with other Coleman Products. Each video shows only the manometer, not the Coleman product being tested.

fleeting difference could result in any amount of suction force being attributed to the air mattress structure.

**Stevick Opening Report EX. 113 at 13 seconds:**



Dr. Stevick testified that these videos of the manometer he produced were the only videos of his tests. (ECF No. 142-1, 263:5-8.) As noted above, **Dr. Stevick did <u>not</u> quantify the relationship between the movement of the manometer and any alleged pressure or suction underneath the airbed**. For example, Dr. Stevick's report does not calculate any purported actual pressure in pounds per square inch (or any other units). (*Id.* at 262:17–22.) The videos also do not show how the manometer is connected, so it is not possible to tell from the video whether any given pressure change is positive (higher than atmospheric pressure) or negative (lower than atmospheric pressure). Nor does Dr. Stevick attempt to explain how pressure relates to airflow or suction, or how the purported tests would be interpreted to support any such findings. In sum, the

data presented by Dr. Stevick at best only shows some movement of the manometer—not that the bed "acts as a suction cup" as required by element 1g of the '926 patent.

**B.     The Order does not apply the correct standard to exclude conclusory opinions severed from the underlying tests or data**

Coleman argued that Dr. Stevick's opinions were unfounded *ipse dixit* conclusions because Dr. Stevick did not provide any reasoning describing how the bed would "act as a suction cup" based on the configuration of the mattress, but instead merely *assumed* at his deposition that some amount of "air flow" had occurred underneath the mattress[5] based on his undescribed and unquantified manometer tests. Order at 4–5 (citing ECF No. 142, 11–13). The Order, however, found that Dr. Stevick had "extrapolated upon his manometer pressure readings to conclude that 'air flowed,'" so that "does not necessar[ily] render his opinion unreliable." *Id.* at 5. But the Order did not address the problems with Dr. Stevick's naked conclusion that the bed *acts as a suction cup* based merely on his purported belief that some unquantified (small) amount of "air flow" occurred for an unquantified (short) amount of time (which statements were *not* set forth in his expert report, but surmised only at his deposition).

More specifically, the Magistrate's Order failed to address the crux of Coleman's argument: none of Dr. Stevick's testimony (in his reports or at deposition) attempts to explain how the bed "acts as a suction cup" as required by the claims. Indeed, even assuming that Dr. Stevick's deposition testimony could support his report opinions, that testimony only purports to explain that a pressure change amounts to some "air flow." At no point does Dr. Stevick provide a detailed explanation of how a pressure change, "air flow," or any other quantifiable evidence

---

[5] As noted, at best Dr. Stevick's opinion based on his manometer test is that some air moved under the mattress. There is no evidence other than his mere "say so" that the air *in fact* moved out from underneath the mattress as required by the claim—much less any evidence that any amount of suction was produced based on the alleged air movement.

shows a suction effect (or suction cup structure) as required by the claim. Such conclusory assertions, without supporting detailed analysis, are exactly the type of expert testimony that the Supreme Court and Federal Circuit have repeatedly found should be excluded under *Daubert*. *See*, *e.g.*, *Joiner*, 522 U.S. 136, 137 (1997); *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1333 (Fed. Cir. 2014).

On this point, the Magistrate's Order also ignored the express requirement of the claim— i.e., that the bed "act as a suction cup"—in view of conclusory assertions by Dr. Stevick that some amount of air moves underneath the air mattress. However, as Coleman pointed out, Dr. Stevick's tests and video do not prove that any air is ejected from beneath the air bed, and do not (and cannot) prove that the bed includes a structure that acts as a suction cup, as the claim requires. ECF No. 177, 6. Indeed, because Dr. Stevick's methodology did not see fit to even *measure* the area of space under the bed when it was placed "on a support surface," as the claim recites, his methodology does not even enable him to show that *any* concave air bag exists to produce a suction force—much less evidence sufficient to prove that the Coleman products "act as a suction cup" as required by the claims. *See id.*

TWW counsel's arguments at the recent hearing on Coleman's motion for summary judgment (which followed the Magistrate Judge's Order) further illustrate how Dr. Stevick's opinions are conclusory and not based on a reliable methodology of pressure testing (allegedly) showing air flow that (allegedly) shows the bed acts as a suction cup. As TWW argued at the hearing, if Dr. Stevick merely found some "measurable" space, then that will always be "enough" to create a suction. ECF No. 235, 53:23–54:19.[6] Indeed, TWW counsel asserted that,

---

[6] TWW characterized this space as a "measurable *concavity*," *id.* (emphasis added), but there is *no evidence* in the record as to the *shape* or *orientation* of any space or gap between the bottom sheet of the air bed and the floor, when the bed is the proper orientation (i.e., on the floor, as

according to Dr. Stevick's opinions, "if he can detect any change in pressure whatsoever," that would act as a suction cup and "keep the mattress from sliding." *Id.* at 44:9:16. For his part, Dr. Stevick similarly testified that "as long as you have a *finite distance*"—that is "greater than zero"—that would be sufficient to cause a suction cup effect. ECF No. 142-1, 232:2–13 (emphasis added). But such statements are the exact type of unsupported, conclusory statements prohibited by *Daubert*. Indeed, based on this testimony, the only limit to Dr. Stevick's ability to opine that any space underneath an airbed is enough to cause the bed to act as a suction cup is if either the height of the space or the amount of pressure change was "*so small* that you would *not be able to detect*" it. ECF No. 235, 43:21–448 (emphasis added). It is such speculative, unsupported, and unverifiable conclusions that require the Court to act as a gatekeeper under Rule 702. Simply asserting (as was done here) that there is some unquantified space under a mattress that creates some unquantified pressure change does *not* provide the required technical details to support a conclusion that "air is ejected from said concave air bag via a space between said bottom sheet and the support surface so that said bed acts as a suction cup" as the claim requires.

Such conclusory statements should be excluded. Dr. Stevick's manometer *does not show* that a suction force existed so that the bed acts as a suction cup. Rather, it is only "so because [he], the expert, say[s] it is so." *ePlus*, 764 F. Supp. 2d at 815. Likewise, Dr. Stevick's manometer test cannot support the opinion that any Coleman bed includes a "suction cup" structure because Dr. Stevick provides no analysis supporting that assumption. Indeed, Dr.

---

required by the claim), so that the bed might act as a suction cup when a person "moves onto" the bed. *See id.* at 37–38 (summarizing Coleman's arguments as to why TWW failed to offer proof the *concave air bag* limitation was met); *see also* Coleman MSJ Reply Br., ECF No. 176, 11–13.

Stevick's assertion that the products include a "configuration" that allows air flow out from or creates suction under the bed is pure *ipse dixit*, unsupported by any analysis. *See* ECF 142-1 at 255:3-5. The Order thus fails to apply the correct legal standard, which requires excluding Dr. Stevick's opinions as entirely conclusory and disconnected from his manometer testing data. *See* Coleman Mem., ECF No. 142, 9–11, Coleman Reply, ECF No. 177, 4–7.

That the Magistrate applied incorrect legal standard under *Daubert* is also plain from the text of the Order. The Order characterizes the *reliability* of Dr. Stevick's testimony in two ways: first, as not "*inherently* unreliable" and second as "not *necessarily … unreliable*." *See* ECF No. 225 at 4, 5. But it is not Coleman's burden to show "inherent" or "necessary" unreliability under *Daubert* or the Rules of Evidence. *See* F.R.E. 702(c); *Daubert*, 509 U.S. at 597. To the contrary, it is *TWW's burden* to produce evidence showing that Dr. Stevick's proposed testimony is reliable under *Daubert*. *See Maryland Cas. Co. v. Therm-O-Disc, Inc.*, 137 F.3d 780, 783 (4th Cir. 1998). TWW's response brief totally fails to meet this burden. In fact, the main argument of that brief is that claim element 1g is not a limitation at all, so definite proof of claim 1g is not required. *See* ECF No. 151 at 4, 5, 7, 8. But the Court explicitly rejected this argument. *See* ECF No. 232 at 9.

Moreover, TWW's response briefing lacked an analysis of the *Daubert* factors that would support the admissibility of Dr. Stevick's testimony. Among other things, Dr. Stevick's opening report does not define what a "suction cup effect" is, or any falsifiable criteria for determining whether a suction cup effect exists. For example, Dr. Stevick's report does not distinguish between the so-called "suction cup effect" and any other type of pressure change or air flow (not all movements of air cause "suction" and not all pressure changes are "suction"). Instead, Dr. Stevick's report merely paraphrases the claim language and states that "the result is a suction cup

effect where the bed acts like a suction cup." *See* ECF No. 143 ¶ 119. These kinds of opinions are totally devoid of any scientific analysis, and as such are not the result of reliable principles and methods.

Relatedly, Coleman also argued that Dr. Stevick's opinions were not verifiable or falsifiable because he did not identify any facts or data that support his inference that suction cup area exists underneath the air bed. ECF No. 142, 11–13. The Order concluded, however, that Dr. Stevick's "decision not to measure force does not necessarily make his opinion unreliable." Order at 6. The Order noted—similar to the arguments by TWW counsel discussed in the preceding section—that Dr. Stevick's testimony was that he was merely stating that "the effect is there and it will apply a resisting force," but that "any [amount of] force will demonstrate the effect." *Id.* at 5. Again, TWW counsel's summary judgment arguments reinforce the conclusion that there really is *no limit* to Dr. Stevick's opinions: There are no limits on the size (or even the shape, contrary to the structural claim limitation) of the air bag,[7] no limits on the magnitude (or even direction) of pressure change, and no limit on *how long* the purported suction cup effect lasts.[8] Rather, Dr. Stevick's "test," such as it is, leaves Coleman, the jury, and other potential infringers to guess at whether a product might act as a suction cup or include a "suction cup structure," given the boundless and unexplained standard offered by Dr. Stevick and TWW.

---

[7] Dr. Stevick proclaims that the height "[j]ust has to be greater than zero," including *any* "finite distance." ECF No. 142-1, 232:2–13 (emphasis added). Some unmeasured "finite distance" is not proof of a concave air bag with a "minimum height" necessary to act as a suction cup.

[8] Dr. Stevick testified the bed only need be held in place "momentarily," ECF 142-1, 261:3-5; *see also* Coleman Mem., ECF 142, 5 (noting the 1–2 second "displacement" of the manometer reflecting a brief pressure change before returning to the original, undisturbed pressures); ECF 177, 5 (arguing "these videos only show, at best, a momentary pressure increase or decrease somewhere about a Coleman airbed").

Because of these deficiencies, Dr. Stevick's "methodology" used to opine that claim element 1g is present is not testable. An expert's "inferences must be derived using scientific or other valid methods." *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999). But Dr. Stevick has no calculations or test conditions to enable duplication of or challenge to his "test." He did not measure the area of, and his reports present no data about the alleged suction cup or how it works.[9] He did not measure (or even show) that a concave air bag exists when the Coleman air bed is placed with its bottom on the support surface. ECF No. 142-1, 233:20-25. Since any force directly depends on area, without the area Dr. Stevick cannot determine the force to know whether or not any of the Coleman products "act as a suction cup." And it's undisputed that pressure is not the same as force, so pressure alone does not show the magnitude of a force. *See*, *e.g.*, ECF No. 142-3 ¶ 100; ECF No. 142-1 at 267:13–23. Dr. Stevick's opinions are based on speculation and assumption—not science. They certainly are not based on a scientific *methodology* and are not reliable under Rule 702 or *Daubert*. 509 U.S. at 593. Such unfalsifiable opinions require exclusion under *Daubert*, so the Magistrate's Order allowing them to be presented to the jury is contrary to law.

### C.     The Order clearly erred and is contrary to law in concluding there is no contradiction between Dr. Stevick's opinions and what the claim requires

In denying Coleman's request to exclude Dr. Stevick's conclusory and unsupported conclusions, the Magistrate further relied on unsupported assertions of fact. First, Coleman had argued that the "higher (positive) pressure underneath the air bed" that Dr. Stevick testified would occur when the person moves onto the air bed was the *opposite* of what is claimed, rendering Dr. Stevick's opinions (even assuming his manometer testing was accurate) "irrelevant

---

[9] At most, he only opines in his Reply report that there is a "large surface area." ECF No. 144 ¶ 82.

and [unable to] support a finding of a suction cup effect," *i.e.*, that the bed acts as a suction cup when the person moves onto the bed. Order at 3 (quoting Coleman Mem., ECF No. 142, 11). The Order characterized Dr. Stevick as testifying that "because of a change in pressure, it is a *scientific certainty* that 'air had to flow to cause that change in pressure.'" Order at 4 (quoting ECF No. 135-1, 11–12) (emphasis added).

There is, however, no support for the Order's conclusion. It is simply incorrect—much less a "scientific certainty"—that air *has to flow* from one place to another to cause a change in pressure (or, conversely, that a change in pressure means that air must flow).[10] And Dr. Stevick never says so in the passage of testimony cited by the Order (or otherwise). Instead, he conceded the *opposite*. He agreed that the pressure inside a balloon could change if one pressed on the outside—even though air would not be flowing in or out. *See* ECF No. 135-1, 254:18–255:3.[11]

Further, while Dr. Stevick's deposition testimony is *ipse dixit* and excludable on that basis alone (as noted above), the Order also incorrectly found "no contradiction" between Dr. Stevick's testimony that he observed an *increase* in pressure "when a person moves onto the air mattress" and Stevick's opinion that a "suction cup effect requires a *reduction* in pressure (which

---

[10] For example, pressure changes in closed systems (*i.e.*, systems where there is no airflow in or out of the system) are well understood. Boyle's Law quantifies how pressure changes within a sealed system as the volume of the closed system changes. *See* Li Invalidity Report, ECF No. 171-16 ¶¶ 98–99; *see also* https://www.grc.nasa.gov/www/k-12/airplane/boyle.html (illustrating Boyle's law by showing pressure changes inside a cylinder without air flowing in or out of the cylinder). In any event, Dr. Stevick does not even attempt to provide a detailed analysis (as required by *Daubert*) to explain why a change in air pressure equals air flow from underneath the air mattress. Dr. Stevick further does not even use the term "scientific certainty," and (even if he had), a mere assumption or belief does not meet the requirements of *Daubert*.

[11] TWW counsel argued at the hearing on summary judgment that "because there is air trapped under the bed, … when you put pressure on the top, it will cause air to go out, that does create suction. That is just a physical fact." ECF No. 235, 51:22–4. But Dr. Stevick's concession about air not flowing out of a balloon shows it is *not* a "physical fact" that must necessarily occur; it is merely an assumption TWW would like us to believe is fact.

occurs when the weight is *removed* from the air mattress)." *Id.* (emphasis added). The Order did

not reconcile or appreciate the conflict with *the timing* of when the air bed of Claim 1 must "act

as a suction cup." As pointed out in in Coleman's briefs, the claims *expressly require* the bed to

act as a suction cup "when a person moves *onto*" the bed. The patent explains that "[w]hen the

person *leaves* the bed," the concave air bag is "once again filled with air" so that the bed "can be

easily moved *at this time*." ECF No. 18-1 at 4:29–34 (emphasis added). So both the plain

language of the claim and the intrinsic evidence of the patent make clear that the bed acts as a

suction cup when a person gets onto the bed, but it *stops* acting as a suction cup (and "can be

easily moved" again) when a person gets off. *See also* Coleman Mem., ECF No. 142, 7–9;

Coleman Reply, ECF No. 177, 2–3.

But Dr. Stevick testified that "when you move, *get off*, that corresponds to when you

*reverse* the load on a suction cup" and "[y]ou pull a vacuum." ECF No. 142-1, 253:10–14.[12] The

Order accepted this testimony and observed that "the suction cup effect requires a reduction in

pressure[,] which *occurs when the weight is removed* from the air mattress, thereby reversing the

air flow." Order at 4 (emphasis added).[13] Both Dr. Stevick and the Order place the timing of the

bed acting as a suction cup at the wrong time—the opposite of when the claim requires it. If the

---

[12] Coleman noted in its reply brief that TWW *mischaracterized* Dr. Stevick's testimony by rewriting it to merely say when the person "*moves* 'that corresponds to'" reversing the load on a suction cup. ECF No. 177, 3 (emphasis added) (quoting ECF No. 151, 6). As noted above, Dr. Stevick actually said that happens when "you move, *get off*."

[13] As noted in Coleman's reply brief, in a portion of Dr. Stevick's opening report that does not refer to or rely on his manometer testing, he also stated that when a person "moves atop the air bed," it "reduces pressure inside the concave air bag and creates a vacuum." ECF No. 177, 2 (quoting ECF No. 143 ¶ 20). So another contradiction is that, per Dr. Stevick's testimony, *his own manometer testing* shows the opposite of what his un-supported opinions in the report states. ECF No. 177, 2–3 (citing deposition testimony at ECF No. 142-1, 253:10–14). Dr. Stevick's manometer testing, according to his testimony, cannot support (or refute) his otherwise-conclusory opinion that the claim is infringed. That is the epitome of unreliable expert testimony.

"suction cup effect" requires a reduction in pressure from weight being *removed*, then Dr. Stevick's testimony and opinions (which observed pressure change when a person gets *onto* the bed) do not support his opinion that the bed "acts as a suction cup" "when a person moves onto" the bed as the claim requires. The Order cannot be squared with the plain language of the patent claim, and again relies on conclusory assertions as opposed to reliable methodology and rationale, which is prohibited under *Daubert*.

## V.     Conclusion

The Magistrate Judge's Order denying Coleman's motion to exclude was based on clearly erroneous factual findings or inferences, and it misapplied the relevant legal authority governing admissibility of expert opinions. For the reasons explained above, Coleman requests the Court sustain its objections to the Order and grant Coleman's motion to exclude, ECF No. 141.

Dated: February 14, 2022                    Respectfully submitted,

By:      /s/ *David B. Lacy*
         R. Braxton Hill, IV (VSB 41539)
         Michael W. Smith (VSB 01125)
         David B. Lacy (VSB 71177)
         CHRISTIAN & BARTON, LLP
         901 East Cary Street, Suite 1800
         Richmond, Virginia 23219
         Tel: (804) 697-4100
         Fax: (804) 697-6108
         bhill@cblaw.com
         msmith@cblaw.com
         dlacy@cblaw.com

         John W. Harbin (*pro hac vice*)
         Gregory J. Carlin (*pro hac vice*)
         David S. Moreland (*pro hac vice*)
         Warren J. Thomas (pro hac vice)
         Steven M. Philbin (*pro hac vice*)
         MEUNIER CARLIN & CURFMAN LLC

999 Peachtree Street NE, Suite 1300
Atlanta, Georgia 30309
(404) 645-7700
jharbin@mcciplaw.com
gcarlin@mcciplaw.com
dmoreland@mcciplaw.com
wthomas@mcciplaw.com
sphilbin@mcciplaw.com

*Counsel for the Plaintiff,*
*The Coleman Company, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on February 14, 2021, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to

all counsel of record.

By:    <u> /s/ *David B. Lacy*        </u>
David B. Lacy (VSB 71177)
CHRISTIAN & BARTON, LLP
901 East Cary Street, Suite 1800
Richmond, Virginia 23219
Tel: (804) 697-4100
Fax: (804) 697-6108
dlacy@cblaw.com

*Counsel for the Plaintiff,*
*The Coleman Company, Inc.*