IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| THE COLEMAN COMPANY, INC. | |
| Plaintiff/Counterclaim Defendant, | |
| v. | C.A. No. 2:20-cv-351-RGD |
| TEAM WORLDWIDE CORPORATION, | Hon. Robert G. Doumar |
| Defendant/Counterclaim Plaintiff. | |

**MEMORANDUM IN OPPOSITION TO TEAM WORLDWIDE CORPORATION'S
MOTION FOR LEAVE FOR SUPPLEMENTAL EXPERT DISCOVERY**

## I. INTRODUCTION

TWW's Motion for Leave for Supplemental Expert Discovery (ECF Nos. 244, 245) presents a single issue: when the Court construed the term "mattress coil" in the summary judgment order, was that good cause to amend the scheduling order under Fed. R. Civ. P. 16(b)? The answer is no, for three principal reasons.

First, Courts that have considered this issue have found that claim construction is not good cause to amend a scheduling order under Rule 16(b). The Court's claim construction is based on the patent and Coleman's position set forth during discovery, so the claim construction ruling is not "new information" that justifies new discovery. Indeed, TWW does not even disclose what theories it would like to now assert—thereby avoiding having to explain why such theories could not have been timely asserted. TWW's brief cites *no caselaw* supporting its argument that good cause exists here, and this brief identifies numerous authorities to the contrary.

Second, TWW failed to diligently move for supplemental expert discovery, so good cause does not exist. TWW has claimed that the dispute over the term "mattress coil" arose because of a statement made by Coleman's expert during a deposition in *August 2021*. If that were the case, TWW should have moved to supplement expert discovery or claim construction at that time, but it did not. Instead, TWW first made its arguments about the term "mattress coil" during summary judgment briefing. Only roughly *six months later*, after the Court denied TWW's summary judgment motion, did TWW file the present motion seeking to reopen expert discovery to address this issue.

Third and finally, opening expert discovery at this late juncture would cause severe prejudice to Coleman and waste judicial resources. TWW was required to disclose its invalidity and claim construction positions last year. Coleman diligently sought discovery of those issues

1

beginning with Coleman's first interrogatory to TWW in December 2020. Restarting expert discovery now would force Coleman and the Court to waste resources addressing arguments that TWW was required to disclose and commit to many months ago, including providing new expert reports, depositions, and potential expert objections—all while the parties have already exchanged pretrial disclosures and are on the eve of trial.

For at least these reasons, TWW's motion for leave for supplemental expert discovery should be denied.

## II.  FACTUAL BACKGROUND

The Court's Rule 16(b) Scheduling Order set deadlines for claim construction (April 19, 2021), fact discovery (May 28, 2021), and expert discovery (August 23, 2021). ECF No. 26 ¶¶ 3, 4, 11. The parties and the Court followed this schedule with minimal agreed extensions. Then, in November 2021, TWW raised a new claim construction argument in its summary judgment brief. *See* ECF No. 175 at 12–14.

TWW's summary judgment brief argued that a statement by Coleman's expert in his deposition altered the meaning of "coil" as a matter of law. *Id.* at 13. But Coleman's response brief showed that TWW was wrong about the law. ECF No. 187 at 13–17. Ultimately, the Court agreed with Coleman, declined to find that the deposition testimony controlled, and instead ordered supplemental claim construction briefing on the term "mattress coil." *See* ECF No. 214. In that order, the Court noted that the dispute "should have been brought to the Court's attention either months ago during the *Markman* hearing or when the alleged discrepancy arose." *Id.* at 2.

The Court's summary judgment order explicitly adopted a construction of "mattress coil" that was directly based on the '618 Patent and file history. *See* ECF No. 232 at 9–10 (noting that Coleman's proposal "more closely resembles the structure of the coils in the '618 Patent" and

2

concluding the Court's construction "is supported by the patent specification"). Based on this construction, the Court denied TWW's motion for summary judgment of invalidity. *Id.* at 12.

Now, having lost its summary judgment motion on this issue, TWW seeks to reopen expert discovery 10 months after the *Markman* hearing, and roughly six months after the dispute over term "mattress coil" allegedly arose.

## III.   ARGUMENT

TWW's brief contains only one ground for reopening expert discovery: that good cause exists under Rule 16(b) for the Court to modify the scheduling order and allow additional expert discovery. ECF No. 245 at 2. However, good cause does not exist here, so TWW's motion should be denied.

A showing of "good cause" would require TWW to establish that the "scheduling deadlines cannot be met despite a party's diligent efforts." *Dilmar Oil Co., Inc. v. Federated Mut. Ins. Co.*, 986 F. Supp. 959, 980 (D.S.C.), *aff'd on other grounds,* 129 F.3d 116 (4th Cir. 1997). TWW does not even attempt to meet this standard, instead asserting in conclusory fashion that "good cause" exists. Moreover, a review of relevant law confirms that TWW cannot meet the standard.

### A.   Claim construction is not good cause to amend a scheduling order under Rule 16(b).

Courts have held that "[a]s a matter of law … a court's claim construction ruling cannot be the basis for a good cause finding for Rule 16(b) purposes." *See, e.g.*, *Cytiva Sweden Ab v. Bio-Rad Lab'ys, Inc.*, No. 1:18-cv-01899-CFC-SRF, 2021 WL 431508, at *1 (D. Del. Feb. 8, 2021); *Teva Pharms. USA, Inc. v. Amgen, Inc.*, No. CV 09-5675, 2010 WL 11558270, at *3 (E.D. Pa. Nov. 19, 2010) (collecting cases). And, even when claim construction is performed in a summary judgment order (as in this case), good cause does not exist to modify the scheduling

order. *E.g.*, *Fisher & Paykel Healthcare Ltd. v. Flexicare Inc.*, No. 8:19-cv-00835, 2021 WL 5994968, at *2–3 (C.D. Cal. Sept. 16, 2021).

The facts of *Fisher* mirror the present case. In *Fisher*, the parties "presented opposing arguments" about the meaning of a claim term at the summary judgment phase, and the court construed the term in its summary judgment order. *Id*. at *2. Flexicare (like TWW here) argued this was good cause to amend the scheduling order under Rule 16(b), so that it could assert additional invalidity arguments "in light of the Court's ruling." *Id*. Flexicare asserted that good cause existed because they "could not have reasonably brought" the motion until the Court's summary judgment ruling. *Id.*; *cf.* ECF No. 245, at 2 (arguing this Court's "construction implicates additional prior art … with different obviousness arguments and combinations" because TWW "could not have anticipated, nor responded to," the Court's construction … until after the order issued"). The Court rejected Flexicare's argument, holding that the "key issue" was whether Flexicare *could have* anticipated the construction, or whether there was a risk of that construction being "well known and anticipated" by the party—not whether Flexicare actually knew of the construction. Since the court's construction was based on facts that came out in discovery, the court found that Flexicare could have anticipated the construction and denied the Rule 16(b) motion. *Fisher*, 2021 WL 5994968, at *3.

Here, TWW could have anticipated the Court's construction for "mattress coil."[1] First, TWW had notice that the term "coil" would be construed consistent with its usage in the '618 patent. Indeed, as the Court noted, its construction of the term coil "resembles the structure of

---

[1] As noted below, TWW actually did anticipate the Court's construction, as its expert relied on the very language cited by the Court to support the construction.

4

the coils *in the '618 Patent*." ECF No. 232, 10 (emphasis added).[2] Further, Coleman's expert specifically cited to the patent recitation (stating that the coil comprised two elongate members, as the Court found) in its response to TWW's invalidity positions and expert reports. ECF No. 171-6 ¶¶ 100–101. TWW and its expert thus not only could have anticipated the construction, but were actually *on notice* that a proper reading of the term would include "two elongate members" as ultimately resolved by the Court. So, TWW and its experts were aware that the term could be construed consistent with the patent, but tactically chose to not address the argument (or raise whatever theories it now would like to raise) at the appropriate time.[3] This is analogous to the facts in *Fisher*, where the Court reasoned that the moving party should have known of the potential construction based on the arguments of the opposing party. *Fisher*, 2021 WL 5994968, at *3.

TWW has known what a coil is since expert discovery (and before) because TWW does not dispute that its products contain the very same structure disclosed in the patent (and used by Coleman's products, as well).[4] Until summary judgment, TWW and Coleman both relied on a virtually identical meaning of the term "mattress coil" that the Court has now adopted. For example, both TWW's expert and Coleman's expert relied on the same description of Coil in

---

[2] The Court rejected TWW's attempt to construe the term to encompass the different structure known as an "I-beam." *Id.*

[3] At a minimum, Coleman's position (which is consistent with the Court's construction) was fully known to TWW through the expert report exchange. It is not possible that TWW could not anticipate a construction that would be consistent with Coleman's arguments that were expressly provided to TWW during discovery.

[4] TWW offers for Coleman to supplement its infringement contentions based on the Court's construction. Yet Coleman has no such need. The coils used in TWW's products are exactly like those shown in the '618 patent (two elongate members), which is why there has never been any inconsistency between Coleman's infringement and validity positions—nor any legitimate dispute that TWW's products include a "mattress coil" as recited in the asserted claims.

5

their respective expert reports. *See* ECF No. 216 at 5–7 (showing how all experts in this case referred to the '618 Patent's description of "mattress coil"). So the Court's definition cannot be a surprise because it is based on the same language and the prosecution history. *See* ECF No. 232 at 9–10. Tellingly, TWW's brief does not point to a specific part of the Court's definition of "coil" that could not have been anticipated. TWW cannot, because the Court's definition is directly based on the prosecution history and patent itself. Accordingly, TWW cannot claim surprise at the Court's claim construction.

Finally, TWW suggests that good cause exists (or that supplementation of its expert reports is required) because the Court's construction is "new information." But—as a matter of law—a *Markman* ruling is not "new information." *See Atmel Corp. v. Info. Storage Devices Inc.*, No. C 95-1987 FMS, 1998 WL 775115, at *2 (N.D. Cal. Nov. 5, 1998) (holding that *Markman* rulings are not new information within the context of local rules on supplementing contentions since "[t]he decision of a court is not 'discovered'" and is based on preexisting legal documents). So TWW's argument that there is new information here is also incorrect.

Further, TWW fails to even disclose what new "art" or "theories" it seeks to add through new discovery. This too belies "good cause." Indeed, TWW admits that the "additional prior art" it now wants to rely on is "already of record in the litigation." ECF No. 245 at 2. This argument is a tacit admission that whatever new theories of obviousness TWW wishes to present *could have been disclosed* during the discovery period.[5] That is, although TWW has not disclosed to Coleman or this Court what reference "of record" it wants to present through a new invalidity

---

[5] Again, TWW was aware during expert discovery of Coleman's position that the term "coil" should be read consistent with its usage in the '618 patent, which is in accord with the term's plain meaning. That TWW tactically chose not to present an invalidity position based upon Coleman's arguments is the antithesis of "good cause." Simply put, TWW is not entitled to a "do-over" on an issue that it could have addressed earlier. *Fisher*, 2021 WL 5994968, at *4.

6

theory, TWW has shown nothing that would have prevented TWW from disclosing this theory at the appropriate time.[6] Instead, despite being on notice of Coleman's positions regarding what "coil" meant (based on the same patent language adopted by the Court), TWW and its expert tactically chose not to address Coleman's position with such prior art "already of record in the litigation."[7] Accordingly, Coleman requests that the Court deny TWW's attempt to re-open expert discovery on the eve of trial to introduce theories that it should have provided long ago.

> **B. Even if the Court's construction of the term "coil" was unanticipated or surprising, TWW failed to exercise diligence and therefore good cause does not exist.**

TWW also cannot establish good cause because of its unexplainable delay in raising the claim construction issue with the Court. Specifically, TWW delayed bringing the present motion for roughly six months after the purported construction dispute arose in August at Dr. Singhose's deposition. The "good cause" standard "focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment" and asks whether the deadline still could not have been met despite that diligence. *Dilmar Oil*, 986 F. Supp. at 980. Carelessness does not meet the good cause standard. *Id.*

---

[6] On the last day of fact discovery, TWW supplemented its response to Coleman's Interrogatory No. 2, requiring TWW to "all documents" and "the factual basis" supporting its allegations that the '618 patent was invalid. See ECF No. 187-5, at 6, 9. The supplemental response referred to a "Supplemental Exhibit A" attached to the discovery, which listed **almost 50** prior art references, as well as "incorporat[ing] by reference" innumerable other references. *Id.* at 35. Dr. Stevick's invalidity report then opined on *some* of those references, but he and TWW chose not present invalidity theories based on all of them. That was their tactical choice. But whatever reference buried among the mountain of prior art that TWW has put in the "record," it is no *surprise* to TWW what that reference discloses. TWW cannot claim surprise when TWW identified the prior art it chose to rely on, TWW was required to disclose its theories of invalidity, and now only has second thoughts.

[7] He also presented invalidity theories based on other alleged prior art that was *not* disclosed during fact discovery, and Coleman does not concede his reliance on such late-disclosed prior art is permissible. See ECF No. 187, at 20–21 (noting Coleman's objection to Dr. Stevick's attempt to assert a new prior art reference not previously disclosed).

7

As described above, TWW failed to timely move for supplemental expert discovery once the dispute about the "coil" term allegedly arose at the August 18, 2021 deposition of Coleman's expert.[8] Instead of promptly moving for supplemental expert discovery and additional claim construction in August 2021, TWW raised the dispute over the claim term to gain an advantage in summary judgment briefing. TWW only brought the present motion after the Court rejected that summary judgment argument in February 2022. TWW's motion was not brought diligently, and TWW lacks good cause.

TWW's motion claims that there is sufficient time to complete "supplemental discovery" before the trial date. ECF No. 245 at 3. However, this argument is of no avail. Supplemental expert discovery will inevitably create significant new issues shortly before the trial, including potential *Daubert* briefing, new expert discovery disputes, amended pre-trial disclosures (including potential adjustments to witnesses and exhibits), and other disputes that could delay the upcoming trial.[9] Moreover, the amount of time before trial is *not relevant* to whether "good cause" exists under Rule 16. Indeed, other courts have reasoned that good cause does not exist when a party withholds invalidity positions until after claim construction—despite ample time remaining until trial.[10] *MASS Engineered Design, Inc. v. Ergotron, Inc.*, 250 F.R.D. 284, 286

---

[8] As explained above, TWW was well aware of Coleman's position regarding the "coil" term throughout expert discovery—before the August 2021 deposition. But it is undisputed that TWW should have raised the claim construction issue—if it believed it needed to be raised—shortly after August 18, 2021.

[9] TWW has previously failed to cooperate in expert discovery, so further expert discovery raises a real risk of additional discovery delays. *See* ECF Nos. 133, 238 (Orders granting Coleman's motion to compel and Coleman's motion for sanctions).

[10] Here, four months remain based upon the Court's re-scheduling of the trial originally planned for March 15. The "good cause" standard does rise or fall based on the Court's ability to schedule trial. Rather, the standard requires TWW to show it could not have anticipated the issue and that it timely raised it with the Court—both of which TWW fails to do.

8

(E.D. Tex. 2008). That is exactly the case here, as previously detailed. Therefore, TWW's argument about how much time is left before trial is a red herring that does not excuse TWW's failure to show "good cause" as required under Rule 16.

At the end of the day, TWW's failure to meet the "good cause" standard is a problem of its own making based on tactical decisions. *Cf. Walsh v. WAVY Broad., LLC*, No. 2:11-CV-174, 2012 WL 703367, at *2 (E.D. Va. Mar. 5, 2012) (denying motion to amend Rule 16(b) scheduling order where the movants "brought this potential evidentiary failure upon themselves as the result of a tactical decision"). TWW withheld its arguments about the meaning of "coil" until after expert discovery, raising it first at summary judgment. That litigation strategy is not good cause to grant a Rule 16(b) motion as outlined above, and especially when the result would be considerable expense, inconvenience, and delay. *See Rexnord Indus., LLC v. Bigge Power Constructors*, 947 F. Supp. 2d 951, 962 (E.D. Wis. 2013) (collecting cases); *Marlowe Pat. Holdings LLC v. Dice Elecs.*, *Marlowe Pat. Holdings LLC v. Dice Elecs., LLC*, 293 F.R.D. 688, 701 (D.N.J. 2013). Coleman submits that TWW's motion should be denied.

## IV. CONCLUSION

As outlined above, TWW's brief fails to establish, or come close to establishing, good cause to reopen discovery. Courts have routinely found that claim construction is not good cause under Rule 16(b), and TWW's motion cites no authority to support its conclusory assertion. And TWW failed to exercise diligence, as TWW could have moved for expert discovery in August, before Coleman and the Court expended their resources on summary judgment briefing. Accordingly, good cause does not exist and TWW's motion should be denied.

Dated: March 2, 2022  Respectfully submitted,

By: /s/ *David B. Lacy*
David B. Lacy (VSB 71177)
R. Braxton Hill, IV (VSB 41539)
Michael W. Smith (VSB 01125)
CHRISTIAN & BARTON, LLP
901 East Cary Street, Suite 1800
Richmond, Virginia 23219
Tel: (804) 697-4100
Fax: (804) 697-4112
dlacy@cblaw.com
bhill@cblaw.com
msmith@cblaw.com

John W. Harbin (*pro hac vice*)
Gregory J. Carlin (*pro hac vice*)
David S. Moreland (*pro hac vice*)
Warren J. Thomas (*pro hac vice*)
Steven M. Philbin (*pro hac vice*)
MEUNIER CARLIN & CURFMAN LLC
999 Peachtree Street NE, Suite 1300
Atlanta, Georgia 30309
(404) 645-7700
jharbin@mcciplaw.com
gcarlin@mcciplaw.com
dmoreland@mcciplaw.com
wthomas@mcciplaw.com
sphilbin@mcciplaw.com

*Counsel for the Plaintiff,*
*The Coleman Company, Inc.*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on March 2, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

                                            By:    */s/ David B. Lacy*
                                                     David B. Lacy (VSB No. 71177)
                                                     dlacy@cblaw.com
                                                   CHRISTIAN & BARTON, L.L.P.
                                                   901 East Cary Street, Suite 1800
                                                   Richmond, Virginia 23219

                                                   *Counsel for the Plaintiff,*
                                                   *The Coleman Company, Inc.*