```
1                IN THE UNITED STATES DISTRICT COURT
                FOR THE EASTERN DISTRICT OF VIRGINIA
2                        Norfolk Division

3

4  - - - - - - - - - - - - - - - - - -
                                        )
5    THE COLEMAN COMPANY,               )
                                        )
6            Plaintiff/Counterclaim     )
             Defendant,                 )
7                                       )
     v.                                 )
8                                       )
     TEAM WORLDWIDE CORPORATION,        )
9                                       )   CIVIL ACTION NO.
             Defendant/Counterclaim     )   2:20cv351
10           Plaintiff,                 )
                                        )
11   And                                )
                                        )
12   CHENG-CHUNG WANG,                  )
                                        )
13           Counterclaim               )
             Plaintiff,                 )
14  - - - - - - - - - - - - - - - - - -  )

15

16                 TRANSCRIPT OF PROCEEDINGS

17                (Motion hearing via Zoom)

18                   Norfolk, Virginia

19                    March 15, 2022

20

21
   BEFORE:  THE HONORABLE ROBERT G. DOUMAR
22           United States District Judge

23

24

25
```

JODY A. STEWART, Official Court Reporter

```
 1   APPEARANCES:

 2
             CHRISTAIN & BARTON LLP
 3           By:  David B. Lacy
                     And
 4           MEUNIER CARLIN & CURFMAN LLC
             By:  Lee G. Hamilton
 5               Warren J. Thomas
                 Counsel for The Coleman Company
 6
             KALEO LEGAL
 7           By:  William R. Poynter
                     And
 8           RUYAK CHERIAN LLP
             By:  James M. Woods
 9               Robert Harkins
                 Counsel for Team Worldwide Corporation and
10               Cheng-Chung Wang

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                 (Hearing commenced at 10:00 a.m.)
 2              THE CLERK:  Civil action number 2:20cv351, The
 3    Coleman Company, Inc., versus Team Worldwide Corporation.
 4              For the plaintiff, Mr. Lacy, Mr. Thomas,
 5    Mr. Hamilton, are you ready to proceed?
 6              MR. THOMAS:  Yes, Your Honor.
 7              Yes, ma'am.
 8              THE CLERK:  Mr. Poynter, are you, Mr. Harkins and
 9    Mr. Woods ready to proceed for defendants?
10              MR. POYNTER:  We are.  Thank you.
11              THE COURT:  Who's going to argue the matter?  There
12    are two matters, actually.
13              MR. LACY:  Your Honor, this is David Lacy with
14    Coleman.  My colleague, Mr. Thomas, will argue the
15    magistrate objection, and Mr. Hamilton will argue TWW's
16    motion to re-open discovery.
17              THE COURT:  Okay.
18              MR. POYNTER:  Judge Doumar, this is Bill Poynter
19    for the Defendant Team Worldwide, and Mr. Robert Harkins is
20    going to argue both motions for the defendant.
21              THE COURT:  All right.  So Mr. Harkins versus
22    Thomas.
23              MR. HARKINS:  I'm taking all coverage, Your Honor.
24              THE COURT:  So we will start with my biggest
25    problem, is the question of the testimony of Stevick.  It is
```

```
 1    obvious that there are problems with Stevick's testimony, as
 2    far as I'm concerned.  However, under these court general
 3    orders, non-dispositive motions, which generally such a
 4    motion would be for a motion in limine, would normally be
 5    non-dispositive.  In this case it goes to the very heart of
 6    the case, so it creates a monstrous problem because it does
 7    go to the heart of the case.
 8              Consequently, Judge Leonard has ruled on it, and we
 9    will see where we go from there.  I think it's a most
10    important thing.  So insofar as that is concerned, the
11    plaintiff seeks to overrule Judge Leonard.  Plaintiff, how
12    much time do you want to argue that point?
13              MR. THOMAS:  Your Honor, I think 10 or -- 10
14    minutes, 15 minutes would be sufficient, including a
15    rebuttal.
16              THE COURT:  I'll give you 15 minutes, 10 minutes to
17    start and 5 minutes for rebuttal.
18              MR. THOMAS:  Thank you, Your Honor.
19              THE COURT:  So far as the defendant is concerned,
20    how much time do you want?
21              MR. HARKINS:  15 minutes would be fine, Your Honor.
22    Thank you.
23              THE COURT:  15 minutes for you.  All right.  We
24    will go from there.
25              Okay.  Let's get started.
```

1          MR. THOMAS:  Your Honor, I apologize.  I'm
2     having -- can you see me and hear me just fine?  I assume
3     you can hear me.
4          THE COURT:  I'm having a little trouble hearing,
5     but other than that, I'm in good shape.
6          MR. THOMAS:  All right.  Is it any better now, Your
7     Honor?
8          THE COURT:  Yes, a little better now.  You got the
9     microphone close, I can hear better.  Go ahead.
10         MR. THOMAS:  Thank you.  So, Your Honor, as you
11    know, Coleman's position is that the testimony from
12    Dr. Stevick does not have or show a valid scientific
13    connection between what he says occurs, which is a purported
14    pressure change, and then the claims requirements that the
15    structure of the Coleman beds actually act as a suction cup
16    when a person moves onto them.  And the Magistrate Judge's
17    order contains legal and factual errors that justify
18    overruling it.
19         So the Court's order on summary judgment held that
20    the air bed must act as a suction cup to infringe, and the
21    order also concluded that the requirement that the bed act
22    as a suction cup is an integral part of the invention, and
23    that it defines the structure and portions of the mattress.
24         And, of course, the Court noted at the time that
25    Coleman challenged Dr. Stevick's assumptions but had

1    previously lost its *Daubert* challenge, and we believe that

2    the papers we've submitted show that the Magistrate Judge's

3    order was in error.

4           Dr. Stevick's report didn't address how the bed was

5    fixed to the surface, just as much as it doesn't address how

6    the bed acts as a suction cup.  At the most he does, you

7    know, assuming -- if we give some sort of deference, if we

8    were to -- what he says, he says that there is a momentary

9    unquantified pressure change in a small space underneath the

10   bed that is related to airflow, and Stevick, as we pointed

11   out in our opening brief, he admitted that the manometer

12   doesn't actually show airflow.  That's an assumption he

13   makes.

14          TWW's opposition brief says that there is no

15   inferences that he's actually making here.  He did a test

16   that shows infringement, but that's just facially not true.

17   He has to go from the measurement of the pressure change,

18   which, as we do concede, you know, a manometer reading could

19   be a scientifically valid test for measuring pressure, but

20   from that he makes an inference or a leap that there is

21   airflow, which the Magistrate Judge said that was a

22   scientific certainty that that had to occur, even though

23   that scientific certainty language was certainly not

24   anywhere in the record, and we've shown that there is

25   evidence that there is -- it can be that it doesn't, and

1  Dr. Stevick admitted that it doesn't have to necessarily

2  occur.

3           And then from the idea of airflow, then he says,

4  well, then there must be a suction that occurs, and that's

5  just not -- that's too many leaps.  That connection is too

6  attenuated from the principal observation to be able to show

7  infringement.  And his opinion, you know, even on the

8  pressure change or the opinion that the pressure change is

9  due to airflow, is, in his opinion, that is sufficient to

10  create some unknown amount of suction or force.

11           And so one says, well, how can he know it's enough,

12  that's enough force to act as a suction cup, much less fix

13  the mattress to a support surface?  His scientific test

14  didn't test it, and the problem is that he can't.  It's pure

15  speculation.

16           So allowing him to testify as an expert that in his

17  scientific opinion there is pressure difference, and that

18  there is pressure, leap-leap to then, therefore, the product

19  infringes, that is no different than having a layperson say

20  I think it's there.

21           And to put the imprimatur of an expert opinion is

22  improper on that opinion under *Daubert*, and it's certainly

23  not helpful to the jury because Dr. Stevick's opinions don't

24  aid the jury in answering the ultimate factual question,

25  which is whether the bed acts as a suction cup.

1          And as we argued in our opening brief, the TWW's

2    arguments that it presented at the summary judgment hearing

3    actually illustrate just how far Dr. Stevick's opinions

4    stray from science into conclusory speculation.  Counsel had

5    argued, well, if he can detect any change in pressure

6    whatsoever, that is going to be sufficient to act as a

7    suction cup.

8          THE COURT:  That's an indication of the testimony.

9    Any change whatsoever, doesn't make any difference how much

10   of a change it is, if it's one-one-hundred-thousandth of a

11   change, sufficient, according to Stevick; is that correct?

12         MR. THOMAS:  That's correct.  In his testimony --

13         THE COURT:  I assume the other side maintains that

14   there is a measurable amount of pressure change, the

15   measurable amount of pressure change to justify the opinion

16   of the Magistrate Judge in this case?

17         MR. THOMAS:  I believe that's correct, Your Honor,

18   yes.  And Dr. Stevick's testimony was, as we cited in our

19   objections, and I believe it was in his deposition

20   testimony, was that as long as there was a, quote, finite

21   distance, that is, quote, greater than zero, then that would

22   be sufficient to show that the bed acts as a suction cup.

23   As long as it's something that's detectable, Mr. Harkins

24   said at the hearing, as long as it was -- that he said, I

25   think -- I have it written somewhere, but at some point he

1    said that you might get, quote, so small, you would not be

2    able to detect it, end quote.  That was at the transcript

3    Pages 43 and 44.

4            But that is the line that TWW supposes, and

5    Dr. Stevick's opinion supposes, that the only line between

6    infringing and non-infringing is that the pressure change is

7    so small you can't detect it, and that's not a reliable

8    principle based on science.  That's speculation.  It is

9    speculation to say that, well, this fuzzy line, wherever it

10   is, that's so small you can't detect the pressure change.

11   Well, at that point, and only at that point, you would not

12   act as a suction cup.

13           According to Dr. Stevick, anything greater or above

14   that line is going to act as a suction cup, according to the

15   patent, and that's just nothing, that's meaningless, and the

16   Court must act as a gatekeeper to exclude that kind of

17   speculated and unsupported opinion.  It's unverifiable.

18           THE COURT:  But I have a problem, Mr. Thomas, that

19   I have to find in this case, is that the Magistrate Judge,

20   his opinion was clearly erroneous.  How can I do that?

21           MR. THOMAS:  Well, Your Honor, I think there's a

22   couple of ways to do that.  Number one is that the standard

23   is that this Court is left with the definite and firm

24   conviction that a mistake has been committed.  That is in

25   your discretion as to whether a mistaken has been committed,

1    and if you're not firmly convinced that such an error has

2    occurred, then you must affirm the Magistrate Judge's order.

3           But if you are convinced that an error has

4    occurred, if you are convinced, as we believe you should be,

5    that this line that TWW and Dr. Stevick have drawn is so

6    tenuous and attenuated, then you should overturn the

7    Magistrate Judge's order.

8           The other aspect and part of the standard that

9    permits reversal of the Magistrate Judge's order is if it's

10   contrary to law because it failed to apply or misapplied

11   case law or procedural rules.  And we believe that it has

12   done so in this case because the rulings are not

13   sufficiently connected to -- or, sorry, we believe we have

14   shown that Dr. Stevick's opinions are not the product of

15   reliable principles and methodology as required by *Daubert*

16   and the other cases we've cited in our briefs.

17          In addition to the factual, the clear factual

18   errors that we identified in our objections and reply

19   related to Magistrate Judge's conclusion that it was a

20   scientific certainty that the air must flow, that the air

21   has to flow underneath the air bed, and we've shown that

22   that is simply not true, it is not supported by the record,

23   and it's contradicted by standard science, in addition to

24   Dr. Stevick's testimony.

25          THE COURT:  Thank you, Mr. Thomas.

1            All right.  Now we will see what the defendant has
2      to say.
3            MR. HARKINS:  Thank you, Your Honor.  Robert
4      Harkins for Team Worldwide, and I have a set of slides that
5      I'd like to present and some pictures that I think will help
6      because I really truly believe that Mr. Thomas's
7      presentation is missing some very key information about
8      Dr. Stevick's test, and let me -- we will share the slides
9      with you.
10            THE COURT:  So we do have a video of the test, do
11      we not?
12            MR. HARKINS:  We do, Your Honor.  I have a picture
13      trying to describe a little bit about the test.
14            THE COURT:  As I reviewed that video, it gives me
15      real concern.  I take it you don't want to deal with that;
16      is that correct?
17            MR. HARKINS:  No, Your Honor.  I think that -- I
18      just wanted to describe.  I just don't have the video to
19      play at this moment.  I'd be glad to talk about it, and it
20      described why it does show a suction.  So if you don't mind,
21      Your Honor, can you see the slides on the screen right now?
22            THE COURT:  What I can see on the screen is Team
23      Worldwide's presentation in opposition to The Coleman
24      Company.
25            MR. HARKINS:  Okay.

```
 1              THE COURT:  That's all.

 2              MR. HARKINS:  Thank you, Your Honor.

 3              THE COURT:  TWW's technical expert.

 4              MR. HARKINS:  Right.

 5              THE COURT:  Now, we are going to deal with the

 6   manometer testing demonstrating the situation.  Okay.  Let's

 7   deal with it.

 8              MR. HARKINS:  Okay.  I had some other slides, but

 9   your monitor is already -- demonstrated the test is a very

10   high test to overturn this.  Dr. Stevick is -- he did a

11   hands-on test.  He's a Ph.D. who runs a lab where he does

12   hands-on testing, and this is the test that he ran.

13              What we are going to show you is that this -- and

14   I'm just going to skip through these for time.  What we are

15   going to show you is that the test that -- this manometer

16   test actually shows a suction.  That is what the test shows

17   definitionally.  And all of the complaints that Mr. Thomas

18   has raised, they go to the weight of the testimony.  He can

19   cross-examine Dr. Stevick at trial.

20              If it's very weak testimony, then presumably he

21   will succeed in front of the jury, but it doesn't go to the

22   admissibility of the test.  Dr. Stevick ran a test.  It does

23   show readings on a device that shows air moving under the

24   bed, and I want to explain that.

25              THE COURT:  Let's look at what that does show.  It
```

```
1    does do a little ping.  So any movement whatsoever, you say,

2    creates suction, is what he says is the scientific evidence

3    in this case, correct?

4            MR. HARKINS:  If the air --

5            THE COURT:  No matter what happens, you don't have

6    to worry about the force that would be necessary to get the

7    air out.  In other words, if I had a chair, and I sat in a

8    chair, then the chair does not have any friction to the

9    stable portion upon which the chair rests, so, therefore,

10   you don't have to have any pressure to move the chair,

11   correct?  That's a new science, is it?

12           MR. HARKINS:  About the chair?  I'm not sure I

13   follow Your Honor about the chair.

14           THE COURT:  What I'm saying is I'm sitting in a

15   chair, right.

16           MR. HARKINS:  Yeah.

17           THE COURT:  If I want to move this chair --

18           MR. HARKINS:  Right.

19           THE COURT:  -- I have to have some means of force

20   to move the chair, correct?

21           MR. HARKINS:  Correct.  But that has nothing to do

22   with suction.  Whether you have force to move a chair or

23   not --

24           THE COURT:  It has a lot to do with air escaping

25   underneath of this.  What is odd is we have what I consider
```

1    the rectangle, that is a rounded rectangle.  The bottom of

2    it is rounded, and it's a rectangle, and the air has to go

3    out under that --

4            MR. HARKINS:  Right, Your Honor.  So that's what --

5    just wait.  I've highlighted on the screen is that just

6    definitionally suction is the act or process of removing the

7    air from a space.

8            THE COURT:  In order for there to be a suction --

9            MR. HARKINS:  Right.

10           THE COURT:  -- air has to leave the mattress,

11   correct?

12           MR. HARKINS:  That's right.  But this is --

13           THE COURT:  So how much pressure does it take the

14   air to leave the mattress?  As I understand from the

15   testimony of Dr. Stevick, you don't have to have any

16   pressure, correct?

17           MR. HARKINS:  If it -- that's not correct, Your

18   Honor.

19           THE COURT:  No matter how much pressure it is,

20   there is no monumental amount of pressure.  If it's

21   one-one-thousandth of a manometer, then that is more than

22   sufficient to cause the air to leave the mattress and

23   thereby create a vacuum; is that correct?

24           MR. HARKINS:  I don't know about the

25   one-one-thousandth.  It has to be a noticeable change on the

1    manometer, and I'd like to explain, Your Honor.

2         THE COURT:  Where does he say it has to be a

3    noticeable change?

4         MR. HARKINS:  He says he detected a noticeable

5    change in all tests.  That's what he could find, that there

6    was a movement that you can clearly see.

7         THE COURT:  So it is noticeable that the little

8    thing goes up and down a little bit, but it doesn't really

9    change.  That's what disturbed me.

10        MR. HARKINS:  Your Honor, can I just please have

11   five minutes to explain that?

12        THE COURT:  You can have all the time you need.

13   I'll give you half an hour, because I have lots of problems.

14   I'm going to name about five of them right now.  One, where

15   do you place a hundred pounds, 150 pounds?  The question is

16   an individual is generally between, generally I say, 5 feet

17   tall to 7 feet tall.  Most people are in that range.  Isn't

18   any question as how wide they are.

19        The question is the weight that was attached, is

20   nothing to say how wide the weight is, how long it was, or

21   anything else in this thing, just that we put a load of 150

22   pounds.  Where you put it is not mentioned in here at all.

23        There is a question of Boyle's law, which is

24   totally ignored.  It doesn't apply.  Why doesn't Boyle's law

25   apply?  I don't understand.  It indicates if you press the

1    air down, the pressure changes, but that doesn't mean the

2    air is gone.  It only means the pressure changes, under

3    Boyle's law.  Am I confused as to Boyle's law?

4         MR. HARKINS:  Your Honor, I don't know if you're

5    confused as to Boyle's law, but what I can tell you is there

6    is not just one reading on the manometer, and that's why I

7    want to explain what the manometer test does.

8         THE COURT:  Okay.  So where in his report do we

9    refer to any of this?  Just tell me.  I'll be glad -- I'm

10   looking at his report right now.  So you tell me where, and

11   I'll be glad to consider it.

12        I'm very concerned about it, but you're quite

13   correct that the question is he maintains that any change in

14   pressure, no matter how small, high or low, it indicates air

15   will have left and creates a suction, correct?

16        MR. HARKINS:  He -- yes, because the test -- the

17   claim does not require -- it does not specify an amount of

18   suction, so that is not what the claim says.  The claim says

19   you create a suction.  So the test that he did was to test

20   whether there was evidence that we put a load on the bed, it

21   creates a suction, and that's the test he did.  And the test

22   does show that.

23        And so, Your Honor, so because -- if the claim had

24   said you had to have a suction of a certain amount, then

25   that would be a different matter.  It just says you have to

JODY A. STEWART, Official Court Reporter

1    have a suction.  So he did a qualitative test that says, I
2    can see -- it's quantitative on the manometer, you can see
3    the amount that it goes up or down, but there is not a said
4    amount in the claim.  So what he needs to say is, is there a
5    noticeable amount on the manometer that shows that what
6    happens, and does that show that a suction is created?  And
7    it does.  I just -- so, Your Honor, I've got a picture,
8    okay, on the screen right now.
9            THE COURT:  Okay.
10           MR. HARKINS:  And this is the structure of the bed
11   that has been accused, and you have to -- you know, an air
12   bed is a balloon.  So this is not a heavyweight item.  This
13   is a balloon structure that has a main chamber, and then
14   it's got, I know it looks like two bumps on the floor, but
15   that's a ring that goes around the bottom of the bed.  Okay.
16   And I'm actually going to -- just one second, I'm going to
17   show you.  You can see the ring, this outer ring in the
18   actual bed.
19           THE COURT:  That outer ring is what is interesting
20   because it's round and it's unquestionably, appears to be
21   higher than the inner ring or inner portion.
22           MR. HARKINS:  Right, and that's the point.  That's
23   why there is space -- so if you just put a balloon that has
24   that outer ring on the floor, that's the concavity.  There
25   will be space trapped under that ring.

JODY A. STEWART, Official Court Reporter

```
 1              THE COURT:  All right.  When you push, put a weight
 2    on that, doesn't that widen the bottom?
 3              MR. HARKINS:  Yes, Your Honor.  This is how it does
 4    it.  The way it does is it's pushing -- you put the weight
 5    onto the bed.  That creates pressure that pushes the air out
 6    from under the bed, which is a balloon.
 7              THE COURT:  Right.  Well, unfortunately, you have a
 8    picture of an individual all the way on the bed so that
 9    the --
10              MR. HARKINS:  That's the test he ran, was 150
11    pounds just put onto the bed and what happened.
12              THE COURT:  The test he ran was not the test of an
13    individual, as you picture here.  It was a weight put on the
14    bed.  There is no definition of the weight whatsoever or
15    where it was put, is there?  I could not find it in
16    Dr. Stevick's report.
17              MR. HARKINS:  He put -- yeah, the way it wasn't
18    put -- I mean, it was put in the general middle part of the
19    bed.  Both sides did the same thing, Your Honor.
20              THE COURT:  I didn't ask you what both sides did
21    because I'm not interested in both sides at this moment.
22    I'm interested in this particular mattress at this
23    particular test in the showing of this test.
24              MR. HARKINS:  Yes.
25              THE COURT:  So we've got to stay on this one.  I
```

1   realize that, unfortunately, a lot of people make a lot of

2   tests.  What happens with experts, we rely on experts

3   generally to sustain our positions.  We don't hire experts

4   who do not sustain our positions.

5           MR. HARKINS:  Well, Your Honor, I would take a

6   little bit of issue with that in this case because he ran

7   the test on beds that did not test suction, and we did not

8   accuse those beds of infringing.  So that's -- actually, in

9   this instance, Your Honor, I think that's not correct.

10          Dr. Stevick had some beds where he found there

11  wasn't air trapped under the bed, and he would not get a

12  manometer reading that would show that there was suction,

13  and we did not accuse those beds.  We only accused beds

14  where we had this testing that showed that there was

15  suction.  There are many, many beds not accused.

16          THE COURT:  Where is this in Dr. Stevick's report?

17          MR. HARKINS:  Now, Your Honor, we don't -- why

18  would we issue a test about beds we didn't accuse of

19  infringing?  We are not supposed to do that.  We only talk

20  about those beds --

21          THE COURT:  He does not make any comparison to that

22  at all.  He makes a comparison to the fact that if air

23  escapes in any way --

24          MR. HARKINS:  Right.

25          THE COURT:  -- by virtue of the fact that there is

1    any difference in the manometer reading, then it means that

2    air escapes.  I have lots of problems with that.

3           MR. HARKINS:  That is, in fact -- there are other

4    beds that don't have that ring around them, and they don't

5    have the air trapped in.

6           THE COURT:  I'm not worried about other beds.  What

7    other beds are in issue here?  What other beds in his

8    report?

9           MR. HARKINS:  The only beds that are in his report

10   are the ones that tested positive for the suction, and

11   that's what we ended up accusing of infringement.  If we

12   didn't find infringement, they weren't in our -- we are not

13   accusing them, so we didn't do a report on those because

14   that would be --

15          THE COURT:  You're saying -- the problem I have

16   here is the question of the major issue in this case is that

17   any change in pressure, Boyle's law is thrown out the

18   window.  That's what got my curiosity up.

19          MR. HARKINS:  Okay.  So if Your Honor would allow

20   me, I just want to -- before we -- Boyle's law is the

21   concept that you're going to increase pressure in it by --

22   that you will increase pressure in a space.  That can

23   happen.  Now, what this test showed was actually a multi- --

24   this showed several things.  So what happens is --

25          THE COURT:  Let's go look at the test.  You've got

```
 1    it here.  Show it.
 2              MR. HARKINS:  Can I just explain on the picture,
 3    and then if we want to look at something.  I don't have the
 4    video in front of me.
 5              THE COURT:  That's all right.  Show me whatever you
 6    want.
 7              MR. HARKINS:  So what happens is, in the manometer,
 8    this isn't -- the point of this is, this tube that's
 9    connected to the manometer has fluid on two sides of it,
10    okay.  And what it will show is that this idea of the
11    pressure reading is, if air is being pushed through the
12    tube, it will make the left side go down and the right side
13    go up.  That shows -- that's a pressure reading, but what it
14    shows is air is being pushed through the tube.  That's how
15    the manometer works.
16              So when we place the -- when Dr. Stevick placed the
17    weight on these beds that are accused, what happened is at
18    first the pressure -- the air was going through the tube,
19    and the pressure went up.  But air was also then being
20    pushed out of the bed.  And what he found is then what
21    happens is the pressure -- you can see in the video that
22    you're talking about that the fluid doesn't stay low.  If
23    under Boyle's law, if the air didn't escape, once that
24    pressure -- once that fluid in the manometer on the left
25    side went down, it would stay down because you would have a
```

1    constant high pressure, according to Boyle's law.

2          But because air escapes, that fluid in the tube

3    goes back up again after a short period of time.  If there

4    was no air escaping, the fluid in the tube would not go back

5    up, it would be trapped in that zone, and the fluid would

6    stay showing a high pressure zone.  That is not -- that's

7    why instead of just going like this (indicating), this

8    surface being down, it actually goes down and up, and you

9    see that.  You see it goes down, and then it bounces back.

10          That bounceback only happens when air has escaped

11   because Boyle's law would say that, no, it should stay low,

12   but it doesn't stay low, it goes up a little bit again, and

13   the only reason under Boyle's law that would happen is the

14   pressure has been released from under the bed a little bit

15   because it got pushed out around that ring.

16          This is a balloon, so there is not much force that

17   it requires for the air to push out around the sides.  If it

18   was a cement block, Boyle's law would hold, it would just

19   stay low, but this is a balloon.

20          THE COURT:  So there is no friction on the bottom

21   of this bed?

22          MR. HARKINS:  There is a little bit of friction on

23   the bottom of the bed, but that becomes overcome by the

24   weight of a person placed on the bed.

25          THE COURT:  It becomes overcome because it doesn't

1    take any question of force, it's a question of any change,

2    is what you're saying?

3           MR. HARKINS:  What I'm saying is that there is a

4    detectable -- there is going to be -- actually, there is

5    quite a bit, because you put the weight on there, there is a

6    detectable change in the force, and then there's a

7    bounceback as the air escapes.  That air escaping, that

8    bounceback is air being removed from the cavity, which is

9    the definition of suction.

10          THE COURT:  So that the bed would go down, and how

11   about, is there any measurement whatsoever of the amount of

12   air that escaped?

13          MR. HARKINS:  That is not in the claim, so that we

14   didn't do a measurement of how much air because that's not

15   in the claim.  See, what you're talking about is, if there

16   is a cross-examination question about how good is this test,

17   that's fine.  But does this test show air escaping?

18          Absolutely shows air escaping from that chamber,

19   which is the definition of suction.  This is a test that's

20   supposed to show suction, and it does.  Everything I'm

21   hearing today from Mr. Thomas is about, well, we think it's

22   sort of a weak showing.  It shows it, but it's a weak

23   showing.  Well, that's a cross-examination question.

24          THE COURT:  You're saying it doesn't make any

25   difference about any force necessary to push air out, it's

1    any force pushes the air out, correct?

2            MR. HARKINS:  The actual key is, Your Honor, it's a

3    two part.  It's that you have pressure built up and

4    released, and that release is air escaping from the cavity.

5    That's the definition of suction.  It's you build the

6    pressure up, and then some of it gets released.

7            THE COURT:  Well, it doesn't make any difference

8    how much suction it is.  The suction may not be sufficient

9    to suck it.

10           MR. HARKINS:  Well, there is some suction

11   happening, which means there is some amount that it is

12   fixing.

13           THE COURT:  Yeah, but the problem is, it still has

14   to keep the mattress from moving, doesn't it?

15           MR. HARKINS:  Again, under Your Honor's order,

16   there is no amount that that has to happen because the claim

17   doesn't require an amount.  So if -- the whole point, if you

18   look at the claim language, it says there is suction that

19   has occurred to fix the bed to the space, to the floor, to

20   some extent.  It doesn't say how much.  There isn't a

21   quantification.

22           We just had to show, yeah -- yes, we can show that

23   a suction has happened.  This test shows that suction

24   happens.

25           THE COURT:  Well, it doesn't make any difference

1    how much suction it is, just so there is some suction?

2          MR. HARKINS:  That's what the claim says.  It

3    doesn't matter, there is no quantification in the claim

4    about how much suction has to happen, but you have to show

5    that it does exist.  He did a test where you can see that it

6    happens.

7          THE COURT:  Well, it doesn't have to have enough

8    suction to do anything.  I thought that the claim said

9    something about -- let me make sure.

10         MR. HARKINS:  Yeah, it does say that the bed acts

11   as a suction cup thereby fixing the bed relative to the

12   support surface.

13         THE COURT:  So not the question of suction, it's a

14   question of the suction cup, right, claim number 1?

15         MR. HARKINS:  This is a cup shape, as Your Honor

16   noted.  There is air trapped -- you know, there is air that

17   is held under this outer ring that's in the middle.  So that

18   part about the cup exists.  The suction -- so it is a cup.

19   In the test when it goes -- when the fluid goes down, but

20   then it bounces back a little bit, that bounceback is the

21   definition of suction, that air is removed from a space,

22   that is the definition of suction.  So the test shows

23   suction.

24         THE COURT:  It's not just suction.  It says so that

25   said bed acts as a suction cup.  The bed has to act as a

1    suction cup.

2           MR. HARKINS:  But that is what the test shows.

3    This bed --

4           THE COURT:  No, the test shows that there must be

5    some suction.

6           MR. HARKINS:  From the bed.

7           THE COURT:  The question is, the claim number 1 is

8    specific, says, "So that said bed acts as a suction cup."

9           MR. HARKINS:  Right.  So the bed is a cup.  We can

10   see the cup shape on slide 15.

11          THE COURT:  The bed itself has to act as a suction

12   cup.

13          MR. HARKINS:  And that's what the test shows, Your

14   Honor.  That's exactly.

15          THE COURT:  You say that's what it shows, and

16   that's what Stevick says it shows.  I have lots of problems

17   with it.  I'm not going to rule on this today.  I'm just

18   going to put it off.

19          I think what I'll probably want to do is to go over

20   Stevick himself and hear what he has to say because I'm

21   beginning to worry about what everyone claims is being said.

22   Stevick is a doctor of mechanical engineering, correct?

23          MR. HARKINS:  He did -- he has a Ph.D. in

24   mechanical engineering.  He ran a test that shows --

25          THE COURT:  I understand that, and as such he's

```
 1    saying that this bed -- he didn't say this bed.  He just
 2    says it acts as a suction.  Now, I'll deal with that later.
 3    But I'm not going to rule on this question today because I
 4    have a problem with overruling the Magistrate Judge, if I
 5    were to overrule him.  And I'm not about to overrule him
 6    without a thorough understanding of what I'm doing.  I'm
 7    getting mixed messages by virtue of this.
 8            So what I'm going to do is not rule on that.  I'm
 9    going to put it aside for the time being.  I think as we get
10    along -- we've got plenty of time -- I certainly can hear
11    from Stevick.  He's more than available.  I've been very
12    generous, in somehow or another, I just don't seem to be
13    able to hear witnesses or anything else in these type of
14    cases by virtue of the pandemic, but there is no question
15    that we could get him on zoom without any problem.  At least
16    we got you all on zoom, so I assume it won't be any problem
17    getting him on zoom.  But I'm just not dealing with it
18    anymore.
19            We will go to the second portion of this thing,
20    okay.
21            MR. HARKINS:  Thank you, Your Honor.  The only
22    other thing I'd say is that if there is a dispute about how
23    good the evidence is --
24            THE COURT:  Stop.  May I finish?
25            MR. HARKINS:  Thank you, Your Honor.
```

```
 1              THE COURT:  I don't want to hear from you.  I will
 2    hear -- because I'm not interrupting you, I don't want to do
 3    that.  What I want to do is, I'm not ruling at this time on
 4    whether to overrule the Magistrate Judge or not.  I have
 5    tremendous misgivings about the entire matter, and I would
 6    like to find out where, and the pictures you show there show
 7    a person on the entire mattress.
 8              So far there is nothing in the report of
 9    Dr. Stevick showing how wide, how big, or where the weight
10    was that's put down, or what its effect would be other than
11    the fact that there was a change in pressure, no matter how
12    small, which thereby indicates what, according to
13    Dr. Stevick, creates a vacuum, and that's where we really
14    are in that matter.
15              I'm very concerned because where that weight is may
16    have some bearing, and, of course, if I accept Dr. Stevick's
17    testimony, and I may have to, and you're right, I may have
18    to, and if I do, I will.  But the problem is, is I have
19    misgivings about it, but we will see where we go from there.
20              Okay.  Let's go to the second situation about you
21    want to cure Dr. Stevick's testimony, correct?
22              MR. HARKINS:  Thank you, Your Honor.  On this
23    one -- when you say cure his testimony, his testimony was
24    that the prior art shows coils.  We just want to update that
25    based on the Court's claim construction.
```

```
 1              THE COURT:  I never saw a proffer.  You just want
 2     to change the thing and you didn't proffer what the change
 3     would be.  You're sitting there, and the problem I have is,
 4     all of this was long involved, but that's neither here nor
 5     there, something that I think you could have anticipated by
 6     virtue of the fact that it was creating a problem
 7     themselves.  I worry about it, but I'll be glad to hear you.
 8              MR. HARKINS:  Okay.  Thank you, Your Honor.  So.
 9              THE COURT:  10 minutes, is that what you need?
10              MR. HARKINS:  That should be plenty of time, Your
11     Honor.  Thank you.
12              THE COURT:  Okay.  Go ahead.
13              MR. HARKINS:  Okay.  So this is just a matter
14     of the Court has entered a new construction of coil, and
15     nobody, no expert has addressed that definition of coil that
16     the Court entered.  So we just want to be able to make sure
17     that we conform with the new claim construction by saying
18     here is -- yes.
19              THE COURT:  That's not what you said.  What you
20     said is you want to file a new report; isn't that correct?
21              MR. HARKINS:  No, Your Honor.  We asked to
22     supplement the report to show that --
23              THE COURT:  That isn't new?
24              MR. HARKINS:  Supplement to address the definition.
25              THE COURT:  Supplement is nothing new, correct?
```

1          MR. HARKINS:  It's something that's additional.
2    It's not changing what he said.
3          THE COURT:  All right.  Now, that would require the
4    other side to be able to supplement their report, correct?
5          MR. HARKINS:  Yes, Your Honor.  I think no expert
6    has used --
7          THE COURT:  So why don't I just eliminate the
8    definition I have, and we will go on from there?  I'm not
9    about to start -- we've got 160 some docket entries already
10   in this case.  The only reason the case was continued, not
11   tried today -- I wish it were tried -- was by virtue of the
12   problems of the pandemic.  But other than that, I would have
13   tried it.
14         Then I tried to get the case as fast as I could and
15   couldn't get a date from counsel that was any closer than
16   that which we have at the present time, which is a long way
17   away.  It doesn't have anything to do with the Court.  It
18   has to do with counsel not being able to have a date that
19   was agreeable to both counsel.
20         So the question keeps coming back that this case
21   keeps going on and on, and, frankly, I have a problem with
22   the case going on and on and on.  The truth is that there is
23   a problem with Stevick's testimony.  Everyone knows that,
24   and to cure that, you file a supplemental report, correct?
25         MR. HARKINS:  No.  Dr. Stevick has already said

1    that the prior art shows a coil.  We just want to address

2    the exact language that the Court put in there as to what

3    the coil requires.

4              THE COURT:  I just defined coil.

5              MR. HARKINS:  That's all we want to address.

6              THE COURT:  I merely defined coil, and that's all.

7    I'm not -- I didn't do anything further than that.  That's

8    what worries me.  I'm not about to start this case over

9    after 160 docket entries already in this case.  I'm just not

10   about to, unless you give me very good reason.  So far all

11   you say is because of this definition, we want to re-define

12   what we said before, and you didn't proffer what you want to

13   re-define and how to redefine it.

14             MR. HARKINS:  I think that, Your Honor, that's

15   perfectly reasonable.  Rather than address this in this

16   setting, why don't we proffer what we have in mind.

17             THE COURT:  You never have proffered it.

18             MR. HARKINS:  No, I'm saying we were asking

19   permission.

20             THE COURT:  I already told you that, and,

21   unfortunately, I'm not about to re-open this case.  I'm just

22   not about to.

23             MR. HARKINS:  Okay, Your Honor.

24             THE COURT:  The case should have been tried today.

25   I wish I was able to try it, but the pandemic prevented

1    that.  And if it was tried today, you would have never
2    gotten it in.  The problem really is what was in the record
3    that would be indicative of this case, and I could go into
4    it and will go into it.  I think your point, I understand
5    your point, is you want to add something to Dr. Stevick's
6    report.
7              Unfortunately, I'm not going to start discovery all
8    over again.  I'm just not going to.  Nor am I going to get
9    into conflicting arguments about what's there.  I want to
10   try this case just as if we were going to try it today.  It
11   was supposed to be tried today.  I wish it were.  If it were
12   tried, everything would be fine.
13             The problem is, is it isn't tried today, so we will
14   go ahead and try it.  Insofar as a ruling on that, I'm not
15   going to allow a new report, period.  I am going to defer
16   ruling on the question of -- I think that Dr. Stevick's
17   testimony probably will be admissible, but I want to check
18   that out because the question of what is scientific evidence
19   always gets to me.  So I want to probably have a hearing on
20   Dr. Stevick himself to make sure that I don't make a mistake
21   about allowing his testimony.
22             Okay.  And that's going to take care of this matter
23   right now.  I'm not ruling on the question of whether
24   Stevick is or is not or whether to overrule Judge Leonard.
25   I hesitate to overrule him.  But I am concerned about -- he

1   did say he is subject to cross-examination.  Might end up

2   being a jury question.  I'm afraid it might.

3         Insofar as reopening the case and allowing him to

4   file a brand-new report, call it a supplemental report, and

5   it is supplemental anything.  I don't see where it hurt any.

6   I think in the past there were many references that allude

7   to what the question of what a coil is and what is in that

8   particular bed.

9         So, frankly, there is no need to get to -- I've

10  read all of the material.  I think there is nothing being

11  offered that isn't in and hasn't been presented in the

12  arguments that have been sent forward here.

13        Is there anything different you want to say that's

14  not contained in your memoranda?  I'll be glad to hear it.

15  And I won't be glad to hear it, but I will hear it.

16        MR. HARKINS:  No, Your Honor.  I mean, we had in

17  mind something like just five pages of explaining that the

18  Court said this about coil, and so we just wanted to be

19  clear about the claim.  That was it.  I understand what Your

20  Honor is saying.

21        THE COURT:  I'm just not about to re-open this case

22  and start from scratch.  I'm just not going to.

23        MR. HARKINS:  We had no intention of doing that,

24  Your Honor.  Our point was just to take what's already in

25  the case and just say the Court has -- a lot of courts have

1   done this.  Sometimes it's in the local rules.  Our point
2   was under the circumstance where there's new construction,
3   it makes since for the experts to address that because none
4   of the three experts used the construction that Your Honor
5   entered.  It was all a little bit different, but I hear what
6   Your Honor is saying.
7        THE COURT:  What I'm saying is it's my decision,
8   not the expert's decision.  Certainly determine because I
9   decided the situation based on what was in the record, not
10  what wasn't in the record.  I'll go over that thoroughly.
11  But the fact of the matter is I'm not about to re-open this
12  case and start from scratch.  Got 160 entries on the docket.
13  It has been squeezed to the nth degree, and I can understand
14  that.
15       I can understand why there would be so many motions
16  and so many arguments.  It doesn't make since in this case
17  because there are certain problems in the case, and everyone
18  seems to have said the heck with the problems, let's keep
19  going.
20       I do think the jury will arrive at an appropriate
21  conclusion in the case.  I do think that after the testimony
22  and any questions that the Court or counsel may have could
23  be answered.  But I'm not about to do it without hearing
24  from Dr. Stevick.
25       I have problems with that.  So, consequently, I

1    thank you gentlemen.  The problem is that this case has been

2    expanded beyond that which any case of like nature has ever

3    gotten to.  It's being expanded, and, unfortunately, we

4    continued the case.  God knows I wish there were no

5    pandemic, then we could have tried it today.  More than

6    anything I wish we could have tried it today, gotten a jury

7    and gotten the matter over.

8           It does not seem to be anything upon which you all

9    could agree on anyhow.  That's not to say one side or the

10   other is doing anything they shouldn't do.  They should

11   fight this case tooth and nail, and you're doing it.  So the

12   question is, I'm not going to re-open the case, start a new

13   fight all over again.  I'm just not going to.

14          So, consequently, the motion to supplement

15   Dr. Stevick's report is denied.  Motion in relation to

16   overrule Judge Leonard's opinion, at the present time I'll

17   just wait.  I would like to see what Dr. Stevick says about

18   this situation because I'm not sure about the testing that

19   was done and where and how weights were applied and what the

20   facts would be, according to him.  I'm not asking somebody

21   else to do it.  I'm just going to see what he has to say as

22   to whether or not it's a scientific certainty.  That's what

23   the whole problem is.

24          When we deal with scientific certainties, it never

25   seems to be any problems.  Science is not perfect, in my

```
 1   mind, but the rulings may be subject to some problems if
 2   they are subject.  Here I worry about the test itself, but
 3   we'll see much before I will rule on whether -- I would tend
 4   to keep what Judge Leonard has ruled in effect.  I would
 5   tend to allow him to testify, but I may limit such testimony
 6   in relation to certain problems that I see in the case.
 7          The problems I see are simple, and they may be
 8   curable by certain testimony that if I inquire of
 9   Dr. Stevick.  But that will be up to you all if you want to
10   present him or not.  Just have to rely on what we got.  But
11   I may then make rulings concerning that shortly before the
12   trial.  I'm not about to overrule Judge Leonard at this
13   time, and probably won't do it later on.  The question was
14   whether Dr. Stevick's testimony was or was not admissible.
15   Judge Leonard said it's subject to cross-examination.  At
16   least we will see it's subject to cross-examination and the
17   circumstance, but you'll hear from me in a couple of days.
18   I'll get an order out very shortly.  I am concerned about
19   Stevick, but I'll get an order out.
20          Under no circumstance are we going to have any
21   supplemental expert opinions introduced at this time, I can
22   assure you of that.
23          Okay.  Thank you, gentlemen, for coming.  We will
24   see what we deal.  If you want a hearing on that, I'll ask
25   the defendant if he wants to present Stevick.  If he does or
```

```
1   does not, that's up to him.  I'll let him do what he
2   desires.  But I can tell you this, under any circumstances
3   at the trial, if Dr. Stevick is going to testify, I may at
4   that time review the ruling.  That may be the best thing to
5   do.  Then we will just have it by testimony.
6        I just find the 160 entries, docket sheet just --
7   it's already wild in this case.  Not going to go into a new
8   report.  As long as I can sufficiently define what may be
9   subject to cross-examination, I may let Stevick come right
10  in and testify and then be cross-examined before the jury,
11  but we will see.
12       Right now I'm just going to wait and think about
13  it.  I've had such a problem with any testimony before,
14  never had such a problem in the many years.  Unfortunately,
15  I think I worry that we are getting into a problem on the
16  central issue in the case.  That worries me.  I'm not about
17  to say that that's a preliminary hearing, but it worries me.
18  In any event, thank you, gentlemen.
19       MR. THOMAS:  Your Honor, this is Warren Thomas.
20       THE COURT:  Yes.
21       MR. THOMAS:  I did not -- you didn't -- you moved
22  onto the second issue before I had an opportunity to rebut.
23  I just wondered if you might give me a minute to respond,
24  and understanding that I take your point that you're not
25  inclined to overrule the magistrate's order at this time,
```

1    but something to just leave you with, if I might.

2           THE COURT:  What do you want to say, Mr. Thomas?

3    Go ahead.

4           MR. THOMAS:  Thank you, Your Honor.  Very briefly,

5    just like to remind the Court that it is TWW's burden to

6    show that Stevick's testimony is based on the reliable

7    principles and methods.  And you made the comment a few

8    minutes ago about sort of worrying about or thinking about

9    what's in the record, and you're not going to consider

10   what's not in the record.

11          Mr. Harkins' explanation about why the air flows in

12   and out, and that that video that it appears that you did

13   watch of the manometer reading and how the fluid in the

14   gauge goes up and down, Mr. Harkins' explanation is just

15   new.  Dr. Stevick never explained that.  It's nowhere in his

16   two reports, not in his deposition testimony explanation of

17   what he was doing.

18          TWW didn't try to supplement the record or give a

19   new declaration from Dr. Stevick in opposition to our motion

20   to exclude, and so certainly Magistrate Judge Leonard could

21   have had a hearing on it.  If you were taking up the motion,

22   we understand you may want to hear from Dr. Stevick.  But I

23   do think it's important to just note that that's a new

24   argument that has never been presented before, whether in

25   factual testimony, opinion testimony, or even in argument.

1          The same thing goes with Mr. Harkins' definition of
2    suction.  He says air is escaping out, is the definition of
3    a suction.  That's new and think it's a little bit of an
4    oversimplification.  But, in any case, I think that's
5    something that the Court may want to consider as well, that
6    that information is new.
7          So but we appreciate your time today and understand
8    your thoughts on this.
9          THE COURT:  Let me hear from Mr. Harkins on that.
10         MR. HARKINS:  Well, Your Honor, it's not new.  We
11   submitted with the slide testimony from Dr. Stevick from his
12   deposition talking about it, and you have seen the video.
13   The video is in evidence that shows the rising and falling
14   of the manometer.
15         THE COURT:  The video does show that the pressure
16   fluctuates and any fluctuation in pressure, according to
17   Dr. Stevick, is the question of airflow.  And he says, in
18   essence, that Boyle's law doesn't apply.  So we will go
19   there.
20         I'm afraid you may be right, Mr. Harkins.  The
21   problem we get back is the age old problem I have of
22   experts.  Drive you up a wall because experts believe
23   thoroughly in what they're testifying to generally.  So we
24   will see what happens.
25         In any event, I'm not allowing a supplemental

1   expert report, period.  That's the end of that.  Otherwise,
2   we will start discovery all over again, and I'm not going
3   into that.
4          Insofar as the question, I haven't heard anything
5   new other than what's submitted.  Of course, I do realize
6   that Mr. Harkins indicates that the manometer indicates a
7   change of some kind, and on the testimony of Dr. Stevick, he
8   says that any change in temperature means that air escaped
9   and air returns, period, any change.
10         Well, probably will be subject to
11  cross-examination, I think.  The more I think about it, the
12  more I think Mr. Harkins may have a good point that the
13  Magistrate Judge has already ruled upon it.  So we will see.
14  My view is that I was going to hold it in abeyance, but
15  better I should not.  May be a question of adopting certain
16  portions of what Magistrate Judge Leonard has ruled.  To the
17  extent that he may be ruling on a matter that decides the
18  case, then in that case I will look at it.  I'm not about to
19  get into that.
20         So the question is that it deals mostly with claim
21  1, TWW, which differs so slightly from what Dr. Stevick has
22  testified to.  Dr. Stevick says any movement of the pressure
23  gauge indicates that air has flown out and flown back in,
24  creates a suction cup.  But claim number 1 can differ in
25  that.  I'll go back to the claim.  It's got to prove -- be a

```
 1    suction bed.  So we probably will see where we are.

 2            Thank you, gentlemen.  Is there anything else

 3    anybody wants to say before I leave?

 4            MR. THOMAS:  Nothing from Coleman.  Thank you, Your

 5    Honor.

 6            MR. HARKINS:  Not from Team Worldwide.  Thank you.

 7            THE COURT:  Anything else from anybody?  In which

 8    case we will adjourn at this time.

 9            MR. LACY:  Thank you, Your Honor.

10            MR. HAMILTON:  Thank you, Your Honor.

11            (Hearing adjourned at 11:02 a.m.)

12                          CERTIFICATION

13

14        I certify that the foregoing is a correct transcript

15    from the record of proceedings in the above-entitled matter.

16

17

18        X_____/s/_____x

19                   Jody A. Stewart

20             X_____4-5-2022 _____x

21                       Date

22

23

24

25
```