**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

| | | |
|---|---|---|
| THE COLEMAN COMPANY, INC., | § | |
| | § | |
| *Plaintiff/Counterclaim Defendant,* | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 2:20-cv-351-RCY LRL |
| TEAM WORLDWIDE | § | |
| CORPORATION, et al., | § | JURY TRIAL DEMANDED |
| | § | |
| *Defendant/Counterclaim Plaintiff,* | § | |
| | § | |
| *and* | § | |
| | § | |
| CHENG-CHUNG WANG, | § | |
| | § | |
| *Counterclaim Plaintiff* | | |

**DEFENDANTS' OPPOSITION TO COLEMAN'S MOTION IN LIMINE**

## TABLE OF CONTENTS

1) OPPOSED MIL 1: TO PRECLUDE TESTIMONY, EVIDENCE, AND INVALIDITY THEORIES REGARDING PURPORTED PRIOR ART PRODUCTS THAT TWW DID NOT TIMELY DISCLOSE DURING FACT DISCOVERY ................................................. 1

2) OPPOSED MIL 2: TO PRECLUDE TWW FROM INTRODUCING DOCUMENTS RELATED TO THE 822523 PRODUCTS ............................................................................. 3

    a) TWW's Shipping Manifest (TWW-COL-00038714, DX-0268) .......................... 3

    b) The Rowell Declaration (DX-0603) ...................................................................... 4

    c) The ARP Notes and ARP Catalog (DX-0576 and -0577) ..................................... 6

3) OPPOSED MIL 3: TO PRECLUDE TWW FROM ARGUING THAT THE INTERNAL STRUCTURES OF THE ACCUSED PRODUCTS ARE DISTINCT FROM ONE ANOTHER .................................................................................................................... 7

4) OPPOSED MIL 4: TO PRECLUDE TWW FROM INTRODUCING EVIDENCE OR ARGUMENT DISCLOSING COLEMAN OR ITS CORPORATE PARENT'S FINANCIAL STATUS ........................................................................................................................ 9

5) OPPOSED MIL 5: TO PRECLUDE TWW FROM RELYING ON EVIDENCE OR ARGUMENT RELATED TO OR BASED ON THE CONVERSATION BETWEEN TWW'S COUNSEL AND ANDREW METZGER ........................................................... 12

6) OPPOSED MIL 6: TO PRECLUDE TWW'S EXPERTS FROM EXCEEDING THE SCOPE OF THEIR EXPERT REPORTS ........................................................................... 13

7) OPPOSED MIL 7: TO PRECLUDE TWW FROM INTRODUCING EVIDENCE OR ARGUMENT THAT SUCTION IS PRODUCED WHEN A PERSON MOVES ONTO THE COLEMAN ACCUSED PRODUCTS .................................................................................. 13

8) OPPOSED MIL 8: TO PRECLUDE TWW FROM SHOWING ROTATED OR OTHERWISE MANIPULATED PHOTOS OR ILLUSTRATIONS OF THE COLEMAN PRODUCTS ...................................................................................................................... 15

9)   OPPOSED MIL 9: TO PRECLUDE TWW FROM COMPARING THE COLEMAN ACCUSED PRODUCTS TO TWW'S OWN PRODUCTS ................................................ 17

10)  OPPOSED MIL 10: TO PRECLUDE TWW FROM INTRODUCING EVIDENCE OR ARGUMENT CONTRARY TO THE COURT'S CLAIM CONSTRUCTION ................. 17

11)  OPPOSED MIL 11: TO PRECLUDE EXPERTS FROM INSTRUCTING ON THE LAW 19

12)  OPPOSED MIL 12: TO PERCLUDE ASSERTION THAT PRACTICING THE PRIOR ART IS A DEFENSE TO INFRINGEMENT .................................................................. 20

13)  OPPOSED MIL 13: TO PRECLUDE REFERENCE TO DECISIONS NOT TO SUE THIRD PARTIES FOR INFRINGEMENT ......................................................................... 21

14)  OPPOSED MIL 14: TO PRECLUDE ARGUMENTS THAT COLEMAN'S '618 PATENT IS NOT INFRINGED BECAUSE TWW ASSERTS THAT IT IS INVALID.................... 22

15)  OPPOSED MIL 15: TO PRECLUDE TWW FROM ASSERTING THAT TWW'S ASSERTIONS ARE UNREFUTED OR THAT COLEMAN HAS AGREED WITH TWW'S DAMAGE EXPERT ......................................................................................... 22

16)  OPPOSED MIL 16: TO PRECLUDE TWW FROM ASSERTING THAT TWW EVALUATED AND CHOSE NOT TO ACCUSE CERTAIN MATTRESSES THAT PURPORTEDLY DID NOT INFRINGE THE '926 PATENT ........................................... 23

17)  OPPOSED MIL 17: TO PRECLUDE TWW FROM ARGUING THAT THE '926 PATENT HAS A PRIORITY DATE PRIOR TO THE FILING DATE OF THE '926 PATENT ....... 23

18)  OPPOSED MIL 18: TO PRECLUDE REFERENCE TO OTHER LAWSUITS AND/OR CLAIMS BETWEEN THE PARTIES ................................................................... 23

19) OPPOSED MIL 19: TO PRECLUDE REFERENCE BY TWW'S EXPERT TO HEARSAY STATEMENTS ................................................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Apple, Inc. v. Samsung Elecs. Co.*,

   No. 12-CV-00630-LHK, 2014 U.S. Dist. LEXIS 24506 (N.D. Cal. Feb. 25, 2014) ............... 25

*Associated Terminals of St. Bernard, LLC v. Potential Shipping HK Co.*,

   No. 17-5109, 2018 U.S. Dist. LEXIS 25730 (E.D. La. Feb. 16, 2018) ................................... 25

*Benedict v. Hankook Tire Co. Ltd.*,

   No. 3:17-CV-109, 2018 WL 1655358 (E.D. Va. Apr. 5, 2018)). ............................................ 14

*Centripetal Networks, Inc. v. Keysight Techs., Inc.*,

   2018 U.S. Dist. LEXIS 186480 (E.D. Va. Sep. 25, 2018) ....................................................... 13

*Colgan Air, Inc. Raytheon Aircraft Co.*,

   535 F. Supp. 2d 580 (E.D. Va. 2008). .............................................................................. 15, 16

*Dorman v. Anne Arundel Med. Ctr.*,

   2018 U.S. Dist. LEXIS 89627 (D. Md. May 29, 2018) ..................................................... 14, 19

*Ericsson, Inc. v. D-Link Sys., Inc.*,

   773 F.3d 1201 (Fed. Cir. 2014)) ............................................................................................. 11

*Everett v. Pitt Cty. Bd. Of Educ.*,

   788 F.3d 132 (4th Cir. 2015) (quoting *Minter* at 347) .............................................................. 7

*Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp, LLC*,

   879 F.3d 1332 (Fed. Cir. 2018) ............................................................................................... 11

*FOP Lodge No. 89 v. Prince George's County*,

   608 F.3d 183 (4th Cir. 2010) ..................................................................................................... 8

*Georgia-Pacific Corp. v. United States Plywood Corp.*,

   318 F. Supp. 1116 (S.D.N.Y. 1970) ......................................................................................... 10

*Gobert v. Alt. Sounding*,

    15-CV-650, 2017 U.S. Dist. LEXIS 16007 (E.D. La. Feb. 6, 2017) ........................................ 12

*Innovention Toys, L.L.C. v. MGA Entm't, Inc.*,

    No. 07-6510, 2012 U.S. Dist. LEXIS 156733 (E.D. La. Nov. 1, 2012) ............................ 10, 24

*Laplante v. Sun Coast Marine Servs.*,

    2002 U.S. Dist. LEXIS 28686 (D.S.C. 2002) ........................................................................ 15

*Lubanski v. Coleco Industries, Inc.*,

    929 F.2d 42 (1st Cir. 1991) .................................................................................................... 15

*Meyer v. Berkshire Life Ins. Co.*,

    372 F.3d 261 (4th Cir. 2004) .................................................................................................... 9

*Minter v. Wells Fargo Bank, N.A.*,

    762 F.2d 339 (4th Cir. 2014) .................................................................................................... 7

*Phillips v. AWH Corp.*,

    415 F.3d. 1303 (Fed. Cir. 2005) .............................................................................................. 18

*Rambus, Inc. v. Infineon Technologies*,

    348 F.Supp.2d 698 (E.D.V.A. 2004). ............................................................................. 5, 6, 7

*Reed v. Tiffin Motor Homes, Inc.*,

    697 F.2d 1192 (4th Cir. 1982) ................................................................................................ 15

*Repa v. Napierkowski*,

    2022 U.S. Dist. LEXIS 81936 (W.D. Penn. May 5, 2022) ....................................................... 8

*S. States Rack And Fixture, Inc. v. Sherwin-Williams Co.*,

    318 F.3d 592 (4th Cir. 2003) .................................................................................................... 2

*Sanders v. N.Y.C. Human Res. Admin.*,

361 F.3d 749 (2d Cir. 2004) ............................................................................................ 12

*Solas OLED Ltd. v. Samsung Display Co.*, Ltd.,

    No. 2:19-CV-00152-JRG, Dkt. 279 (E.D. Tex. 2020) ................................................. 1

*Tokio Marine & Fire Ins. Co. v. Norfolk & W. Ry. Co.*,

    No. 98-CV-1050, 1999 U.S. App. LEXIS 476 (4th Cir. Jan. 14, 1999) ................................. 25

*Vectura Ltd. v. GlaxoSmithKline LLC*,

    981 F.3d 1030 (Fed. Cir. 2020) ...................................................................................... 11

*Viskase Corp. v. American Nat'l Can Co.*,

    261 F.3d 1316 (Fed. Cir. 2001) ...................................................................................... 22

*WBIP, LLC v. Kohler Co.*,

    965 F. Supp. 2d 170 (D. Mass. 2013) ............................................................................ 22

*Wis. Alumni Research Found. V. Apple, Inc.*,

    135 F. Supp. 3d 865 (W.D. Wisc. 2015) ........................................................................ 24

*Zenith Labs., Inc. v. Bristol-Myers Squibb Co.*,

    19 F.3d 1418 (Fed. Cir. 1994) ........................................................................................ 17

**Statutes**

Fed. R. Evid. 801 .................................................................................................................... 12

**Rules**

Federal Rule of Civil Procedure 37 ....................................................................................... 13

Federal Rule of Evidence 611 ................................................................................................ 12

Defendant/Counterclaim Plaintiff Team Worldwide Corporation and Counterclaim Plaintiff Cheng-Chung Wang hereby respond in opposition to Coleman's motions in limine as follows:

1) **OPPOSED MIL 1: TO PRECLUDE TESTIMONY, EVIDENCE, AND INVALIDITY THEORIES REGARDING PURPORTED PRIOR ART PRODUCTS THAT TWW DID NOT TIMELY DISCLOSE DURING FACT DISCOVERY**

The Court should deny Coleman's motion as Coleman suffered no prejudice from TWW's identification of a prior art TWW product as this product was known to Coleman during discovery. Effectively, Coleman improperly seeks to substitute a motion in limine for a belated *Daubert* motion. *See e.g., Solas OLED Ltd. v. Samsung Display Co*., Ltd., No. 2:19-CV-00152-JRG, Dkt. 279 at 7 (E.D. Tex. 2020) (denying MIL that "should have been properly raised in a *Daubert* motion").

Coleman argues it was surprised by TWW's prior art product, the TWW 822523 Insta Bed. But TWW produced during fact discovery the document on which TWW relies for this prior art product, TWW-COL-00026953 (attached as Ex A). Also, during the deposition of TWW's Rule 30(b)(6) witness, Coleman questioned the witness on an email identifying different TWW Sure Grip airbeds including #822523. *See* Ex B, Deposition of Ken Wang, dated June 28, 2021, at 200:12-202:18.

Although TWW inadvertently omitted the TWW prior art product from its May 28, 2021 interrogatory response, TWW identified this prior art product in its July 6, 2021, opening expert report on invalidity of Coleman's '618 Patent once TWW became aware of the omission.  Coleman also argues that a shipping record for the 822523 product, TWW-COL-00038714, was not timely produced. But TWW produced this document on July 6, 2021, as soon as TWW became aware that the document had not been produced.  Also, as Coleman is aware, TWW is relying on

documents from third party Exxel Outdoors, LLC to establish that the 822523 airbed was known or used in the United States prior to date of invention of the '618 Patent. These Exxel documents were produced in response to a Coleman subpoena and were not produced until almost two months after the close of fact discovery (see response to MIL No. 2).

Coleman's attempt to preclude TWW from presenting this prior art product at trial fails as each factor Coleman identified under Rule 37(c) weighs against preclusion. *S. States Rack And Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003). First, any *surprise* from the disclosure of this prior art product was at most minimal. As discussed above, Coleman was aware of this product during fact discovery, and it was disclosed just a few weeks after TWW served the interrogatories at issue. Moreover, Coleman has had **18 months** since the identification of this prior art product and failed to make any effort to address this invalidity theory with the Court until now.

Second, Coleman overstates its purported lack of ability to cure any alleged surprise. Coleman had the opportunity to address this prior art product in its expert reports and during the deposition of TWW's expert. Also, Coleman was aware that this prior art product was sold in the United States by third-party Exxel, and Coleman had the opportunity to depose Exxel after TWW identified this prior art product. Coleman even served a deposition subpoena to Exxel but declined to go forward with the deposition. If Coleman believed that it suffered prejudice, it should have sought a remedy to cure any surprise earlier, rather than waiting for 18 months only to use TWW's inadvertency to gain unfair advantage at trial.

Third, Coleman's assertion that this evidence would disrupt the trial over 18 months after the prior art product was identified is without merit. If Coleman was concerned about this prior art product, Coleman could have – during the 18 months since this prior art product was identified

– either sought additional discovery or moved to strike this invalidity theory.  Coleman did neither.

Coleman's attempt here to substitute a motion in limine for a motion to strike is inappropriate.

Fourth, with respect to the importance of this evidence, Coleman again overstates its case.

The TWW prior art product is an anticipatory prior art reference for two dependent claims of the

'618 Patent (where Coleman did not assert the underlying independent claim) and was never

asserted as anticipating all of the asserted '618 Patent claims; thus, the reference is not dispositive

on invalidity regarding Coleman's '618 Patent as Coleman argues.

Finally, as discussed above, TWW's identification of the TWW prior art product after the

close of fact discovery was an inadvertent omission and Coleman suffered effectively no prejudice

from this disclosure.

This Court should deny Coleman's motion as any impact on Coleman from TWW's

identification of a prior art product after the close of fact discovery was at most minimal and in

part due to Coleman's own delay in seeking to remedy any purported surprise.  Coleman should

not be allowed to substitute a motion in limine for a motion to strike that Coleman failed to file at

the appropriate time.

## 2)   OPPOSED MIL 2: TO PRECLUDE TWW FROM INTRODUCING DOCUMENTS RELATED TO THE 822523 PRODUCTS

Coleman's arguments against each document fail on the merits as the documents can be

properly authenticated either by a live witness or by a proper third-party authenticating declaration.

### a)  TWW's Shipping Manifest (TWW-COL-00038714, DX-0268)

Coleman's effort to exclude the shipping manifest document is inappropriate.  As discussed

in the response to MIL No. 1, TWW produced this document as soon as it was identified.  Coleman

now attempts to attack this document as hearsay in a motion in limine.  As this document is on

TWW's trial exhibit list, any such objections should be addressed in accordance with the Court's pretrial schedule (*see* ECF Nos. 284 and 311) and at the pretrial conference.  Coleman argues that it asserted this document was hearsay in Coleman's response to TWW's summary judgment motion.  But TWW is not required to address issues of hearsay in summary judgment any more than hearsay should be address in a motion in limine. As Coleman is aware, TWW's General Manager is listed as a will-call witness for trial and can authenticate this document as a business record.  This Court should not exclude the TWW shipping manifest.

**b)  The Rowell Declaration (DX-0603)**

Third-party Exxel provided a declaration by Mr. Rowell to authenticate two Exxel documents.  *See* Ex. C, Rowell Declaration.  Coleman's attempts to argue that this declaration was provided late and not properly identified during fact discovery under Rule 26(a) are misleading and inapplicable. Exxel produced documents in the litigation in response to an April 27, 2021, subpoena for documents issued by <u>Coleman</u>. But Exxel did not produce any documents to the parties until <u>late July 2021</u>, almost two months after the close of fact discovery. Thus, it was impossible for TWW to have identified these documents, much less obtained an authenticating declaration, during fact discovery. It was Coleman's own delay in seeking documents from Exxel that is responsible for these documents being produced long after the close of fact discovery. Exxel produced thousands of documents to the parties in late July 2021. After identifying relevant Exxel documents, TWW sought and received an authenticating declaration from Exxel on March 30, 2022.  TWW promptly provide this declaration to Coleman.

Coleman also misleadingly states that TWW "prevented Coleman from cross examining Rowell on any topics while discovery was open."  ECF No. 338 at 8.  Although TWW did object to Coleman deposing Exxel generally, TWW did not move the Court to prevent the deposition or otherwise stand on its objection to prevent the deposition. Coleman planned to proceed with the

4

deposition and then unilaterally decided to forego an Exxel deposition even when TWW was prepared to move for an extension to accomplish the deposition.  *See* Ex. D and E, Emails from David Moreland, dated July 15, 2021 and August 20, 2021.

Coleman again inappropriately attempts to argue objections to TWW's trial exhibits in a motion in limine by asserting that the Rowell Declaration is inadmissible hearsay.  Although this issue should be addressed in accordance with the Court's scheduling orders (*see* ECF Nos. 284 and 311), the Rowell Declaration is the type of authenticating declaration regularly admitted by this Court under Federal Rule of Evidence 803(6) and 902(11).  *See generally Rambus, Inc. v. Infineon Technologies*, 348 F.Supp.2d 698 (E.D.V.A. 2004).  In *Rambus*, this Court evaluated several third-party authenticating declarations as part of a motion in limine.  *Id*.  The Court determined that a proper authenticating declaration must meet four requirements – all of which are met by the Rowell Declaration.

First, the Court held that the declarant must be a custodian or other qualified person "who has sufficient knowledge of the record-keeping system and the creation of the contested record to establish their trustworthiness." *Id*. at 702. The documents which are the subject of the declaration were from American Recreation Products (ARP) which was acquired by Exxel in 2015.  Mr. Rowell is an Executive Vice President of Exxel and began work at first American Recreation Products and then Exxel in 2007.  *See* Ex. C at ¶ 2, 4.  Mr. Rowell also states that "[b]ased on my experience at ARP, and subsequently at Exxel, I am familiar with the manner in which ARP and Exxel create and maintain their records, including how ARP would have created and maintained the Produced Documents." *Id*. at ¶ 8.

Second, the Court stated that the record "was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those

matters." *Rambus*, 384 F.Supp. 2d at 704. Mr. Rowell states that the documents "are authentic business records that ARP made at, near, or reasonably soon after the time of the occurrence of the matters set forth therein; were made by, or from information transmitted by, a person with knowledge of those matters." Ex. C at ¶ 9.

Third, the Court stated that the records must be "kept in the course of the regularly conducted activity." *Rambus*, 384 F.Supp. 2d at 704. Mr. Rowell stated that "[t]he Produced Documents were kept in the course of ARP and Exxel's usual, ordinary, and regular business activity." Ex. C at ¶ 10.

Finally, the Court stated that "that it must have been a regular practice of a 'regularly conducted activity' to make and keep the record at issue." *Rambus*, 384 F.Supp. 2d at 705. Mr. Rowell stated "[t]he Produced Documents were kept by ARP and Exxel based on established procedures for the routine, timely making, and preserving of business records. The Produced Documents were documents relied on by ARP and Exxel in performing their regular business functions" and "[t]he Produced Documents were made and kept by ARP and Exxel as part of their regularly conducted business activities." Ex. C at ¶ 10-11.

Contrary to Coleman's assertions, the Rowell Declaration is a proper third-party authenticating declaration, regularly admitted by this Court, as outlined in this Court's *Rambus* decision. This Court should not exclude the Rowell Declaration.

### c) The ARP Notes and ARP Catalog (DX-0576 and -0577)

The two Exxel documents identified here are the documents which are the subject of the Rowell Declaration. In its Motion, Coleman merely again attacks the Rowell Declaration. As discussed in the preceding section, the Rowell Declaration meets the requirements set forth in this Court's *Rambus* decision. Mr. Rowell established that he is a qualified witness and that the documents at issue were authentic business records of the type kept in the ordinary and regular

business activity of ARP.  *See* Ex. C at ¶2, 4, and 8-11. Coleman's attempts to attack these documents as hearsay fail in light of the Rowell Declaration meeting the standard for third party authenticating declarations set forth by this Court in *Rambus*.  *See generally Rambus,* 348 F.Supp.2d 698.

### 3) OPPOSED MIL 3: TO PRECLUDE TWW FROM ARGUING THAT THE INTERNAL STRUCTURES OF THE ACCUSED PRODUCTS ARE DISTINCT FROM ONE ANOTHER

As it is Coleman's burden to prove infringement, not TWW to show non-infringement, Coleman cannot base its case on a purported admission of a lawyer in argument where there was no claim construction of the term at issue ("coil").  Coleman is attempting to avoid the fact that its own expert did not perform the minimum required analysis on 47 models of accused airbeds to be able to testify.  Coleman took TWW's Rule 30(b)(6) deposition, and there was no admission that all of TWW's accused airbeds follow the same design, and in fact they do not.

Coleman's motion regarding the alleged admission of counsel in an argument is entirely baseless.  Neither TWW nor its counsel ever made a "judicial admission" that the structure of the accused products are the same as argued by Coleman. Judicial admissions are "formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them." *Minter v. Wells Fargo Bank, N.A*., 762 F.2d 339, 347 (4th Cir. 2014) (quotation omitted). In addition, judicial admissions "include intentional and unambiguous waivers that release the opposing party from its burden to prove the facts necessary to establish the waived conclusion of law." *Id*. "A purported judicial admission is binding **only if** the statement is '**deliberate, clear, and unambiguous**.'" *Everett v. Pitt Cty. Bd. Of Educ*., 788 F.3d 132, 141 (4th Cir. 2015) (quoting *Minter* at 347) (emphasis added). Coleman's motion should be denied for at least the following reasons.

First, the statement of TWW's counsel during the August 2021 hearing falls far short of the "deliberate, clear, or unambiguous" standard. Counsel's statement during argument was made in 2021, when two of the three experts agreed that "coil" could be *any* structure holding the top and bottom sheets of the airbed together—a far cry from the Court's later, narrower claim construction of "coil." It could not be deemed a statement about what would have been the case had the definition of "coil" been narrower.  As conceded by Coleman, counsel also expressly qualified his statement by the words "I think," certainly not an "unequivocal statement." *Repa v. Napierkowski*, 2022 U.S. Dist. LEXIS 81936, at *6 (W.D. Penn. May 5, 2022) (concluding a witness' testimony with a qualifier phrase "I think" is not an "unequivocal statement"). Additionally, counsel's argument during a hearing in response to the judge's statements should not be deemed as a judicial admission. *See FOP Lodge No. 89 v. Prince George's County*, 608 F.3d 183, 189-190 (4th Cir. 2010) (holding that oral statements made by counsel in response to the district judge's statements asserting a conflicting view were not a judicial admission).

Coleman's allegation regarding TWW's position is meritless as well. In its opposition to Coleman's summary judgment motion, TWW confirmed that "the TWW accused products 'practice TWW's Sure Grip design,'" which is a feature disclosed in TWW's '926 Patent.[1] *See* ECF No. 156 at 4 and 17. This statement is not the same as saying that there is no difference between internal structures in TWW's accused products, as interpreted by Coleman. A statement has to be **deliberate, clear, and unambiguous** before being considered a judicial admission,

---

[1] TWW never confirmed that all of its accused products share the same internal structure in its opposition to Coleman's summary judgment motion, nor did Coleman identify any such statement in its motions in limine.

which clearly is not the case here. TWW has never taken the position or stated unambiguously that all its accused products share the same internal structure.

Moreover, the case cited by Coleman is clearly distinguishable. Unlike *Meyer v. Berkshire Life Incs. Co*., where the court finds a judicial admission of the defendant by its explicit statement that it "will waive its argument that it was not an ERISA fiduciary," TWW and its counsel never made such an explicit statement or took a clear position as Coleman suggests here. *Meyer v. Berkshire Life Ins. Co.,* 372 F.3d 261, 263 (4th Cir. 2004).

Also, TWW's expert did not expand his opinion in detail on why the identified products are not substantially similar. To the extent Coleman seeks to prevent Dr. Stevick from offering testimony or opinions that relate to his opinion on the difference of accused products' internal structures, cross examination at trial is the proper means for Coleman to test the basis for Dr. Stevick's opinions, not exclusion.  Likewise, TWW's expert should not be barred from opining on the differences of TWW accused products' internal structures. In its rebuttal expert report, TWW's expert pointed out the deficiencies in Coleman's infringement expert report for failing to examine a physical sample of accused products and made clear his opinion that he did not think the accused products "have the same structure in terms of the asserted patent limitation." Ex. F TWW Non-Infringement of '618 Patent Report ¶¶ 82-86.

4)     **OPPOSED MIL 4: TO PRECLUDE TWW FROM INTRODUCING EVIDENCE OR ARGUMENT DISCLOSING COLEMAN OR ITS CORPORATE PARENT'S FINANCIAL STATUS**

Coleman's motion should be denied because certain financial information for Coleman and its corporate parent, Newell Brands, is relevant to this case. At minimum, this financial information is relevant as TWW's damages expert relied on this information for her damages analysis. Specifically, TWW's expert relied on Newell Brand financial data (e.g., 10K filings), as well as

Coleman sales and cost data for allegedly infringing and non-infringing inflatable airbed products in her analysis of both damages for infringement of TWW's '926 Patent and for rebutting Coleman's damages opinions for alleged infringement of the '618 Patent.  Coleman's motion here inappropriately attempts to strike testimony by TWW's damages expert through a motion in limine.  Moreover, Coleman's own damages expert also opined on total revenue for TWW's accused products, the same type of evidence Coleman now seeks to exclude.

Generally, Coleman and Newell's size and financial condition is relevant to determining the reasonable royalty that the jury may award to TWW. *See Innovention Toys, L.L.C. v. MGA Entm't, Inc.*, No. 07-6510, 2012 U.S. Dist. LEXIS 156733, at *12 (E.D. La. Nov. 1, 2012) ("the jury should consider the parties' relative wealth and size in determining the reasonable royalty rate") (citing *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970)).

Additionally, in its list of relief sought, Coleman requests exclusion of evidence or argument about "sales by segment, past annual revenue, [and] past annual revenue from the sale of the accused product(s)." Mot. at 13. Coleman's own expert, Mr. Olsen, uses such figures in his analysis of damages related to the '618 Patent. In his report, Mr. Olsen summarizes multiple years of revenue from Coleman and TWW products that practice, or are accused of practicing, the '618 Patent and products that do not practice, or are not accused of practicing, the '618 Patent. *See* ECF No. 165-1, Olsen Am. Report ¶¶ 25-26 & Schedules 1, 7, 8. Mr. Olsen uses the difference between these two revenue segments for TWW as the basis for his starting royalty rate in his damages analysis for the '618 Patent. *Id.* at ¶¶ 25-26. Accordingly, Coleman is asking that their own expert be able to discuss TWW sales figures segmented by alleged use of the '618 Patent while excluding TWW from discussing Coleman's sales figure segmented by actual use of the '618 Patent.

Coleman has placed these sales figures at issue through their own expert's methodology. To the extent Coleman is asking for exclusion of figures TWW's expert relies upon when its own expert relies upon the same types of figures, their request must be denied.[2]

Courts allow testimony of total revenues related to the accused product as part of a damages analysis, so long as the expert properly apportions through a low enough royalty rate that is connected to the facts of the case. *See, e.g.*, *Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp, LLC*, 879 F.3d 1332, 1348 (Fed. Cir. 2018) (*citing Ericsson, Inc. v. D-Link Sys., Inc*., 773 F.3d 1201, 1226 (Fed. Cir. 2014)) ("We have held that apportionment can be addressed in a variety of ways, including 'by careful selection of the royalty base to reflect the value added by the patented feature [or] . . . by adjustment of the royalty rate so as to discount the value of a product's non-patented features; or by a combination thereof.'"); *Vectura Ltd. v. GlaxoSmithKline LLC*, 981 F.3d 1030, 1044 (Fed. Cir. 2020) ("The district court was correct in not condemning the remaining references to GSK's total U.S. sales because those remaining references were neither objected to nor objectionable. They were not objectionable because it was necessary for Vectura to reference GSK's total sales, either directly or indirectly, considering that Vectura's damages theory asked the jury to multiply the three-percent royalty rate by the royalty base, i.e., GSK's total sales.")

Coleman's motion should be denied as it inappropriately attempts to limit testimony by TWW's damages expert.

---

[2] In the event that this information is excluded, TWW will object to admissibility at trial under Rule 403 for a commensurate exclusion of their sales figures or financial information. If the Court grants this motion in limine, it should, in the Court's discretion, likewise exclude Coleman from offering the same type of financial data for TWW.

5)   **OPPOSED MIL 5: TO PRECLUDE TWW FROM RELYING ON EVIDENCE OR
ARGUMENT RELATED TO OR BASED ON THE CONVERSATION BETWEEN
TWW'S COUNSEL AND ANDREW METZGER**

Coleman's motion should be denied as Coleman improperly seeks to exclude certain
relevant testimony of Andrew Metzger that is detrimental to his credibility and unfavorable to
Coleman. Andrew Metzger is the inventor of Coleman's '618 Patent and a key witness to this case.
None of Coleman's reasons for preclusion here are sustainable. Moreover, as Mr. Metzger is only
testifying by deposition, Coleman's concerns regarding this testimony are properly addressed
when the Court takes up deposition objections as part of the pretrial process.  TWW would be
highly prejudiced if precluded from referring to or relying on his testimony given during
deposition.

Under Federal Rule of Evidence 611, courts have a "large degree of discretion in
overseeing the examination of witnesses." *Gobert v. Alt. Sounding*, 15-CV-650, 2017 U.S. Dist.
LEXIS 16007 (E.D. La. Feb. 6, 2017) (quoting *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d
749, 757 (2d Cir. 2004)). Even though Mr. Woods did not specify the name of his "colleague,"
given the fact that only one attorney of TWW contacted Mr. Metzger before his deposition, it is
clear from Mr. Metzger's response that he was aware of who Mr. Woods was referring to. Coleman
cites no authority for the proposition that name is the only way to identify a person. Nor could
Coleman argue that Mr. Metzger lacked personal knowledge regarding his conversation with Mr.
Amadou Diaw.

Coleman's hearsay objections fail as well. Mr. Metzger's prior out-of-court statement was
not hearsay as it is used for impeachment purposes, and Coleman had many opportunities to
examine the witness. Fed. R. Evid. 801. Coleman's third reason is improper as it goes into the
content of the conversation. The weight and credibility of Mr. Metzger's testimony regarding his

12

memory of these discussions is an issue for the jury to decide. TWW would be prejudiced if it is not able to show this testimony, and TWW respectfully asks that the Court deny Coleman's request.

### 6)  OPPOSED MIL 6: TO PRECLUDE TWW'S EXPERTS FROM EXCEEDING THE SCOPE OF THEIR EXPERT REPORTS

Coleman's proposed motion is inappropriate and unnecessary. Here, Coleman essentially seeks an advisory opinion over an issue that is not ripe, as Coleman has not identified specific testimony that it contends would go beyond the scope of a report. It is black letter law that opinion testimony not properly disclosed in an expert report should be excluded under Federal Rule of Civil Procedure 37. This Court's past practice also limits experts to opinions timely disclosed in their expert report. *See e.g., Centripetal Networks, Inc. v. Keysight Techs., Inc.*, 2018 U.S. Dist. LEXIS 186480, at *28 (E.D. Va. Sep. 25, 2018). Because both parties' experts are constrained by the contents of their expert report, Coleman's motion is unnecessary and should be denied accordingly.

### 7)  OPPOSED MIL 7: TO PRECLUDE TWW FROM INTRODUCING EVIDENCE OR ARGUMENT THAT SUCTION IS PRODUCED WHEN A PERSON MOVES ONTO THE COLEMAN ACCUSED PRODUCTS

Coleman's attempt to relitigate its earlier lost *Daubert* motion under the guise of a motion in limine is improper, untimely, and should be denied. The relief Coleman seeks in this motion is essentially the same as that sought in Coleman's *Daubert* motion seeking to strike TWW's expert testimony on this subject, **which the Court already denied**. *See* ECF No. 225. Coleman seeks to exclude TWW expert's manometer test and related opinion which has been disclosed in his expert report.

In its Order denying Coleman's *Daubert* motion, the Court explained why Coleman's argument was untenable. *See generally* ECF No. 225. Coleman's motion here goes to the credibility and interpretation of Dr. Stevick's opinions, which is an issue for the jury to decide. *See Dorman v. Anne Arundel Med. Ctr.*, 2018 U.S. Dist. LEXIS 89627, at *13-14 (D. Md. May 29, 2018) ("Plaintiffs' request is essentially a motion for reconsideration of the Court's Memorandum and Order Re: Daubert Motions … it is up to the jury to find … in this case"). Moreover, Coleman will have the opportunity to cross-examine Dr. Stevick at trial. *See* ECF No. 225 at 4 and 6. In the meantime, Coleman cites no authority or case law that would permit it to relitigate an issue through a motion *in limine* that the Court has ruled on its merit.[3] This motion should be denied.

---

[3] Coleman has taken an inconsistent position in its opposition to TWW's Motion for Leave to Serve Supplemental Expert Report. *See* ECF No. 292 at 3 ("TWW's present motion is futile and should be denied. Because it requests that this Court reverse its previous order, it is a Rule 54(b) motion for reconsideration," "which this court has described as an 'extraordinary remedy." (citing *Benedict v. Hankook Tire Co. Ltd.*, No. 3:17-CV-109, 2018 WL 1655358, at *2 (E.D. Va. Apr. 5, 2018)).

**8) OPPOSED MIL 8: TO PRECLUDE TWW FROM SHOWING ROTATED OR OTHERWISE MANIPULATED PHOTOS OR ILLUSTRATIONS OF THE COLEMAN PRODUCTS**



Coleman seeks to preclude TWW from using photo and other demonstrative aids for the jury to understand complex technical issues, which is prejudicial to TWW. Coleman argues because TWW used a photograph of an accused airbed that was inverted this should somehow be precluded. The photograph that is the subject of Coleman's motion is shown to the left. As seen here, the photo is not misleading as it is obviously inverted given that the top of the photo shows a carpeted floor. Moreover, Coleman can cross-examine any witness who testifies about it.

All relevant evidence is generally admissible. Fed. R. Evid. 402. The admission of photographs is a matter for the sound discretion of the trial court. *Lubanski v. Coleco Industries, Inc.*, 929 F.2d 42, 47 (1st Cir. 1991). "A staged photograph is admissible if the court makes a preliminary determination that the photograph <u>depicts a correct likeness</u> of the scene it purports to represent." *Id.* at 48 (emphasis added). Once the court has so determined, differences between the actual scene and the photograph to the weight of the evidence rather than its admissibility. *Reed v. Tiffin Motor Homes, Inc.*, 697 F.2d 1192, 1199 (4th Cir. 1982). "Demonstrative aids are appropriately and widely used in trials to help illustrate for the jury matters that might otherwise be less than fully understood." *Colgan Air, Inc. Raytheon Aircraft Co.*, 535 F. Supp. 2d 580, 583 (E.D. Va. 2008).

Coleman's reliance on *LaPlante* is inappropriate. *Laplante v. Sun Coast Marine Servs.*, 2002 U.S. Dist. LEXIS 28686 (D.S.C. 2002). The digital image was excluded in *LaPlante* because

the image was rotated so that the left side appears as the right side of the vessel. More than that, elements of another vessel were "superimposed upon the altered image." *Id*. The court found that the digital image "does not represent an <u>accurate image</u> of the vessel" so that the probative value is substantially outweighed by the danger of unfair prejudice and confusion. *Id*. (emphasis added). Unlike *LaPlainte*, TWW only flipped this accurate image with counsel's explanation regarding the orientation that it "had flipped the picture upside down from what Stevick's picture actually was." Thus, this flipped image will not confuse or mislead the jury. On the contrary, the flipped photo could better show which structure TWW and its expert refer to as a "concave air bag."

*Gladhill v. General Motors Corp.* is also distinguishable. 743 F.2d 1049, 1050 (4th Cir. 1984). In *Gladhill*, the defendant's videotaped demonstration of a braking test was excluded because a different vehicle was used in the tests from the one involved in the accident (which was also destroyed) and under conditions that "went beyond a mere demonstration of a physical principle," making the results largely irrelevant if not misleading. *Id.* Coleman's conclusive allegation lacks merit as it failed to show how TWW's image differs from Coleman's actual product structure.

Under this Court's analysis governing the use of demonstrative aids in trials, this photograph would assist the jurors in understanding the technical issues in this case, avoiding needless consumption of time, and not involving unfair prejudice. *Colgan*, 535 F. Supp. 2d at 584-585. Coleman's motion should be denied accordingly.

16

**9)     OPPOSED MIL 9: TO PRECLUDE TWW FROM COMPARING THE COLEMAN ACCUSED PRODUCTS TO TWW'S OWN PRODUCTS**

Coleman's motion is unnecessary and should be denied. Coleman offers no explanation for its proposed limitation. Coleman does not point to any of TWW briefs, evidence, statements, witness testimony, exhibits, or expert report to allege that TWW has made such comparison. Nor could it show that TWW has indicated it will do so.

*Zenith Labs* is not applicable because there the district court applied an improper infringement analysis that only compared 22 experimental results with the 37 claimed results, ignoring a substantial number of claimed results altogether. *Zenith Labs., Inc. v. Bristol-Myers Squibb Co.*, 19 F.3d 1418, 1424 (Fed. Cir. 1994). Thus, the Federal Circuit reversed the District Court because there was not sufficient evidence of infringement of all claimed results. *Id*. Also, unlike this case, observation alone was not sufficient, experimental results of X-ray diffraction were required. *Id*. at 1423.

Coleman's bare-bones quotation of the Federal Rule of Evidence 403 without any support is insufficient for its argument as well. This motion should be denied as speculative and unnecessary.

**10)     OPPOSED MIL 10: TO PRECLUDE TWW FROM INTRODUCING EVIDENCE OR ARGUMENT CONTRARY TO THE COURT'S CLAIM CONSTRUCTION**

Coleman attempts to create claim construction issues where none exist. First, Coleman ignores for the term "side support beam" that the Court construed this term as "plain and ordinary meaning." *See* ECF No. 71 at 7.  The "plain and ordinary meaning" of this claim term is the subject of expert testimony and subject to cross examination. The Federal Circuit is clear that "[t]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective

17

filing date of the patent application…" *Phillips v. AWH Corp.*, 415 F.3d. 1303, 1313 (Fed. Cir. 2005). Thus, the parties' experts are best situated to provide their understanding of the "ordinary and customary meaning" of "side support beam" at trial. Any disagreement between Coleman and TWW's expert on this issue is subject to cross examination, not exclusion.

Moreover, Coleman's attempts to preclude any reference to the possibility that the "side support beams" are open at the corners is inconsistent with the specification of the '618 Patent. For example, the only figures in the '618 Patent which show the configuration of the "side support beams" show them with open corners. *See* '618 Patent, FIGs. 5 and 6 to the left (exemplary 'open' corners shown in red). It is inappropriate for Coleman to preclude TWW's expert from testifying on his understanding of the "plain and ordinary meaning of "side support beams," particularly in light of the disclosure of the specification below. *See*



*Phillips*, 415 F.3d. at 1313 ("Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, **but in the context of the entire patent, including the specification**.") (emphasis added).

Second, Coleman attempts to create a claim construction argument for claim element 1g of the '926 Patent that does not exist. The Court was clear that, for the "whereby" clause of claim element 1g, only the suction cup functionality is a claim limitation. The Court stated "that the suction cup functionality, and not the 'fixing' effect, is 'a condition that is material to patentability' and should be considered a claim limitation." ECF No. 232 at 8. Thus, portions of claim element

1g are a claim limitation and portions are not claim limitations.  TWW has never stated otherwise, and Coleman has not identified any such statement by TWW.  Thus, no additional instruction for the parties is necessary.

Third, this is yet another attempt to relitigate a failed *Daubert* motion, and Coleman does not even attempt to meet the standard for a motion for reconsideration. Coleman attempts to relitigate its failed *Daubert* motion regarding the testimony of TWW's expert, Dr. Stevick, on his testing relating to the "acts as a suction cup" limitation.  *See* ECF No. 141. Coleman seeks to exclude or limit Dr. Stevick's ability to testify regarding his manometer test and related opinions which were disclosed in his expert report.  This Court has already decided this issue in its *Daubert* Order.  *See* ECF No. 225. Coleman's motion goes to the credibility and interpretation of Dr. Stevick's opinions, which is an issue for the jury to decide. *See Dorman v. Anne Arundel Med. Ctr.*, 2018 U.S. Dist. LEXIS 89627, at *13-14 (D. Md. May 29, 2018) ("Plaintiffs' request is essentially a motion for reconsideration of the Court's Memorandum and Order Re: Daubert Motions…it is up to the jury to find…in this case"). Moreover, Coleman has plenty of opportunities to cross-examine Dr. Stevick at trial. *See* ECF No. 225 at 4 and 6.  This Court should deny this motion as an improper attempt to re-litigate Coleman's *Daubert* motion.

## 11)   OPPOSED MIL 11: TO PRECLUDE EXPERTS FROM INSTRUCTING ON THE LAW

As discussed above in the response to MIL No. 9, Coleman's proposed instruction is inappropriate and unnecessary. Coleman offers no explanation or citation as to which part of TWW's expert opinions it is concerned about and there is no specific issue before the parties for this motion to address. It is well established that experts are limited to offering opinions and not

legal instruction and TWW expects the Court will require both parties – not just TWW – to abide by this limit. This motion is redundant and unnecessary and should be denied.

**12)   OPPOSED MIL 12: TO PRECLUDE ASSERTION THAT PRACTICING THE PRIOR ART IS A DEFENSE TO INFRINGEMENT**

Coleman's mischaracterization of TWW's arguments is baseless and misleading. Coleman's argument about "practicing the prior art" not being a defense to literal infringement is inapposite and not a reason to exclude argument and testimony that what TWW does today is the same as what it did before Coleman's invention. "[I]f a claim term must be broadly interpreted to read on an accused device, then this same broad construction will read on the prior art." *01 Communique Lab., Inc. v. Citrix Sys., Inc.*, 889 F.3d 735, 742 (Fed. Cir. 2018). "When an accused product and the prior art are closely aligned, it takes exceptional linguistic dexterity to simultaneously establish infringement and evade invalidity." *Id.* (citing *Tate*, 279 F.3d at 1367).

Furthermore, contrary to Coleman's arguments, Dr. Stevick explains in his rebuttal report on noninfringement of Coleman's '618 Patent that one reason the accused TWW products do not infringe is that these products do not include multiple air chambers as required by the '618 Patent. Dr. Stevick notes that these products have multiple air chambers, in part, because they practice TWW's '926 Patent which requires multiple air chambers. *See* ECF No. 139 ¶ 34.   Although TWW's '926 Patent is prior art to Coleman's patent, this is not a statement that the TWW accused products do not infringe Coleman's patent because they "practice the prior art."[4]

---

[4] Coleman's citation to TWW's opposition to Coleman's motion for summary judgment appears to address facts regarding infringement of the '926 Patent and not issues for Coleman's '618 Patent.

Moreover, there is a difference between merely practicing the prior art and practicing the same a prior art element that is exactly what is being accused of infringement.  A company can both practice prior art and infringe in several cases.  For example, if a company sells a chair, it can practice the prior art that chairs have 4 legs but also infringe a patent that is directed to the material the chair is made from.  But if, at a time before the plaintiff invented its chair of "new" material, the defendant already patented or sold a chair made of the exact same material, and that is all the claim requires, that company cannot possibly infringe, because in that event the patent would be invalid. *See Tate*, 279 F.3d at 1367. And if the only difference between what came before and the patent claims is obvious to a person of ordinary skill, there is no preclusion against informing the jury or making that argument. There is no case law cited by Coleman precluding such arguments.

Because Coleman seeks to limit TWW's expert testimony on an argument TWW has not made, Coleman's motion should be denied.

### 13)   OPPOSED MIL 13: TO PRECLUDE REFERENCE TO DECISIONS NOT TO SUE THIRD PARTIES FOR INFRINGEMENT

This motion seeks to preclude TWW from introducing evidence concerning Coleman's decision to not sue third parties regarding the '618 Patent. Again, Coleman offers no explanation or citation to show TWW ever made or intends to make such assertion. Coleman fails to show this is an issue to be addressed. The proposed motion should be denied as premature and unnecessary.

Moreover, if evidence is introduced at trial that other third-party airbeds are not accused of infringement, that is evidence both of non-infringing alternatives and evidence relevant to willfulness—a company would not have reason to think it infringes if the same or similar design is widely used without license by others in the industry and it has never been accused of infringement.

14) **OPPOSED MIL 14: TO PRECLUDE ARGUMENTS THAT COLEMAN'S '618 PATENT IS NOT INFRINGED BECAUSE TWW ASSERTS THAT IT IS INVALID**

Coleman's misinterpretation of TWW's expert report does not support the requested instruction. Coleman's citations to Dr. Stevick's noninfringement expert report do not state that Coleman's '618 Patent is not infringed because it is invalid.  For example, in paragraph 23 of this expert report, Dr. Stevick is merely incorporating the background information on Coleman's '618 Patent from his earlier invalidity expert report.  TWW has not made such assertion, nor did its expert.

Notwithstanding these statements, the Federal Circuit is clear that "[a]n invalid patent cannot be infringed." *Viskase Corp. v. American Nat'l Can Co.*, 261 F.3d 1316, 1323 (Fed. Cir. 2001); *WBIP, LLC v. Kohler Co.*, 965 F. Supp. 2d 170, 174 (D. Mass. 2013) ("A defendant in an infringement action may assert invalidity as an affirmative defense."). Coleman should not be allowed to bar TWW's expert from testifying on the invalidity of Coleman's '618 Patent through this motion in limine. As there is no issue to be addressed, this motion should be denied as speculative and unnecessary.

15) **OPPOSED MIL 15: TO PRECLUDE TWW FROM ASSERTING THAT TWW'S ASSERTIONS ARE UNREFUTED OR THAT COLEMAN HAS AGREED WITH TWW'S DAMAGE EXPERT**

It is a fact that Coleman's damages expert did not rebut TWW's damages expert report for TWW's '926 Patent, and TWW should be allowed to present this fact in testimony and argument. It appears that Coleman is attempting to preclude any statements concerning this undisputed fact. Coleman fails to cite to any evidence that TWW ever asserted that "TWW's assertions as to damages relating to the TWW patent are unrefuted." Mot. at 28.  In addition, Coleman provides

no authority to support exclusion. As TWW has never made such an assertion, Coleman's motion is speculative, unnecessary, and should be denied.

**16)   OPPOSED MIL 16: TO PRECLUDE TWW FROM ASSERTING THAT TWW EVALUATED AND CHOSE NOT TO ACCUSE CERTAIN MATTRESSES THAT PURPORTEDLY DID NOT INFRINGE THE '926 PATENT**

It is well settled that an expert cannot testify concerning information outside their report. Although Coleman has provided no support for unnecessarily memorializing as a motion in limine what is black letter law, TWW acknowledges that Dr. Stevick did not include in his opinions pressure test results on non-accused products.  However, TWW has never asserted that it would attempt to argue at trial about these non-accused products. Thus, Coleman's motion should be denied as unnecessary and speculative.

**17)   OPPOSED MIL 17: TO PRECLUDE TWW FROM ARGUING THAT THE '926 PATENT HAS A PRIORITY DATE PRIOR TO THE FILING DATE OF THE '926 PATENT**

Coleman offers no explanation for its concern that TWW would argue that the '926 Patent has a priority date prior to the filing date of the '926 Patent other than a single statement that the invention was conceived and reduced to practice at least prior to April 30, 2002.  *See* Mot. at 29. As Coleman is aware, TWW has not presented any evidence supporting a priority date earlier than April 30, 2002, and TWW does not intend to seek any earlier date.  Thus, Coleman motion should be denied as unnecessary.

**18)   OPPOSED MIL 18: TO PRECLUDE REFERENCE TO OTHER LAWSUITS AND/OR CLAIMS BETWEEN THE PARTIES**

This motion in limine should be denied—TWW is accused of willful infringement, that is, knowing that it is infringing Coleman's patents but doing so anyway. That is untrue—TWW

contends that Coleman's patent is invalid and not infringed and that Coleman is only pursuing this case as retribution for a lawsuit TWW successfully pursued against Walmart that included Coleman airbeds. It would be highly prejudicial to TWW to bar it from explaining its belief as to why it is not a willful infringer.

Moreover, Coleman's motion is unduly overbroad as well as inconsistent with Coleman's own positions. On the one hand, Coleman seeks to question TWW's expert regarding his work on other lawsuits during the trial[5]; on the other hand, Coleman alleges that TWW should be precluded from referring to other lawsuits or claims for any purpose. Coleman's inconsistent position is baseless and highly prejudicial to TWW. At a minimum, TWW should be allowed to refer to other related lawsuits for certain purposes. *See e.g., Wis. Alumni Research Found. V. Apple, Inc.*, 135 F. Supp. 3d 865, 881 (W.D. Wisc. 2015) ("a blanket ruling precluding any reference to [other litigation in which Apple is involved] is unwarranted.") For instance, TWW's damages expert has offered opinions on the relevance of the *TWW v. Walmart, etc*. litigation to a reasonable royalty determination, and the jury is entitled to weigh those opinions. Also, TWW and Coleman are direct competitors in related fields. Although not part of the same priority chain, the '926 Patent and other patents of TWW litigated against Coleman address the same general subject matter, name the same inventor, and share many of the same or similar terms in written description (e.g., "inflatable," "mattress," "chamber").

Any potential prejudice or confusion may be addressed on cross-examination or by limiting instruction. Coleman's motion should be denied as overbroad.

---

[5] Coleman included as trial exhibits a number of invoices for TWW's expert, Dr. Stevick, on work he has done on other cases than the instant litigation.  *See* ECF No. 315, PTX 337 through PTX-350.

**19)   OPPOSED MIL 19: TO PRECLUDE REFERENCE BY TWW'S EXPERT TO HEARSAY STATEMENTS**

Coleman's motion is an improper attempt at a motion to strike expert testimony under *Daubert*. The deadline for *Daubert* motions has passed. Coleman's request is baseless and contrary to law. Coleman alleges that TWW's expert has relied on documents which is improper hearsay, but an "expert may rely on inadmissible hearsay evidence in developing their expert opinions." *Associated Terminals of St. Bernard, LLC v. Potential Shipping HK Co.*, No. 17-5109, 2018 U.S. Dist. LEXIS 25730, at *4 (E.D. La. Feb. 16, 2018) (*citing First Nat. Bank of Louisville v. Lustig*, 96 F.3d 1554, 1576 (5th Cir. 1996)); *see also Nucor Corp. v. Bell*, No. 2:06-CV-02972-DCN, 2008 U.S. Dist. LEXIS 86328, at *34 (D.S.C. Jan. 11, 2008) (*citing Redman v. John D. Brush & Co.*, 111 F.3d 1174, 1179 (4th Cir. 1997)).

Dr. Stevick's analysis comports with the *Daubert* standard. Dr. Stevick can rely on third-party air mattress review websites to opine. *See Apple, Inc. v. Samsung Elecs. Co.*, No. 12-CV-00630-LHK, 2014 U.S. Dist. LEXIS 24506, at *27 (N.D. Cal. Feb. 25, 2014) (rejecting motion to strike expert opinion which was based in part on consumer reviews). Coleman's cited authority does not contain any substantive opinion. In this tort liability case, the court addressed the issue of whether one expert may give the opinion of another expert who does not testify. *See Tokio Marine & Fire Ins. Co. v. Norfolk & W. Ry. Co.*, No. 98-CV-1050, 1999 U.S. App. LEXIS 476, at *12 (4th Cir. Jan. 14, 1999). Coleman's motion is inconsistent with the law and should be denied.

## CONCLUSION

For the forgoing reasons, TWW respectfully request the Court to deny Coleman's motions in limine addressed above.

Dated:   December 21, 2022                          Respectfully submitted,

                                                    By: /s/ Alexandra M. Gabriel
                                                    Alexandra M. Gabriel (VSB No. 89185)

William R. Poynter (VSB No. 48672)
David Sullivan (VSB No. 45027)
**KALEO LEGAL**
4456 Corporation Lane, Suite 135
Virginia Beach, VA 23462
Phone: 757.238.6383
Fax: 757.304.6175
agabriel@kaleolegal.com
wpoynter@kaleolegal.com
dsullivan@kaleolegal.com

Dana D. McDaniel (VSB No. 25419)
John M. Erbach (VSB No. 76695)
**SPOTTS FAIN, P.C.**
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
Tel.: (804) 697-2065
Fax: (804) 697-2165
dmcdaniel@spottsfain.com
jerbach@spottsfain.com

Thomas M. Dunham (pro hac vice)
J. Michael Woods (pro hac vice)
Adam A. Allgood (pro hac vice)
**Cherian LLP**
1901 L St. NW, Suite 700
Washington, DC 20036
Telephone: (202) 838-1560
tomd@cherianllp.com
michaelw@cherianllp.com
adama@cherianllp.com

Korula Cherian (pro hac vice)
Robert Harkins (pro hac vice)
**Cherian LLP**
1936 University Ave., Ste. 350
Berkeley, CA 94702
Telephone: (510) 944-0190
sunnyc@cherianllp.com
bobh@cherianllp.com

*Attorneys for Team Worldwide*
*Corporation and Cheng-Chung Wang*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing on December 21, 2022 with the

Clerk of Court using the CM/ECF system, which will send a notification of such filing to all

registered users.

By: /s/ Alexandra M. Gabriel
Alexandra M. Gabriel (VSB No. 89185)
KALEO LEGAL
4456 Corporation Lane, Suite 135
Virginia Beach, VA 23462
Phone: 757.238.6383
Fax: 757.304.6175
agabriel@kaleolegal.com