IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| THE COLEMAN COMPANY, INC., § <br> § <br> *Plaintiff/Counterclaim Defendant,* § <br> § <br> v. § <br> § Civil Action No. 2:20-cv-351-RCY-LRL <br> TEAM WORLDWIDE § <br> CORPORATION, et al., § JURY TRIAL DEMANDED <br> § <br> *Defendant/Counterclaim Plaintiff,* § <br> § <br> and § <br> § <br> CHENG-CHUNG WANG, § <br> § <br> *Counterclaim Plaintiffs* | |

**TWW'S REPLY IN SUPPORT OF MOTION *IN LIMINE* RE COURT'S CONSTRUCTION OF "COIL" FOR U.S. PATENT NO. 7,089,618**

Defendant/Counterclaim Plaintiff Team Worldwide Corporation and Counterclaim Plaintiff Cheng-Chung Wang (collectively, "TWW") hereby submit this reply in support of its motion *in limine*. For the reasons set forth below, TWW respectfully requests that the Court grant its motion.

In its Opposition, Coleman ignores the fact that it has never applied the Court's construction of "coil" to any of TWW's accused products. Coleman makes largely irrelevant arguments showing comparisons of TWW products to figures from the '618 Patent but this does not address the fact that Coleman is required to compare the construed claims to the accused products – and it did not. Coleman attempts to avoid this fact by arguing that Dr. Singhose's broad interpretation of "coil" used in his infringement analysis is not "materially different" than the Court's construction requiring "spaced elongate members." But, as discussed below, Dr. Singhose

applied, in his infringement analysis, a construction of "coil" that is materially different from the Court's construction.  At a minimum, Dr. Singhose could not possibly have determined that the 47 TWW accused products, for which he did not physically examine the interior construction, met the Court's construction requiring "spaced elongate members."  Coleman's arguments that this issue was already decided by the Court are meritless as the Court did not construe "coil" until after the Court addressed the 47 physically unexamined TWW accused products.

Accordingly, TWW requests that Coleman be precluded at trial from offering evidence, testimony, or argument, including opinions on infringement, regarding whether the accused TWW products infringe asserted claims 1, 2, 15, and 16 of the '618 Patent. In the alternative, TWW requests that Coleman be precluded from offering evidence, testimony, or argument, including opinions on infringement, regarding whether the 47 Unexamined TWW Accused Products infringe asserted claims 1, 2, 15, and 16 of the '618 Patent.

### A. Coleman Ignores That Its Expert Has Never Offered Any Opinions on Whether the Accused TWW Products Meet the Court's Construction of "Coil" as Required by Law.

In its Opposition, Coleman ignores that its infringement expert, Dr. William Singhose, has never offered any opinions or performed any analysis to determine whether the accused TWW products meet the Court's construction for the claim term "coil." To prove infringement of a claim in a patent "every element in the claim must be found in the accused device either literally or equivalently." *Unique Concepts v. Brown*, 939 F.2d 1558, 1559 (Fed. Cir. 1991). As stated in TWW's motion, Dr. Singhose offered opinions on whether the TWW accused products met the "coil" limitation in his expert reports, but he formed those opinions applying his own interpretation of the term "coil" to mean: "structures that extend between those two [upper and lower panels] [that] would tend to hold those surfaces, those panels together when it's inflated." ECF No. 330-

1, Ex. A, Deposition of Dr. Singhose, August 18, 2021, at 76:10-77:13. Dr. Singhose's understanding of "coils" to mean virtually any structure connecting the upper and lower panels of the air mattress is materially different and far broader than the Court's construction, which limits "coils" to "flexible structures possessing spaced elongate members that extend continuously from the first to the second panel." (ECF No. 232 at 10).

Coleman attempts to ignore these facts by pointing to statements in summary judgment briefing and the Court's earlier decision on a motion to strike Dr. Singhose's testimony. But both that briefing and the Court's order pre-date the Court's construction for "coil." Coleman then points to comparisons of images of TWW accused products from Dr. Singhose's reports and figures from the '618 Patent to argue that the TWW products have "coils" as construed by the Court. But Coleman's comparison is irrelevant and ignores the actual issue presented in TWW's motion. The issue is that Coleman is required to "compar[e] the properly construed claims to the device accused of infringing." *Markman v. Westview Instruments, Inc*., 52 F.3d 967, 976 (Fed. Cir. 1995) ("An infringement analysis entails two steps. The first step is determining the meaning and scope of the patent claims asserted to be infringed. The second step is comparing the properly construed claims to the device accused of infringing.") (internal citations omitted). Coleman simply has not done so for the TWW accused products.

Indeed, Coleman admits in its Opposition that "Dr. Singhose did not set forth a specific construction of coils in his expert report." ECF No. 347 at 6. Dr. Singhose's only statements on the interpretation of "coil" that he applied in his infringement analysis are from his deposition. In his deposition he was clear that, in his opinion, the construction of "coil" was not limited to the narrower construction later adopted by the Court of "elongate spaced members" but could be "just some material."

3

```
10         Q     And what is your understanding of
11     what is required for something to be a
12     mattress coil in the context of the
13     '618 patent?
14         A     I think the '618 patent mattress
15     coil indicates some physical structure that
16     extends, as it says in the limitation,
17     continuously from the first panel, the top
18     panel to the bottom panel.  So the
19     structures that extend between those two
20     would tend to hold those surfaces, those
21     panels together when it's inflated.
```

```
24              Is it your opinion then that it
25     just needs to be something that holds those
```

```
 2     two that run continuously from the first
 3     panel to the second panel?
```

```
 7         A     Yes, the '618 doesn't clarify what
 8     exactly these should look like in detail.
 9     There's just some material that extends from
10     the top to the bottom and the obvious use of
11     those is that when you put air in here, it
12     stops the two surfaces from spreading too
13     far apart.
```

ECF No. 330-1, Ex. A, Deposition of Dr. Singhose, August 18, 2021, at 76:10-77:13.

Coleman then argues that Dr. Singhose's broad interpretation of "coil" is not "materially different" from the Court's construction. Coleman again ignores that, although Dr. Singhose's stated that "coil" only requires "just some material" between the top and bottom panels of the air bed, the Court's construction specifically requires "spaced elongate members." In its Opposition, Coleman focuses on the wrong portions of Dr. Singhose's interpretation and the Court's

construction to argue that the two are not materially different. Coleman compares Dr. Singhose's interpretation and the Court's construction of "coil" (excerpt below) but does not highlight the significant difference between the two – the Court's "spaced elongate members" requirement (circled in red).

| Dr. Singhose's Alleged Construction of "Coils" (ECF No. 334 at 2): "*structures that extend between those two [upper and lower panels]* [that] *would tend to hold those surfaces, those panels together when it's inflated*" | The Court's Construction of "Coils" (ECF No. 232 at 10): "*flexible structures possessing spaced elongate members that extend continuously from the first to the second panel*" |
|---|---|

Contrary to Coleman's arguments, Dr. Singhose's interpretation of coil was "materially different" from the Court's construction of "coil" in that the Court requires a very specific structure ("spaced elongate members") between the top and bottom panels of the air bed and Dr. Singhose was satisfied with essentially any structure. Even under Coleman's own cited authority, an expert cannot rely on a construction that is materially different from the Court's construction. *Treehouse Avatar LLC v. Valve Corporation*, 54 F.4th 709, 712 (Fed. Cir. 2022). In Coleman's only other cited authority, a District of Oregon case, the Court did not exclude an expert's application of the Court's construction after the Federal Circuit issued an opinion clarifying some of the Court's constructions. But in *Skedco*, the Court stated "I do not read that decision [Federal Circuit Opinion] as fundamentally altering the 2014 claim constructions." *Skedco, Inc. v. Strategic Operations, Inc.*, 287 F. Supp. 3d 1100, 1115 (D. Or. 2018). Here, the Court's construction <u>did</u> fundamentally alter Dr. Singhose's interpretation of "coil," as it included a very specific description of the structure used to connect the top and bottom panels of an air bed.

Because Dr. Singhose has not provided any infringement opinions based on the Court's construction, his opinions as to Claims 1, 2, 15 and 16 of the '618 Patent are unreliable, irrelevant,

and prejudicial and should be excluded under Federal Rules of Evidence ("FRE") 702, 401, and 403.

### B. Dr. Singhose Could Not Have Determined That Any "Coils" in the 47 Unexamined TWW Accused Products Met the Court's Construction of "Coil" Requiring "Spaced Elongate Members."

In its Opposition, Coleman also ignores that although Dr. Singhose opined that 80 TWW accused products meet each claim limitation of the asserted claims of the '618 Patent, he did not examine the internal construction of 47 of the accused TWW airbeds. *See* ECF No. 330-3, Ex. C, Appendix D to Expert Report of Dr. Singhose, columns 1-6. Instead, Dr. Singhose formed his infringement opinions for the 47 unexamined accused TWW products based only on pictures of the exterior of the products and/or his inspection of the *external* surface of the accused airbeds. *Id.*

As discussed above, at the time Dr. Singhose offered these opinions the Court had not construed the term "coil." Thus, Dr. Singhose used his interpretation of "coil" which was "structures that extend between those two [upper and lower panels] [that] would tend to hold those surfaces, those panels together when it's inflated." ECF No. 330-1, Ex. A at 76:10-77:13. But the Court's construction requires a specific structure for these coils of "spaced elongate members." ECF No. 232 at 10. Without viewing the internal construction of these 47 airbeds, it was physically impossible for Dr. Singhose to determine that any coils in these air beds possessed "spaced elongate members."

In its Opposition, Coleman argues that this issue was decided by the Court in the Court's Order on TWW's motion to strike Dr. Singhose's testimony. *See* ECF No. 226. But this specific issue was not decided by this Order because the Court did not construe the term "coil" until <u>after</u> TWW's motion to strike was decided. Thus, the Court did not have the benefit of the Court's construction of "coil," which is much narrower than Dr. Singhose's interpretation, when it decided

6

TWW's motion to strike. Dr. Singhose stated he could determine whether "coils" were present in an accused airbed simply by observing the dimples on the top and bottom panel of the airbeds. But Dr. Singhose was only looking for evidence of "just some material" connecting the top and bottom panels of the accused air beds. As shown below, the "dimpling" Dr. Singhose identified on the accused airbeds could have been from many different structures and not necessarily "coils" with "spaced elongate members."


Partial Interior View of the Ivation Model IV- IAMQ20PBRBG.



*See* ECF No. 330-4, Ex. D, Rebuttal Report of Dr. Singhose, August 12, 2021, at ¶¶ 70, 76.

Coleman also argues that TWW "admitted" that the internal construction of all its airbeds was the same. TWW addressed this point in its opposition to Coleman's motion *in limine* no. 3. *See* ECF No. 348 at 7-9. As discussed in that opposition, the statement Coleman refers to was not the "deliberate, clear, or unambiguous" statement required by the Fourth Circuit for an admission. *See Everett v. Pitt Cty. Bd. Of Educ.*, 788 F.3d 132, 141 (4th Cir. 2015) ("A purported judicial admission is binding **only if** the statement is '**deliberate, clear, and unambiguous**.'") (emphasis added). TWW made no such admission concerning the construction of its products.

At a minimum, because Dr. Singhose failed to examine the internal structure of the 47 accused products, he lacks any factual basis on which to opine that those products infringe Claims 1, 2, 15, and 16 of the '618 Patent. Accordingly, his infringement opinions as to those products

are unreliable, irrelevant, and prejudicial, and they should be excluded under FREs 702, 401, and 403.

## CONCLUSION

For at least the foregoing reasons and the reasons stated in TWW's motion, TWW respectfully request that the Court grant this Motion *in Limine* and preclude Plaintiff Coleman from offering evidence, testimony, or argument, including opinions on infringement, regarding whether the accused TWW products infringe asserted claims 1, 2, 15, and 16 of the '618 Patent or, in the alternative, regarding the 47 Unexamined TWW Accused Products.

Dated:   December 30, 2022                                  Respectfully submitted,

By: /s/ Alexandra M. Gabriel
Alexandra M. Gabriel (VSB No. 89185)
William R. Poynter (VSB No. 48672)
David Sullivan (VSB No. 45027)
**KALEO LEGAL**
4456 Corporation Lane, Suite 135
Virginia Beach, VA 23462
Phone: 757.238.6383
Fax: 757.304.6175
agabriel@kaleolegal.com
wpoynter@kaleolegal.com
dsullivan@kaleolegal.com

Thomas M. Dunham (pro hac vice)
J. Michael Woods (pro hac vice)
Adam A. Allgood (pro hac vice)
**Cherian LLP**
1901 L St. NW, Suite 700
Washington, DC 20036
Telephone: (202) 838-1560
tomd@cherianllp.com
michaelw@cherianllp.com
adama@cherianllp.com

Korula Cherian (pro hac vice)
Robert Harkins (pro hac vice)
**Cherian LLP**
1936 University Ave., Ste. 350
Berkeley, CA 94702
Telephone: (510) 944-0190
sunnyc@cherianllp.com
bobh@cherianllp.com

Dana D. McDaniel (VSB No. 25419)
John M. Erbach (VSB No. 76695)
SPOTTS FAIN, P.C.
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
Tel.: (804) 697-2065
Fax: (804) 697-2165
dmcdaniel@spottsfain.com
jerbach@spottsfain.com

*Attorneys for Team Worldwide Corporation and Cheng-Chung Wang*

9

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing on December 30, 2022 with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all registered users.

By: /s/ Alexandra M. Gabriel
Alexandra M. Gabriel (VSB No. 89185)
KALEO LEGAL
4456 Corporation Lane, Suite 135
Virginia Beach, VA 23462
Phone: 757.238.6383
Fax: 757.304.6175
agabriel@kaleolegal.com